RYAN K. YAGURA (S.B. #197619)
ryagura@omm.com
NICHOLAS J. WHILT (S.B. #247738)
nwhilt@omm.com
XIN-YI ZHOU (S.B. #251969)
vzhou@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Telephone:  +1 213 430 6000
Facsimile:   +1 213 430 6407

*Attorneys for Defendants The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., BAMTech LLC, Hulu, LLC, and ESPN, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION AT LOS ANGELES

| | |
|---|---|
| INTERDIGITAL INC., INTERDIGITAL VC HOLDINGS, INC., INTERDIGITAL MADISON PATENT HOLDINGS, SAS, AND INTERDIGITAL CE PATENT HOLDINGS, SAS, <br><br> Plaintiffs and Counterclaim-Defendants, <br><br> v. <br><br> THE WALT DISNEY COMPANY, DISNEY MEDIA AND ENTERTAINMENT DISTRIBUTION LLC, DISNEY DTC LLC, DISNEY STREAMING SERVICES LLC, DISNEY ENTERTAINMENT & SPORTS LLC, DISNEY PLATFORM DISTRIBUTION, INC., BAMTECH, LLC, HULU, LLC, AND ESPN, INC., <br><br> Defendants and Counterclaim-Plaintiffs. | **Case No. 2:25-cv-895-WLH-RAO** <br><br> **DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** <br><br> **JURY TRIAL DEMANDED** |

1    Defendants The Walt Disney Company ("TWDC"), Disney Media and

2  Entertainment Distribution LLC ("DMED"), Disney DTC LLC ("DDTC"), Disney

3  Streaming Services LLC ("DSS"), Disney Entertainment & Sports LLC ("DES"),

4  Disney Platform Distribution, Inc. ("DPD"), BAMTech, LLC ("BAMTech"), Hulu,

5  LLC ("Hulu"), and ESPN, Inc. ("ESPN") (collectively, "Disney" or "Defendants")

6  hereby submit their Answer and Affirmative Defenses to the Complaint of

7  InterDigital, Inc., InterDigital VC Holdings, Inc., InterDigital Madison Patent

8  Holdings, SAS, and InterDigital CE Patent Holdings, SAS (collectively,

9  "InterDigital" or "Plaintiffs").

10    Disney also hereby submits its Counterclaims to Plaintiffs' Complaint.

11  Disney denies all allegations in InterDigital's Complaint unless expressly admitted

12  in the following paragraphs.  Any factual allegations admitted herein are admitted

13  only for purposes of this matter and only as to the specific facts, but not as to any

14  potential characterizations, conclusions, implications, or speculations which may

15  follow from such facts.  Disney's responses reflect its current knowledge, and

16  Disney reserves the right to take further positions and/or raise additional defenses

17  that may become apparent as a result of additional information discovered after the

18  filing of its Answer and Counterclaims.

19                    **NATURE OF THE ACTION**

20    1.    Disney denies all allegations of Paragraph 1, and specifically denies

21  that it has committed any acts of infringement.

22    2.    Disney lacks sufficient knowledge or information on which to form a

23  belief as to the allegations of Paragraph 2 and, on that basis, denies them.

24    3.    Disney admits that InterDigital contacted Disney in July of 2022.

25  Disney denies all remaining allegations of Paragraph 3.

26    4.    Disney denies all allegations of Paragraph 4, and specifically denies

27  that it has committed any acts of infringement.

28

## **THE PARTIES**

5.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 5 and, on that basis, denies them.

6.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 6 and, on that basis, denies them.

7.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 7 and, on that basis, denies them.

8.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 8 and, on that basis, denies them.

9.     Disney admits TWDC is a Delaware corporation with a principal place of business at 500 South Buena Vista Street, Burbank, California, 91521.  Disney admits TWDC has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. Disney denies all remaining allegations of Paragraph 9.

10.     Disney admits DMED is a Delaware limited liability company with a principal place of business at 500 South Buena Vista Street, Burbank, California 91521.  Disney admits DMED has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process.  Disney admits DMED is an indirectly wholly owned subsidiary of TWDC.  Disney denies all remaining allegations of Paragraph 10.

11.     Disney admits DDTC is a Delaware limited liability company with a principal place of business at 500 South Buena Vista Street, Burbank, California 91521.  Disney admits DDTC has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process.  Disney denies all remaining allegations of Paragraph 11.

12.     Disney admits DSS is a Delaware limited liability company with a principal place of business at 500 South Buena Vista Street, Burbank, California 91521.  Disney admits DSS has designated CSC–Lawyers Incorporating Service,

2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. Disney admits DSS is an indirectly wholly owned subsidiary of the TWDC. Disney denies all remaining allegations of Paragraph 12.

13.     Disney admits that DES was formerly known as Disney Streaming Technology LLC and/or Disney Technology LLC. Disney admits DES is a Delaware limited liability company with a principal place of business at 500 South Buena Vista Street, Burbank, California 91521. Disney admits DES has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. Disney admits DES is an indirectly wholly owned subsidiary of TWDC. Disney denies all remaining allegations of Paragraph 13.

14.     Disney admits DPD is a Delaware corporation with a principal place of business at 500 South Buena Vista Street, Burbank, California 91521. Disney admits DPD has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. Disney admits DPD is an indirectly wholly owned subsidiary of TWDC. Disney denies all remaining allegations of Paragraph 14.

15.     Disney admits BAMTech is a Delaware limited liability company with a principal place of business at 1211 Avenue of the Americas, New York, New York 10036. Disney admits BAMTech has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. Disney admits BAMTech is an indirect subsidiary of TWDC, which owns 80% of BAMTech, and Hearst Brazil, Inc., a subsidiary of The Hearst Corporation, which owns the remaining 20% of BAMTech. Disney denies all remaining allegations of Paragraph 15.

16.     Disney admits Hulu is a Delaware limited liability company with a principal place of business at 2500 Broadway, Santa Monica, California 90404. Disney admits Hulu has designated CSC–Lawyers Incorporating Service, 2710

Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. Disney admits Hulu is an indirect subsidiary of TWDC, which owns 66.67% of Hulu, and Comcast Hulu Holdings, LLC, a subsidiary of Comcast Corporation, which owns the remaining 33.33% of Hulu. Disney admits Hulu, LLC operates the Hulu and Hulu Live video streaming services. Disney denies all remaining allegations of Paragraph 16.

17. Disney admits ESPN is a Delaware corporation with a principal place of business at ESPN Plaza, Bristol, Connecticut 06010. Disney admits ESPN has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. Disney admits ESPN is an indirect subsidiary of TWDC, which owns 80% of ESPN, and Hearst Brazil, Inc., a subsidiary of The Hearst Corporation, which owns the remaining 20% of ESPN. Disney admits ESPN, Inc. manages and operates the ESPN+ video streaming service. Disney denies all remaining allegations of Paragraph 17.

## JURISDICTION AND VENUE

18. Disney admits InterDigital's complaint purports to invoke the patent laws of the United States, 35 U.S.C. §§ 101, et seq. Disney admits that, for purposes of this action only, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and/or 1338. Disney denies all remaining allegations of Paragraph 18.

19. Disney does not dispute personal jurisdiction exists in this judicial district for purposes of this action only. Disney denies all remaining allegations of Paragraph 19.

20. Disney does not dispute personal jurisdiction exists in this judicial district for purposes of this action only. Disney denies all remaining allegations of Paragraph 20, and specifically denies that it has committed any acts of infringement.

21.     Disney does not dispute venue is proper in this judicial district for this action only.  Disney denies all remaining allegations of Paragraph 21, and specifically denies that it has committed any acts of infringement.

22.     Disney admits TWDC, DES, and DSS maintain an office in this District at 500 South Buena Vista Street, Burbank, California 91521.  Disney denies all remaining allegations of Paragraph 22.

23.     Disney admits ESPN maintains an office at 800 W. Olympic Blvd., Los Angeles, California 90015.  Disney denies all remaining allegations of Paragraph 23.

24.     Disney admits the allegations of Paragraph 24.

25.     Disney admits that it has conducted certain business activities in this District.  Disney denies all remaining allegations of Paragraph 25, and specifically denies that it has committed any acts of infringement.

26.     Disney denies the allegations of Paragraph 26.

## FACTUAL BACKGROUND

**A.     _InterDigital & Its [Alleged] Persisting Innovation_**

27.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 27 and, on that basis, denies them.

28.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 28 and, on that basis, denies them.

29.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 29 and, on that basis, denies them.

30.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 30 and, on that basis, denies them.

**B.     _Video Coding Technology_**

31.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 31 and, on that basis, denies them.

32.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 32 and, on that basis, denies them.

33.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 33 and, on that basis, denies them.

34.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 34 and, on that basis, denies them.

35.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 35 and, on that basis, denies them.

36.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 36 and, on that basis, denies them.

37.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 37 and, on that basis, denies them.

38.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 38 and, on that basis, denies them.

**C.     _Defendants' [Allegedly] Infringing Streaming Services_**

39.     Disney denies all allegations of Paragraph 39, and specifically denies that it has committed any acts of infringement.

40.     Disney admits the allegations of Paragraph 40.

41.     Disney admits that Disney+ uses AVC and HEVC.  Disney admits that Disney+ uses multiple content delivery networks.  Disney denies all remaining allegations of Paragraph 41.

42.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 42 and, on that basis, denies them.

43.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 43 and, on that basis, denies them.

44.     Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 44 and, on that basis, denies them.

45.    Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 45 and, on that basis, denies them.

46.    Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 46 and, on that basis, denies them.

47.    Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 47 and, on that basis, denies them.

48.    Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 48 and, on that basis, denies them.

49.    Disney admits the allegations of Paragraph 49.

50.    Disney admits that Hulu uses AVC and HEVC.  Disney admits that Hulu uses multiple content delivery networks.  Disney denies all remaining allegations of Paragraph 50.

51.    Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 51 and, on that basis, denies them.

52.    Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 52 and, on that basis, denies them.

53.    Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 53 and, on that basis, denies them.

54.    Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 54 and, on that basis, denies them.

55.    Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 55 and, on that basis, denies them.

56.    Disney admits the allegations of Paragraph 56.

57.    Disney admits that ESPN+ uses AVC.  Disney admits that ESPN+ uses multiple content delivery networks.  Disney denies all remaining allegations of Paragraph 57.

58.    Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 58 and, on that basis, denies them.

59. Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 59 and, on that basis, denies them.

60. Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 60 and, on that basis, denies them.

61. Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 61 and, on that basis, denies them.

62. Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 62 and, on that basis, denies them.

63. Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 63 and, on that basis, denies them.

64. Disney denies the allegations of Paragraph 64.

65. Disney denies the allegations of Paragraph 65.

66. Disney denies the allegations of Paragraph 66.

67. Disney denies the allegations of Paragraph 67.

68. Disney denies the allegations of Paragraph 68.

69. Disney denies the allegations of Paragraph 69.

70. Disney denies the allegations of Paragraph 70.

71. Disney denies the allegations of Paragraph 71.

72. Disney denies the allegations of Paragraph 72.

73. Disney denies the allegations of Paragraph 73.

74. Disney denies the allegations of Paragraph 74.

75. Disney denies the allegations of Paragraph 75.

76. Disney denies the allegations of Paragraph 76.

77. Disney denies the allegations of Paragraph 77

78. Disney denies the allegations of Paragraph 78.

79. Disney denies the allegations of Paragraph 79.

80. Disney denies the allegations of Paragraph 80.

81. Disney denies the allegations of Paragraph 81.

1    82.    Disney denies the allegations of Paragraph 82.

2    83.    Disney denies the allegations of Paragraph 83.

3    84.    Disney denies the allegations of Paragraph 84.

4    85.    Disney denies the allegations of Paragraph 85.

5    86.    Disney denies the allegations of Paragraph 86.

6    87.    Disney denies the allegations of Paragraph 87.

7    88.    Disney denies the allegations of Paragraph 88.

8    89.    Disney denies the allegations of Paragraph 89.

9    90.    Disney denies the allegations of Paragraph 90.

10    91.    Disney denies the allegations of Paragraph 91.

11    92.    Disney denies the allegations of Paragraph 92.

12    93.    Disney denies the allegations of Paragraph 93.

13    94.    Disney denies the allegations of Paragraph 94.

14    95.    Disney denies the allegations of Paragraph 95.

15    96.    Disney denies the allegations of Paragraph 96.

16    97.    Disney denies the allegations of Paragraph 97.

17    98.    Disney denies the allegations of Paragraph 98.

18    99.    Disney denies the allegations of Paragraph 99.

19    100.    Disney denies the allegations of Paragraph 100.

20    101.    Disney denies the allegations of Paragraph 101.

21    102.    Disney denies the allegations of Paragraph 102.

22    103.    Disney denies the allegations of Paragraph 103.

23    104.    Disney denies the allegations of Paragraph 104.

24    105.    Disney denies the allegations of Paragraph 105.

25    106.    Disney denies the allegations of Paragraph 106.

26    107.    Disney denies the allegations of Paragraph 107.

27    108.    Disney denies the allegations of Paragraph 108.

28    109.    Disney denies the allegations of Paragraph 109.

110.    Disney denies the allegations of Paragraph 110.

111.    Disney denies the allegations of Paragraph 111.

112.    Disney admits Disney DTC LLC is responsible for certain aspects of content management and planning for Disney+.  Disney denies all remaining allegations of Paragraph 112.

113.    Disney admits Disney DTC LLC is responsible for certain aspects of content management and planning for Hulu.  Disney denies all remaining allegations of Paragraph 113.

114.    Disney denies the allegations of Paragraph 114.

115.    Disney denies the allegations of Paragraph 115.

116.    Disney admits Disney DTC LLC manages certain aspects of third-party media sales efforts for distribution, affiliate marketing, and affiliate-related business operations for Disney+.  Disney denies all remaining allegations of Paragraph 116.

117.    Disney admits Disney DTC LLC manages certain aspects of third-party media sales efforts for distribution, affiliate marketing, and affiliate-related business operations for Hulu.  Disney denies all remaining allegations of Paragraph 117.

118.    Disney denies the allegations of Paragraph 118.

119.    Disney denies the allegations of Paragraph 119.

120.    Disney admits Disney DTC LLC negotiates certain aspects of certain contracts for the distribution of certain content for Disney+.  Disney denies all remaining allegations of Paragraph 120.

121.    Disney admits Disney DTC LLC negotiates certain aspects of certain contracts for the distribution of certain content for Hulu.  Disney denies all remaining allegations of Paragraph 121.

122.    Disney denies the allegations of Paragraph 122.

123.    Disney denies the allegations of Paragraph 123.

1    124.   Disney denies the allegations of Paragraph 124.

2    125.   Disney denies the allegations of Paragraph 125.

3    126.   Disney denies the allegations of Paragraph 126.

4    127.   Disney denies the allegations of Paragraph 127.

5    128.   Disney denies the allegations of Paragraph 128.

6    129.   Disney denies the allegations of Paragraph 129.

7    130.   Disney denies the allegations of Paragraph 130.

8    131.   Disney denies the allegations of Paragraph 131.

9    132.   Disney denies the allegations of Paragraph 132.

10    133.   Disney denies the allegations of Paragraph 133.

11    134.   Disney denies the allegations of Paragraph 134.

12    135.   Disney denies the allegations of Paragraph 135.

13    136.   Disney denies the allegations of Paragraph 136.

14    137.   Disney denies the allegations of Paragraph 137.

15    138.   Disney admits the allegations of Paragraph 138.

16    139.   Disney admits the allegations of Paragraph 139.

17    140.   Disney admits the allegations of Paragraph 140.

18    141.   Disney admits the allegations of Paragraph 141.

19    142.   Disney admits the allegations of Paragraph 142.

20    143.   Disney admits the allegations of Paragraph 143.

21    144.   Disney admits the allegations of Paragraph 144.

22    145.   Disney admits the allegations of Paragraph 145.

23    146.   Disney admits the allegations of Paragraph 146.

24    147.   Disney admits the allegations of Paragraph 147.

25    148.   Disney admits the allegations of Paragraph 148.

26    149.   Disney admits ESPN, Inc. manages and operates certain aspects of

27    ESPN+.  Disney denies all remaining allegations of Paragraph 149.

28    150.   Disney admits the allegations of Paragraph 150.

1      151.   Disney admits the allegations of Paragraph 151.

2      152.   Disney admits the website https://medium.com/disney-streaming states

3  "The Art of Possible" and "A Disney Technology Blog" and appears to display a

4  Hulu logo, Disney+ logo, and ESPN+ logo next to a Disney Streaming logo.

5  Disney denies all remaining allegations of Paragraph 152.

6      153.   Disney admits the website

7  https://www.disneyplus.com/legal/subscriber-agreement states "Disney Platform

8  Distribution, Inc., located at 500 South Buena Vista Street, Burbank, CA 91521

9  ('Disney+'), BAMTech, LLC, located at 50 Vandam Street, 9W, New York, NY

10  10013 ('ESPN+'), and Hulu, LLC, located at 2500 Broadway, 2nd Floor, Santa

11  Monica, CA 90404 ('Hulu') are referred to collectively in this Agreement as 'we',

12  'us' and 'our'."  Disney denies all remaining allegations of Paragraph 153.

13      154.   Disney admits the website

14  https://www.disneyplus.com/legal/subscriber-agreement states "Disney Platform

15  Distribution, Inc., located at 500 South Buena Vista Street, Burbank, CA 91521

16  ('Disney+'), BAMTech, LLC, located at 50 Vandam Street, 9W, New York, NY

17  10013 ('ESPN+'), and Hulu, LLC, located at 2500 Broadway, 2nd Floor, Santa

18  Monica, CA 90404 ('Hulu') are referred to collectively in this Agreement as 'we',

19  'us' and 'our'."  Disney denies all remaining allegations of Paragraph 154.

20      155.   Disney admits the website

21  https://www.hulu.com/subscriber_agreement states "Disney Platform Distribution,

22  Inc., located at 500 South Buena Vista Street, Burbank, CA 91521 ('Disney+'),

23  BAMTech, LLC, located at 50 Vandam Street, 9W, New York, NY 10013

24  ('ESPN+'), and Hulu, LLC, located at 2500 Broadway, 2nd Floor, Santa Monica,

25  CA 90404 ('Hulu') are referred to collectively in this Agreement as 'we', 'us' and

26  'our'."  Disney denies all remaining allegations of Paragraph 155.

27      156.   Disney admits the allegations of Paragraph 156.

28      157.   Disney admits the allegations of Paragraph 157.

158.   Disney admits the allegations of Paragraph 158.

159.   Disney admits the allegations of Paragraph 159.

160.   Disney admits the allegations of Paragraph 160.

161.   Disney admits the allegations of Paragraph 161.

162.   Disney admits the allegations of Paragraph 162.

163.   Disney admits the allegations of Paragraph 163.

164.   Disney admits the allegations of Paragraph 164.

165.   Disney admits the allegations of Paragraph 165.

166.   Disney admits the allegations of Paragraph 166.

167.   Disney admits the allegations of Paragraph 167.

168.   Disney admits the allegations of Paragraph 168.

169.   Disney admits that certain employees are shared among certain of the Defendants.  Disney denies all remaining allegations of Paragraph 169.

170.   Disney admits the allegations of Paragraph 170.

171.   Disney admits the allegations of Paragraph 171.

172.   Disney admits the allegations of Paragraph 172.

173.   Disney admits that subscriptions are available that include two or three of the following:  Hulu, Disney+, and ESPN+.  Disney denies all remaining allegations of Paragraph 173.

174.   Disney admits that subscriptions are available that include two or three of the following: Hulu, Disney+, and ESPN+.  Disney denies all remaining allegations of Paragraph 174.

175.   Disney admits the allegations of Paragraph 175.

176.   Disney admits the website https://thewaltdisneycompany.com/the-walt-disney-company-announces-strategic-restructuring-restoring-accountability-to-creative-businesses/ states "Effective immediately, several shared-service organizations across the company will support both Disney Entertainment and ESPN, facilitating company-wide efficiencies and creating a more cost-effective,

coordinated, and streamlined approach to operations.  These include Product and Technology, led by Aaron LaBerge; Advertising Sales, led by Rita Ferro; and Platform Distribution led by Justin Connolly excluding Theatrical Distribution and Music, which will be overseen by Bergman."  Disney denies all remaining allegations of Paragraph 176.

177.   Disney admits the website https://www.disneycareers.com/en/job/santa-monica/sr-software-engineer-rust-engineering/391/72468085792 states "DE&E Technologists are designing and building the infrastructure that will power Disney's media, advertising, and distribution businesses for years to come."  Disney further admits this website states: "The products and platforms this group builds and operates delight millions of consumers every minute of every day – from Disney+ and Hulu, to ABC News and Entertainment, to ESPN and ESPN+, and much more."  Disney denies all remaining allegations of Paragraph 177.

178.   Disney admits the website https://www.disneycareers.com/en/job/santa-monica/sr-software-engineer-rust-engineering/391/72468085792 states "Disney Entertainment and ESPN Technology (DE&E Technology) provides the technological backbone and product development for Disney's two media business units, while helping to keep the company at the vanguard of innovation – enabling the Company to continuously leverage technology to enhance storytelling and creativity, while delivering scalability, flexibility, and efficiency for its businesses."  Disney denies all remaining allegations of Paragraph 178.

179.   Disney admits the website https://www.disneycareers.com/en/job/new-york/senior-data-engineer-identity-data/391/71800273968 states "The Product & Data Engineering team is responsible for end to end development for Disney's world-class consumer-facing products, including streaming platforms Disney+, Hulu, and ESPN+, and digital products & experiences across ESPN, Marvel,

Disney Studios, NatGeo, and ABC News." Disney denies all remaining allegations of Paragraph 179.

180. Disney admits the website https://www.hollywoodreporter.com/business/digital/disney-pays-900m-for-bamtech-1235271788/ states "BAMTech technology powers Disney+, Hulu and Disney's other offerings…." Disney denies all remaining allegations of Paragraph 180.

181. Disney admits the allegations of Paragraph 181.

182. Disney admits the website https://thewaltdisneycompany.com/the-walt-disney-company-announces-strategic-restructuring-restoring-accountability-to-creative-businesses/ states "Effective immediately, several shared-service organizations across the company will support both Disney Entertainment and ESPN, facilitating company-wide efficiencies and creating a more cost-effective, coordinated, and streamlined approach to operations. These include Product and Technology, led by Aaron LaBerge; Advertising Sales, led by Rita Ferro; and Platform Distribution led by Justin Connolly excluding Theatrical Distribution and Music, which will be overseen by Bergman." Disney denies all remaining allegations of Paragraph 182.

183. Disney admits the allegations of Paragraph 183.

184. Disney admits the website https://thewaltdisneycompany.com/the-walt-disney-company-announces-strategic-restructuring-restoring-accountability-to-creative-businesses/ states "Effective immediately, several shared-service organizations across the company will support both Disney Entertainment and ESPN, facilitating company-wide efficiencies and creating a more cost-effective, coordinated, and streamlined approach to operations. These include Product and Technology, led by Aaron LaBerge; Advertising Sales, led by Rita Ferro; and Platform Distribution led by Justin Connolly excluding Theatrical Distribution and

1    Music, which will be overseen by Bergman." Disney denies all remaining
2    allegations of Paragraph 184.

3         185.   Disney admits the allegations of paragraph 185.

4         186.   Disney admits Aaron LaBerge previously served as the president and
5    chief technology officer of Disney Entertainment and ESPN. Disney denies all
6    remaining allegations of Paragraph 186.

7         187.   Disney admits The Walt Disney Company's Disney Entertainment
8    segment houses Disney+ and Hulu. Disney admits the website
9    https://thewaltdisneycompany.com/the-walt-disney-company-announces-strategic-
10   restructuring-restoring-accountability-to-creative-businesses/ states (1) "Disney
11   Entertainment co-Chairmen Alan Bergman and Dana Walden will oversee the
12   company's global entertainment streaming businesses and manage all content
13   decisions for those services, including Disney+ and Hulu," and (2) "Jimmy Pitaro is
14   Chairman of The Walt Disney Company's ESPN business segment, which includes
15   ESPN and ESPN+." Disney denies all remaining allegations of Paragraph 187.

16        188.   Disney admits the website https://theorg.com/org/disney/org-
17   chart/justin-connolly states "As President of Disney Platform Distribution, Justin
18   Connolly oversees all third-party media sales efforts for distribution, distribution
19   strategy, affiliate marketing and affiliate-related business operations for all of the
20   Company's direct-to-consumer services and linear media networks; content sales
21   agreements for General Entertainment, Studios and Sports; as well as global
22   theatrical film distribution and the Disney Music Group." Disney further admits
23   the website https://thewaltdisneycompany.com/the-walt-disney-company-
24   announces-strategic-restructuring-restoring-accountability-to-creative-businesses/
25   states "Effective immediately, several shared-service organizations across the
26   company will support both Disney Entertainment and ESPN, facilitating company-
27   wide efficiencies and creating a more cost-effective, coordinated, and streamlined
28   approach to operations. These include Product and Technology, led by Aaron

LaBerge; Advertising Sales, led by Rita Ferro; and Platform Distribution led by Justin Connolly excluding Theatrical Distribution and Music, which will be overseen by Bergman." Disney denies all remaining allegations of Paragraph 188.

189. Disney admits the website https://press.hulu.com/bios/joe-earley/ states "Joe Earley is the President of Direct-to-Consumer, Disney Entertainment, where he leads efforts to expand and elevate the company's best-in-class streaming services, utilizing the impactful and resonant programming and engagement offerings across Disney+ and Hulu." Disney denies all remaining allegations of Paragraph 189.

190. Disney admits the website https://press.hulu.com/bios/april-carretta/ states "As SVP of Communications for Direct-To-Consumer, Platform Distribution & Technology, April Carretta leads the team responsible for all communications efforts in support of Disney Entertainment's portfolio of direct-to-consumer businesses…." Disney denies all remaining allegations of Paragraph 190.

191. Disney admits the website https://press.disneyplus.com/news/alisa-bowen-named-president-of-disney-plus states "Alisa Bowen has been named President of Disney+, effective immediately.… Bowen has led global business operations for Disney's streaming platforms, including Disney+, since its launch in 2019.… Bowen will work closely with key leaders across The Walt Disney Company to drive continued focus on innovation, including the forthcoming launch of the advertising-supported tier, as well as multi-channel promotional support for Disney+ and its robust content slate.… She most recently served as EVP of Global Business Operations for Disney Streaming, overseeing global content and business operations for the Company's direct-to-consumer video streaming businesses, Disney+, Hulu, ESPN+, and Star+." Disney denies all remaining allegations of Paragraph 191.

192. Disney admits that Michael Paull is a former President of Disney Streaming. Disney further admits that the website

https://www.forbes.com/sites/megandubois/2022/01/20/disney-announces-executives-for-its-disney-media-and-entertainment-segment/?sh=49a43e8c41f7 states "Michael Paull, the executive who helped launch the company's ESPN+ has been promoted to a newly created role of President, Disney Streaming.  He will be responsible for Disney+, Hulu, ESPN+, and Star+."  Disney denies all remaining allegations of Paragraph 192.

193.    Disney admits the allegations of Paragraph 193.

194.    Disney admits the allegations of Paragraph 194.

195.    Disney admits that the websites https://plus.espn.com/ and https://www.disneyplus.com/ include text that reads "Privacy Policy" and that is a link to the website https://privacy.thewaltdisneycompany.com/en/.  Disney denies all remaining allegations of Paragraph 195.

196.    Disney admits the website https://www.disneycareers.com/en/ includes an ability to filter "opportunities" by "business" including "Disney Entertainment," "Disney Entertainment & ESPN Technology," "Disney Entertainment Television," "Disney Platform Distribution," "ESPN," and "The Walt Disney Company." Disney denies all remaining allegations of Paragraph 196.

197.    Disney admits the website https://www.disneycareers.com/en/job/santa-monica/senior-analyst-hulu-subscriber-planning/391/74783297328 states "Senior Analyst, Hulu Subscriber Planning" and "[t]his position is with Hulu, LLC, which is part of a business we call Disney Entertainment."  Disney denies all remaining allegations of Paragraph 197.

198.    Disney admits the website https://www.disneycareers.com/en/job/new-york/sr-manager-software-engineering/391/76050096368 states "Sr. Manager, Software Engineering (Identity Engineering)" and "[t]his position is with Disney Streaming Technology LLC, which is part of a business we call Disney

Entertainment & ESPN Technology."  Disney denies all remaining allegations of Paragraph 198.

**D.      _Certain Defendants Are [Allegedly] Agents of One Another_**

199.   Paragraph 199 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 199.

200.   Paragraph 200 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 200.

201.   Paragraph 201 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 201.

202.   Paragraph 202 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 202.

203.   Paragraph 203 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 203.

204.   Paragraph 204 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 204.

205.   Paragraph 205 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 205.

206.   Paragraph 206 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 206.

207.   Paragraph 207 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 207.

208.   Paragraph 208 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 208.

209.   Paragraph 209 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 209.

210.   Paragraph 210 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 210.

211.   Paragraph 211 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 211.

212.   Paragraph 212 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 212.

213.   Paragraph 213 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 213.

214.   Paragraph 214 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 214.

215.   Paragraph 215 solely expresses legal conclusions and therefore does not require a response.  To the extent a response is required, Disney denies all allegations of Paragraph 215.

1      216.   Paragraph 216 solely expresses legal conclusions and therefore does
2  not require a response.  To the extent a response is required, Disney denies all
3  allegations of Paragraph 216.
4      217.   Paragraph 217 solely expresses legal conclusions and therefore does
5  not require a response.  To the extent a response is required, Disney denies all
6  allegations of Paragraph 217.
7      218.   Paragraph 218 solely expresses legal conclusions and therefore does
8  not require a response.  To the extent a response is required, Disney denies all
9  allegations of Paragraph 218.
10     219.   Paragraph 219 solely expresses legal conclusions and therefore does
11 not require a response.  To the extent a response is required, Disney denies all
12 allegations of Paragraph 219.
13     220.   Paragraph 220 solely expresses legal conclusions and therefore does
14 not require a response.  To the extent a response is required, Disney denies all
15 allegations of Paragraph 220.
16     221.   Paragraph 221 solely expresses legal conclusions and therefore does
17 not require a response.  To the extent a response is required, Disney denies all
18 allegations of Paragraph 221.
19     222.   Paragraph 222 solely expresses legal conclusions and therefore does
20 not require a response.  To the extent a response is required, Disney denies all
21 allegations of Paragraph 222.
22     223.   Paragraph 223 solely expresses legal conclusions and therefore does
23 not require a response.  To the extent a response is required, Disney denies all
24 allegations of Paragraph 223.
25     224.   Paragraph 224 solely expresses legal conclusions and therefore does
26 not require a response.  To the extent a response is required, Disney denies all
27 allegations of Paragraph 224.
28

1    225.    Paragraph 225 solely expresses legal conclusions and therefore does

2    not require a response.  To the extent a response is required, Disney denies all

3    allegations of Paragraph 225.

4    **E.**    ***The Walt Disney Company's [Alleged] Vicarious Liability***

5    226.    Disney denies the allegations of Paragraph 226, and specifically denies

6    that it has committed any acts of infringement.

7    227.    Disney denies the allegations of Paragraph 227, and specifically denies

8    that it has committed any acts of infringement.

9    228.    Disney denies the allegations of Paragraph 228, and specifically denies

10    that it has committed any acts of infringement.

11    229.    Disney admits the allegations of Paragraph 229.

12    230.    Disney denies that DEMD has engaged in any infringing activities.

13    Disney denies all remaining allegations of Paragraph 230, and specifically denies

14    that it has committed any acts of infringement.

15    231.    Disney denies that DEMD has engaged in any infringing activities.

16    Disney denies all remaining allegations of Paragraph 231, and specifically denies

17    that it has committed any acts of infringement.

18    232.    Disney denies all allegations of Paragraph 232, and specifically denies

19    that it has committed any acts of infringement.

20    233.    Disney denies the allegations of Paragraph 233, and specifically denies

21    that it has committed any acts of infringement.

22    234.    Disney denies the allegations of Paragraph 234, and specifically denies

23    that it has committed any acts of infringement.

24    235.    Disney denies the allegations of Paragraph 235, and specifically denies

25    that it has committed any acts of infringement.

26    236.    Disney admits the allegations of Paragraph 236.

27

28

237.    Disney denies that DPD has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 237, and specifically denies that it has committed any acts of infringement.

238.    Disney denies that DPD has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 238, and specifically denies that it has committed any acts of infringement.

239.    Disney denies all allegations of Paragraph 239, and specifically denies that it has committed any acts of infringement.

240.    Disney denies the allegations of Paragraph 240, and specifically denies that it has committed any acts of infringement.

241.    Disney denies the allegations of Paragraph 241, and specifically denies that it has committed any acts of infringement.

242.    Disney denies the allegations of Paragraph 242, and specifically denies that it has committed any acts of infringement.

243.    Disney admits the allegations of Paragraph 243.

244.    Disney denies that DSS has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 244, and specifically denies that it has committed any acts of infringement.

245.    Disney denies that DSS has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 245, and specifically denies that it has committed any acts of infringement.

246.    Disney denies all allegations of Paragraph 246, and specifically denies that it has committed any acts of infringement.

247.    Disney denies the allegations of Paragraph 247, and specifically denies that it has committed any acts of infringement.

248.    Disney denies the allegations of Paragraph 248, and specifically denies that it has committed any acts of infringement.

249.   Disney denies the allegations of Paragraph 249, and specifically denies that it has committed any acts of infringement.

250.   Disney admits the allegations of Paragraph 250.

251.   Disney denies that DES has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 251, and specifically denies that it has committed any acts of infringement.

252.   Disney denies that DES has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 252, and specifically denies that it has committed any acts of infringement.

253.   Disney denies all allegations of Paragraph 253, and specifically denies that it has committed any acts of infringement.

254.   Disney denies the allegations of Paragraph 254, and specifically denies that it has committed any acts of infringement.

255.   Disney denies the allegations of Paragraph 255, and specifically denies that it has committed any acts of infringement.

256.   Disney denies the allegations of Paragraph 256, and specifically denies that it has committed any acts of infringement.

257.   Disney admits the allegations of Paragraph 257.

258.   Disney denies that DDTC has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 258, and specifically denies that it has committed any acts of infringement.

259.   Disney denies that DDTC has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 259, and specifically denies that it has committed any acts of infringement.

260.   Disney denies all allegations of Paragraph 260, and specifically denies that it has committed any acts of infringement.

261.   Disney denies the allegations of Paragraph 261, and specifically denies that it has committed any acts of infringement.

262.   Disney denies the allegations of Paragraph 262, and specifically denies that it has committed any acts of infringement.

263.   Disney denies the allegations of Paragraph 263, and specifically denies that it has committed any acts of infringement.

264.   Disney admits the allegations of Paragraph 264.

265.   Disney denies that BAMTech has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 265, and specifically denies that it has committed any acts of infringement.

266.   Disney denies that BAMTech has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 266, and specifically denies that it has committed any acts of infringement.

267.   Disney denies all allegations of Paragraph 267, and specifically denies that it has committed any acts of infringement.

268.   Disney denies the allegations of Paragraph 268, and specifically denies that it has committed any acts of infringement.

269.   Disney denies the allegations of Paragraph 269, and specifically denies that it has committed any acts of infringement.

270.   Disney denies the allegations of Paragraph 270, and specifically denies that it has committed any acts of infringement.

271.   Disney admits the allegations of Paragraph 271.

272.   Disney denies that Hulu has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 272, and specifically denies that it has committed any acts of infringement.

273.   Disney denies that Hulu has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 273, and specifically denies that it has committed any acts of infringement.

274.   Disney denies all allegations of Paragraph 274, and specifically denies that it has committed any acts of infringement.

275.    Disney denies the allegations of Paragraph 275, and specifically denies that it has committed any acts of infringement.

276.    Disney denies the allegations of Paragraph 276, and specifically denies that it has committed any acts of infringement.

277.    Disney denies the allegations of Paragraph 277, and specifically denies that it has committed any acts of infringement.

278.    Disney admits the allegations of Paragraph 278.

279.    Disney denies that ESPN has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 279, and specifically denies that it has committed any acts of infringement.

280.    Disney denies that ESPN has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 280, and specifically denies that it has committed any acts of infringement.

281.    Disney denies all allegations of Paragraph 281, and specifically denies that it has committed any acts of infringement.

282.    Disney denies all allegations of Paragraph 282, and specifically denies that it has committed any acts of infringement.

283.    Disney denies all allegations of Paragraph 283, and specifically denies that it has committed any acts of infringement.

284.    Disney denies all allegations of Paragraph 284, and specifically denies that it has committed any acts of infringement.

285.    Disney denies all allegations of Paragraph 285.

286.    Disney denies all allegations of Paragraph 286, and specifically denies that it has committed any acts of infringement.

287.    Disney denies all allegations of Paragraph 287, and specifically denies that it has committed any acts of infringement.

288.    Disney denies all allegations of Paragraph 288, and specifically denies that it has committed any acts of infringement.

**F.** *Disney Media and Entertainment Distribution LLC's [Alleged] Vicarious Liability*

289.    Disney denies all allegations of Paragraph 289, and specifically denies that it has committed any acts of infringement.

290.    Disney denies all allegations of Paragraph 290, and specifically denies that it has committed any acts of infringement.

291.    Disney denies all allegations of Paragraph 291, and specifically denies that it has committed any acts of infringement.

292.    Disney denies the allegations of Paragraph 292.

293.    Disney denies that PDP has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 293, and specifically denies that it has committed any acts of infringement.

294.    Disney denies that PDP has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 294, and specifically denies that it has committed any acts of infringement.

295.    Disney denies all allegations of Paragraph 295, and specifically denies that it has committed any acts of infringement.

296.    Disney denies the allegations of Paragraph 296, and specifically denies that it has committed any acts of infringement.

297.    Disney denies the allegations of Paragraph 297, and specifically denies that it has committed any acts of infringement.

298.    Disney denies the allegations of Paragraph 298, and specifically denies that it has committed any acts of infringement.

299.    Disney denies the allegations of Paragraph 299.

300.    Disney denies that DSS has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 300, and specifically denies that it has committed any acts of infringement.

301.   Disney denies that DSS has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 301, and specifically denies that it has committed any acts of infringement.

302.   Disney denies all allegations of Paragraph 302, and specifically denies that it has committed any acts of infringement.

303.   Disney denies the allegations of Paragraph 303, and specifically denies that it has committed any acts of infringement.

304.   Disney denies the allegations of Paragraph 304, and specifically denies that it has committed any acts of infringement.

305.   Disney denies the allegations of Paragraph 305, and specifically denies that it has committed any acts of infringement.

306.   Disney denies the allegations of Paragraph 306.

307.   Disney denies that DES has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 307, and specifically denies that it has committed any acts of infringement.

308.   Disney denies that DES has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 308, and specifically denies that it has committed any acts of infringement.

309.   Disney denies all allegations of Paragraph 309, and specifically denies that it has committed any acts of infringement.

310.   Disney denies the allegations of Paragraph 310, and specifically denies that it has committed any acts of infringement.

311.   Disney denies the allegations of Paragraph 311, and specifically denies that it has committed any acts of infringement.

312.   Disney denies the allegations of Paragraph 312, and specifically denies that it has committed any acts of infringement.

313.   Disney denies the allegations of Paragraph 313.

314.   Disney denies that DDTC has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 314, and specifically denies that it has committed any acts of infringement.

315.   Disney denies that DDTC has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 315, and specifically denies that it has committed any acts of infringement.

316.   Disney denies all allegations of Paragraph 316, and specifically denies that it has committed any acts of infringement.

317.   Disney denies the allegations of Paragraph 317, and specifically denies that it has committed any acts of infringement.

318.   Disney denies the allegations of Paragraph 318, and specifically denies that it has committed any acts of infringement.

319.   Disney denies the allegations of Paragraph 319, and specifically denies that it has committed any acts of infringement.

320.   Disney denies the allegations of Paragraph 320.

321.   Disney denies that BAMTech has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 321, and specifically denies that it has committed any acts of infringement.

322.   Disney denies that BAMTech has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 322, and specifically denies that it has committed any acts of infringement.

323.   Disney denies all allegations of Paragraph 323, and specifically denies that it has committed any acts of infringement.

324.   Disney denies the allegations of Paragraph 324, and specifically denies that it has committed any acts of infringement.

325.   Disney denies the allegations of Paragraph 325, and specifically denies that it has committed any acts of infringement.

1    326.    Disney denies the allegations of Paragraph 326, and specifically denies
2    that it has committed any acts of infringement.

3    327.    Disney denies the allegations of Paragraph 327.

4    328.    Disney denies that Hulu has engaged in any infringing activities.
5    Disney denies all remaining allegations of Paragraph 328, and specifically denies
6    that it has committed any acts of infringement.

7    329.    Disney denies that Hulu has engaged in any infringing activities.
8    Disney denies all remaining allegations of Paragraph 329, and specifically denies
9    that it has committed any acts of infringement.

10    330.    Disney denies all allegations of Paragraph 330, and specifically denies
11    that it has committed any acts of infringement.

12    331.    Disney denies the allegations of Paragraph 331, and specifically denies
13    that it has committed any acts of infringement.

14    332.    Disney denies the allegations of Paragraph 332, and specifically denies
15    that it has committed any acts of infringement.

16    333.    Disney denies the allegations of Paragraph 333, and specifically denies
17    that it has committed any acts of infringement.

18    334.    Disney denies the allegations of Paragraph 334.

19    335.    Disney denies that ESPN has engaged in any infringing activities.
20    Disney denies all remaining allegations of Paragraph 335, and specifically denies
21    that it has committed any acts of infringement.

22    336.    Disney denies that ESPN has engaged in any infringing activities.
23    Disney denies all remaining allegations of Paragraph 336, and specifically denies
24    that it has committed any acts of infringement.

25    337.    Disney denies all allegations of Paragraph 337, and specifically denies
26    that it has committed any acts of infringement.

27    338.    Disney denies the allegations of Paragraph 338, and specifically denies
28    that it has committed any acts of infringement.

339.    Disney denies the allegations of Paragraph 339, and specifically denies that it has committed any acts of infringement.

340.    Disney denies the allegations of Paragraph 340, and specifically denies that it has committed any acts of infringement.

341.    Disney denies all allegations of Paragraph 341.

342.    Disney denies the allegations of Paragraph 342, and specifically denies that it has committed any acts of infringement.

343.    Disney denies the allegations of Paragraph 343, and specifically denies that it has committed any acts of infringement.

344.    Disney denies the allegations of Paragraph 344, and specifically denies that it has committed any acts of infringement.

**G.    _Disney Streaming Services LLC's [Alleged] Vicarious Liability_**

345.    Disney denies the allegations of Paragraph 345, and specifically denies that it has committed any acts of infringement.

346.    Disney denies the allegations of Paragraph 346, and specifically denies that it has committed any acts of infringement.

347.    Disney denies the allegations of Paragraph 347, and specifically denies that it has committed any acts of infringement.

348.    Disney admits the allegations of Paragraph 348.

349.    Disney denies that DPD has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 349, and specifically denies that it has committed any acts of infringement.

350.    Disney denies that DPD has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 350, and specifically denies that it has committed any acts of infringement.

351.    Disney denies all allegations of Paragraph 351, and specifically denies that it has committed any acts of infringement.

352.   Disney denies the allegations of Paragraph 352, and specifically denies that it has committed any acts of infringement.

353.   Disney denies the allegations of Paragraph 353, and specifically denies that it has committed any acts of infringement.

354.   Disney denies the allegations of Paragraph 354, and specifically denies that it has committed any acts of infringement.

355.   Disney admits the allegations of Paragraph 355.

356.   Disney denies that DES has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 356, and specifically denies that it has committed any acts of infringement.

357.   Disney denies that DES has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 357, and specifically denies that it has committed any acts of infringement.

358.   Disney denies all allegations of Paragraph 358, and specifically denies that it has committed any acts of infringement.

359.   Disney denies the allegations of Paragraph 359, and specifically denies that it has committed any acts of infringement.

360.   Disney denies the allegations of Paragraph 360, and specifically denies that it has committed any acts of infringement.

361.   Disney denies the allegations of Paragraph 361, and specifically denies that it has committed any acts of infringement.

362.   Disney admits the allegations of Paragraph 362.

363.   Disney denies that DDTC has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 363, and specifically denies that it has committed any acts of infringement.

364.   Disney denies that DDTC has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 364, and specifically denies that it has committed any acts of infringement.

365.   Disney denies all allegations of Paragraph 365, and specifically denies that it has committed any acts of infringement.

366.   Disney denies the allegations of Paragraph 366, and specifically denies that it has committed any acts of infringement.

367.   Disney denies the allegations of Paragraph 367, and specifically denies that it has committed any acts of infringement.

368.   Disney denies the allegations of Paragraph 368, and specifically denies that it has committed any acts of infringement.

369.   Disney denies the allegations of Paragraph 369.

370.   Disney denies that BAMTech has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 370, and specifically denies that it has committed any acts of infringement.

371.   Disney denies that BAMTech has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 371, and specifically denies that it has committed any acts of infringement.

372.   Disney denies all allegations of Paragraph 372, and specifically denies that it has committed any acts of infringement.

373.   Disney denies the allegations of Paragraph 373, and specifically denies that it has committed any acts of infringement.

374.   Disney denies the allegations of Paragraph 374, and specifically denies that it has committed any acts of infringement.

375.   Disney denies the allegations of Paragraph 375, and specifically denies that it has committed any acts of infringement.

376.   Disney denies the allegations of Paragraph 376.

377.   Disney denies that Hulu has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 377, and specifically denies that it has committed any acts of infringement.

378.   Disney denies that Hulu has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 378, and specifically denies that it has committed any acts of infringement.

379.   Disney denies all allegations of Paragraph 379, and specifically denies that it has committed any acts of infringement.

380.   Disney denies the allegations of Paragraph 380, and specifically denies that it has committed any acts of infringement.

381.   Disney denies the allegations of Paragraph 381, and specifically denies that it has committed any acts of infringement.

382.   Disney denies the allegations of Paragraph 382, and specifically denies that it has committed any acts of infringement.

383.   Disney denies the allegations of Paragraph 383.

384.   Disney denies that ESPN has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 384, and specifically denies that it has committed any acts of infringement.

385.   Disney denies that ESPN has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 385, and specifically denies that it has committed any acts of infringement.

386.   Disney denies all allegations of Paragraph 386, and specifically denies that it has committed any acts of infringement.

387.   Disney denies the allegations of Paragraph 387, and specifically denies that it has committed any acts of infringement.

388.   Disney denies the allegations of Paragraph 388, and specifically denies that it has committed any acts of infringement.

389.   Disney denies the allegations of Paragraph 389, and specifically denies that it has committed any acts of infringement.

390.   Disney denies all allegations of Paragraph 390.

391.   Disney denies all allegations of Paragraph 391, and specifically denies that it has committed any acts of infringement.

392.   Disney denies all allegations of Paragraph 392, and specifically denies that it has committed any acts of infringement.

393.   Disney denies all allegations of Paragraph 393, and specifically denies that it has committed any acts of infringement.

**H.     _Disney Entertainment & Sports LLC's [Alleged] Vicarious Liability_**

394.   Disney denies the allegations of Paragraph 394, and specifically denies that it has committed any acts of infringement.

395.   Disney denies the allegations of Paragraph 395, and specifically denies that it has committed any acts of infringement.

396.   Disney denies the allegations of Paragraph 396, and specifically denies that it has committed any acts of infringement.

397.   Disney denies the allegations of Paragraph 397.

398.   Disney denies that DPD has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 398, and specifically denies that it has committed any acts of infringement.

399.   Disney denies that DPD has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 399, and specifically denies that it has committed any acts of infringement.

400.   Disney denies all allegations of Paragraph 400, and specifically denies that it has committed any acts of infringement.

401.   Disney denies the allegations of Paragraph 401, and specifically denies that it has committed any acts of infringement.

402.   Disney denies the allegations of Paragraph 402, and specifically denies that it has committed any acts of infringement.

403.   Disney denies the allegations of Paragraph 403, and specifically denies that it has committed any acts of infringement.

1    404.    Disney denies the allegations of Paragraph 404.

2    405.    Disney denies that DDTC has engaged in any infringing activities.

3    Disney denies all remaining allegations of Paragraph 405, and specifically denies

4    that it has committed any acts of infringement.

5    406.    Disney denies that DDTC has engaged in any infringing activities.

6    Disney denies all remaining allegations of Paragraph 406, and specifically denies

7    that it has committed any acts of infringement.

8    407.    Disney denies all allegations of Paragraph 407, and specifically denies

9    that it has committed any acts of infringement.

10    408.    Disney denies the allegations of Paragraph 408, and specifically denies

11    that it has committed any acts of infringement.

12    409.    Disney denies the allegations of Paragraph 409, and specifically denies

13    that it has committed any acts of infringement.

14    410.    Disney denies the allegations of Paragraph 410, and specifically denies

15    that it has committed any acts of infringement.

16    411.    Disney denies the allegations of Paragraph 411.

17    412.    Disney denies that BAMTech has engaged in any infringing activities.

18    Disney denies all remaining allegations of Paragraph 412, and specifically denies

19    that it has committed any acts of infringement.

20    413.    Disney denies that BAMTech has engaged in any infringing activities.

21    Disney denies all remaining allegations of Paragraph 413, and specifically denies

22    that it has committed any acts of infringement.

23    414.    Disney denies all allegations of Paragraph 414, and specifically denies

24    that it has committed any acts of infringement.

25    415.    Disney denies the allegations of Paragraph 415, and specifically denies

26    that it has committed any acts of infringement.

27    416.    Disney denies the allegations of Paragraph 416, and specifically denies

28    that it has committed any acts of infringement.

417.   Disney denies the allegations of Paragraph 417, and specifically denies that it has committed any acts of infringement.

418.   Disney denies the allegations of Paragraph 418.

419.   Disney denies that Hulu has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 419, and specifically denies that it has committed any acts of infringement.

420.   Disney denies that Hulu has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 420, and specifically denies that it has committed any acts of infringement.

421.   Disney denies all allegations of Paragraph 421, and specifically denies that it has committed any acts of infringement.

422.   Disney denies the allegations of Paragraph 422, and specifically denies that it has committed any acts of infringement.

423.   Disney denies the allegations of Paragraph 423, and specifically denies that it has committed any acts of infringement.

424.   Disney denies the allegations of Paragraph 424, and specifically denies that it has committed any acts of infringement.

425.   Disney denies the allegations of Paragraph 425.

426.   Disney denies that ESPN has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 426, and specifically denies that it has committed any acts of infringement.

427.   Disney denies that ESPN has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 427, and specifically denies that it has committed any acts of infringement.

428.   Disney denies all allegations of Paragraph 428, and specifically denies that it has committed any acts of infringement.

429.   Disney denies the allegations of Paragraph 429, and specifically denies that it has committed any acts of infringement.

430.  Disney denies the allegations of Paragraph 430, and specifically denies that it has committed any acts of infringement.

431.  Disney denies the allegations of Paragraph 431, and specifically denies that it has committed any acts of infringement.

432.  Disney denies all allegations of Paragraph 432.

433.  Disney denies all allegations of Paragraph 433, and specifically denies that it has committed any acts of infringement.

434.  Disney denies all allegations of Paragraph 434, and specifically denies that it has committed any acts of infringement.

435.  Disney denies all allegations of Paragraph 435, and specifically denies that it has committed any acts of infringement.

I.   ***ESPN, Inc.'s [Alleged] Vicarious Liability***

436.  Disney denies the allegations of Paragraph 436, and specifically denies that it has committed any acts of infringement.

437.  Disney denies the allegations of Paragraph 437, and specifically denies that it has committed any acts of infringement.

438.  Disney denies the allegations of Paragraph 438, and specifically denies that it has committed any acts of infringement.

439.  Disney admits the allegations of Paragraph 439.

440.  Disney denies that BAMTech has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 440, and specifically denies that it has committed any acts of infringement.

441.  Disney denies that BAMTech has engaged in any infringing activities. Disney denies all remaining allegations of Paragraph 441, and specifically denies that it has committed any acts of infringement.

442.  Disney denies all allegations of Paragraph 442, and specifically denies that it has committed any acts of infringement.

443.    Disney denies the allegations of Paragraph 443, and specifically denies that it has committed any acts of infringement.

444.    Disney denies the allegations of Paragraph 444, and specifically denies that it has committed any acts of infringement.

445.    Disney denies the allegations of Paragraph 445, and specifically denies that it has committed any acts of infringement.

446.    Disney denies all allegations of Paragraph 446.

447.    Disney denies all allegations of Paragraph 447, and specifically denies that it has committed any acts of infringement.

448.    Disney denies all allegations of Paragraph 448, and specifically denies that it has committed any acts of infringement.

449.    Disney denies all allegations of Paragraph 449, and specifically denies that it has committed any acts of infringement.

**J.**    ***Defendants' Actions to Directly Infringe***

450.    Disney denies all allegations of Paragraph 450, and specifically denies that it has committed any acts of infringement.

451.    Disney denies all allegations of Paragraph 451, and specifically denies that it has committed any acts of infringement.

452.    Disney denies all allegations of Paragraph 452, and specifically denies that it has committed any acts of infringement.

453.    Disney denies all allegations of Paragraph 453, and specifically denies that it has committed any acts of infringement.

454.    Disney denies all allegations of Paragraph 454, and specifically denies that it has committed any acts of infringement.

455.    Disney denies all allegations of Paragraph 455, and specifically denies that it has committed any acts of infringement.

456.    Disney denies all allegations of Paragraph 456, and specifically denies that it has committed any acts of infringement.

457.   Disney denies all allegations of Paragraph 457, and specifically denies that it has committed any acts of infringement.

458.   Disney denies all allegations of Paragraph 458, and specifically denies that it has committed any acts of infringement.

459.   Disney denies all allegations of Paragraph 459, and specifically denies that it has committed any acts of infringement.

460.   Disney denies all allegations of Paragraph 460, and specifically denies that it has committed any acts of infringement.

461.   Disney denies all allegations of Paragraph 461, and specifically denies that it has committed any acts of infringement.

462.   Disney denies all allegations of Paragraph 462, and specifically denies that it has committed any acts of infringement.

463.   Disney denies all allegations of Paragraph 463, and specifically denies that it has committed any acts of infringement.

464.   Disney denies all allegations of Paragraph 464, and specifically denies that it has committed any acts of infringement.

465.   Disney denies all allegations of Paragraph 465, and specifically denies that it has committed any acts of infringement.

466.   Disney denies all allegations of Paragraph 466, and specifically denies that it has committed any acts of infringement.

467.   Disney denies all allegations of Paragraph 467, and specifically denies that it has committed any acts of infringement.

**COUNT 1: [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 8,406,301**

468.   Disney repeats and incorporates by reference the responses to Paragraphs 1 through 467 above as though fully set forth herein.

469.   Disney admits that the cover page of U.S. Patent No. 8,406,301 (the "'301 Patent") states that its title is "Adaptive Weighting of Reference Pictures in Video Encoding," it issued on March 26, 2013, and that Jill MacDonald Boyce is

named as the inventor.  Disney admits that Exhibit A.1 purports to be a copy of the '301 Patent.  Disney denies all remaining allegations of Paragraph 469.

470.    Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 470 and, on that basis, denies them.

471.    Disney denies all allegations of Paragraph 471.

### The '301 Patent

472.    Disney admits the '301 Patent states at column 1, lines 32 to 35, "The more closely that the prediction is correlated with the current picture, the fewer bits that are needed to compress that picture, thereby increasing the efficiency of the process."  Disney further admits the '301 Patent states at column 1, lines 37 to 42, "In many video compression standards, including Moving Picture Experts Group ('MPEG')-1, MPEG-2 and MPEG-4, a motion compensated version of a previous reference picture is used as a prediction for the current picture, and only the difference between the current picture and the prediction is coded.  When a single picture prediction ('P' picture) is used, the reference picture is not scaled when the motion compensated prediction is formed."  Disney denies all remaining allegations of Paragraph 472.

473.    Disney admits the '301 Patent states at column 1, lines 37 to 57:

> In many video compression standards, including Moving Picture Experts Group ("MPEG")-1, MPEG-2 and MPEG-4, a motion compensated version of a previous reference picture is used as a prediction for the current picture, and only the difference between the current picture and the prediction is coded.  When a single picture prediction ("P" picture) is used, the reference picture is not scaled when the motion compensated prediction is formed. When bidirectional picture predictions ("B" pictures) are used, intermediate predictions are formed from two

different pictures, and then the two intermediate predictions are averaged together, using equal weighting factors of (½, ½) for each, to form a single averaged prediction. In these MPEG standards, the two reference pictures are always one each from the forward direction and the backward direction for B pictures.

SUMMARY OF THE INVENTION

These and other drawbacks and disadvantages of the prior art are addressed by a system and method for adaptive weighting of reference pictures in video coders and decoders.

Disney admits the '301 Patent states at column 2, lines 42 to 46, "In some video sequences, in particular those with fading, the current picture or image block to be coded is more strongly correlated to a reference picture scaled by a weighting factor than to the reference picture itself."

Disney admits the '301 Patent states at column 3, lines 17 to 46:

Two methods have been proposed for indication of weighting factors. In the first, the weighting factors are determined by the directions that are used for the reference pictures. In this method, if the ref_idx_10 index is less than or equal to ref_idx_l1, weighting factors of (½, ½) are used, otherwise (2, −1) factors are used.

In the second method offered, any number of weighting factors is transmitted for each slice. Then a weighting factor index is transmitted for each motion block or 8×8 region of a macroblock that uses bidirectional prediction. The decoder uses the received weighting factor index to choose the appropriate weighting factor,

1    from the transmitted set, to use when decoding the motion
2    block or 8×8 region.  For example, if three weighting
3    factors were sent at the slice layer, they would correspond
4    to weight factor indices 0, 1 and 2, respectively.

5        The following description merely illustrates the
6    principles of the invention.  It will thus be appreciated that
7    those skilled in the art will be able to devise various
8    arrangements that, although not explicitly described or
9    shown herein, embody the principles of the invention and
10    are included within its spirit and scope.  Furthermore, all
11    examples and conditional language recited herein are
12    principally intended expressly to be only for pedagogical
13    purposes to aid the reader in understanding the principles
14    of the invention and the concepts contributed by the
15    inventor to furthering the art, and are to be construed as
16    being without limitation to such specifically recited
17    examples and conditions.  Moreover, all statements herein
18    reciting principles, aspects, and embodiments of the
19    invention, as well as specific examples thereof, are
20    intended to encompass both structural and functional
21    equivalents thereof.

22    Disney denies all remaining allegations of Paragraph 473.

23        474.  Disney admits the '301 Patent states at column 7, line 64 to column 8,
24    line 2, "In the present embodiment, the weighting factor index for each motion
25    block or 8×8 region is not explicitly transmitted.  Instead, the weighting factor that
26    is associated with the transmitted reference picture index is used.  This dramatically
27    reduces the amount of overhead in the transmitted bitstream to allow adaptive
28    weighting of reference pictures."  Disney admits the '301 Patent states at column 8,

lines 59 to 65, "The weighting factor adapts for individual motion blocks within a picture, based on the reference picture index that is used for that motion block. Because the reference picture index is already transmitted in the compressed video bitstream, the additional overhead to adapt the weighting factor on a motion block basis is dramatically reduced." Disney admits Paragraph 474 appears to reproduce figure 5 of the '301 Patent. Disney denies all remaining allegations of Paragraph 474.

475.  Disney admits the '301 Patent states at column 2, lines 29 to 31, "FIG. 5 shows a block diagram for a video encoder with reference picture weighting in accordance with the principles of the present invention." Disney admits the '301 Patent states at column 5, lines 57 to 59, "Turning to FIG. 5, a video encoder with reference picture weighting is indicated generally by the reference numeral 500." Disney admits the '301 Patent states at column 6, lines 6 to 16, "A first output of the reference picture store 570 is connected in signal communication with a first input of a reference picture weighting factor assignor 572. The input to the encoder 500 is further connected in signal communication with a second input of the reference picture weighting factor assignor 572. The output of the reference picture weighting factor assignor 572, which is indicative of a weighting factor, is connected in signal communication with a first input of a motion estimator 580. A second output of the reference picture store 570 is connected in signal communication with a second input of the motion estimator 580." Disney denies all remaining allegations of Paragraph 475.

476.  Disney admits the '301 Patent states at column 6, lines 17 to 30, "The input to the encoder 500 is further connected in signal communication with a third input of the motion estimator 580. The output of the motion estimator 580, which is indicative of motion vectors, is connected in signal communication with a first input of a motion compensator 590. A third output of the reference picture store 570 is connected in signal communication with a second input of the motion

- 45 -

compensator 590.  The output of the motion compensator 590, which is indicative of a motion compensated reference picture, is connected in signal communication with a first input of a multiplier 592.  The output of the reference picture weighting factor assignor 572, which is indicative of a weighting factor, is connected in signal communication with a second input of the multiplier 592."  Disney admits Paragraph 476 appears to reproduce figure 7 of the '301 Patent.  Disney denies all remaining allegations of Paragraph 476.

477.   Disney admits the '301 Patent states at column 2, lines 34 to 35, "FIG. 7 shows a flowchart for an encoding process in accordance with the principles of the present invention."  Disney admits the '301 Patent states at column 6, line 61 to column 7, line 28:

> The input block 712 receives substantially uncompressed image block data, and passes control to a function block 714.  The function block 714 assigns a weighting factor for the image block corresponding to a particular reference picture having a corresponding index.  The function block 714 passes control to an optional function block 715.  The optional function block 715 assigns an offset for the image block corresponding to a particular reference picture having a corresponding index.   The optional function block 715 passes control to a function block 716, which computes motion vectors corresponding to the difference between the image block and the particular reference picture, and passes control to a function block 718.  The function block 718 motion compensates the particular reference picture in correspondence with the motion vectors, and passes control to a function block 720.  The function block 720, in turn, multiplies the motion

compensated reference picture by the assigned weighting factor to form a weighted motion compensated reference picture, and passes control to an optional function block 721. The optional function block 721, in turn, adds the motion compensated reference picture to the assigned offset to form a weighted motion compensated reference picture, and passes control to a function block 722. The function block 722 subtracts the weighted motion compensated reference picture from the substantially uncompressed image block, and passes control to a function block 724. The function block 724, in turn, encodes a signal with the difference between the substantially uncompressed image block and the weighted motion compensated reference picture along with the corresponding index of the particular reference picture, and passes control to an end block 726.

Disney denies all remaining allegations of Paragraph 477.

478. Disney admits the '301 Patent states at column 3, lines 51 to 54, "Thus, for example, it will be appreciated by those skilled in the art that the block diagrams herein represent conceptual views of illustrative circuitry embodying the principles of the invention." Disney admits the '301 Patent states at column 3, line 60 to column 4, line 13, "The functions of the various elements shown in the figures may be provided through the use of dedicated hardware as well as hardware capable of executing software in association with appropriate software. When provided by a processor, the functions may be provided by a single dedicated processor, by a single shared processor, or by a plurality of individual processors, some of which may be shared. Moreover, explicit use of the term 'processor' or 'controller' should not be construed to refer exclusively to hardware capable of

executing software, and may implicitly include, without limitation, digital signal processor ('DSP') hardware, read-only memory ('ROM') for storing software, random access memory ('RAM'), and non-volatile storage."  Disney denies all remaining allegations of Paragraph 478.

479.   Disney denies all allegations of Paragraph 479.

480.   Disney denies all allegations of Paragraph 480.

### The '301 Patent Allegations

481.   Disney denies all allegations of Paragraph 481, and specifically denies that it has committed any acts of infringement.

482.   Disney denies all allegations of Paragraph 482, and specifically denies that it has committed any acts of infringement.

483.   Disney denies all allegations of Paragraph 483, and specifically denies that it has committed any acts of infringement.

484.   Disney denies all allegations of Paragraph 484, and specifically denies that it has committed any acts of infringement.

485.   Disney denies all allegations of Paragraph 485, and specifically denies that it has committed any acts of infringement.

486.   Disney denies all allegations of Paragraph 486, and specifically denies that it has committed any acts of infringement.

### COUNT 2: [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 10,805,610

487.   Disney repeats and incorporates by reference the responses to Paragraphs 1 through 486 above as though fully set forth herein.

488.   Disney admits that the cover page of U.S. Patent No. 10,805,610 (the "'610 Patent") states that its title is "Methods and Systems for Intra Coding a Block having Pixels Assigned to Groups," it issued on October 13, 2020, and that Qian Xu, Joel Sole, Peng Yin, Yunfi Zheng, and Xiaoan Lu are named as the inventors. Disney admits that Exhibit B.1 purports to be a copy of the '610 Patent.  Disney denies all remaining allegations of Paragraph 488.

489.    Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 489 and, on that basis, denies them.

490.    Disney denies all allegations of Paragraph 490.

### The '610 Patent

491.    Disney admits the '610 Patent states at the Abstract, "Methods and apparatus are provided for intra coding a block having pixels assigned to groups." Disney admits the '610 Patent states at column 1, lines 21 to 26, "Intra blocks make use of existing redundancy in spatial correlation to improve video coding efficiency.  How to effectively utilize spatial correlation is fundamental to the efficiency of current video codecs for intra coding.  It is observed that the correlation between pixels decreases with the spatial distance.  In current state-of-the art coding standards such as, for example, the International Organization for Standardization/International Electrotechnical Commission (ISO/IEC) Moving Picture Experts Group-4 (MPEG-4) Part 10 Advanced Video Coding (AVC) Standard/International Telecommunication Union, Telecommunication Sector (ITU-T) H.264 Recommendation (hereinafter the 'MPEG-4 AVC Standard'), only the encoded pixels above or to the left of the current block are used as its predictors, which may be quite far from the bottom right pixels to be predicted."  Disney denies all remaining allegations of Paragraph 491.

492.    Disney admits the '610 Patent states at column 1, lines 39 to 41, "In addition, extrapolation is used instead of interpolation because of the limitation of causality."  Disney admits the '610 Patent states at column 2, line 66 through column 3, line 6, "The spatial distance between the pixels serving as predictions (which we call predictor pixels) and the pixels being predicted (which we call predicted pixels), especially the ones on the bottom right of the current block, can be large.  With a large spatial distance, the correlation between pixels can be low, and the residue signals can be large after prediction, which affects the coding efficiency."  Disney denies all remaining allegations of Paragraph 492.

493.   Disney admits the '610 Patent states at column 3, lines 11 to 16, "When a macroblock is coded in planar mode, its bottom-right sample is signaled in the bitstream, the rightmost and bottom samples of the macroblock are linearly interpolated, and the middle samples are bi-linearly interpolated from the border samples." Disney admits the '610 Patent states at column 3, lines 23 to 26, "Although the new planar prediction method exploits some spatial correlation with the bottom-right sample, the prediction accuracy of the right and bottom pixels are still quite limited." Disney admits the '610 Patent states at column 3, lines 30 to 33, "These and other drawbacks and disadvantages of the prior art are addressed by the present principles, which are directed to methods and apparatus for intra coding a block having pixels assigned to groups." Disney admits Paragraph 493 appears to reproduce Fig. 7 of the '610 Patent. Disney denies all remaining allegations of Paragraph 493.

494.   Disney admits the '610 Patent states at column 4, lines 30 to 32, "FIG. 7 is a diagram showing an exemplary grouping of pixels within a block, in accordance with an embodiment of the present principles." Disney admits the '610 Patent states at column 8, lines 19 to 26, "In an embodiment, for an intra block, we divide pixels within the block into at least two groups. One of the groups of pixels in the block is encoded. In an embodiment, this initial group being encoded may include, for example, the rightmost columns and/or the bottom rows of the block. The reconstructed pixels are then considered together with the pixels in the neighboring blocks that are already encoded to predict pixels in the second group." Disney admits the '610 Patent states at column 9, lines 7 to 37:

> Further, it is to be appreciated that the groups of pixels within the block may be divided in any manner desired and found to be effective. That is, it is to be appreciated that the present principles are not limited to any particular block segmenting process and, thus, any

block segmenting process may be used in accordance with teachings of the present principles provided herein, while maintaining the spirit of the present principles.

Encoding of the First Group

For the first group of pixels, the encoder generates the prediction based on neighboring encoded pixels using the DC/plane prediction method or some directional prediction methods, and then calculates the prediction residue. In one embodiment, the residue is coded in frequency domain, i.e., the residue is transformed, quantized and entropy coded before being sent to the decoder. In another embodiment, the residue is coded in the spatial domain, i.e., the residue is quantized and entropy coded before being sent to the decoder. In yet another embodiment, the residue is coded using adaptive prediction error coding (APEC), which performs rate distortion optimization and decides whether to code in the spatial or the frequency domain.

Encoding of the Second Group

After the first group is encoded, the encoder can use pixels in the already encoded blocks (for example, the upper and left neighboring blocks) and the pixels in the already coded first group to derive the prediction mode for the rest of the block. For example, in FIG. 7, the encoder can detect the edge across the upper block and the bottom row based on the neighboring blocks and the coded first group. Hence, the prediction direction will be along the edge direction.

Disney denies all remaining allegations of Paragraph 494.

495.   Disney admits the '610 Patent states at column 8, lines 26 to 36:

> The reconstructed pixels are then considered together with the pixels in the neighboring blocks that are already encoded to predict pixels in the second group. With a larger set of predictor pixels existing in more directions, the prediction of the second group of pixels is improved and so is the coding efficiency. In addition, we improve coding efficiency by using interpolation instead of extrapolation.
>
> Specifically, in accordance with an embodiment of the present principles, the prediction accuracy of the second group can be improved, as the pixels serving as predictors (called predictor pixels) for the second group include reconstructed pixels of the first group, which are of shorter spatial distances from the pixels being predicted.

Disney admits the '610 Patent states at column 9, lines 37-40, "Interpolation will be performed with the upper/left block and the bottom row/right column instead of extrapolating from the upper block only." Disney admits Paragraph 495 appears to reproduce Fig. 5 of the '610 Patent. Disney denies all remaining allegations of Paragraph 495.

496.   Disney admits the '610 Patent states at column 4, lines 24 to 26, "FIG. 5 is a block diagram showing an exemplary video encoder…." Disney admits Paragraph 496 appears to reproduce Fig. 8 of the '610 Patent. Disney denies all remaining allegations of Paragraph 496.

497.   Disney admits the '610 Patent states at column 4, lines 33 to 36, "FIG. 8 is a flow diagram showing an exemplary method for intra coding a block having

1    pixels assigned to groups." Disney admits the '610 Patent states at column 10, lines
2    3 to 34:

3         The method 800 includes a start block 805 that
4         passes control to a function block 810. The function block
5         810 performs an encoding setup, and passes control to a
6         loop limit block 815. The loop limit block 815 loops over
7         each block (e.g., in a current picture being encoded), and
8         passes control to a function block 820. The function block
9         820 derives the grouping method or selects the best
10        grouping method, signals the grouping method to the
11        decoder, and passes control to a function block 825. The
12        function bloc 825 predicts pixels within the first group,
13        and passes control to a function block 830. The function
14        block 830 encodes the residue for pixels in the first group
15        in the spatial domain or the frequency domain or using
16        adaptive prediction error coding (APEC), and passes
17        control to a function block 835. The function block 835
18        derives the prediction mode or selects and signals the best
19        prediction mode for pixels in the second group, and passes
20        control to a function block 840. The function block 840
21        predicts pixels in the second group, and passes control to
22        a function block 845. The function block 845, for the
23        second group, sets the prediction as the reconstruction or
24        encodes the residue for the second group or both groups
25        (in the spatial domain or the frequency domain or using
26        APEC), and passes control to a function block 850. The
27        function block 850 refines the reconstruction (e.g., using a
28        quantization constraint set (QCS)) if the reside for pixels

1    in the first group is encoded twice, and passes control to a
2    loop limit block 855. The loop limit block 855 ends the
3    loop over the blocks, and passes control to a function block
4    860. The function block 860 performs deblocking filtering
5    on block boundaries and group boundaries, and passes
6    control to an end block 899.

7  Disney denies all remaining allegations of Paragraph 497.

8    498.   Disney admits the '610 Patent states at column 4, line 64 to column 5,
9  line 9:

10    Thus, for example, it will be appreciated by those
11    skilled in the art that the block diagrams presented herein
12    represent conceptual views of illustrative circuitry
13    embodying the present principles. Similarly, it will be
14    appreciated that any flow charts, flow diagrams, state
15    transition diagrams, pseudocode, and the like represent
16    various processes which may be substantially represented
17    in computer readable media and so executed by a
18    computer or processor, whether or not such computer or
19    processor is explicitly shown.

20    The functions of the various elements shown in the
21    figures may be provided through the use of dedicated
22    hardware as well as hardware capable of executing
23    software in association with appropriate software.

24  Disney denies all remaining allegations of Paragraph 498.

25    499.   Disney denies all allegations of Paragraph 499.

26    500.   Disney denies all allegations of Paragraph 500.

27

28

**The '610 Patent Allegations**

501.    Disney denies all allegations of Paragraph 501, and specifically denies that it has committed any acts of infringement.

502.    Disney denies all allegations of Paragraph 502, and specifically denies that it has committed any acts of infringement.

503.    Disney denies all allegations of Paragraph 503, and specifically denies that it has committed any acts of infringement.

504.    Disney denies all allegations of Paragraph 504, and specifically denies that it has committed any acts of infringement.

505.    Disney denies all allegations of Paragraph 505, and specifically denies that it has committed any acts of infringement.

506.    Disney denies all allegations of Paragraph 506, and specifically denies that it has committed any acts of infringement.

**COUNT 3: [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 11,381,818**

507.    Disney repeats and incorporates by reference the responses to Paragraphs 1 through 506 above as though fully set forth herein.

508.    Disney admits that the cover page of U.S. Patent No. 11,381,818 (the "'818 Patent) states that its title is "Methods and Apparatus for Determining Quantization Parameter Predictors from a Plurality of Neighboring Quantization Parameters," it issued on July 5, 2022, and that Xiaoan Lu, Joel Sole, Peng Yin, Qian Xu, and Yunfei Zheng are named as the inventors. Disney admits that Exhibit C.1 purports to be a copy of the '818 Patent. Disney denies all remaining allegations of Paragraph 508.

509.    Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 509 and, on that basis, denies them.

510.    Disney denies all allegations of Paragraph 510.

**The '818 Patent**

511.   Disney admits the '818 Patent states at column 1, lines 18 to 21, "[t]he present principles relate generally to video encoding and decoding and, more particularly, to methods and apparatus for determining quantization parameter predictors from a plurality of neighboring quantization parameters." Disney admits the '818 Patent states at column 1, line 62 to column 2, line 10:

> The quantization process in a video encoder controls the number of encoded bits and the quality. It is common to adjust the quality through adjusting the quantization parameters (QPs). The quantization parameters may include the quantization step size, rounding offset, and scaling matrix. In the International Organization for Standardization/International Electrotechnical Commission (ISO/IEC) Moving Picture Experts Group-4 (MPEG-4) Part 10 Advanced Video Coding (AVC) Standard/International Telecommunication Union, Telecommunication Sector (ITU-T) H.264 Recommendation (hereinafter the "MPEG-4 AVC Standard"), the quantization parameter values can be adjusted on a slice or macroblock (MB) level. The encoder has the flexibility to tune quantization parameters and signal the adjustment to the decoder. The quantization parameter signaling requires an overhead cost.

Disney denies all remaining allegations of Paragraph 511.

512.   Disney admits the '818 Patent states at column 2, lines 25 to 30, "At the macroblock layer, the value of QP is derived as follows:

$$QP_Y = QP_{Y,PREV} + mb\_qp\_delta, \qquad (2)$$

where $QP_{Y,PREV}$ is the quantization parameter of the previous macroblock in the decoding order in the current slice." Disney admits the '818 Patent states at column 4, lines 29 to 40, "Thus, in method 100, a single QP, namely the slice QP ($SliceQP_Y$), is used as the predictor for the QP to be encoded. Regarding function block 120, the QP for a coding unit is adjusted based on its content and/or the previous encoding results. For example, a smooth coding unit will lower the QP to improve the perceptual quality. In another example, if the previous coding units use more bits than the assigned ones, then the current coding unit will increase the QP to consume fewer bits than what is originally assigned. The difference between the QP for the current coding unit ($QP_{CU}$) and the QP predictor, $SliceQP_Y$, in this example, is encoded (per function block 125)." Disney denies all remaining allegations of Paragraph 512.

513.  Disney admits the '818 Patent states at column 5, lines 3 to 8, "The quantization parameter predictor is determined using multiple quantization parameters from previously coded neighboring portions. A difference between the current quantization parameter and the quantization parameter predictor is encoded for signaling to a corresponding decoder." Disney admits the '818 Patent states at column 10, lines 45 to 47, "One benefit of this scheme over prior schemes is the reduction of overhead needed for signaling quantization parameters to the decoder." Disney denies all remaining allegations of Paragraph 513.

514.  Disney admits the '818 Patent states at column 11, lines 47 to 58, "Providing high perceptual quality at the region of interest has a pronounced impact in the overall perceptual quality. Hence a general guideline in the QP adjustment is to assign lower QPs to the regions of interest to improve the perceptual quality and higher QPs to other areas to reduce the number of bits. Since the picture content has great continuity, the QPs for neighboring coding units are often correlated. In the prior art, the correlation between the current QP and the QP of the previously coded block is exploited. Since the QP can also correlate to QPs from other

neighboring blocks, we improve the QP predictor by considering more QPs." Disney admits the '818 Patent states at column 12, lines 13 to 19, "If not all the coding units (A, B, C) are available, we can replace their QPs with the SliceQP$_Y$, or only use the available QPs to form the predictor.  For example, when coding unit A is unavailable, Rule 2 becomes Q$_{PPRED}$=min(QP$_B$, QP$_C$).  In another example, when not all coding units are available, we can replace the missing QPs with QPs of other blocks, for example using block D to replace block C."  Disney denies all remaining allegations of Paragraph 514.

515.   Disney denies all allegations of Paragraph 515.

516.   Disney denies all allegations of Paragraph 516.

**The '818 Patent Allegations**

517.   Disney denies all allegations of Paragraph 517, and specifically denies that it has committed any acts of infringement.

518.   Disney denies all allegations of Paragraph 518, and specifically denies that it has committed any acts of infringement.

519.   Disney denies all allegations of Paragraph 519, and specifically denies that it has committed any acts of infringement.

520.   Disney denies all allegations of Paragraph 520, and specifically denies that it has committed any acts of infringement.

521.   Disney denies all allegations of Paragraph 521, and specifically denies that it has committed any acts of infringement.

522.   Disney denies all allegations of Paragraph 522, and specifically denies that it has committed any acts of infringement.

**COUNT 4: [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 9,185,268**

523.   Disney repeats and incorporates by reference the responses to Paragraphs 1 through 522 above as though fully set forth herein.

524.   Disney admits that the cover page of U.S. Patent No. 9,185,268 (the "'268 Patent") states that its title is "Methods and Systems for Displays with

Chromatic Correction with Differing Chromatic Ranges," it issued on November 10, 2015, and that Ingo Tobias Doser, Jurgen Stauder, and Bongsun Lee are named as the inventors. Disney admits that Exhibit D.1 purports to be a copy of the '268 Patent. Disney denies all remaining allegations of Paragraph 524.

525. Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 525 and, on that basis, denies them.

526. Disney denies all allegations of Paragraph 526.

## **The '268 Patent**

527. Disney admits the '268 Patent states at column 1, lines 15 to 29, "In today's motion picture industry, colors of motion picture content are mostly graded for displays with a single color gamut defined by cathode ray tube (CRT) phosphor colors, corresponding to either the European Broadcasting Union (EBU) or the Society of Motion Picture and Television Engineers color standard (SMPTE-C) for Standard Definition, and the International Telecommunication Union (ITU) 709 colors for High Definition. These are the current standards for use in determining the reference color gamut (RCG) for displays. However, displays with non-standard color gamuts are currently prevalent among consumers of motion picture content. When editing the colors of a picture on a display with a reference color gamut other than the color gamut of the target display, the resultant colors may look dissatisfying on the target display." Disney admits the '268 Patent states at column 1, lines 31 to 44:

> The first case relates to consumer displays having color gamuts roughly the same size as the reference display, but the display primaries are not equal to the display primaries of the reference display during content creation. In such circumstances, it is desirable to ensure that the colors can be accurately represented on the consumer displays.

1    The second case relates to the current existence of
2    wide gamut color displays being utilized in the field.   In
3    such circumstances, no methods exist to color correct
4    consumer displays with respect to these wide gamut color
5    displays.  For example, such consumer displays may use a
6    different reference color gamut but may or may not be
7    capable of even displaying colors in accordance with the
8    wide gamut color standards.
9    Disney denies all remaining allegations of Paragraph 527.
10    528.   Disney admits the '268 Patent states at column 1, line 60 to column 2,
11    line 6:
12    The color gamut of a display is determined by the display
13    technology chosen.  At this moment, a consumer has the
14    choice between the following technologies (also referred
15    to herein as 'display type') including, for example, liquid
16    crystal display (LCD), Plasma, cathode ray tube (CRT),
17    digital light processing (DLP), and silicon crystal
18    reflective display (SXRD).   However, there can be
19    significant differences between different display
20    technologies, as well as between two representatives of the
21    same display technology.  For example, two liquid crystal
22    display sets can be equipped with different sets of light
23    sources.  One of these sets of light sources may be cold
24    cathode fluorescent lights (CCFL), where the color gamut
25    mainly depends on the phosphors used.
26    Disney admits the '268 Patent states at column 2, lines 10 to 20:
27    A fourth output of the decoder controller 405 is
28    connected in signal communication with a second input of

1    the intra prediction module 460, a first input of the motion

2    compensator 470, and a second input of the reference

3    picture buffer 480.

4    An output of the motion compensator 470 is

5    connected in a signal communication with a first input of

6    a switch 497. An output of the intra prediction module

7    460 is connected in a signal communication with a second

8    input of the switch 497. An output of the switch 497 is

9    connected in signal communication with a first non-

10    inverting input of the combiner 425.

11    Disney admits the '268 Patent states at column 2, lines 50 to 51, "At the

12  same time, there is significant variation in the color gamuts used in various displays

13  currently available." Disney admits the '268 Patent states at column 2, lines 56 to

14  63, "Turning to FIG. 1, color gamut measurements of currently available displays

15  are indicated. It is to be noted that none of the color gamuts of the various available

16  displays are equal to the reference color gamy of the source material which, in this

17  example, corresponds to ITU-R Bt. 709." Disney admits Paragraph 528 appears to

18  reproduce Fig. 1 of the '268 Patent. Disney denies all remaining allegations of

19  Paragraph 528.

20    529.   Disney admits the '268 Patent states at column 2, lines 29 to 40, "With

21  the advent of wide gamut displays, it has become possible to display a wider range

22  of colors than was previously possible. The current video content on digital video

23  disks (DVD's), television broadcasts, and/or via video over Internet Protocol

24  (VoIP), are encoded in a color space with a reference color gamut and, thus, follow

25  the rules that were set many years ago when wide gamut color display was not

26  feasible. In fact, until recently it was difficult to achieve a reproduction even of the

27  current reference color gamut. As it looks today, the situation has changed. An

28

extended color gamut is feasible and there is a desire to utilize the wider color gamut." Disney denies all remaining allegations of Paragraph 529.

530.   Disney admits the '268 Patent states at column 3, lines 1 to 20:

> Additionally, current displays seem to simply replace the reference color primaries specified by the applicable standard by the color primaries corresponding to the respective display (e.g., respective display type, respective color gamut implemented on that display, and so forth), similar to the past and the use of different cathode ray tube phosphors. As a consequence, colors do not appear as they should. That is, colors appear different than what they were intended to appear like. For instance, fir trees look like pine trees, tomatoes look like oranges, and so forth. However, mapping primaries is the most primitive and cheapest way of gamut mapping.
>
> In the case of wide gamut material on a wide gamut display, there still is a problem where colors may be displayed incorrectly due to the color gamut of the wide gamut material being different than the color gamut of the wide gamut display. In fact, by using the above mentioned unrestrictive color standards like xvYCC or XYZ, it is always possible that a color gets transmitted that cannot be displayed on one or more particular wide gamut displays.

Disney denies all remaining allegations of Paragraph 530.

531.   Disney admits the '268 Patent states at column 8, lines 10 to 13, "Moreover, as used herein, the phrase 'color correction' refers to a creative procedure to manually choose the right (preferred) colors on the content creation

1    side (versus the consumer consumption side)." Disney admits the '268 Patent

2    states at column 3, lines 21 to 35:

3                One method for color correction involves 3×3

4            matrixing the source primaries to the display primaries

5            (which, however, requires a prior video signal

6            linearization). This solution has problems when colors are

7            transmitted that are beyond the color gamut of the display

8            color gamut. As an example, consider a display with three

9            primaries of Red, Green, and Blue, where the color to be

10           displayed may be a Green color (e.g., a variation of the

11           primary color Green), and that color may be out of the

12           display range. The typical result of such a situation is that

13           the color to be displayed may get clipped to their

14           respective maximum ranges. The problem will manifest

15           in a wrong color reproduction, in a hue, saturation, and

16           also brightness error. The detrimental affect will be even

17           worse if the color appears in a gradation (e.g., as seen most

18           often in animated movies), as a false contour will also

19           appear.

20    Disney denies all remaining allegations of Paragraph 531.

21        532.   Disney admits the '268 Patent states at column 4, lines 1 to 16:

22                Turning to FIG. 4, an exemplary high-level diagram

23           showing the workflow for color correction using a display

24           having a reference color gamut for content that may be

25           subsequently displayed on a display with a different color

26           gamut than the reference color gamut is indicated

27           generally by the reference numeral 400.

28

1    The undesirable result of the color correction
2    workflow 400 of FIG. 4 is that when color correcting on a
3    display with a reference color display (RCG), the colors
4    on a display with a second color gamut or color gamut 2
5    (CG2) will be reproduced incorrectly.

6    The color correction workflow 400 involves a
7    content creation side 480 and a content consumer side 490.
8    A RCG display 482 is used on the content creation side
9    480.  A RCG display 492 and a CG2 display 494 are used
10   on the content consumer side 590.

11   Disney admits Paragraph 532 appears to reproduce Fig. 4 of the '268 Patent.
12   Disney denies all remaining allegations of Paragraph 532.

13   533.   Disney admits the '268 Patent states at column 4, lines 17 to 36:

14   The picture source content may be stored, for
15   example, in a picture source content store 420.  The color
16   corrected picture content may be stored, for example, in a
17   color corrected picture content store 440.

18   A color correction module 430 generates the
19   content that only looks correct on a display of the same
20   type and with the same color gamut.  Thus, the colors on
21   the CG2 display will not look the same as the colors that
22   were color corrected on the RCG display.  It is very likely
23   that at least some of the colors on the RCG2 display will
24   be clipped and at least some with be displayed with the
25   wrong hue.

26   The problem is illustrated in FIG. 4 using the "Ski
27   Image", which is part of the CIE TC8-03 test images in
28   their "Guidelines for the Evaluation of Gamut Mapping

1    Algorithms".  It is courtesy of Fujifilm Electronic Imaging

2    Ltd. (UK).  As we can see, on the content consumer side,

3    the picture can only be retrieved correctly on a display

4    with RCG.  The picture will look incorrect and it will show

5    the above mentioned artifacts if a display with a color

6    gamut not equal to the RCG (CG2) is used for display.

7  Disney denies all remaining allegations of Paragraph 533.

8    534.   Disney admits the '268 Patent states at column 3, lines 54 to 55, "It is

9  therefore essential that a proper way of color gamut mapping is used for rendering

10  colors on the display used."  Disney admits the '268 Patent states at column 6, lines

11  3 to 5, "The present principles are directed to methods and systems for color

12  correcting to provide predictable results on displays with different color gamuts."

13  Disney admits Paragraph 534 appears to reproduce Fig. 5 of the '268 Patent.

14  Disney denies all remaining allegations of Paragraph 534.

15    535.   Disney admits the '268 Patent states at column 8, line 36 to column 9,

16  line 27:

17    In an embodiment, the present principles may be

18    used to address an exemplary problem where color

19    correction is to be performed on a display with a reference

20    color gamut, however, the corrected colors are to be

21    displayed on a display with a different color gamut than

22    the reference color gamut used for color correction.

23    Turning to FIG. 5, a high-level diagram showing the

24    exemplary workflow for color correction to obtain a

25    master for CG2 displays and metadata for RCG displays is

26    indicated generally by the reference numeral 500.

27    The color correction workflow 500 involves a

28    content creation side 580 and a content consumer side 590.

1    The color correction 530 is done based on a color gamut

2    for CG2 displays.  A CG2 display 584 shall be directly

3    attached to the color correction tool.  A CGM 586 is used

4    to map the content from a color gamut for display on CG2

5    display 584 to a color gamut for display on RCG display

6    582, and the resultant picture content is then used for

7    distribution/storage in color corrected picture content store

8    540.  An RCG display 592 and a CG2 display 594 are used

9    on the content consumer side 590.

10        In the embodiment, the use of the present principles

11    provides a controllable color difference between the

12    content displayed on the RCG display 592 and the CG2

13    display 594 on the content consumer side 590.  As noted

14    above, the embodiment involves the use of a master, i.e.,

15    one version of mastered content, for (use by) CG2 displays

16    and metadata 510 for (use by) RCG displays.

17        The metadata 510 describes a transformation of

18    color corrected picture content for CG2 displays, into

19    colors intended for RCG displays.  Thus, the metadata 510

20    may describe, for example, the difference between the

21    colors for a CG2 display and a RCG display.

22        The picture source content may be stored, for

23    example, in a picture source content store 520.  The color

24    corrected picture content may be stored, for example, in a

25    color corrected picture content store 540.  The metadata

26    510 may be stored, for example, in a metadata store 517.

27

28

A color correction module 530 is used to create the CG2 master by choosing the right colors. This may be done by a colorist in a Digital Intermediates facility.

On the content creation side 580, the CG2 mastered content and the metadata for the RCG displays is applied to a CGM module 586 that performs a color gamut mapping so that the CG2 mastered content is color corrected for display on the RCG display 582.

On the content consumer side 590, the CG2 mastered content and the metadata 510 for the RCG displays is applied to a CGM module 596 that performs a color gamut mapping so that the CG2 mastered content is color corrected for display on the RCG display 592. The CGM module 596 receives information about a transformation specification by means of metadata 510. This metadata 510 is derived from the transform specification used in the CGM 586 on the content creation side.

Moreover, on the content consumer side 590, the CG2 mastered content is provided directly to the CG2 display 594 without the use or need of the metadata 510 or a color gamut mapping.

Disney admits Paragraph 535 appears to reproduce Fig. 6 of the '268 Patent. Disney denies all remaining allegations of Paragraph 535.

536.   Disney admits the '268 Patent states at column 9, lines 28 to 67:

Turning to FIG. 6, a high-level diagram showing the exemplary workflow for color correction to obtain a

master for CG2 displays and one master for RCG displays is indicated generally by the reference numeral 600.

The color correction workflow 600 involves a content creation side 680 and a content consumer side 690. A RCG display 682 is used on the content creation side 680. In addition, a CG2 display 684 shall be used on the content creation side 580 for proof viewing the content meant for consumer RCG displays. A RCG display 692 and a CG2 display 694 are used on the content consumer side 690.

In an embodiment, the color correction will result in a master for CG2 displays (such as CG2 display 694), and a master for RCG displays (such as RCG display 692). In an embodiment, the master for the RCG displays would be a derivative of the master for CG2 displays. The approach of FIG. 6 provides a controlled color difference between a consumer CG2 display and a RCG display 590 as the distinctive feature. The quality of the color accuracy is subject to the CG2 specifications used for color correction matching those used in the field, or the display in the field being calibrated to the specification used for color correction.

The picture source content may be stored, for example, in a picture source content store 620. The color corrected picture content for RCG displays, i.e., the master for RCG displays, may be stored, for example, in a color corrected picture content store 645. The color corrected picture content for CG2 displays, i.e., the master for CG2

1    displays, may be stored, for example, in a color corrected
2    picture content store 640.

3        On the content creation side, a color correction
4    module 630 generates the CG2 master.  Moreover, on the
5    content creation side 680, the CG2 mastered content is
6    applied to a CGM module 686 that performs a color gamut
7    mapping to generate the RCG master, so that the CG2
8    mastered content is color corrected for display on the RCG
9    display 682.

10        On the content consumer side 690, the RCG
11    mastered content is provided directly to the RCG display
12    692 without the need for a color gamut mapping, and the
13    CG2 mastered content is provided directly to the CG2
14    display 694 without the need for a color gamut mapping.

15  Disney admits Paragraph 536 appears to reproduce Fig. 7 of the '268 Patent.
16  Disney denies all remaining allegations of Paragraph 536.

17    537.  Disney admits the '268 Patent states at column 10, lines 13 to 58:

18        Turning to FIG. 7, a high-level diagram showing the
19    exemplary workflow for color correction to obtain a
20    master for CG2 displays and metadata for RCG displays is
21    indicated generally by the reference numeral 700.

22        The color correction workflow 700 involves a
23    content creation side 780 and a content consumer side 790.
24    A RCG display 782, using CG2 simulation via a CGM
25    module 786, is used on the content creation side 780.
26    Alternatively or in addition, a CG2 display may be used
27    on the content creation side 780.  A RCG display 792 and

28

1    a CG2 display 794 are used on the content consumer side
2    790.

3        In the embodiment, the use of the present principles
4    provides a substantial color match between the content
5    displayed on the RCG display 792 and the CG2 display
6    794 on the content consumer side 790.  As noted above,
7    the embodiment involves the use of a master, i.e., one
8    version of mastered content, for (use by) CG2 displays and
9    metadata 710 for (use by) RCG displays.

10        The metadata 710 describes a transformation of
11    picture source content into color corrected picture content.
12    The picture source content relates to colors for CG2
13    displays and the color corrected picture content relates to
14    colors for RCG displays.  Thus, the metadata 710 may
15    describe, for example, the difference between the colors
16    for a CG2 display and a RCG display.

17        The picture source content may be stored, for
18    example, in a picture source content store 720.  The color
19    corrected picture content may be stored, for example, in a
20    color corrected picture content store 740.  The metadata
21    710 may be stored, for example, in a metadata store 717.

22        A color correction module 730 generates the CG2
23    master and the metadata for RCG displays.

24        On the content creation side 780, the CG2 mastered
25    content and the metadata for the RCG displays is applied
26    to a CGM module 786 that performs a color gamut
27    mapping so that the CG2 mastered content is color
28    corrected for display on the RCG display 782.

1          On the content consumer side 790, the CG2

2          mastered content and the metadata 710 for the RCG

3          displays is applied to a CGM module 796 that performs a

4          color gamut mapping so that the CG2 mastered content is

5          color corrected for display on the RCG display 792.

6     Disney admits Paragraph 537 appears to reproduce Fig. 8 of the '268 Patent.

7     Disney denies all remaining allegations of Paragraph 537.

8          538.   Disney admits the '268 Patent states at column 10, line 59 to column

9     11, line 29:

10          Turning to FIG. 8, a high-level diagram showing the

11          exemplary workflow for color correction to obtain a

12          master for CG2 displays and one master for RCG displays

13          is indicated generally by the reference numeral 800.

14          The color correction workflow 800 involves a

15          content creation side 880 and a content consumer side 890.

16          A RCG display 882 is used on the content creation side

17          880.  A RCG display 892 and a CG2 display 894 are used

18          on the content consumer side 890.

19          In an embodiment, the color correction will result in

20          a master for CG2 displays (such as CG2 display 894), and

21          a master for RCG displays (such as RCG display 892).  In

22          an embodiment, the master for the RCG displays would be

23          a derivative of the master for CG2 displays.  The approach

24          of FIG. 8 provides a match between a consumer CG2

25          display and a RCG display.  The quality of the match is

26          subject to the CG2 specifications used for color correction

27          matching those used in the field, or the display in the field

28

1    being calibrated to the specification used for color
2    correction.

3        The picture source content may be stored, for
4    example, in a picture source content store 820. The color
5    corrected picture content for RCG displays, i.e., the master
6    for RCG displays, may be stored, for example, in a color
7    corrected picture content store 845. The color corrected
8    picture content for CG2 displays, i.e., the master for CG2
9    displays, may be stored, for example, in a color corrected
10   picture content store 840.

11       On the content creation side, a color correction
12   module 830 generates the CG2 master. Moreover, on the
13   content creation side 880, the CG2 mastered content is
14   applied to a CGM module 886 that performs a color gamut
15   mapping to generate the RCG master, so that the CG2
16   mastered content is color corrected for display on the RCG
17   display 882.

18       On the content consumer side 890, the RCG
19   mastered content is provided directly to the RCG display
20   892 without the need for a color gamut mapping, and the
21   CG2 mastered content is provided directly to the CG2
22   display 894 without the need for a color gamut mapping.
23   Disney denies all remaining allegations of Paragraph 538.

24       539. Disney admits the '268 Patent states at column 10, lines 4 to 12, "In
25   some circumstances, the color correction process may be a bit cumbersome since
26   the colors are being modified with a non-linear mapping between the color
27   correction and the reference display. Some colors may not change as initially
28   expected by the colorist. However, there will be no colors in the master that cannot

be displayed by a display with CG2, nor will there be a color that cannot be displayed by a RCG display. This is a real benefit of this approach." Disney admits the '268 Patent states at column 11, lines 33 to 46:

> In some circumstances, the color correction process may be a bit cumbersome since the colors are being modified with a non-linear mapping between the color correction and the reference display. Some colors may not change as initially expected by the colorist. However, there will be no colors in the master that cannot be displayed by a display with CG2, nor will there be a color that cannot be displayed by a RCG display. This is a real benefit of this approach.

> On the content consumer side, circuitry will be provided that connects the signal source with a CG2 display. This circuitry can be implemented in hardware and/or in software, and provides the signal transform to generate the CG2 version needed out of the picture for RCG displays[.]

Disney denies all remaining allegations of Paragraph 539.

540.    Disney admits the '268 Patent states at column 6, lines 25 to 37, "Thus, for example, it will be appreciated by those skilled in the art that the block diagrams presented herein represent conceptual views of illustrative circuitry embodying the present principles. Similarly, it will be appreciated that any flow charts, flow diagrams, state transition diagrams, pseudocode, and the like represent various processes which may be substantially represented in computer readable media and so executed by a computer or processor, whether or not such computer or processor is explicitly shown." Disney admits the '268 Patent states at column 8, lines 27 to 29, "The present principles correct differences in colors between

different target displays."  Disney denies all remaining allegations of Paragraph 540.

541.    Disney denies all allegations of Paragraph 541.

542.    Disney denies all allegations of Paragraph 542.

**The '268 Patent Allegations**

543.    Disney denies all allegations of Paragraph 543, and specifically denies that it has committed any acts of infringement.

544.    Disney denies all allegations of Paragraph 544, and specifically denies that it has committed any acts of infringement.

545.    Disney denies all allegations of Paragraph 545, and specifically denies that it has committed any acts of infringement.

546.    Disney denies all allegations of Paragraph 546, and specifically denies that it has committed any acts of infringement.

547.    Disney denies all allegations of Paragraph 547, and specifically denies that it has committed any acts of infringement.

548.    Disney denies all allegations of Paragraph 548, and specifically denies that it has committed any acts of infringement.

**COUNT 5: [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 8,085,297**

549.    Disney repeats and incorporates by reference the responses to Paragraphs 1 through 548 above as though fully set forth herein.

550.    Disney admits that the cover page of U.S. Patent No. 8,085,297 (the "'297 Patent") states that its title is "Method for Modifying a User Interface of a Consumer Electronic Apparatus, Corresponding Apparatus, Signal and Data Carrier," it issued on December 27, 2011, and that Harald Schiller is named as the inventor.  Disney admits that Exhibit E.1 purports to be a copy of the '297 Patent. Disney denies all remaining allegations of Paragraph 550.

551.    Disney lacks sufficient knowledge or information on which to form a belief as to the allegations of Paragraph 551 and, on that basis, denies them.

1    552.   Disney denies all allegations of Paragraph 552.

2    **The '297 Patent**

3    553.   Disney admits the '297 Patent states at column 1, lines 15 to 24, "In

4    general terms a user interface (UI) includes all aspects of an apparatus or a

5    program, which are used for an interaction with a user.  This includes commands

6    and mechanisms, which the user utilizes to control the operation of the apparatus or

7    program and to input data but also an output by the apparatus or program, which

8    can be seen or heard or otherwise perceived by the user.  Especially for consumer

9    electronic apparatuses and computer systems a wide range of user interfaces has

10    been developed and implemented."  Disney denies all remaining allegations of

11    Paragraph 553.

12    554.   Disney admits the '297 Patent states at column 1, lines 24 to 36, "A

13    very simple and today in many areas outdated user interface requires the user to

14    type textual commands by using a keyboard and produces a single stream of text as

15    output.  More comfortable are graphical user interfaces, which use for the output

16    displayed windows, pictures or icons and for the input and control a cursor moved

17    over the display using 'up'- and 'down'-keys or a pointing device such as a mouse,

18    a trackball or a touch-pad.  Even more sophisticated is a voice-controlled user

19    interface based on speech recognition.  However, a drawback of these user

20    interfaces is that they are defined and fixed once the respective apparatus has left

21    the factory which means that no extensions or corrections are possible."  Disney

22    admits Paragraph 554 appears to reproduce Fig. 1 of the '297 Patent.  Disney denies

23    all remaining allegations of Paragraph 554.

24    555.   Disney admits the '297 Patent states at column 1, lines 39 to 43, "It is

25    one object of the invention to disclose a method for modifying a user interface of a

26    consumer electronic apparatus, which can be used for example to update a given

27    basic UI functionality or to temporarily implement isolated, dedicated UI sub-

28    domains."  Disney admits the '297 Patent states at column 2, lines 8 to 25:

1    FIG. 1 illustrates a block diagram of an embodiment
2    of the present invention.  A received signal consisting of
3    main data and embedded side information is supplied to
4    an extractor 1.  The main data may be AV data or pure
5    video or audio data, either in analog or digital form, e.g.
6    compressed according to the MPEG-2 standard.  In the
7    case of an analog TV signal the side information can be
8    received embedded in the vertical blanking interval and
9    can be separated by a suited data slicer, which may also be
10    used for the separation of other VBI data like teletext, VPS
11    or closed caption.  For a digital TV signal the side
12    information may be embedded in a corresponding data
13    channel, e.g. in not used user-data and can be separated by
14    a suited demultiplexer.  After separation of the side
15    information from the main data the main data are
16    forwarded to suited processing means 2, e.g. an MPEG-2
17    decoder, and are finally played-back using a display 3
18    and/or one or more loudspeakers 4.
19    Disney denies all remaining allegations of Paragraph 555.
20    556.   Disney admits the '297 Patent states at column 2, lines 26 to 33, "A
21    user interface unit 5 controls the interaction between the user and the apparatus, e.g.
22    the display of a graphical UI and the input of commands by the user using a mouse-
23    controlled cursor.  The user interface unit 5 comprises user command input means 6
24    for receiving the user inputs, a processing unit 7 for handling the commands and
25    mechanisms of the UI and a first buffer 8 for the permanent storage of parameters
26    for UI parts, which shall be kept unaltered."  Disney denies all remaining
27    allegations of Paragraph 556.
28    557.   Disney admits the '297 Patent states at column 2, lines 33 to 53:

1           Furthermore, a second buffer 9, a modification unit

2    10 and a control unit 11 are implemented for the purpose

3    of modifying the UI according to the invention.   The

4    second buffer 9 receives from the extractor 1 the side

5    information comprising side information components for

6    controlling the user interface and validity information

7    defining the validity start and/or end time of said side

8    information components, which both are stored in the

9    buffer 9.   The side information components and validity

10   information are fed to the modification unit 10, which

11   processes these data and modifies the UI when the start

12   time of the respective side information component is

13   signalized by the control unit 11, possibly together with

14   the processing unit 7.   When the end time of the side

15   information component is reached, this is also signalised

16   by the control unit 11 and the modification is reversed.

17          In a further embodiment the side information is

18   written into the first buffer 8 and kept there for the duration

19   of the UI modification instead of writing the side

20   information into the second buffer 9.   In this way the costs

21   for the additional buffer 9 can be saved.

22   Disney denies all remaining allegations of Paragraph 557.

23       558.   Disney admits the '297 Patent states at column 2, lines 57 to 67, "The

24   side information can be used to modify the visual appearance of the UI, e.g. to

25   insert additional buttons with a new functionality or to create new subdirectories

26   with additional commands.  In case of voice control, the additional user commands

27   are new keywords to be recognized by the speech recognition algorithm, which may

28   be stored as pieces of PCM waveform or in a time-parameter domain.  Also, for a

user interface including voice synthesis the side information can be used to alter the parameter sets for the voice synthesis, e.g. to add new speech keywords or to change the sound of the voice." Disney denies all remaining allegations of Paragraph 558.

559.    Disney admits the '297 Patent states at column 3, lines 1 to 6, "The side information can be received together with AV data, especially embedded into AV data, from a broadcasting station. However, the AV data and the side information can also be supplied by a data carrier, e.g. an optical storage disc like a DVD disc. Furthermore, the side information can also be received on a separate input channel, e.g. a telephone line." Disney denies all remaining allegations of Paragraph 559.

560.    Disney admits the '297 Patent states at column 2, lines 11 to 20, "The main data may be AV data or pure video or audio data, either in analog or digital form, e.g. compressed according to the MPEG-2 standard. In the case of an analog TV signal the side information can be received embedded in the vertical blanking interval and can be separated by a suited data slicer, which may also be used for the separation of other VBI data like teletext, VPS or closed caption. For a digital TV signal the side information may be embedded in a corresponding data channel, e.g. in not used user-data and can be separated by a suited demultiplexer." Disney denies all remaining allegations of Paragraph 560.

561.    Disney denies all allegations of Paragraph 561.

562.    Disney denies all allegations of Paragraph 562.

### The '297 Patent Allegations

563.    Disney denies all allegations of Paragraph 563, and specifically denies that it has committed any acts of infringement.

564.    Disney denies all allegations of Paragraph 564, and specifically denies that it has committed any acts of infringement.

565.    Disney denies all allegations of Paragraph 565, and specifically denies that it has committed any acts of infringement.

566.    Disney denies all allegations of Paragraph 566, and specifically denies that it has committed any acts of infringement.

567.    Disney denies all allegations of Paragraph 567, and specifically denies that it has committed any acts of infringement.

568.    Disney denies all allegations of Paragraph 568, and specifically denies that it has committed any acts of infringement.

## JURY DEMAND

569.    To the extent a response is required, Disney admits that InterDigital's Complaint contains a request for a jury trial.

## GENERAL DENIAL

570.    To the extent that any allegations of the Complaint are not specifically admitted, Disney hereby denies them.

## RESPONSE TO INTERDIGITAL'S PRAYER FOR RELIEF

571.    InterDigital's prayer for relief sets forth InterDigital's statement of requested relief, to which no response is required.  To the extent a response is required, Disney denies that InterDigital is entitled to the relief sought, or to any other relief, against Disney.

## AFFIRMATIVE AND OTHER DEFENSES

572.    Disney alleges the following as separate and affirmative defenses to the Complaint.  By virtue of having listed the following defenses, Disney does not assume any legal or factual burden not otherwise assigned to it under the law.  In addition to the defenses described below, Disney reserves all rights to allege additional defenses that become known through the course of discovery or further investigation.  Disney reserves the right to argue any defense, including as to non-infringement, invalidity, unenforceability, and/or remedy.

## FIRST DEFENSE

### (Non-Infringement)

573.   Disney does not infringe and has not infringed (directly, contributorily, or by inducement), either literally or under the doctrine of equivalents, and is not liable for infringement of any valid and enforceable claim of the '301, '610, '818, '268 and '297 Patents.

## SECOND DEFENSE

### (Invalidity)

574.   The '301, '610, '818, '268, and '297 Patents are invalid for failure to satisfy the conditions of patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including sections 101, 102, 103, 112, 115, 116, 119, 132, 251, 256, and/or 282.

## THIRD DEFENSE

### (Equitable Doctrines)

575.   InterDigital is barred or limited from recovery in whole or in part by the equitable doctrines of waiver, estoppel, acquiescence, patent misuse, laches, and/or unclean hands.

## FOURTH DEFENSE

### (Failure to State a Claim)

576.   InterDigital's Complaint fails to state a claim upon which relief can be granted, including, but not limited to, failure of the Complaint to meet the standard for pleading set by the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

## FIFTH DEFENSE

### (Prosecution History Estoppel)

577.   InterDigital's claims of patent infringement under the doctrine of equivalents, if any, are barred in whole or in part by the doctrine of prosecution history estoppel and/or prosecution disclaimer.

## SIXTH DEFENSE

### (Ensnarement)

578.   InterDigital's claims of patent infringement under the doctrine of equivalents, if any, are barred under the doctrine of ensnarement.

## SEVENTH DEFENSE

### (Limitation on Damages)

579.   InterDigital's claim for damages are barred to the extent that InterDigital seeks damages beyond the six year time limitation set forth in 35 U.S.C. § 286, 287 and/or 288.

## EIGHTH DEFENSE

### (Failure to Mark)

580.   InterDigital's claims for damages prior to the filing of this lawsuit are barred to the extent InterDigital, its predecessors-in-interest, or licensees failed to comply with the requirements of 35 U.S.C. § 287, including its marking requirement.  In particular, InterDigital fails to identify any facts or allegations that could establish that InterDigital, its predecessors-in-interest, and/or its licensees complied with the marking requirements of 35 U.S.C. § 287 for any practicing products, and therefore InterDigital is not entitled to seek damages any earlier than the date it can establish actual notice of the alleged infringement.

## NINTH DEFENSE

### (No Injunction)

581.   To the extent injunctive relief is sought, InterDigital is not entitled to an injunction because InterDigital is not likely to prevail on the merits, has not suffered and will not suffer irreparable harm due to Disney's conduct, has an adequate remedy at law, is obligated to license Asserted Patents on fair, reasonable, and non-discriminatory terms, and/or public policy concerns weigh against any equitable relief.

## TENTH DEFENSE

### (Lack of Standing)

582.   To the extend InterDigital does not own the '301, '610, '818, '268, and '297 Patents or all substantial rights under those patents, InterDigital lacks standing to bring the present litigation.

## ELEVENTH DEFENSE

### (No Attorney Fees)

583.   InterDigital is not entitled to recover attorneys' fees associated with this action under 35 U.S.C. § 285, or pursuant to the Court's inherent power.

## TWELFTH DEFENSE

### (License and Exhaustion)

584.   InterDigital's claims of patent infringement are barred to the extent the alleged infringement is licensed, either expressly or impliedly, or otherwise authorized.  InterDigital's claims of patent infringement are also barred to the extent that InterDigital has exhausted its rights and remedies as to the alleged infringement.

## THIRTEENTH DEFENSE

### (Extraterritoriality)

585.   InterDigital's claims for patent infringement are precluded in whole or in part to the extent that any of the accused functionalities or acts are located or performed outside the United States.

## FOURTEENTH DEFENSE

### (FRAND Damages Limitation)

586.   To the extent that any of the Asserted Patents are essential to any standard, InterDigital's recovery for alleged infringement of the Asserted Patents, if any, is limited by obligations to license such patents on fair, reasonable, and non-discriminatory ("FRAND" or "RAND") terms.

## **FIFTEENTH DEFENSE**

### **(No Willful Infringement)**

587.   InterDigital's claims for enhanced damages, if any, and an award of fees and costs against Disney have no basis in fact or law and should be denied.

## **RESERVATION OF ADDITIONAL DEFENSES**

588.   Disney reserves the right to assert additional defenses that may be developed through discovery in this Action.

# DISNEY'S COUNTERCLAIMS

As and for its counterclaims herein, Defendants and Counterclaim-Plaintiffs The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., BAMTech LLC, Hulu, LLC, and ESPN, Inc. (collectively, "Disney" or "Defendants") hereby allege against Plaintiff and Counterclaim-Defendants InterDigital, Inc., InterDigital VC Holdings, Inc., InterDigital Madison Patent Holdings, SAS, and InterDigital CE Patent Holdings, SAS (collectively, "InterDigital" or "Plaintiffs") as follows:

# INTRODUCTION

1.    Disney brings these Counterclaims for InterDigital's breach of its commitments to the International Telecommunications Union ("ITU"), the International Organization for Standardization ("ISO"), the International Electrotechnical Commission ("IEC"), their affiliates and members, and intended third-party beneficiaries—including Disney.

2.    InterDigital knowingly breached its contractual obligation to offer on a worldwide, non-discriminatory basis and on reasonable terms and conditions ("RAND") a license to patents related to two video coding standards, H.264 and H.265, developed by the ITU, ISO, IEC, and their members and affiliates. Specifically, in disregard of its contractual obligations, InterDigital has refused to offer Disney such a license on RAND terms, notwithstanding Disney's longstanding willingness to license those patents on such terms.  In further disregard of its contractual obligations, InterDigital has chosen to launch a global-litigation attack against Disney, seeking injunctions in multiple jurisdictions around the world.  Patents InterDigital has asserted in this Action or in foreign proceedings were identified to the ITU, ISO, and/or IEC as essential, and InterDigital's infringement allegations require that such asserted patents are essential. InterDigital nevertheless disregards that these patents are RAND encumbered and is

attempting to coerce Disney into capitulating and paying excessive, non-RAND royalties.

3.    To put an end to InterDigital's improper conduct, Disney seeks from this court all appropriate remedies associated with InterDigital's breaches of contracts and covenants to which Disney is an intended third-party beneficiary.

4.    Disney also brings Counterclaims seeking declarations that it does not infringe the Asserted Patents and that the Asserted Patents are invalid.

## PARTIES

5.    Counterclaim-Plaintiff The Walt Disney Company is a Delaware corporation with its principal place of business at 500 South Buena Vista Street, Burbank, California 91521.

6.    Counterclaim-Plaintiff Disney Media and Entertainment Distribution LLC is a Delaware limited liability company with a principal place of business at 500 South Buena Vista Street, Burbank, California 91521.

7.    Counterclaim-Plaintiff Disney DTC LLC is a Delaware limited liability company with a principal place of business at 500 South Buena Vista Street, Burbank, California 91521.

8.    Counterclaim-Plaintiff Disney Streaming Services LLC is a Delaware limited liability company with a principal place of business at 500 South Buena Vista Street, Burbank, California 91521.

9.    Counterclaim-Plaintiff Disney Entertainment & Sports LLC is a Delaware limited liability company with a principal place of business at 500 South Buena Vista Street, Burbank, California 91521.

10.    Counterclaim-Plaintiff Disney Platform Distribution, Inc. is a Delaware corporation with a principal place of business at 500 South Buena Vista Street, Burbank, California 91521.

11.    Counterclaim-Plaintiff BAMTech, LLC is a Delaware limited liability company with a principal place of business at 1211 Avenue of the Americas, New York, New York 10036.

12.    Counterclaim-Plaintiff Hulu, LLC is a Delaware limited liability company with a principal place of business at 2500 Broadway, Santa Monica, California 90404.

13.    Counterclaim-Plaintiff ESPN, Inc. is a Delaware corporation with a principal place of business at ESPN Plaza, Bristol, Connecticut 06010.

14.    According to the allegations set forth in the Complaint, Counterclaim-Defendant InterDigital, Inc. is a corporation with its principal place of business at 200 Bellevue Parkway, Suite 300, Wilmington DE 19809.

15.    According to the allegations set forth in the Complaint, Counterclaim-Defendant InterDigital VC Holdings, Inc. is a Delaware corporation with its principal place of business at 200 Bellevue Parkway, Suite 300, Wilmington, Delaware 19809.

16.    According to the allegations set forth in the Complaint, Counterclaim-Defendant InterDigital Madison Patent Holdings, SAS is a French société par actions simplifiée (simplified joint stock company) with its principal place of business at 3 Rue du Colonel Moll, Paris, France 75017.

17.    According to the allegations set forth in the Complaint, Counterclaim-Defendant InterDigital CE Patent Holdings, SAS purports is a French société par actions simplifiée (simplified joint stock company) with its principal place of business at 3 Rue du Colonel Moll, Paris, France 75017.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction over the Counterclaims under 28 U.S.C. §§ 2201 and 2202 as a declaratory judgment action; and, as averred in the Complaint, under 28 U.S.C. §§ 1331 and 1338 as an action arising under the Patent Laws, Title 35 of the United States Code.

19.    Moreover, this Court has subject-matter jurisdiction over Disney's contract and contract-related claims pursuant to 28 U.S.C. § 1367 because these counterclaims are so related to the claims in this Action over which the Court has original jurisdiction such that they form part of the same case or controversy under Article III of the U.S. Constitution as at least Counts 1-3 of InterDigital's complaint.  Further, the contractual counterclaims arise out of the transaction or occurrence that is the subject matter of at least Counts 1-3 of InterDigital's complaint.

20.    This Court has personal jurisdiction over InterDigital because InterDigital has commenced the underlying patent infringement action in this Court.

21.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(b), *inter alia*, because InterDigital has submitted to the venue of this Court by filing its Complaint here.  This Court has supplemental jurisdiction over the Counterclaims pursuant to 28 U.S.C. § 1367.

## FACTUAL BACKGROUND

### Industry Technical Standards

22.    New video coding technologies typically are only widely commercialized after service providers and device manufacturers collectively agree on compatible technology specifications for related products or services.  For virtually all video coding technologies, that process has consisted of inclusive, multi-participant standards development efforts conducted under the auspices of leading standards setting organizations ("SSOs").

23.    Standards can play a critical role in the development of video coding technologies.  Standards facilitate the adoption and advancement of technology as well as the development of products that can interoperate with one another.  Companies that produce products compatible with a standard can design products by referencing only the standard documentation, without the need to communicate separately with every other company with which their products may need to

operate.  Companies producing products that implement a standard facilitate interoperability among different products, and consumers of those products can be confident that products from multiple vendors will work together as intended under the standard.

24.    To reduce the probability that implementers of their standards will be subject to abusive practices by patent holders, SSOs have adopted rules, policies, and procedures that address the disclosure and licensing of patents that SSO participants may assert in relation to the practice of the standard under consideration.

**The H.264 and H.265 Standards**

25.    InterDigital's improper conduct concerns InterDigital's assertion of patents in this Action and certain foreign actions against Disney in breach of its contractual obligation to certain SSOs, their members and affiliates, and intended third-party beneficiaries, including Disney.

26.    The H.264 or Advanced Video Coding ("AVC") standard was developed by the Joint Video Team ("JVT") and jointly promulgated by the ITU's Telecommunication Standardization Section ("ITU-T") and the International Organization for Standardization/International Electrotechnical Commission ("ISO/IEC").

27.    The JVT is a collaborative group composed of (1) the Motion Picture Experts Group ("MPEG"), the video subgroup of the ISO/IEC and (2) the Video Coding Experts Group ("VCEG"), a subgroup of the ITU.  The ITU's VCEG performed the early development of the standard, and the JVT was created in 2001 to finalize it.  The first version of H.264, also known as MPEG-4 Part 10, or Advanced Video Coding, was adopted in May 2003.

28.    According to the ITU, H.264 video compression technology "was designed to enable the use of [a] coded video representation in a flexible manner for

a wide variety of network environments."[1]  The ITU has also stated that it "represents an evolution of the existing video coding standards" and "was developed in response to the growing need for higher compression of moving pictures for various applications such as videoconferencing, digital storage media, television broadcasting, Internet streaming, and communication."[2]

29.    The prior assignee of InterDigital's Asserted Patents in this Action, and its patents asserted in proceedings filed in other countries, was Thomson Licensing.  On information and belief, Thomson Licensing was a member of the ITU and participated in the early development of the standard that would become H.264.

30.    The H.265 or High Efficiency Video Coding ("HEVC") standard is a video compression standard intended to be the successor to the H.264 standard.  As with H.264 standard, VCEG and MPEG formed a joint collaboration to develop the H.265 standard in 2010, the Joint Collaborative Team on Video Coding ("JCTVC").  The H.265 standard was first approved by the ITU in April 2013, as well as by the ISO/IEC as 23008-2.  On information and belief, Thomson Licensing was a participant in the JCTVC's efforts to develop the H.265 standard.

31.    The H.264 and H.265 standards are the most popular methods of coding video content.  Disney has invested millions of dollars in products and services that support the H.264 and H.265 standards, and it would take substantial effort and time for Disney and the industry to develop software and hardware that use alternative techniques.

**The Common Patent Policy and Guidelines**

32.    The SSO patent policies and contracts at issue in this Action include the ITU, ISO, and IEC's Common Patent Policy ("Patent Policy") and associated

---

[1] ITU-T, "Summary," https://www.itu.int/net/ITU-T/sigdb/spevideo/Hseries-s.htm (accessed Feb. 25, 2025).
[2] *Id.*

guidelines that "clarify and facilitate the implementation of the Patent Policy."[3] The purpose of the Patent Policy is to encourage disclosure and identification of patents that may relate to standards under development.[4] "In doing so, greater efficiency in standards development is possible and potential patent rights problems can be avoided."[5]

33.    The Patent Policy provides a "code of practice" to achieve an explicit objective of standards—"to ensure compatibility of technologies and systems on a worldwide basis."[6] The Patent Policy elaborates that to meet this objective, "which is in the common interests of all those participating," a patent that is "embodied fully or partly" in a standard must be "accessible to everybody without undue constraints."[7] "To meet this requirement in general is the sole objective of the code of practice."[8]

34.    The Patent Policy's code of practice is set forth in three enumerated paragraphs. Paragraph (1) provides that any party participating in the development of a standard should disclose "any known patent" or "any known pending patent application" to the ITU and/or ISO/IEC. Paragraph (2) provides that if a standard is ultimately developed and "information as referred to in paragraph 1 has been disclosed, three different situations may arise:

> (2.1) The patent holder is willing to negotiate licences free of charge with other parties on a non-discriminatory basis on reasonable terms and conditions.

---

[3] *See* Guidelines for Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC Revision 1, effective April 23, 2012 ("2012 Guidelines"); Guidelines for Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC Revision 2, effective June 26, 2015 ("2015 Guidelines").
[4] 2012 Guidelines at 1; 2015 Guidelines at 1.
[5] 2012 Guidelines at 1; 2015 Guidelines at 1.
[6] *See* 2012 Guidelines at Annex 1; 2015 Guidelines at Annex 1. The Patent Policy and Guidelines refer to standards as "Recommendations" and "Deliverables."
[7] *See* 2012 Guidelines at Annex 1; 2015 Guidelines at Annex 1.
[8] *See* 2012 Guidelines at Annex 1; 2015 Guidelines at Annex 1.

(2.2) The patent holder is willing to negotiate licences with other parties on a non-discriminatory basis on reasonable terms and conditions.

(2.3) The patent holder is not willing to comply with the provisions of either paragraph (2.1) or paragraph (2.2); in such case, the [standard] shall not include provisions depending on the patent."[9]

35.    Paragraph (3) demands that, regardless of whether case (2.1), (2.2) or (2.3) applies, the patent holder must provide a written statement to the ITU and/or ISO/IEC using a specific Patent Statement and Licensing Declaration form ("Declaration Form").  The Declaration Form gives the patent holder three options—options 1, 2, and 3 that respectively correspond to cases (2.1), (2.2), and (2.3) of the Patent Policy.

36.    Parties that did not participate in the development of the standard may also submit Declaration Forms, and the Patent Policy and Guidelines apply to any patent disclosed subsequent to the approval of a standard.

37.    When a patent holder specifies a particular standard on a Declaration Form and submits it, the patent holder thereby commits to license *any patents or patent applications it owns that are essential to implement the specified standard*, even if the Declaration Form does not specifically identify those patents or patent applications.  Specifically, the "Declaration Form gives patent holders the means of making a licensing declaration relative to rights in Patents required for implementation of a specific [standard]," and that "by submitting this Declaration Form the submitting party declares its willingness to license (by selecting option 1 or 2 on the Form) … Patents held by it and whose license would be required to practice or implement part(s) or all of a specific [standard]."[10]  The definition of

---

[9] *See* 2012 Guidelines at Annex 1; 2015 Guidelines at Annex 1.
[10] *See* 2012 Guidelines at Annex 1; 2015 Guidelines at Annex 1.

"Patent" includes both patents and patent applications that would be essential to implement a specific standard.[11]

38.    According to the Guidelines, the "licensing declaration contained in the Declaration Form remains in force unless it is superseded by another Declaration Form containing more favourable licensing terms and conditions from a licensee's perspective …."[12]

39.    Regarding the assignment or transfer of patent rights, "if the Patent Holder specifically identified patents to ITU/ISO/IEC, then the Patent Holder shall have the assignee or transferee agree to be bound by the same licensing commitment as the Patent Holder for the same patent."[13]

40.    A patent holder who submits a Declaration Form makes a contractual commitment for the benefit of potential willing licensees, who are third-party beneficiaries to that commitment.  This patent holder thus becomes contractually bound to the ITU, ISO, and/or IEC for the benefit of third-party implementers to offer to license on RAND terms both patents identified in the Declaration Form and any patents or patent applications it owns that are required to implement the standard identified in the Declaration Form.

---

[11] *See* 2012 Guidelines at 3; 2015 Guidelines at 3.

[12] *See* 2012 Guidelines at 4; 2015 Guidelines at 4.

[13] 2012 Guidelines at 5; *see also* 2015 Guidelines at 7 ("The rules governing the assignment or transfer of Patent rights are contained in the patent statement and licensing declaration forms (see Annexes 2 and 3)"); 2015 Guidelines at Annex 2 ("Licensing declarations made pursuant to Clause 2.1 or 2.2 of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC shall be interpreted as encumbrances that bind all successors-in-interest as to the transferred Patents. Recognizing that this interpretation may not apply in all jurisdictions, any Patent Holder who has submitted a licensing declaration according to the Common Patent Policy - be it selected as option 1 or 2 on the Patent Declaration form - who transfers ownership of a Patent that is subject to such licensing declaration shall include appropriate provisions in the relevant transfer documents to ensure that, as to such transferred Patent, the licensing declaration is binding on the transferee and that the transferee will similarly include appropriate provisions in the event of future transfers with the goal of binding all successors-in-interest.").

**InterDigital's RAND Obligations**

41.    InterDigital was contractually obligated to offer a license on RAND terms to certain patents that it recently asserted against Disney in this Action and in patent infringement actions it filed in Brazil and the Unified Patent Court ("UPC").

*This Action*

42.    Before filing this Action, InterDigital was contractually obligated to offer Disney a license on RAND terms to at least the asserted '301, '610, and '818 Patents.

43.    The '301, '610, and '818 Patents that InterDigital asserts in this Action were previously assigned to Thomson Licensing.

44.    On behalf of Thomson Licensing, David W. Herring, Director of Intellectual Property & Licensing, signed a "Patent Statement and Licensing Declaration for ITU-T or ITU-R Recommendation | ISO or IEC Deliverable" on June 19, 2014.  Upon information and belief, Thomson Licensing submitted this Declaration Form to the ITU, ISO, and/or IEC.  In this Declaration Form, Thomson Licensing agreed to license the '301 Patent on RAND terms.  Moreover, in this Declaration Form, Thomson Licensing agreed it would offer to license on RAND terms any patent(s) and patent application(s) essential to implementing the H.264 standard.

45.    On behalf of Thomson Licensing, David W. Herring, Director of Intellectual Property & Licensing, also signed a "Patent Statement and Licensing Declaration for ITU-T or ITU-R Recommendation | ISO or IEC Deliverable" on December 18, 2012.  Upon information and belief, Thomson Licensing submitted this Declaration Form to the ITU, ISO, and/or IEC.  In this Declaration Form, Thomson Licensing agreed to license PCT Applications PCT/2011/000856 and PCT/2011/039579 on RAND terms.  The '610 and '818 Patents that InterDigital has asserted in this Action are continuations of PCT Applications PCT/2011/000856 and PCT/2011/039579, respectively.  Moreover, in this

Declaration Form, Thomson Licensing agreed it would offer to license on RAND terms any patent(s) and patent application(s) essential to implementing the H.265 standard.

46.    On behalf of Thomson Licensing, David W. Herring, Director or Intellectual Property & Licensing, signed a "Patent Statement and Licensing Declaration for ITU-T or ITU-R Recommendation | ISO or IEC Deliverable" on June 7, 2016.  Upon information and belief, Thomson Licensing submitted this Declaration Form to the ITU, ISO, and/or IEC.  In this Declaration Form, Thomson Licensing agreed to license U.S. Patent No. 9,235,774 (the "'774 Patent") on RAND terms.  The '818 Patent that InterDigital has asserted against Disney in this Action is a continuation of the '774 Patent.  Moreover, in this Declaration Form, Thomson Licensing again agreed it would offer to license on RAND terms any patent(s) and patent application(s) essential to implement the H.265 standard.

47.    InterDigital is also bound, including by the commitments Thomson Licensing made, to offer licenses on RAND terms for any patents controlled by it or its predecessors that are essential and/or declared to be essential to implementing the H.264 and H.265 standards, including the '301, '610, and '818 Patents.[14]

48.    InterDigital also openly and publicly submitted Declaration Forms to the ITU, ISO, and/or IEC.  On behalf of InterDigital Video Technologies, Inc., Bradley Ditty, Vice President, Patents, signed a "Patent Statement and Licensing Declaration for ITU-T or ITU-R Recommendation | ISO or IEC Deliverable" on August 24, 2020.  Upon information and belief, InterDigital submitted this application to the ITU, ISO, and/or IEC.  In this Declaration Form, InterDigital agreed it would offer to license on RAND terms any patent(s) and patent application(s) essential to implementing the H.265 standard.

49.    Additionally, InterDigital's infringement allegations in this Action with respect to the asserted '301, '610, and '818 Patents are based solely on the

---

[14] *See* 2012 Guidelines at 5; 2015 Guidelines at Annex 2.

H.264 and H.265 standards documents. InterDigital's infringement allegations regarding the asserted '301, '610, and '818 Patents rest entirely on implementing the H.264 and H.265 standards such that, according to InterDigital's infringement allegations, implementing the standards requires use of at least the asserted '301, '610 and '818 Patents. Without conceding that the '301, '610, or '818 Patents are essential to the H.264 or H.265 standards, and without conceding that any of Disney's products or services practice any claims of such patents, InterDigital is contractually obligated to offer to license at least the patents it or its predecessors identified to the ITU, ISO, and/or IEC, including the '301, '610, and '818 Patents, on RAND terms.

*The Brazilian Action*

50.     On February 3, 2025, InterDigital filed a patent infringement action against Disney in Brazil asserting Brazilian patents PI0305519.1 and PI0318825.6 (collectively, the "Brazilian Patents"), both of which are in the same patent family as the '301 Patent asserted in this Action. Before filing its action in Brazil, InterDigital was contractually obligated to offer Disney a license to the Brazilian Patents on RAND terms.

51.     On behalf of Thomson Licensing, David W. Herring, Director of Intellectual Property & Licensing, signed a "Patent Statement and Licensing Declaration for ITU-T or ITU-R Recommendation | ISO or IEC Deliverable" on December 18, 2012. Upon information and belief, Thomson Licensing submitted this Declaration Form to the ITU, ISO, and/or IEC. In this Declaration Form, Thomson Licensing agreed it would license the Brazilian Patents on RAND terms. Moreover, in this Declaration Form, Thomson Licensing again agreed it would license on RAND terms any patent(s) and patent application(s) essential to implementing the H.265 standard. As the assignee of Thomson Licensing's patents, InterDigital is also bound by the commitments Thomson Licensing made to

offer to license on RAND terms the Brazilian Patents and any patents essential to implementing the H.264 and H.265 standards.[15]

52.    Moreover, InterDigital's infringement allegations in the Brazilian Action are based solely on the H.264 and H.265 standards documents. InterDigital's infringement allegations regarding the Brazilian Patents rest entirely on implementing the H.264 and H.265 standards such that, according to InterDigital's infringement allegations, implementing the standards requires use of at least the asserted Brazilian Patents.  Without conceding the Brazilian Patents are essential to the H.264 or H.265 standards, and without conceding that any of Disney's products or services practice any claims of such patents, InterDigital is contractually obligated to offer to license at least the patents it or its predecessors identified to the ITU, ISO, and/or IEC, including the Brazilian Patents, on RAND terms.

*The UPC Actions*

53.    On February 3, 2025, InterDigital filed a patent infringement action against Disney in the Unified Patent Court's Mannheim Local Division asserting European Patent EP2465265.  That same day, InterDigital also filed a patent infringement action against Disney in the Unified Patent Court's Düsseldorf Local Division asserting European Patent EP2449782 (collectively, the "UPC Actions"). Before filing its UPC actions, InterDigital was contractually obligated to offer Disney a license to European Patents EP2465265 and EP2449782 (collectively, the "UPC Patents") on RAND terms.

54.    On behalf of Thomson Licensing, David W. Herring, Director of Intellectual Property & Licensing, signed a "Patent Statement and Licensing Declaration for ITU-T or ITU-R Recommendation | ISO or IEC Deliverable" on February 5, 2017.  Upon information and belief, Thomson Licensing submitted this

---

[15] *See* 2012 Guidelines at 5.

Declaration Form to the ITU, ISO, and/or IEC.  In this Declaration Form, Thomson Licensing agreed it would license European Patent Applications EP10743254.4 and EP10760462.1 on RAND terms.  European Patents EP2465265 and EP2449782 that are asserted against Disney in the UPC Actions issued from European Patent Applications EP10743254.4 and EP10760462.1, respectively.  Moreover, in this Declaration Form, Thomson Licensing again agreed it would offer to license on RAND terms any patent(s) and patent application(s) essential to implementing the H.265 standard.  As the assignee of Thomson Licensing's patents, InterDigital is also bound by the commitments Thomson Licensing made to offer to license on RAND terms the UPC Patents and any patents essential to implementing the H.265 standard.[16]

55.    Also, InterDigital's infringement allegations in the UPC Actions with respect to the UPC Patents are based solely on the H.265 standard.  InterDigital's infringement allegations regarding the UPC Patents rest entirely on implementing the H.265 standard such that, according to InterDigital's infringement allegations, implementing the standard requires use of at least the asserted UPC Patents.  Without conceding the UPC Patents are essential to the H.265 standard, and without conceding that any of Disney's products or services practice any claims of such patents, InterDigital is contractually obligated to offer to license at least the patents it or its predecessors identified to the ITU, ISO, and/or IEC, including the UPC Patents, on RAND terms.

**InterDigital's Breach of Its Contractual Obligation to License Its Identified Patents on the Promised Terms**

56.    As discussed above, InterDigital has had contractual obligations to offer to license on RAND terms the '301, '610, and '818 Patents asserted in this Action, the Brazilian Patents, the UPC Patents, and any patents and patent

---

[16] *See* 2015 Guidelines at Annex 2.

applications essential to implementing the H.264 and H.265 standards. In reasonable reliance upon InterDigital's contractual commitments to license its patents on RAND terms, market participants like Disney expended substantial resources in research, development, and marketing of products and services designed to be compatible with video coding technologies, like the H.264 and H.265 standards.

57. In willful disregard of its commitments to the ITU, ISO, IEC, their affiliates and members, and intended third-party beneficiaries, including Disney, InterDigital has refused to offer Disney a license on RAND terms to its patents, including the '301, '610, and '818 Patents, the Brazilian Patents, and the UPC Patents.

58. Instead of offering Disney a license on RAND terms, InterDigital launched a global litigation attack. In addition to filing this Action, InterDigital initiated patent infringement proceedings in Germany, Brazil, the Unified Patent Court's Düsseldorf Local Division, and the Unified Patent Court's Mannheim Local Division. Moreover, InterDigital has sought an *ex parte* injunction against Disney in Brazil. InterDigital has further been attempting to obtain improper leverage by seeking injunctive relief, and attempting to coerce Disney into capitulating and paying excessive, non-RAND royalties.

59. Despite InterDigital's conduct being plainly inconsistent with InterDigital's contractual obligations to license its patents on RAND terms, Disney has attempted to continue negotiating. On February 19, 2025, Disney sent InterDigital a letter offering to engage in licensing negotiations and requesting that InterDigital "propose a license on a worldwide, non-discriminatory basis and on reasonable terms and conditions consistent with ITU RAND policies and Thomson's (and InterDigital's) commitments to the ITU."

60. InterDigital has refused to provide such an offer. Instead, on February 28, 2025, InterDigital sent a letter refusing to provide an offer to license its patents

1  on RAND terms.  Despite Thomson Licensing's and InterDigital's explicit

2  contractual commitments to license on RAND terms the '301, '610, and '818

3  Patents asserted in this Action, the Brazilian Patents, and the UPC Patents,

4  InterDigital asserted that these patents are not subject to any such obligations.

5  InterDigital stated that "video encoding technology itself is not specified in the

6  H.264/5 standards and thus it is not RAND encumbered."

7  **FIRST COUNTERCLAIM**

8  **(Breach of Contract)**

9      61.    Disney incorporates by reference the admissions, denials, and

10  allegations set forth in Paragraphs 1 through 60 as if fully set forth herein.

11     62.    As set forth above, through its statements, conduct, and/or relationship

12  with Thomson Licensing, InterDigital has express or implied contractual

13  commitments with the ITU, ISO, and/or IEC and their respective members,

14  affiliates, and/or intended third-party beneficiaries, including Disney, to (1) abide

15  by the ITU's Patent Policy and Guidelines, and (2) offer to license on RAND terms

16  the '301, '610, and '818 Patents asserted in this Action, the Brazilian Patents, the

17  UPC Patents, and other patents and applications essential to implementing the

18  H.264 and H.265 standards (collectively, "RAND-Encumbered Patents").

19     63.    Every party producing products or delivering services that support

20  H.264 and H.265 standards, including Disney, is an intended third-party beneficiary

21  of InterDigital's contractual commitments to the ITU, ISO, and/or IEC.

22     64.    InterDigital breached its contractual obligations in its conduct with

23  Disney in multiple ways as explained above, including by refusing to offer Disney a

24  license on RAND terms to the RAND-Encumbered Patents, failing to negotiate and

25  act in good faith, filing this Action and foreign proceedings which seek to enjoin

26  Disney's alleged implementation of H.264 and H.265 technologies, and seeking to

27  coerce Disney into capitulating and paying excessive, non-RAND royalties.  On

28  information and belief, InterDigital has also breached its contractual obligations by

filing this Action and foreign proceedings based on RAND-Encumbered Patents that InterDigital has already licensed to other entities that sell devices used for Disney+, Hulu, Hulu Live, and ESPN+.

65.    As a result of InterDigital's breach, Disney has been injured in its business or property.  InterDigital's refusal to offer a license to Disney on RAND terms and conditions has deprived Disney of its right to such a license, which has caused Disney to incur unnecessary costs and unwarranted harm.  The expedited injunctive relief that InterDigital is seeking in proceedings that InterDigital has filed in foreign jurisdictions is threatening Disney by immediate loss of profits, loss of customers and potential customers, and loss of goodwill and product image.

66.    Disney has suffered damages, and will suffer further damages and irreparable harm, by reason of each and all of the acts, practices, breaches and conduct Disney alleges above until and unless the Court enjoins such acts, practices, and conduct.

67.    Moreover, InterDigital's breach further constitutes waiver and/or estoppel of InterDigital's rights to enforce the '301, '610, and '818 Patents against any entity allegedly practicing the standard.  Thus, the breach renders InterDigital's RAND-Encumbered Patents unenforceable against Disney.

## SECOND COUNTERCLAIM
### (Promissory Estoppel)

68.    Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 67 as if fully set forth herein.

69.    As set forth above, InterDigital and Thomson Licensing made clear and definite promises to potential licensees through their commitments to the ITU, ISO, IEC, their affiliates and members, and intended third-party beneficiaries, including Disney, to offer to license on RAND terms the '301, '610, and '818 Patents asserted in this Action, the Brazilian Patents, the UPC Patents, and other patents and applications essential to implementing the H.264 and H.265 standards.

As a successor-in-interest, InterDigital obtained its rights to these patents subject to such commitments made by Thomson Licensing and either knew or should have known of the nature of the RAND commitments that encumbered the disclosed patents and patent applications.[17]

70.    The intended purpose of InterDigital's and Thomson Licensing's promises was to induce reliance upon these promises so that companies like Disney would invest substantial resources to design, develop, and produce products or services compatible with the relevant standards.  InterDigital knew or reasonably should have expected to know that they would induce reliance on these promises by companies such as Disney.

71.    Disney developed and marketed its products and services in reliance on InterDigital's promises, including making various products and services compliant with H.264 and H.265 standards.

72.    InterDigital is estopped from reneging on these promises under the doctrine of promissory estoppel.

73.    Disney has been harmed as a result of its reasonable reliance on InterDigital's promises.  Disney has been forced to expend resources resolving this licensing dispute, including defending patent infringement claims and efforts to enjoin its products notwithstanding Disney's continuing willingness to take a license to InterDigital's RAND-Encumbered Patents.  Disney is threatened by the imminent loss of profits, loss of customers and potential customers, imposition of non-RAND terms and conditions, and loss of goodwill and product image.

74.    Disney has suffered and will continue to suffer irreparable injury by reason of each and all of the acts, practices, and conduct alleged above until and unless the Court enjoins such acts, practices, and conduct.

---

[17] *See* 2012 Guidelines at 5; 2015 Guidelines at Annex 2.

75.    Moreover, InterDigital's breach further constitutes waiver and/or estoppel of InterDigital's rights to enforce the '301, '610, and '818 Patents against any entity allegedly practicing the standard.

## THIRD COUNTERCLAIM

### (Breach of Duty of Good Faith)

76.    Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 75 as if fully set forth herein.

77.    As set forth above, through its statements, conduct, and/or relationship with Thomson Licensing, InterDigital has express or implied contractual commitments with the ITU, ISO, and/or IEC and their respective members, affiliates, and/or intended third-party beneficiaries, including Disney, to (1) abide by the ITU's Patent Policy and Guidelines, and (2) offer to license on RAND terms the RAND-Encumbered Patents.

78.    Every party producing products or delivering services that support H.264 and H.265 standards, including Disney, is an intended third-party beneficiary of InterDigital's contractual commitments to the ITU, ISO, and/or IEC.

79.    As set forth above, InterDigital breached its obligation to negotiate in good faith.  InterDigital refused to offer Disney a license on RAND terms to the RAND-Encumbered Patents, failing to negotiate and act in good faith, and by filing this Action and foreign proceedings which seek to enjoin Disney's alleged implementation of H.264 and H.265, and seek to coerce Disney into capitulating and paying excessive, non-RAND royalties.

80.    As a result of InterDigital's breach, Disney has been injured in its business or property.  InterDigital's refusal to offer a license to Disney on RAND terms and conditions has deprived Disney of its right to such a license, which has caused Disney to incur unnecessary costs and unwarranted harm, in these proceedings and as a result of the proceedings InterDigital has filed in foreign jurisdictions seeking expedited, and in some cases, *ex parte* injunctive relief.

Disney is further threatened by immediate loss of profits, loss of customers and potential customers, and loss of goodwill and product image.

81.    Disney has suffered damages, and will suffer further damages and irreparable harm, by reason of each and all of the acts, practices, breaches and conduct Disney alleges above until and unless the Court enjoins such acts, practices, and conduct.

**FOURTH COUNTERCLAIM**

**(Request for Declaratory Judgment that InterDigital has Not Complied with Its Obligations)**

82.    Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 81 as if fully set forth herein.

83.    As set forth above, through its statements, conduct, and/or relationship with Thomson Licensing, InterDigital has express or implied contractual commitments with the ITU, ISO, and/or IEC and their respective members, affiliates, and/or intended third-party beneficiaries, including Disney, to (1) abide by the ITU's Patent Policy and Guidelines, and (2) offer to license on RAND terms the RAND-Encumbered Patents.

84.    Every party producing products or delivering services that support H.264 and H.265 standards, including Disney, is an intended third-party beneficiary of InterDigital's contractual commitments to the ITU, ISO, and/or IEC.

85.    As set forth above, InterDigital has not complied with its contractual obligations by refusing to offer a license on RAND terms, and instead choosing to engage in global litigation rather than good faith negotiation with Disney. Specifically, InterDigital has failed to provide Disney with RAND terms and conditions for a license to the RAND-Encumbered Patents.

86.    As a result of the acts described in the foregoing paragraphs, and particularly in view of InterDigital's unwillingness to engage in good faith

negotiations, there exists a substantial controversy of sufficient immediacy to warrant the issuance of a declaratory judgment.

87.    This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment.

88.    Disney requests a judicial declaration that InterDigital has not complied with its contractual obligations to abide by the ITU's, ISO's, and IEC's Patent Policy and Guidelines, and to offer to license on RAND terms the RAND-Encumbered Patents.

**FIFTH COUNTERCLAIM**

**(Non-Infringement of the '301 Patent)**

89.    Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 88 as if fully set forth herein.

90.    Disney has not infringed and is not infringing, either directly or indirectly, any valid and enforceable claim of the '301 Patent.

91.    An actual controversy exists between Disney and InterDigital as to whether Disney infringes the '301 Patent, as InterDigital contends, or does not do so, as Disney contends.

92.    Disney has been injured and damaged by InterDigital's filing of a lawsuit against Disney based on a patent that Disney does not infringe.

93.    Disney therefore seeks a declaration that it does not infringe any valid and enforceable claim of the '301 Patent.

**SIXTH COUNTERCLAIM**

**(Non-Infringement of the '610 Patent)**

94.    Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 93 as if fully set forth herein.

95.    Disney has not infringed and is not infringing, either directly or indirectly, any valid and enforceable claim of the '610 Patent.

- 104 -

96.   An actual controversy exists between Disney and InterDigital as to whether Disney infringes the '610 Patent, as InterDigital contends, or does not do so, as Disney contends.

97.   Disney has been injured and damaged by InterDigital's filing of a lawsuit against Disney based on a patent that Disney does not infringe.

98.   Disney therefore seeks a declaration that it does not infringe any valid and enforceable claim of the '610 Patent.

## SEVENTH COUNTERCLAIM

### (Non-Infringement of the '818 Patent)

99.   Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 98 as if fully set forth herein.

100.   Disney has not infringed and is not infringing, either directly or indirectly, any valid and enforceable claim of the '818 Patent.

101.   An actual controversy exists between Disney and InterDigital as to whether Disney infringes the '818 Patent, as InterDigital contends, or does not do so, as Disney contends.

102.   Disney has been injured and damaged by InterDigital's filing of a lawsuit against Disney based on a patent that Disney does not infringe.

103.   Disney therefore seeks a declaration that it does not infringe any valid and enforceable claim of the '818 Patent.

## EIGHTH COUNTERCLAIM

### (Non-Infringement of the '268 Patent)

104.   Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 103 as if fully set forth herein.

105.   Disney has not infringed and is not infringing, either directly or indirectly, any valid and enforceable claim of the '268 Patent.

106.   An actual controversy exists between Disney and InterDigital as to whether Disney infringes the '268 Patent, as InterDigital contends, or does not do so, as Disney contends.

107.   Disney has been injured and damaged by InterDigital's filing of a lawsuit against Disney based on a patent that Disney does not infringe.

108.   Disney therefore seeks a declaration that it does not infringe any valid and enforceable claim of the '268 Patent.

## NINTH COUNTERCLAIM

### (Non-Infringement of the '297 Patent)

109.   Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 108 as if fully set forth herein.

110.   Disney has not infringed and is not infringing, either directly or indirectly, any valid and enforceable claim of the '297 Patent.

111.   An actual controversy exists between Disney and InterDigital as to whether Disney infringes the '297 Patent, as InterDigital contends, or does not do so, as Disney contends.

112.   Disney has been injured and damaged by InterDigital's filing of a lawsuit against Disney based on a patent that Disney does not infringe.

113.   Disney therefore seeks a declaration that it does not infringe any valid and enforceable claim of the '297 Patent.

## TENTH COUNTERCLAIM

### (Invalidity of the '301 Patent)

114.   Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 113 as if fully set forth herein.

115.   One or more of the claims of the '301 Patent are invalid for failing to meet the conditions for patentability under 35 U.S.C. § 1 *et seq.*, including §§ 101, 102, 103, and/or 112.

116.    An actual controversy exists between Disney and InterDigital as to whether the '301 Patent is valid, based on InterDigital having filed its Complaint against Disney alleging infringement of the '301 Patent.

117.    Disney has been injured and damaged by InterDigital's filing of a lawsuit against Disney asserting invalid patents.

118.    Disney therefore seeks a declaration that one or more claims of the '301 Patent are invalid for failing to meet the conditions for patentability under 35 U.S.C. § 1 *et seq*.

## **ELEVENTH COUNTERCLAIM**

### **(Invalidity of the '610 Patent)**

119.    Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 118 as if fully set forth herein.

120.    One or more of the claims of the '610 Patent are invalid for failing to meet the conditions for patentability under 35 U.S.C. § 1 *et seq.*, including §§ 101, 102, 103, and/or 112.

121.    An actual controversy exists between Disney and InterDigital as to whether the '610 Patent is valid, based on InterDigital having filed its Complaint against Disney alleging infringement of the '610 Patent.

122.    Disney has been injured and damaged by InterDigital's filing of a lawsuit against Disney asserting invalid patents.

123.    Disney therefore seeks a declaration that one or more claims of the '610 Patent are invalid for failing to meet the conditions for patentability under 35 U.S.C. § 1 *et seq*.

## **TWELFTH COUNTERCLAIM**

### **(Invalidity of the '818 Patent)**

124.    Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 123 as if fully set forth herein.

125.   One or more of the claims of the '818 Patent are invalid for failing to meet the conditions for patentability under 35 U.S.C. § 1 *et seq.*, including §§ 101, 102, 103, and/or 112.

126.   An actual controversy exists between Disney and InterDigital as to whether the '818 Patent is valid, based on InterDigital having filed its Complaint against Disney alleging infringement of the '818 Patent.

127.   Disney has been injured and damaged by InterDigital's filing of a lawsuit against Disney asserting invalid patents.

128.   Disney therefore seeks a declaration that one or more claims of the '818 Patent are invalid for failing to meet the conditions for patentability under 35 U.S.C. § 1 *et seq.*

## THIRTEENTH COUNTERCLAIM

### (Invalidity of the '268 Patent)

129.   Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 128 as if fully set forth herein.

130.   One or more of the claims of the '268 Patent are invalid for failing to meet the conditions for patentability under 35 U.S.C. § 1 *et seq.*, including §§ 101, 102, 103, and/or 112.

131.   An actual controversy exists between Disney and InterDigital as to whether the '268 Patent is valid, based on InterDigital having filed its Complaint against Disney alleging infringement of the '268 Patent.

132.   Disney has been injured and damaged by InterDigital's filing of a lawsuit against Disney asserting invalid patents.

133.   Disney therefore seeks a declaration that one or more claims of the '268 Patent are invalid for failing to meet the conditions for patentability under 35 U.S.C. § 1 *et seq.*

## FOURTEENTH COUNTERCLAIM

### (Invalidity of the '297 Patent)

134.   Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 133 as if fully set forth herein.

135.   One or more of the claims of the '297 Patent are invalid for failing to meet the conditions for patentability under 35 U.S.C. § 1 *et seq.*, including §§ 101, 102, 103, and/or 112.

136.   An actual controversy exists between Disney and InterDigital as to whether the '297 Patent is valid, based on InterDigital having filed its Complaint against Disney alleging infringement of the '297 Patent.

137.   Disney has been injured and damaged by InterDigital's filing of a lawsuit against Disney asserting invalid patents.

138.   Disney therefore seeks a declaration that one or more claims of the '297 Patent are invalid for failing to meet the conditions for patentability under 35 U.S.C. § 1 *et seq.*

## FIFTEENTH COUNTERCLAIM

### (Request for Declaratory Judgment of
### Patent Exhaustion with respect to the '301 Patent)

139.   Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 138 as if fully set forth herein.

140.   Apple Inc. ("Apple") produces "Mac Studio" computers equipped with chips that provide "Hardware-accelerated H.264 [and] HEVC" encoding.[18]  Apple also produces the "Compressor" software that supports "encoding jobs for a broad range of industry-standard formats, including MPEG-2, H.264, [and] HEVC."[19]

141.   Disney has acquired a Mac Studio computer and a copy of the Compressor software from Apple.  Disney has used the acquired Mac Studio

---

[18] Apple, https://www.apple.com/mac-studio/specs/.
[19] Apple, https://www.apple.com/final-cut-pro/compressor/.

computer and/or the Compressor to encode a video and produced six versions of encoded videos, including:

(1)    Encoded Video (Version 1),[20] encoded using Disney's H.264/AVC encoder running inside a virtual machine container executing on the Mac Studio computer,

(2)    Encoded Video (Version 2),[21] encoded using Disney's H.265/HEVC encoder running inside a virtual machine container executing on the Mac Studio computer,

(3)    Encoded Video (Version 3),[22] encoded using Disney's H.264/AVC encoder running natively on the Mac Studio computer,

(4)    Encoded Video (Version 4),[23] encoded using Disney's H.265/HEVC encoder running natively on the Mac Studio computer,

(5)    Encoded Video (Version 5),[24]  encoded in the H.264/AVC format using the Apple's Compressor running on the Mac Studio computer, and

(6)    Encoded Video (Version 6),[25] encoded in the H.265/HEVC format using the Apple's Compressor running on the Mac Studio computer.

142.    On information and belief, InterDigital has entered into a license agreement with Apple wherein InterDigital has licensed the '301 Patent to Apple. Apple, as an authorized licensee, sold products allegedly covered by the '301 Patent to Disney without restrictions on resale or use.

143.    As a result of Disney's use of the Mac Studio computer and/or the Compressor software acquired from Apple to encode and produce the six versions of encoded videos listed in Paragraph 141, InterDigital's patent rights regarding the

---

[20] Available at http://live-gen-jfk3.qa.origin.media.starott.com/jfk3/va01/mt/1/index.m3u8.
[21] Available at http://live-gen-jfk3.qa.origin.media.starott.com/jfk3/va01/mt/2/index.m3u8.
[22] Available at http://live-gen-jfk3.qa.origin.media.starott.com/jfk3/va01/mt/3/index.m3u8.
[23] Available at http://live-gen-jfk3.qa.origin.media.starott.com/jfk3/va01/mt/4/index.m3u8.
[24] Available at http://live-gen-jfk3.qa.origin.media.starott.com/jfk3/va01/mt/5/index.m3u8.
[25] Available at http://live-gen-jfk3.qa.origin.media.starott.com/jfk3/va01/mt/6/index.m3u8.

'301 Patent have been exhausted with respect to each of the six versions of encoded videos listed in Paragraph 141 due to an authorized first sale of the patented product.

144.    Disney is entitled to a declaratory judgment that InterDigital's patent rights regarding the '301 Patent have been exhausted with respect to Disney's encoding of any H.264 or H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's encoding of each of the six versions of encoded videos listed in Paragraph 141.

145.    This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '301 Patent, as InterDigital contends, or does not do so, as Disney contends.

146.    Disney requests a judicial declaration that InterDigital's patent rights regarding the '301 Patent have been exhausted with respect to Disney's encoding of any H.264 or H.265 video using an Apple computer and/or Apple software, including but not limited to, each of the six versions of encoded videos listed in Paragraph 141, due to an authorized first sale of a patented product.

## SIXTEENTH COUNTERCLAIM

### (Request for Declaratory Judgment of
### Express License with respect to the '301 Patent)

147.    Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 146 as if fully set forth herein.

148.    On information and belief, InterDigital has entered into a license agreement with Apple wherein InterDigital has licensed the '301 Patent to Apple. Apple, as an authorized licensee, sold products allegedly covered by the '301 Patent to Disney without restrictions on resale or use.

149.    On information and belief, Disney's use of the Mac Studio computer and/or the Compressor software acquired from Apple to encode and produce the six

versions of encoded videos listed in Paragraph 141 is expressly licensed to the '301 Patent under InterDigital's license agreement with Apple.

150.    Disney is entitled to a declaratory judgment that InterDigital's patent rights regarding the '301 Patent have been expressly licensed with respect to Disney's encoding of any H.264 or H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's encoding of each of the six versions of encoded videos listed in Paragraph 141.

151.    This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '301 Patent, as InterDigital contends, or does not do so, as Disney contends.

152.    Disney requests a judicial declaration that Disney's encoding of H.264 or H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's use of the Mac Studio computer and/or the Compressor software acquired from Apple to encode and produce the six versions of encoded videos listed in Paragraph 141, is expressly licensed to the '301 Patent under InterDigital's license agreement with Apple.

153.    In addition, on information and belief, InterDigital has entered into license agreements with multiple third-party companies, including but not limited to, Apple, Samsung, LG Electronics, Lenovo, and other companies, that sell smartphones, tablets, computers, televisions, and/or other devices in the United States wherein InterDigital licensed the '301 Patent to those companies (the "'301 Patent Licensed Third Parties").

154.    Devices sold by the '301 Patent Licensed Third Parties are licensed to the '301 Patent and include, and/or are used by consumers to run and stream videos using, for example, the accused products, including Disney+, Hulu, Hulu Live, and ESPN+.  For example, Samsung sells televisions in the United States that are pre-

installed with Disney+.[26]  Such licensed devices must receive H.264 or H.265 encoded video to use the expressly licensed InterDigital patents.  Therefore, on information and belief, Disney's accused products and any accused encoding of H.264 or H.265 video by Disney is expressly licensed to the '301 Patent under InterDigital's license agreements with the '301 Patent Licensed Third Parties.

155.   Disney is entitled to a declaratory judgment that Disney is expressly licensed to the '301 Patent with respect to any use of Disney services and products, including the accused products, by devices sold by the '301 Patent Licensed Third Parties.

156.   This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '301 Patent, as InterDigital contends, or does not do so, as Disney contends.

157.   Disney requests a judicial declaration that Disney is expressly licensed to the '301 Patent with respect to any use of the accused products by devices sold by the '301 Patent Licensed Third Parties.

## SEVENTEENTH COUNTERCLAIM

### (Request for Declaratory Judgment of

### Implied License with respect to the '301 Patent)

158.   Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 157 as if fully set forth herein.

159.   On information and belief, InterDigital has entered into a license agreement with Apple wherein InterDigital has licensed the '301 Patent to Apple. Apple, as an authorized licensee, sold products allegedly covered by the '301 Patent to Disney without restrictions on resale or use.

160.   On information and belief, Disney is an end-user of a licensed device. Accordingly, on information and belief, Disney's use of the Mac Studio computer

---

[26] https://www.samsung.com/ca/support/tv-audio-video/tv-watch-disney-plus/.

and/or the Compressor software acquired from Apple to encode and produce the six versions of encoded videos listed in Paragraph 141 is impliedly licensed to the '301 Patent under InterDigital's license agreement with Apple.

161.    Disney is entitled to a declaratory judgment that InterDigital's patent rights regarding the '301 Patent have been impliedly licensed with respect to Disney's encoding of any H.264 or H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's encoding of each of the six versions of encoded videos listed in Paragraph 141.

162.    This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '301 Patent, as InterDigital contends, or does not do so, as Disney contends.

163.    Disney requests a judicial declaration that Disney's encoding of any H.264 or H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's use of the Mac Studio computer and/or the Compressor software acquired from Apple to encode and produce the six versions of encoded videos listed in Paragraph 141, is impliedly licensed to the '301 Patent under InterDigital's license agreement with Apple.

164.    In addition, on information and belief, InterDigital has entered into license agreements with multiple third-party companies, including but not limited to, Apple, Samsung, LG Electronics, Lenovo, and other companies, that sell smartphones, tablets, computers, televisions, and/or other devices in the United States wherein InterDigital licensed the '301 Patent to the '301 Patent Licensed Third Parties.

165.    Devices sold by the '301 Patent Licensed Third Parties are licensed to the '301 Patent and include, and/or are used by consumers to run and stream videos using, for example, the accused products, including Disney+, Hulu, Hulu Live, and ESPN+.  For example, Samsung sells televisions in the United States that are pre-

installed with Disney+.[27]  Such licensed devices must receive H.264 or H.265 encoded video to use the expressly licensed InterDigital patents.  Therefore, on information and belief, Disney's accused products and any accused encoding of H.264 or H.265 video by Disney is impliedly licensed to the '301 Patent under InterDigital's license agreements with the '301 Patent Licensed Third Parties.

166.   Disney is entitled to a declaratory judgment that Disney is impliedly licensed to the '301 Patent with respect to any use of Disney services and products, including the accused products, by devices sold by the '301 Patent Licensed Third Parties.

167.   This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '301 Patent, as InterDigital contends, or does not do so, as Disney contends.

168.   Disney requests a judicial declaration that Disney is impliedly licensed to the '301 Patent with respect to any use of the accused products by devices sold by the '301 Patent Licensed Third Parties.

## EIGHTEENTH COUNTERCLAIM

### (Request for Declaratory Judgment of
### Patent Exhaustion with respect to the '610 Patent)

169.   Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 168 as if fully set forth herein.

170.   On information and belief, InterDigital has entered into a license agreement with Apple wherein InterDigital has licensed the '610 Patent to Apple. Apple, as an authorized licensee, sold products allegedly covered by the '610 Patent to Disney without restrictions on resale or use.

171.   As a result of Disney's use of the Mac Studio computer and/or the Compressor software acquired from Apple to encode and produce the six versions

---

[27] https://www.samsung.com/ca/support/tv-audio-video/tv-watch-disney-plus/.

of encoded videos listed in Paragraph 141, InterDigital's patent rights regarding the '610 Patent have been exhausted with respect to each of the six versions of encoded videos listed in Paragraph 141 due to an authorized first sale of the patented product.

172.    Disney is entitled to a declaratory judgment that InterDigital's patent rights regarding the '610 Patent have been exhausted with respect to Disney's encoding of any H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's encoding of each of the six versions of encoded videos listed in Paragraph 141.

173.    This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '610 Patent, as InterDigital contends, or does not do so, as Disney contends.

174.    Disney requests a judicial declaration that InterDigital's patent rights regarding the '610 Patent have been exhausted with respect to Disney's encoding of any H.265 video using an Apple computer and/or Apple software, including but not limited to, each of the six versions of encoded videos listed in Paragraph 141, due to an authorized first sale of a patented product.

## NINETEENTH COUNTERCLAIM

### (Request for Declaratory Judgment of

### Express License with respect to the '610 Patent)

175.    Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 174 as if fully set forth herein.

176.    On information and belief, InterDigital has entered into a license agreement with Apple wherein InterDigital has licensed the '610 Patent to Apple. Apple, as an authorized licensee, sold products allegedly covered by the '610 Patent to Disney without restrictions on resale or use.

177.   On information and belief, Disney's use of the Mac Studio computer and/or the Compressor software acquired from Apple to encode and produce the six versions of encoded videos listed in Paragraph 141 is expressly licensed to the '610 Patent under InterDigital's license agreement with Apple.

178.   Disney is entitled to a declaratory judgment that InterDigital's patent rights regarding the '610 Patent have been expressly licensed with respect to Disney's encoding of any H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's encoding of each of the six versions of encoded videos listed in Paragraph 141.

179.   This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '610 Patent, as InterDigital contends, or does not do so, as Disney contends.

180.   Disney requests a judicial declaration that Disney's encoding of any H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's use of the Mac Studio computer and/or the Compressor software acquired from Apple to encode and produce the six versions of encoded videos listed in Paragraph 141, is expressly licensed to the '610 Patent under InterDigital's license agreement with Apple.

181.   In addition, on information and belief, InterDigital has entered into license agreements with multiple third-party companies, including but not limited to, Apple, Samsung, LG Electronics, Lenovo, and other companies, that sell smartphones, tablets, computers, televisions, and/or other devices in the United States wherein InterDigital licensed the '610 Patent to those companies (the "'610 Patent Licensed Third Parties").

182.   Devices sold by the '610 Patent Licensed Third Parties are licensed to the '610 Patent and include, and/or are used by consumers to run and stream videos using, for example, the accused products, including Disney+, Hulu, Hulu Live, and

ESPN+.  For example, Samsung sells televisions in the United States that are pre-installed with Disney+.[28]  Such licensed devices must receive H.265 encoded video to use the expressly licensed InterDigital patents.  Therefore, on information and belief, Disney's accused products and any accused encoding of H.265 video by Disney is expressly licensed to the '610 Patent under InterDigital's license agreements with the '610 Patent Licensed Third Parties.

183.   Disney is entitled to a declaratory judgment that Disney is expressly licensed to the '610 Patent with respect to any use of Disney services and products, including the accused products, by devices sold by the '610 Patent Licensed Third Parties.

184.   This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '610 Patent, as InterDigital contends, or does not do so, as Disney contends.

185.   Disney requests a judicial declaration that Disney is expressly licensed to the '610 Patent with respect to any use of the accused products by devices sold by the '610 Patent Licensed Third Parties.

## TWENTIETH COUNTERCLAIM

### (Request for Declaratory Judgment of
### Implied License with respect to the '610 Patent)

186.   Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 185 as if fully set forth herein.

187.   On information and belief, InterDigital has entered into a license agreement with Apple wherein InterDigital has licensed the '610 Patent to Apple. Apple, as an authorized licensee, sold products allegedly covered by the '610 Patent to Disney without restrictions on resale or use.

---

[28] https://www.samsung.com/ca/support/tv-audio-video/tv-watch-disney-plus/.

188.    On information and belief, Disney is an end-user of a licensed device. Accordingly, on information and belief, Disney's use of the Mac Studio computer and/or the Compressor software acquired from Apple to encode and produce the six versions of encoded videos listed in Paragraph 141 is impliedly licensed to the '610 Patent under InterDigital's license agreement with Apple.

189.    Disney is entitled to a declaratory judgment that InterDigital's patent rights regarding the '610 Patent have been impliedly licensed with respect to Disney's encoding of any H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's encoding of each of the six versions of encoded videos listed in Paragraph 141.

190.    This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '610 Patent, as InterDigital contends, or does not do so, as Disney contends.

191.    Disney requests a judicial declaration that Disney's encoding of any H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's use of the Mac Studio computer and/or the Compressor software acquired from Apple to encode and produce the six versions of encoded videos listed in Paragraph 141, is impliedly licensed to the '610 Patent under InterDigital's license agreement with Apple.

192.    In addition, on information and belief, InterDigital has entered into license agreements with multiple third-party companies, including but not limited to, Apple, Samsung, LG Electronics, Lenovo, and other companies, that sell smartphones, tablets, computers, televisions, and/or other devices in the United States wherein InterDigital licensed the '610 Patent to the '610 Patent Licensed Third Parties.

193.    Devices sold by the '610 Patent Licensed Third Parties are licensed to the '610 Patent and include, and/or are used by consumers to run and stream videos

using, for example, the accused products, including Disney+, Hulu, Hulu Live, and ESPN+. For example, Samsung sells televisions in the United States that are pre-installed with Disney+.[29] Such licensed devices must receive H.265 encoded video to use the expressly licensed InterDigital patents. Therefore, on information and belief, Disney's accused products and any accused encoding of H.265 video by Disney is impliedly licensed to the '610 Patent under InterDigital's license agreements with the '610 Patent Licensed Third Parties.

194.   Disney is entitled to a declaratory judgment that Disney is impliedly licensed to the '610 Patent with respect to any use of Disney services and products, including the accused products, by devices sold by the '610 Patent Licensed Third Parties.

195.   This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '610 Patent, as InterDigital contends, or does not do so, as Disney contends.

196.   Disney requests a judicial declaration that Disney is impliedly licensed to the '610 Patent with respect to any use of the accused products by devices sold by the '610 Patent Licensed Third Parties.

## **TWENTY-FIRST COUNTERCLAIM**

### **(Request for Declaratory Judgment of**
### **Patent Exhaustion with respect to the '818 Patent)**

197.   Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 196 as if fully set forth herein.

198.   On information and belief, InterDigital has entered into a license agreement with Apple wherein InterDigital has licensed the '818 Patent to Apple. Apple, as an authorized licensee, sold products allegedly covered by the '818 Patent to Disney without restrictions on resale or use.

---

[29] https://www.samsung.com/ca/support/tv-audio-video/tv-watch-disney-plus/.

199.   As a result of Disney's use of the Mac Studio computer and/or the Compressor software acquired from Apple to encode and produce the six versions of encoded videos listed in Paragraph 141, InterDigital's patent rights regarding the '818 Patent have been exhausted with respect to each of the six versions of encoded videos listed in Paragraph 141 due to an authorized first sale of the patented product.

200.   Disney is entitled to a declaratory judgment that InterDigital's patent rights regarding the '818 Patent have been exhausted with respect to Disney's encoding of any H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's encoding of each of the six versions of encoded videos listed in Paragraph 141.

201.   This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '818 Patent, as InterDigital contends, or does not do so, as Disney contends.

202.   Disney requests a judicial declaration that InterDigital's patent rights regarding the '818 Patent have been exhausted with respect to Disney's encoding of any H.265 video using an Apple computer and/or Apple software, including but not limited to, each of the six versions of encoded videos listed in Paragraph 141, due to an authorized first sale of a patented product.

## TWENTY-SECOND COUNTERCLAIM

### (Request for Declaratory Judgment of
### Express License with respect to the '818 Patent)

203.   Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 202 as if fully set forth herein.

204.   On information and belief, InterDigital has entered into a license agreement with Apple wherein InterDigital has licensed the '818 Patent to Apple.

Apple, as an authorized licensee, sold products allegedly covered by the '818 Patent to Disney without restrictions on resale or use.

205. On information and belief, Disney's use of the Mac Studio computer and/or the Compressor software acquired from Apple to encode and produce the six versions of encoded videos listed in Paragraph 141 is expressly licensed to the '818 Patent under InterDigital's license agreement with Apple.

206. Disney is entitled to a declaratory judgment that InterDigital's patent rights regarding the '818 Patent have been expressly licensed with respect to Disney's encoding of any H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's encoding of each of the six versions of encoded videos listed in Paragraph 141.

207. This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '818 Patent, as InterDigital contends, or does not do so, as Disney contends.

208. Disney requests a judicial declaration that Disney's encoding of any H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's use of the Mac Studio computer and/or the Compressor software acquired from Apple to encode and produce the six versions of encoded videos listed in Paragraph 141, is expressly licensed to the '818 Patent under InterDigital's license agreement with Apple.

209. In addition, on information and belief, InterDigital has entered into license agreements with multiple third-party companies, including but not limited to, Apple, Samsung, LG Electronics, Lenovo, and other companies, that sell smartphones, tablets, computers, televisions, and/or other devices in the United States wherein InterDigital licensed the '818 Patent to those companies (the "'818 Patent Licensed Third Parties").

210.    Devices sold by the '818 Patent Licensed Third Parties are licensed to the '818 Patent and include, and/or are used by consumers to run and stream videos using, for example, the accused products, including Disney+, Hulu, Hulu Live, and ESPN+.  For example, Samsung sells televisions in the United States that are pre-installed with Disney+.[30]  Such licensed devices must receive H.265 encoded video to use the expressly licensed InterDigital patents.  Therefore, on information and belief, Disney's accused products and any accused encoding of H.265 video by Disney is expressly licensed to the '818 Patent under InterDigital's license agreements with the '818 Patent Licensed Third Parties.

211.    Disney is entitled to a declaratory judgment that Disney is expressly licensed to the '818 Patent with respect to Disney services and products, including any use of the accused products, by devices sold by the '818 Patent Licensed Third Parties.

212.    This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '818 Patent, as InterDigital contends, or does not do so, as Disney contends.

213.    Disney requests a judicial declaration that Disney is expressly licensed to the '818 Patent with respect to any use of the accused products by devices sold by the '818 Patent Licensed Third Parties.

## TWENTY-THIRD COUNTERCLAIM

### (Request for Declaratory Judgment of
### Implied License with respect to the '818 Patent)

214.    Disney incorporates by reference the admissions, denials, and allegations set forth in Paragraphs 1 through 213 as if fully set forth herein.

215.    On information and belief, InterDigital has entered into a license agreement with Apple wherein InterDigital has licensed the '818 Patent to Apple.

---

[30] https://www.samsung.com/ca/support/tv-audio-video/tv-watch-disney-plus/.

Apple, as an authorized licensee, sold products allegedly covered by the '818 Patent to Disney without restrictions on resale or use.

216. On information and belief, Disney is an end-user of a licensed device. Accordingly, on information and belief, Disney's use of the Mac Studio computer and/or the Compressor software acquired from Apple to encode and produce the six versions of encoded videos listed in Paragraph 141 is impliedly licensed to the '818 Patent under InterDigital's license agreement with Apple.

217. Disney is entitled to a declaratory judgment that InterDigital's patent rights regarding the '818 Patent have been impliedly licensed with respect to Disney's encoding of any H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's encoding of each of the six versions of encoded videos listed in Paragraph 141.

218. This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '818 Patent, as InterDigital contends, or does not do so, as Disney contends.

219. Disney requests a judicial declaration that Disney's encoding of any H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's use of the Mac Studio computer and/or the Compressor software acquired from Apple to encode and produce the six versions of encoded videos listed in Paragraph 141, is impliedly licensed to the '818 Patent under InterDigital's license agreement with Apple.

220. In addition, on information and belief, InterDigital has entered into license agreements with multiple third-party companies, including but not limited to, Apple, Samsung, LG Electronics, Lenovo, and other companies, that sell smartphones, tablets, computers, televisions, and/or other devices in the United States wherein InterDigital licensed the '818 Patent to the '818 Patent Licensed Third Parties.

221.    Devices sold by the '818 Licensed Third Parties are licensed to the '818 Patent and include, and/or are used by consumers to run and stream videos using, for example, the accused products, including Disney+, Hulu, Hulu Live, and ESPN+.  For example, Samsung sells televisions in the United States that are pre-installed with Disney+.[31]  Such licensed devices must receive H.265 encoded video to use the expressly licensed InterDigital patents.  Therefore, on information and belief, Disney's accused products and any accused encoding of H.265 video by Disney is impliedly licensed to the '818 Patent under InterDigital's license agreements with the '818 Patent Licensed Third Parties.

222.    Disney is entitled to a declaratory judgment that Disney is impliedly licensed to the '818 Patent with respect to Disney services and products, including any use of the accused products, by devices sold by the '818 Patent Licensed Third Parties.

223.    This dispute is of sufficient immediacy and reality to warrant the issue of a declaratory judgment because an actual controversy exists between Disney and InterDigital as to whether Disney infringes the '818 Patent, as InterDigital contends, or does not do so, as Disney contends.

224.    Disney requests a judicial declaration that Disney is impliedly licensed to the '818 Patent with respect to any use of the accused products by devices sold by the '818 Patent Licensed Third Parties.

## **PRAYER FOR RELIEF**

WHEREFORE, Disney respectfully seeks the following relief:

A.    A judgment that InterDigital take nothing by way of its Complaint and the same be dismissed with prejudice;

B.    A judgment that all damages, costs, expenses, attorneys' fees, or other relief sought by InterDigital be denied;

---

[31] https://www.samsung.com/ca/support/tv-audio-video/tv-watch-disney-plus/.

- 125 -

C.    A judgment and declaration that Disney has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid and enforceable claim of the '301, '610, '818, '268 and '297 Patents, willful or otherwise;

D.    A judgment and declaration that the '301, '610, '818, '268, and '297 Patents are invalid and/or unenforceable;

E.    A judgment that InterDigital is liable for breach of contract, breach of its duty of good faith, and promissory estoppel;

F.    A judgment awarding Disney damages and pre-judgment and post-judgment interest for InterDigital's breach of contract, breach of its duty of good faith, and promissory estoppel;

G.    A judgment granting Disney injunctive relief consistent with the determinations in this case;

H.    A judgment enjoining InterDigital from conduct inconsistent with its RAND obligations;

I.    A judgment and declaration that InterDigital's patent rights regarding each of the '301, '610, and '818 Patents have been exhausted with respect to Disney's encoding of any H.264 or H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's encoding of each of the six versions of encoded videos listed in Paragraph 141;

J.    A judgment and declaration that InterDigital's patent rights regarding the '301, '610, and '818 Patents have been expressly licensed with respect to Disney's encoding of any H.264 or H.265 video using an Apple computer and/or Apple software, including but not limited to, Disney's encoding of each of the six versions of encoded videos listed in Paragraph 141;

K.    A judgment and declaration that InterDigital's patent rights regarding the '301, '610, and '818 Patents have been impliedly licensed with respect to Disney's encoding of any H.264 or H.265 video using an Apple computer and/or

Apple software, including but not limited to, Disney's encoding of each of the six versions of encoded videos listed in Paragraph 141;

L.    A judgment and declaration that Disney is expressly licensed to the '301, '610, and '818 Patents with respect to any use of Disney services and the accused products, including the accused products, by devices sold by the '301 Patent Licensed Third Parties, '610 Patent Licensed Third Parties, and '818 Patent Licensed Third Parties;

M.    A judgment and declaration that Disney has an implied licensed to the '301, '610, and '818 Patents with respect to any use of Disney services and the accused products, including the accused products, by devices sold by the '301 Patent Licensed Third Parties, '610 Patent Licensed Third Parties, and '818 Patent Licensed Third Parties;

N.    An award to Disney of its attorney's fees and costs incurred in responding to and defending actions filed by InterDigital seeking injunctive relief in foreign courts;

O.    A judgment that this case is exceptional under 35 U.S.C. § 285 and an award to Disney of its reasonable costs and expenses of litigation, including attorneys' fees and prejudgment interest; and

P.    Such other relief as the Court shall deem just and proper.

1  Dated:  March 31, 2025

2                                                    RYAN K. YAGURA
                                                     NICHOLAS J. WHILT
3                                                    XIN-YI ZHOU
                                                     O'MELVENY & MYERS LLP
4

5
                                                     By:    /s/ Ryan K Yagura
6                                                           Ryan K. Yagura

7                                                    *Attorneys for Defendants The Walt
                                                     Disney Company, Disney Media and
8                                                    Entertainment Distribution LLC, Disney
                                                     DTC LLC, Disney Streaming Services
9                                                    LLC, Disney Entertainment & Sports
                                                     LLC, Disney Platform Distribution, Inc.,
10                                                   BAMTech LLC, Hulu, LLC, and ESPN,
                                                     Inc.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28