Richard Kamprath (*admitted pro hac vice*)
rkamprath@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone:  (214) 978-4000
Facsimile:   (214) 978-4044

Nancy Olson (SBN 260303)
nolson@olsonstein.com
David Stein (SBN 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane, #301
Newport Beach, CA 92663
Telephone: (310) 916-7433

*Additional Counsel listed in signature block
Attorneys for Plaintiffs InterDigital, Inc., et al.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION AT LOS ANGELES

| | |
|---|---|
| INTERDIGITAL, INC., INTERDIGITAL VC HOLDINGS, INC., INTERDIGITAL MADISON PATENT HOLDINGS, SAS, AND INTERDIGITAL CE PATENT HOLDINGS, SAS, <br><br> Plaintiffs, <br><br> v. <br><br> THE WALT DISNEY COMPANY, DISNEY MEDIA AND ENTERTAINMENT DISTRIBUTION LLC, DISNEY DTC LLC, DISNEY STREAMING SERVICES LLC, DISNEY ENTERTAINMENT & SPORTS LLC, DISNEY PLATFORM DISTRIBUTION, INC., BAMTECH, LLC, HULU, LLC, AND ESPN, INC., <br><br> Defendants. | Case No. 2:25-cv-00895-WLH-BFM <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR A PRELIMINARY INJUNCTION RELATED TO INTERDIGITAL'S REQUEST FOR INJUNCTION IN BRAZIL** <br><br> Judge: Hon. Wesley L. Hsu <br> Hearing Date: May 30, 2025, 1:30 pm <br> Courtroom: 9B |

MCKOOL SMITH, P.C.
LOS ANGELES, CA

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 3

      A.    InterDigital Has Only Asserted Non-Essential Encoding Patent Claims Against Disney in the U.S., Europe, Germany, and Brazil. .......... 3

      B.    The H.264 and H.265 Standards Only Standardize Decoding. ................ 4

      C.    The ITU Commitment to License Essential Decoder Claims.................... 5

            1.    ITU Patent Declaration Form ........................................................ 5

            2.    Thomson's Patent Declaration Forms ........................................... 7

            3.    Disney Admits Encoder Claims are not Essential to the H.264 and H.265 Standards. ............................................................ 8

III.  ANTISUIT INJUNCTIONS ARE EXTRAORDINARY AND SHOULD BE USED SPARINGLY. ................................................................................... 8

IV.   ARGUMENT ...................................................................................................... 10

      A.    Disney's Breach of RAND Counterclaim Itself is Defective and Therefore Cannot Support a Preliminary Injunction. ............................... 10

      B.    Because the Patent Claims in Brazil Are Not RAND-Encumbered as Disney Admits, Disney Cannot Satisfy The Threshold Requirement That This Case Be "Dispositive" of The Brazilian Case. .......................................................................................................... 11

      C.    None of The *Unterweser* Factors Weighs in Favor of Disney's Request. ................................................................................................... 15

            1.    The Brazilian action does not frustrate U.S. policy or threaten this Court's jurisdiction. .................................................. 15

            2.    The Brazilian action is not vexatious or oppressive. .................... 16

            3.    Allowing the Brazilian action to proceed in parallel does not offend equitable principles.............................................................. 17

            4.    The impact of Disney's requested antisuit injunction on international comity is intolerable. .................................................. 18

      D.    Disney Has Done Nothing to Show It Meets the *Winter/eBay* Factors for an Injunction to Issue—Nor Can It. ...................................... 20

V.    CONCLUSION ................................................................................................... 22

McKool Smith, P.C.
Los Angeles, CA

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                              **Page(s)**

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) ........................................................................21

*Apple Inc. v. Qualcomm Inc.*,
   No. 3:17-cv-00108-GPC-MDD,
   2017 WL 3966944 (S.D. Cal. Sept. 7, 2017) .......................................14, 17, 18

*BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition
   Program Admin.*,
   884 F.3d 463 (4th Cir. 2018) .........................................................................8, 9

*Certain Video Capable Electronic Devices*,
   Inv. No. 337-TA-1379 (Jan. 29, 2025).................................................................13

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)..................................................................................10, 20

*Ericsson Inc. v. Samsung Elecs. Co., Ltd.*,
   No. 2:20-CV-00380-JRG, 2021 WL 89980 (E.D. Tex. Jan. 11, 2021) .............20

*Federated Indians of Graton Rancheria v. Haaland*,
   No. 24-cv-08582, 2025 WL 271276 (N.D. Cal. Jan. 10, 2025) ........................21

*Finisar Corp. v. Cheetah Omni, LLC*,
   No. 11-CV-15625, 2012 WL 12931575 (E.D. Mich. Nov. 19, 2012) ..............20

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
   654 F.3d 989 (9th Cir. 2011) ............................................................................20

*In re Unterweser Reederei, Gmbh*,
   428 F.2d 888 (5th Cir. 1970) (*rev'd on other grounds*) ............2, 9-10, 15, 17-18

*Laker Airways Ltd. v. Sabena*,
   731 F.2d 909 (D.C. Cir. 1984).............................................................................9

*Microsoft Corp. v. Motorola, Inc.*,
   696 F.3d 872 (9th Cir. 2012) ........................................................8-9, 13-17, 19

*MWK Recruiting Inc. v. Jowers*,
   833 F. App'x 560 (5th Cir. 2020)..................................................................9, 17

McKOOL SMITH, P.C.
LOS ANGELES, CA

*Quaak v. Klynveld Peat*,
   361 F.3d 11 (1st Cir. 2004) ............................................................16

*Santa Monica Nativity Scenes Comm. v. City of Santa Monica*,
   784 F.3d 1286 (9th Cir. 2015) ......................................................10

*Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.*,
   120 F.4th 864 (Fed. Cir. 2024) ........................................14, 15, 21

*Voda v. Cordis*,
   476 F.3d 887 (Fed. Cir. 2007) ...........................................2, 15, 18

*Winter v. NRDC*,
   555 U.S. 7 (2008) ...........................................................................10

**STATUTES**

35 U.S.C. § 100 *et seq.* ......................................................................1

**OTHER AUTHORITIES**

Brazilian Constitution of 1988..................................................2, 18

U. S. Dist. Ct., Central District of California, Local Rule 7-8 ...............21

Fed. R. Civ. P. 12(b)(6) ...................................................................10

Thomas Wiegand et al, *Overview of the H.264/AVC Video Coding Standards*,
   Vol. 13, No. 7 (July 2003), *available at*:
   http://ip.hhi.de/imagecom_G1/assets/pdfs/csvt_overview_0305.pdf .................5

McKOOL SMITH, P.C.
LOS ANGELES, CA

# I.   INTRODUCTION

Disney asks this Court for the extraordinary remedy of blocking Brazil from administering its own court system based on patent rights in Brazil, because Disney is concerned it *might* lose on the merits in Brazil. Worse still, Disney makes its extraordinary request on a false premise: that the case before this Court has control over, or will be dispositive of, the case about Brazilian patents proceeding lawfully in Brazil. It does not. There is no basis for this drastic ask, and Disney cannot carry its heavy burden for the injunctive relief it seeks.

Patent rights are, by definition, territorial. Basic tenets of international sovereignty and comity protect this principle. This Court, alone, is vested with the authority to decide whether Disney infringes the asserted U.S. Patents and what the appropriate remedies are. *See* 35 U.S.C. § 100 *et seq*. Likewise, Brazilian courts—and Brazilian courts alone—are vested with the authority to decide whether Disney infringes Brazilian patents and what the appropriate remedies are in Brazil.

Despite these well-established principles, Disney is asking this Court to police the Brazilian judicial process. Disney wants this Court to issue an injunction so that *if* a Brazilian court finds that Disney is infringing Brazilian patents, InterDigital would be precluded from pursuing the legally prescribed remedies for that infringement. But just as it would not be appropriate for a Brazilian court to interfere with parallel proceedings before this Court, a U.S. Court should not—absent extraordinary circumstances not present here—interfere with lawful foreign proceedings.

Disney offers a single justification in asking this Court to overlook these fundamental principles—its alleged breach of RAND contract counterclaims that InterDigital has moved to dismiss. Yet, Disney admits that the Brazilian patent claims *are not essential and are therefore not RAND-encumbered* because every asserted claim relates only to e<u>n</u>coding, a subject not specified or mandated by the H.264 and H.265 standards. Because Disney admits that RAND-encumbered patent claims are not at issue in Brazil, *there can be no breach of any contractual RAND commitment*

McKool Smith, P.C.
Los Angeles, CA

in Brazil. Disney's RAND counterclaims here—even if they are permitted to proceed—are irrelevant to the Brazilian action. If InterDigital's motion to dismiss is granted, as it should be, this Court can and should summarily deny Disney's request for an antisuit injunction as moot.

Beyond this predicate deficiency to Disney's motion, there are at least three additional independent reasons to deny Disney's requested antisuit injunction. Each of these reasons, alone, is enough to deny Disney's request.

**First**, an antisuit injunction may be appropriate only if this case is dispositive of the foreign proceeding. But the case before this Court, even if Disney's defective counterclaims are not dismissed, is *not* dispositive of the case before the Brazilian court. In fact, as Disney concedes in Brazil, the asserted Brazilian patent claims are not essential to the standard—as they must be to trigger any contractual RAND commitment. Disney's RAND counterclaims here, even if not dismissed, are not dispositive to the Brazilian action—they are irrelevant to it.

**Second**, Disney does not satisfy the *Unterweser* factors, and, even if it did, the profound impact of an antisuit injunction on comity is intolerable. The Brazilian case—which concerns only the enforcement of Brazilian patent claims for Disney's infringement in Brazil—is not threatening this Court's jurisdiction, nor is it vexatious. Because patents are territorial rights, this Court lacks power to adjudicate Brazilian patents in Brazilian proceedings. Disney's request that this Court interfere with the sovereign application of another country's patent laws is both contrary to U.S. law under *Voda v. Cordis*, 476 F.3d 887 (Fed. Cir. 2007), and a violation of the Brazilian Constitution of 1988.

**Finally**, even if injunctive relief were available, Disney has not come close to meeting any of the *Winter/eBay* factors for an injunction, which the Supreme Court also requires for preliminary injunctions. Disney is not likely to succeed on the merits and its alleged harm is purely speculative, not irreparable.

Because Disney asks for extraordinary relief unsupported by the law and facts,

its motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    InterDigital Has Only Asserted Non-Essential <u>En</u>coding Patent Claims Against Disney in the U.S., Europe, Germany, and Brazil.

InterDigital first approached Disney about its infringement of InterDigital's patents in July 2022. Since then, Disney has continued to engage in the unauthorized use of InterDigital's patents.

On February 2 and 3, 2025, InterDigital initiated infringement proceedings against Disney in the U.S., Brazil, Germany, and before the European Unified Patent Court ("UPC") under the patent laws of each jurisdiction. Although Disney asks this Court to issue an antisuit injunction as to the Brazilian action, it makes no similar request regarding either the German or UPC actions.

In the Brazilian action, InterDigital asserted two patents: PI 0305519-1 and PI 0318825-6. These patents include only video <u>en</u>coding claims:

| Patent | Asserted Claim Language |
|---|---|
| PI 0305519-1 | Claim 8: Method for ==encoding== video data for a image block, the method being characterized by the fact that it comprises the steps of: |
| PI 0318825-6 | Claim 1: Method (700) of ==encoding== video signal data for an image block, |

As shown above in yellow, each of the asserted patent claims in Brazil relates only to video <u>en</u>coding.[1] Ex. 1 (Brazilian Complaint) at 24-25. None of the patent

---

[1] <u>En</u>coding refers to compressing a video into an efficient bitstream, usually for transmission, whereas decoding refers to decompressing a bitstream for viewing.

McKool Smith, P.C.
Los Angeles, CA

1    claims asserted against Disney in this case, or in any of the foreign proceedings, cover

2    video <u>de</u>coding. Ex. 2 (Aboim *et al.* Decl.) ¶¶ 3-4; *see also* Plaintiffs' Motion to

3    Dismiss ("MTD"), Dkt. 54-1 at 9 (describing how all claims at-issue here relate only

4    to video <u>en</u>coding).

5         **B.    The H.264 and H.265 Standards Only Standardize <u>De</u>coding.**

6         The International Telecommunications Union ("ITU") is a standard setting

7    organization headquartered in Geneva, Switzerland. Ex. 3 (Levin Decl.) ¶ 8. The

8    ITU's longstanding objective is to create global telecommunications standards that

9    help "ensure [the] compatibility of technologies and systems on a worldwide basis."

10   Ex. 4 (2012 Guidelines) at 146.

11        In May 2003, the ITU approved Recommendation H.264, which is an

12   international video decoding standard. Ex. 5 (H.264 Recommendation) at 157. In

13   April 2013, the ITU approved Recommendation H.265, the successor to the H.264

14   standard. Ex. 3 (Levin Decl.) ¶ 12. The H.264 and the H.265 standards are

15   specifications that define technical requirements for video decoders and the video

16   decoding process. Ex. 6 (Richardson Decl.) ¶ 18. In Brazil, Disney and its experts all

17   agree that these standards only specify and define non-standardized decoding

18   functionality. Ex. 7 (Disney Answer to Brazilian Complaint) at 222; Ex. 11 (Novo

19   Decl.) at 793 (Disney's Brazilian expert agreeing); Ex. 10 (Bermudez Decl.) at 683

20   (same). Neither the H.264 standard nor the H.265 standard sets forth any technical

21   requirements for video encoders or the video encoding process. Ex. 6 (Richardson

22   Decl.) ¶ 20.

23        The ITU published specification documents confirming the scope of these

24   standards. Ex. 5 (H.264 Recommendation); Ex. 12 (H.265 Recommendation).

25   Recommendation H.265 defines the term "<u>en</u>coding process" as "[a] process *not*

26

27

28

McKOOL SMITH, P.C.
LOS ANGELES, CA

1  *specified* in this Specification[.]"[2] Ex. 12 (H.265 Recommendation) at 902 (emphasis

2  added).

3      A 2003 publication authored by the co-chairs of the standardization group that

4  developed the H.264 standard confirms that only decoding is within the "scope of the

5  standard":



13  Thomas Wiegand et al., *Overview of the H.264/AVC Video Coding Standards*, Vol.

14  13, No. 7 (July 2003), *available at*:

15  http://ip.hhi.de/imagecom_G1/assets/pdfs/csvt_overview_0305.pdf (emphasis added);

16  *see also* Ex. 6 (Richardson Decl.) ¶ 24. The paper also explains that "only the central

17  decoder is standardized" to afford implementers "***maximal freedom*** to optimize

18  [encoder] implementations" for "specific applications . . . ." *See id.*; *see also* MTD at

19  8.

20      **C.    The ITU Commitment to License Essential Decoder Claims**

21          1.    ITU Patent Declaration Form

22      The ITU developed its Common Patent Policy in 1998. To do so, the ITU

23  selected Arthur Levin as one of nine people selected to develop the policy. Ex. 3

24  (Levin Decl.) ¶ 13. Mr. Levin was employed with the ITU for more than eighteen

25  years and is deeply knowledgeable about the organization's practices, workings, and

26  decisions. *Id.* ¶¶ 4-7.

27  _____

28  [2] The ITU uses the term "Specification" and "Recommendation" interchangeably. Ex.
3 (Levin Decl.) ¶ 9 n.1.

McKool Smith, P.C.
Los Angeles, CA

McKool Smith, P.C.
Los Angeles, CA

The objective of the ITU's Common Patent Policy is to ensure that patent claims that are *actually* "essential" to the standards are available to license on reasonable and non-discriminatory ("RAND") terms. Ex. 4 (2012 Guidelines) at 146. The ITU achieves this objective by requiring that any member who submits a proposal for technology for inclusion in a standard must also submit a Patent Declaration form that commits to license on RAND terms any patent claims that *may be* essential to that standard. *Id.* at 149; Ex. 3 (Levin Decl.) ¶ 16.

The ITU Patent Declaration form makes clear that any RAND licensing commitment provided on the form only applies to *essential* patent claims—*i.e.*, just because a patent is declared does not mean that it contains actually *essential* claims. Ex. 4 (2012 Guidelines) at 149. Nor does it mean that all claims of the declared patent are actually *essential*. *Id.* For instance, the licensing declaration language on the second page of the form refers to "Patent," which is defined at the bottom of the page as "***those claims*** contained in and identified by patents . . . ***solely to the extent that any such claims are essential to the implementation of the same above document***." *Id.* (emphasis added). Moreover, box 2, which is the licensing option relevant here, serves as a commitment that "[t]he Patent Holder is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions ***to make, use and sell implementations of the above document***." *Id.* (emphasis added); Ex. 13 (Thomson 2012 ITU Declaration) at 909; Ex. 14 (Thomson 2014 ITU Declaration) at 941; Ex. 15 (InterDigital 2020 ITU Declaration) at 945; *see also* MTD at 6 n.8.

The ITU's Patent Declaration form confirms that any licensing commitment provided by a patent holder only applies to actually *essential-in-fact* patent claims and does not cover any claims (even if declared) that are not required for implementation of a standard. Ex. 4 (2012 Guidelines) at 149; Ex. 3 (Levin Decl.) ¶¶ 23-27. This is consistent with the objective of the Common Patent Policy as the ITU is interested in seeking licensing commitments only for those patent claims that are actually essential

1    to implement its published Recommendations, such as H.264 and H.265. Ex. 3 (Levin

2    Decl.) ¶ 27; Ex. 4 (2012 Guidelines) at 146, 149. Shortly after approval of the H.265

3    standard, the ITU released a publication confirming that just because a patent is listed

4    on a Patent Declaration form, that patent (or claims thereof) may not be essential to

5    the published standard. Ex. 3 (Levin Decl.) ¶ 35.

                        2.    Thomson's Patent Declaration Forms

7         Disney contends that the Patent Declaration forms submitted by InterDigital's

8    predecessor (Thomson[3]) serve as evidence that the Brazilian patent claims are RAND-

9    encumbered (notwithstanding Disney's contrary admissions in Brazil)—going so far

10   as to imply that the mere act of declaring a patent establishes that its claims are in fact

11   *essential* and subject to a RAND commitment. *See, e.g.*, Dkt. 50-1 (Mot.) at 7-9; *see*

12   *also* Exs. 13, 14 (Thomson Patent Declarations). However, Disney's assertions in

13   Brazil directly contradict its representations to this Court: there, Disney and its experts

14   all agree that merely listing a patent on a Patent Declaration form does not establish

15   that its claims are in fact *essential*. Ex. 7 (Disney Brazil Answer) at 260 (agreeing that

16   "simply because a patent has been declared essential to a standard does not mean that

17   a party necessarily uses the patent or that the patent is, in fact, essential"); *id.* at 202-

18   03 (same). The language on the face of Thomson's declarations confirms, however,

19   that its RAND commitment applies only to those patent claims that are shown to be

20   *essential* to implement the H.264 and H.265 standards. Ex. 13 at 909; Ex. 14 at 941

21   (Thomson Patent Declarations) (declaring it would "grant a license to an unrestricted

22   number of applicants on a worldwide, non-discriminatory basis and on reasonable

23   terms and conditions *to make, use and sell implementations of [Recommendation*

24   *H.264/H.265]*.") (emphasis added).

25

26

27   ───────────────
     [3] InterDigital acquired the Brazilian patents from Thomson Licensing, a subsidiary of
28   Technicolor, as part of a larger acquisition of Technicolor's licensing and research and
     development programs.

McKool Smith, P.C.
Los Angeles, CA

3.   Disney Admits Encoder Claims are not Essential to the H.264 and H.265 Standards.

In Brazil, Disney expressly admits that encoder claims (*i.e.*, the only claims at-issue in this case and in the Brazilian case) are *not* essential and are *not* subject to any RAND commitment. As Disney explains: "the H.264 and H.265 standards refer to DECODING, ***not encoding***. This means that the standards ***do not require the use of any specific encoding method***, and video encoders have the flexibility to implement different encoding methods." Ex. 7 (Disney Brazil Answer) at 222 (emphasis added; capitalization in original); Ex. 10 (Bermudez Decl.) at 683 (Disney's expert admitting "there are no standards for the encoding process"); Ex. 11 (Novo Decl.) at 793; *see, e.g.*, Ex. 9 (Zatt Decl.) at 566 (Disney's expert admitting "[t]he encoder adopted by Disney+ generates *bitstreams* compatible with the H.264/AVC standard").

Disney's expert Dr. Novo is explicit that encoders are not covered by the H.264/H.265 standards: "[H.264 and H.265] exclusively define the decoding process, without establishing guidelines or requirements for the encoding process. . . [T]here is no mandatory standardization for the encoding stage within the ITU-T H.264 and ITU-T H.265 specifications." Ex. 11 (Novo Decl.) at 793. These admissions undermine Disney's position before this Court that RAND obligations somehow attach to encoder claims even though the standards only cover decoder claims.[4]

## III.   ANTISUIT INJUNCTIONS ARE EXTRAORDINARY AND SHOULD BE USED SPARINGLY.

Preliminary injunctions are extraordinary remedies. Even more extraordinary are antisuit injunctions which, for at least two reasons, must be "used sparingly." *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012); *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 479 (4th Cir. 2018). First, parallel proceedings in different jurisdictions are

---

[4] Disney also argues that the Brazilian patents are *not* infringed and are *not* essential (and are not subject to a RAND commitment). Ex. 7 (Disney Brazil Answer) at 222.

McKool Smith, P.C.
Los Angeles, CA

common, and the default rule allows them. *BAE*, 884 F.3d at 480. Second, an antisuit injunction "effectively restrict[s] the foreign court's ability to exercise its jurisdiction." *Laker Airways Ltd. v. Sabena*, 731 F.2d 909, 927 (D.C. Cir. 1984). "Thus, only in the most compelling circumstances does a court have discretion to issue an antisuit injunction." *Id.* Given the serious risk that granting a request for an antisuit injunction will interfere with foreign sovereignty and violate basic principles of comity, Disney bears a heavy burden to prove its entitlement to injunctive relief.

Though circuit courts are split on the proper test for foreign antisuit injunctions,[5] courts in the Ninth Circuit look to whether "the parties and the issues are the same in both the domestic and foreign actions," and whether "the first action is dispositive of the action to be enjoined." *Microsoft*, 696 F.3d at 881. Determining whether the domestic action is "dispositive" of the foreign action requires, at minimum, a "tentative assessment of the merits" of the claims. *Id.* at 884. If the movant cannot meet both threshold requirements, the analysis ends and the antisuit injunction is denied.

If both threshold requirements are met, the court then considers the "*Unterweser* factors," which originate from the Fifth Circuit. *Id.* The *Unterweser* factors examine whether allowing the foreign case to proceed in parallel with the domestic action would: "(1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) cause prejudice or offend other equitable principles." *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020) (citing *In re Unterweser Reederei, Gmbh*, 428 F.2d 888, 890 (5th Cir. 1970) (*rev'd on other grounds*)); *see also Microsoft*, 696 F.3d at 882 (reciting same factors). If the movant does not satisfy at least one *Unterweser* factor, the analysis is over and the injunction is denied.

---

[5] *See BAE*, 884 F.3d at 479.

If the threshold requirements are met, and the *Unterweser* factors weigh in favor of foreign-interference injunctive relief, the court then considers whether the injunction's "impact on comity is tolerable." *Id.* If the movant cannot show that it is, then no injunction issues.

In addition to all of these factors, to prevail on its requested preliminary injunction, Disney must also meet the traditional *Winter/eBay* factors: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *See, e.g.*, *Winter v. NRDC*, 555 U.S. 7, 20 (2008) (reversing the Court of Appeals for the Ninth Circuit and removing the preliminary injunction against the Navy's training exercises because the movant could not satisfy the traditional injunction factors); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (applying the same injunction factors in patent cases according to the "well-established principles of equity").

## IV.    ARGUMENT

### A.    Disney's Breach of RAND Counterclaim Itself is Defective and Therefore Cannot Support a Preliminary Injunction.

Disney asserts that an antisuit injunction is required so the Court can "resolve[] Defendants' breach of RAND licensing claims in this action." Mot. at 14. However, Disney's breach of RAND counterclaim should be dismissed because: (1) Disney did not and cannot allege that any of the asserted <u>en</u>coder claims at-issue are "essential" under the ITU Common Patent Policy because the policy covers only <u>de</u>coder claims, so no RAND commitment attaches; and (2) Disney did not allege it makes a product implementing either the H.264 or H.265 standards. *See* MTD at 3-4. If Disney's RAND-based counterclaims are dismissed, the Court can deny Disney's requested antisuit injunction as moot. *See, e.g.*, *Santa Monica Nativity Scenes Comm. v. City of Santa Monica*, 784 F.3d 1286, 1291 n.1 (9th Cir. 2015) (declining to assess merits of preliminary injunction because dismissal under Rule 12(b)(6) was proper).

McKool Smith, P.C.
Los Angeles, CA

**B.** **Because the Patent Claims in Brazil Are Not RAND-Encumbered as Disney Admits, Disney Cannot Satisfy The Threshold Requirement That This Case Be "Dispositive" of The Brazilian Case.**

The Brazilian action concerns Brazilian patent claims that ***Disney admits are not essential and are not RAND-encumbered*** under the ITU Common Patent Policy. Disney has therefore conceded that RAND is not an issue in Brazil, so any RAND ruling in this case (if Disney's counterclaims are not dismissed) is irrelevant in Brazil. Even if Disney's pleadings ***in this case*** alleged some colorable RAND-based counterclaim sufficient to survive a motion to dismiss (they do not), Disney has admitted that the patent claims at-issue in the ***Brazilian action*** are not essential and are not subject to any RAND commitment. Absent essential and RAND-committed patent claims ***in Brazil***, any breach of RAND claim that survives the motion to dismiss before this Court has no bearing in Brazil.

1. Only actually "essential" patent claims can be RAND-encumbered.

By completing the ITU Licensing Declaration Form, a patent owner voluntarily enters a contract with the ITU for claims in declared patents that are also shown to be actually "essential." Like any contract, the scope of the obligations is limited to the contract's express terms.

For the ITU, a patent owner's declaration that it will be prepared to grant licenses on RAND terms and conditions applies to "those *claims* contained in and identified by patents . . . solely to the extent that any such *claims* are *essential* to the implementation of a Recommendation | Deliverable." Ex. 4 (2012 Guidelines) at 149 (emphasis added). Claims of a patent are subject to the ITU's contractual RAND commitment, but "***solely to the extent*** that any such claims ***are essential***." *Id.* (emphasis added).

Disney emphasizes that InterDigital declared to the ITU that the Brazilian patents *may* contain one or more claims essential to the specified standard. *See* Mot. at 8-9. But merely listing the Brazilian Patents on a Patent Declaration form does not

McKool Smith, P.C.
Los Angeles, CA

1    alter the scope of the ITU's well-established contractual RAND commitment. Ex. 14
2    (Thomson 2014 ITU Declaration) at 942; Ex. 3 (Levin Decl.) ¶¶ 32-34. Before the
3    Brazilian Court, Disney admits that declaring a patent to the ITU *does not* establish
4    that any claims in that patent are actually "essential." *See* Ex. 7 (Disney Brazil
5    Answer) at 260, 202-03 ("[S]imply because a patent has been declared essential to a
6    standard does not mean that a party necessarily uses the patent or that the patent is, in
7    fact, essential[.]").

8                    2.  Patent claims covering video *en*coding are not "essential."

9            Whether a patent claim is essential is defined by the ITU Patent Policy. An
10   essential patent claim is one "that would be *required* to implement a specific
11   Recommendation | Deliverable." Ex. 4 (2012 Guidelines) at 149 (emphasis added). If
12   the patent claim is proven to be *actually necessary* for implementing a portion of the
13   video standards, it is "essential" under the ITU Patent Policy. *See id.* But, if the
14   standard does not require the use of an invention covered by a patent claim, that claim
15   is not and cannot be "essential" or RAND-encumbered.

16           Video <u>de</u>coding is defined and required by the H.264 and H.265 standards;
17   video <u>en</u>coding is explicitly ***carved out and is not required*** by these standards. The
18   H.265 standard defines "encoding process" as "[a] process ***not specified*** in this
19   Specification that produces a bitstream conforming to this Specification." Ex. 12 at
20   902 (emphasis added). In fact, references to an encoding process in the standard are
21   merely "informative," which is "[a] term used to refer a content provided in this
22   Specification that ***does not*** establish any mandatory requirements for conformance to
23   this Specification and thus *is not considered an integral part* of this Specification."
24   Ex. 12 at 902 (emphasis added). The standard is clear—it does not mandate or
25   otherwise establish required operation for video <u>en</u>coding. Ex. 6 (Richardson Decl.) ¶¶
26   20-25. Excluding <u>en</u>coding from the scope of the standards was an intentional choice
27   by the creators of the standard to preserve maximum flexibility for implementing non-
28   standardized <u>en</u>coders. *See supra* Section II.

McKool Smith, P.C.
Los Angeles, CA

McKool Smith, P.C.
Los Angeles, CA

On this point, Disney takes the opposite position here from its clearly stated position in Brazil. There, Disney admits that <u>en</u>coding is not covered by the H.264 or H.2654 standards: "the H.264 and H.265 standards refer to <u>DE</u>CODING, ***not encoding***. This means that ***the standards do not require the use of any specific encoding method*** . . . ." Ex. 7 (Disney Brazil Answer) at 222 (emphasis added, capitalization in original). Disney's experts agree that encoding claims are not essential: "[H.264 and H.265] exclusively define the *decoding* process, without establishing guidelines or requirements for the *encoding* process. . . . [T]here is no mandatory standardization for the *encoding* stage within the ITU-T H.264 and ITU-T H.265 specifications." Ex. 11 (Novo Decl.) at 793 (emphasis added); Ex. 10 (Bermudez Decl.) at 683 (Disney's expert admitting "there are no standards for the encoding process"); *see, e.g.*, Ex. 9 (Zatt Decl.) at 556 (Disney's expert admitting that Disney only creates bitstreams compatible with the standards but offering no opinion that the encoding process is standardized).

### 3. RAND issues are not relevant to *en*coding claims.

Because the standards do not require the use of any specific <u>en</u>coding method, <u>en</u>coding patent claims cannot be essential. That means they cannot be subject to any contractual RAND obligation.

That <u>en</u>coding patent claims are neither essential nor RAND-encumbered was recently confirmed by the U.S. International Trade Commission—a forum familiar with deciding F/RAND-related disputes. *See* MTD at 13. There, the ALJ held that because the H.264 Standard does not specify an encoding process, "RAND issues . . . are not relevant to encoding claims." *Certain Video Capable Electronic Devices*, Inv. No. 337-TA-1379, at *102 (Jan. 29, 2025) (Initial Determination). In that ITC case, like here, both parties' experts admitted that the H.264 standard does not impose a RAND obligation on <u>en</u>coding claims. *See* MTD at 13 (quoting ITC experts' testimony).

Disney relies heavily on *Microsoft* to argue that the threshold "dispositive"

factor is met here. But *Microsoft* supports InterDigital, not Disney.

In *Microsoft*, the Ninth Circuit concluded that a court must make an "assessment of the merits of the contract dispute" to determine whether the domestic contract claim was dispositive of the foreign patent infringement actions. 696 F.3d at 883. There (and unlike here), both parties agreed that the RAND commitment applied to the patent claims in the German litigation and that Microsoft could enforce that commitment as a third-party beneficiary. *Id.* at 884. Because of the agreement that RAND was at-issue both domestically *and* in the foreign case, the *Microsoft* court held that the district court did not abuse its discretion in finding that the U.S. contract action was dispositive of the German patent action. *Id.* at 884-85.

But the Ninth Circuit went on to explain what might happen under a different fact pattern—like the one here. The Ninth Circuit concluded that if "the district court's interpretation of the RAND commitment as a contract enforceable by Microsoft was fundamentally legally erroneous, ***then we would have to conclude that it was an abuse of discretion*** for the district court to rule that the U.S. contract action might dispose of the German patent action." *Id.* at 884. Unlike *Microsoft*, where the parties agreed that the patents in Germany were RAND-encumbered, InterDigital and Disney agree here that ***no*** essential patents are at-issue in Brazil because no RAND commitment applies to <u>encoding</u> claims. Because no RAND commitment applies to the patent claims in the Brazilian action, there is no contractual commitment that is enforceable by Disney in relation to the Brazilian action. *See also Apple Inc. v. Qualcomm Inc.*, No. 3:17-cv-00108-GPC-MDD, 2017 WL 3966944, at *11 (S.D. Cal. Sept. 7, 2017) (declining to issue antisuit injunction and noting that "Qualcomm has failed to adequately explain how this Court's adjudication of Qualcomm's global contractual FRAND commitment to ETSI would moot Apple's foreign patent claims").

*Lenovo*, which relied on *Microsoft*, is in accord—the Federal Circuit assumed without deciding that the cellular patents at-issue were subject to a FRAND

McKool Smith, P.C.
Los Angeles, CA

commitment (under a different standard and patent policy promulgated by the European Telecommunications Standards Institute). It then remanded the denial of an antisuit injunction to the lower court for further analysis. *Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.*, 120 F.4th 864, 868 n.5 (Fed. Cir. 2024). Despite months passing after remand, Lenovo never re-urged its motion for an antisuit injunction and the case settled without further action at the district court.

Because there is no agreement that the claims at-issue both here and in Brazil are RAND-encumbered (as was the case in both *Microsoft* and *Lenovo*), this Court would need to independently determine that the claims at-issue in Brazil—which Disney admits are not essential—are nonetheless RAND-encumbered notwithstanding Disney's contrary assertion. This is a claim-by-claim infringement-like analysis that that a U.S. Court should not ordinarily undertake with respect to foreign patents. *Voda*, 476 F.3d at 901-02 (holding that the district court abused its discretion in exercising supplemental jurisdiction over foreign patent issues).

## C. None of The *Unterweser* Factors Weighs in Favor of Disney's Request.

### 1. The Brazilian action does not frustrate U.S. policy or threaten this Court's jurisdiction.

The Brazilian action concerns infringement of Brazilian patent claims based on Disney's acts of infringement within Brazil. Allowing the Brazilian case to continue in parallel—as it has been doing—does not frustrate U.S. policy or threaten this Court's jurisdiction.[6]

It is a reach for Disney to argue that the U.S. has a "policy against granting injunctions in cases involving SEPs when the patent holder refuses to offer a license on RAND terms." Mot. at 17. Like Disney's other arguments, this one is based on its

---

[6] Disney implicitly concedes that allowing the German and UPC cases—that it does not seek to enjoin—to proceed in parallel and possibly result in injunctive relief does not frustrate a policy of the U.S. or threaten this Court's jurisdiction.

factually erroneous premise that the claims in Brazil are RAND-encumbered—they are not (as Disney has admitted, and as InterDigital disputes). Even if they were RAND-encumbered, Disney's argument fails because it recognizes that InterDigital made "a comprehensive economic offer to Disney" on August 23, 2024. Dkt. 50-16 at 6. But Disney presents no evidence about whether the "comprehensive economic offer" was RAND or not. And Disney tacitly admits that InterDigital could seek injunctive relief if its "comprehensive economic offer" was RAND. *See* Mot. at 18 (claiming the RAND commitment prevents InterDigital from seeking "an injunction *if it did not first offer RAND terms*"). So even *if* Disney could establish that the Asserted Claims of the Asserted Patents at-issue here were RAND-encumbered (and it cannot), and even *if* there was a policy in the U.S. that injunctions should not issue before a RAND offer is given, Disney has not met its burden of showing this supposed policy is being frustrated.

Disney also has not shown that it has been deprived of a fair opportunity to present its defenses in Brazil, that Brazilian courts are incapable of answering these questions, or that Brazilian courts would substitute their own judgment on these questions for that of another court. In fact, Disney asked the Brazilian Court to decide the issue of infringement of the Brazilian patents *before* the Brazilian Court addresses any RAND claim there. *See* Ex. 7 (Disney Brazil Answer) at 180-81. Nor does Disney articulate how the U.S. has some greater policy interest in interpreting the ITU contract compared to the Brazilian courts.[7] U.S. courts are not the sole global arbiter of ITU RAND obligations.

### 2.    The Brazilian action is not vexatious or oppressive.

Nothing about the Brazilian action is vexatious or oppressive. Vexatious or oppressive litigations are "without reasonable or probable cause or excuse; harassing; annoying." *Microsoft*, 696 F.2d at 886. Examples of "vexatious or oppressive"

---

[7] The ITU Common Patent Policy does not specify a choice of law.

McKool Smith, P.C.
Los Angeles, CA

1  proceedings are orders that directly attack the U.S. court's authority. *See, e.g.*, *Quaak*

2  *v. Klynveld Peat*, 361 F.3d 11 (1st Cir. 2004) (issuing antisuit injunction because

3  Belgium court issued order prohibiting local companies from providing discovery).

4      The Brazilian action concerns the enforcement of Brazilian patent rights under

5  Brazilian law and procedure of the only country who can adjudicate those rights:

6  Brazil. This Court cannot adjudicate those Brazilian patents, nor will the action before

7  this Court dispose of the Brazilian proceedings. InterDigital filed its Brazilian case on

8  February 3, 2025, before Disney asserted its RAND-based counterclaims in this Court

9  on March 30, 2025. *Compare Microsoft*, 696 F.2d at 886 (examining the district

10  court's conclusion that the German action was vexatious since it was brought to

11  "interfere with the [U.S.] court's ability to decide the contractual questions already

12  properly before it"), *with Qualcomm*, 2017 WL 3966944, at *12 (concluding Apple's

13  foreign litigation was not vexatious because they were brought "before the parties'

14  pleadings [in the U.S. action] were finalized and before this Court ever made a ruling

15  on the merits"), *and MWK Recruiting Inc.*, 833 F. App'x at 564 (explaining that,

16  under this *Underweser* factor, a parallel proceeding is not vexatious or duplicitous

17  simply because it shares "underlying operative facts"—it must "involve the same or

18  similar *legal* bases" or "identical claims").

19          3.  Allowing the Brazilian action to proceed in parallel does not

20              offend equitable principles.

21      Disney claims that allowing the Brazilian action to proceed undisturbed could

22  threaten its profits and business interests in Brazil. Even assuming this is true, it does

23  not move the needle. Disney has no right in equity or otherwise to profit from

24  continued patent infringement. Disney is defending itself in Brazil according to

25  Brazilian law (*e.g.*, by denying infringement), and no injunctive remedy has issued.

26  Ex. 2 (Aboim *et al.* Decl.) ¶ 12. There is no pretextual motive here: InterDigital is

27  lawfully enforcing its foreign patent rights in accordance with Brazilian law. *See*

28  *Qualcomm*, 2017 WL 3966944, at *14 (finding equities weighed against antisuit

McKool Smith, P.C.
Los Angeles, CA

1    injunction where Apple "has legitimate reasons for pursuing parallel actions,"

2    including to "vindicat[e] its rights under foreign anticompetition and patent law"). The

3    law is clear: "[e]quity does not demand that a court enjoin a non-identical parallel

4    proceeding simply because it is burdensome to defend oneself." *Qualcomm*, 2017 WL

5    3966944, at *15.

### 4. The impact of Disney's requested antisuit injunction on international comity is intolerable.

8        Even if the *Unterweser* factors weighed in favor of Disney (they do not),

9    Disney's requested relief intolerably offends international comity. The Brazilian

10   action concerns only Disney's infringement of *Brazilian* patents *in Brazil*. It is black-

11   letter law that a "patent right is limited by the metes and bounds of the jurisdictional

12   territory that granted the right to exclude." *Voda*, 476 F.3d at 901-02; *see also id.*

13   (explaining that it is plainly "incongruent to allow the sovereign power of one to be

14   infringed or limited by another sovereign's extension of its jurisdiction").

15       Disney's request also violates the Brazilian Constitution of 1988 because it

16   impedes access to the Brazilian court and the remedies it can provide under Brazilian

17   law. Ex. 2 (Aboim *et al.* Decl.) ¶¶ 19-20. The Brazilian Code of Civil Procedure

18   establishes that civil jurisdiction shall be governed by Brazilian procedural norms in

19   accordance with the provisions of the Code (article 16). *Id.* ¶ 18. The same statute

20   provides that it is the responsibility of the Brazilian judicial authority to process and

21   judge actions in which the basis is a fact or acts occurred in Brazil (article 21, item

22   III). *Id.* It further provides that an action filed before a foreign court neither constitutes

23   a duplicate litigation nor prevents the Brazilian judicial authority from hearing the

24   same cause of action, except for contrary provisions in international treaties and

25   bilateral agreements in force in Brazil. *Id.*

26       Unsurprisingly, Brazilian Courts have also held that decisions issued in foreign

27

28

McKool Smith, P.C.
Los Angeles, CA

courts do not bind the outcome of the lawsuit in Brazil.[8] *Id.* ¶ 21. In a Brazilian decision issued in 2024, in the context of an injunction entered in a standard essential patent case, a Court held that "[r]egarding the action before the British Court, any proceedings there do not prevent the continuation of this case, as it is a Foreign Court, which does not exclude the jurisdiction of the Brazilian Justice to decide on violations that occurred on Brazilian territory."[9] *Id.*

Disney gives little more than lip service to the notion of comity by pointing to *Microsoft*, but the caselaw has evolved. Since that 2012 decision, numerous courts faced with antisuit injunctions in F/RAND related cases have held that they *are* a direct attack on their jurisdiction. Ex. 19 at 1076 (issuing an anti-interference injunction because "it is totally impermissible for a Court in one sovereign jurisdiction to injunct the party before it from pursuing its cause against infringement of its intellectual property before another sovereign jurisdiction, where such latter jurisdiction is the only forum competent to adjudicate the claim of infringement"); Ex. 20 at 1122 (issuing an anti-interference injunction and explaining that "an ASI issued by a foreign court cannot be recognized in Germany due to a violation of public policy"); Ex. 16 at 962 (French court finding that the prospective antisuit injunction requested from a U.S. court "constitutes an interference in the jurisdiction of the courts and has the effect of indirectly disregarding the exclusive jurisdiction recognized for each state to freely define the international jurisdictional competence of their courts"); Ex. 17 at 974-76 (the UK court followed suit). This confirms that foreign courts view these injunctions as an affront to comity.

Courts in the U.S. share this view. When faced with a foreign interference injunction from a court in China that prevented Ericsson from seeking injunctive relief

---

[8] Similarly, "German courts are not bound by, and will make their own determination regarding any potential FRAND/RAND arguments." Ex. 18 (Schumacher Decl.) ¶ 4.
[9] InterDigital filed a request in Brazil for the Brazilian court to issue an anti-interference injunction against Disney to prevent Disney from interfering with InterDigital's right to have the Brazilian court adjudicate the Brazilian patent issues.

on its patents in the U.S., the District Court in the Eastern District of Texas acted quickly to issue an anti-interference injunction, concluding that the Chinese injunction was "frustrat[ing] this Court's compelling interest in ensuring that litigation within its legitimate jurisdiction proceed in this forum." *Ericsson Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:20-CV-00380-JRG, 2021 WL 89980, at *5 (E.D. Tex. Jan. 11, 2021). The court "insist[ed] that it be permitted to adjudicate the issues raised here pursuant to its own legitimate jurisdiction and without interference." *Id.* at *6. Just like foreign courts, U.S. courts targeted by antisuit injunctions are quick to defend their jurisdiction from international attack—as they well should because the antisuit relief Disney seeks is condemned worldwide as a violation of international comity.

**D.    Disney Has Done Nothing to Show It Meets the *Winter/eBay* Factors for an Injunction to Issue—Nor Can It.**

As the party seeking a preliminary injunction, Disney must show it is likely to succeed in proving: (1) a RAND commitment applies to the patent claims; (2) Disney is a third-party beneficiary who can enforce that RAND commitment; (3) InterDigital breached that RAND commitment as to Disney; and (4) that breach of the RAND commitment precludes injunctive relief in the Brazilian action. Disney has not done so with respect to any of these elements.[10] Disney cites a letter noting that InterDigital made "a comprehensive economic offer to Disney" on August 23, 2024. Dkt. 50-16 at 6. But it proffers no evidence about whether the "comprehensive economic offer" was RAND, so Disney cannot meet its burden of showing it is likely to succeed in

---

[10] The Supreme Court in *eBay* stated: "[a]ccording to well-established principles of equity," a party seeking injunctive relief "*must* satisfy [the traditional] four-factor test before a court may grant such relief." 547 U.S. at 391. This applies in patent cases, *id.*, as well as to preliminary injunctive relief. *See, e.g., Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 990 (9th Cir. 2011). Disney acknowledges that it must satisfy the traditional four-factor preliminary injunction test. Mot. at 14-15. Since *eBay*, at least one district court concluded that the traditional test for injunctive relief must be met in the context of a (domestic) antisuit injunction. *See Finisar Corp. v. Cheetah Omni, LLC*, No. 11-CV-15625, 2012 WL 12931575, at *3 (E.D. Mich. Nov. 19, 2012). The Ninth Circuit also noted that there must be some assessment of the merits of the underlying claims on which the injunction is based. *Microsoft*, 696 F.3d at 884.

McKool Smith, P.C.
Los Angeles, CA

showing the offer violated RAND.

Disney suggests it does not have to show InterDigital *breached* a RAND commitment to show that it is likely to succeed on the merits, just that a RAND commitment *exists*. That is wrong. Disney points to nothing in the ITU Common Patent Policy to support its assertion, and courts considering other F/RAND commitments have concluded that injunctions may be available even where the essential patent holder complied with F/RAND. *See, e.g.*, *Lenovo*, 120 F.4th at 877 (explaining that F/RAND commitments "do[] not categorically bar such injunctions" and injunctions on essential patents are available where the F/RAND commitment was satisfied); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1331-33, 1342 (Fed. Cir. 2014) (same).

None of the other preliminary injunction factors weighs in favor of Disney either. Disney does not show the loss of profits and business it fears are "sufficiently imminent to meet the requirements for irreparable harm." *See Federated Indians of Graton Rancheria v. Haaland*, No. 24-cv-08582, 2025 WL 271276, at *7 (N.D. Cal. Jan. 10, 2025). Disney just posits it might be harmed "as soon as" a few months from now, and only *if* it loses on the merits in Brazil, and the injunction it fears "threaten[s] a shutdown of Disney+" in Brazil actually issues (and is that draconian). Mot. at 19. Disney is predicting it will lose the Brazilian case and relying entirely on a conclusory declaration to claim speculative future harm.[11] This does not establish imminent irreparable harm: it posits only speculative harm. Nor has Disney shown that the Brazilian legal system is incapable of accounting for any of the speculative risks it raises with tools like a bond.

Additionally, the balance of equities and the public interest do not favor Disney. It is neither equitable nor in the public interest to interfere in foreign parallel

---

[11] If the Court is inclined to hold a hearing before denying Disney's motion, InterDigital will file a notice of request to cross-examine Disney's declarants under Local Rule 7-8 to show there is no irreparable harm and that Disney is not likely to succeed on the merits of their argument.

proceedings—Disney has articulated no such interest—and such interference offends comity. Doing so will only erode national patent rights and weaken U.S. patent rights if U.S. courts become the target of similar antisuit injunctions.

## V.   CONCLUSION

Disney asks this Court to interfere with proceedings in Brazil involving Brazilian patents and Brazilian remedies. There is no basis for this kind of overreach into Brazil's sovereignty or ability to administer its own court system. Nor can Disney show it is entitled to injunctive relief under traditional factors like likelihood of success on the merits or irreparable harm. The Court should deny Disney's motion.

DATED: May 9, 2025                    Respectfully submitted,


By: */s/ Richard Kamprath*
Alan P. Block (SBN 143783)
ablock@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone:   (213) 694-1200
Facsimile:   (213) 694-1234

Richard Kamprath (SBN 24078767)
rkamprath@McKoolSmith.com
Alexandra F. Easley (SBN 24099022)
aeasley@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone:   (214) 978-4000
Facsimile:   (214) 978-4044

Joshua W. Budwin (SBN 24050347)
jbudwin@mckoolsmith.com
**MCKOOL SMITH, P.C.**
303 Colorado Street, Suite 2100

1      Austin, Texas 78701
2      Telephone:   (512) 692-8700
       Facsimile:    (512) 692-8744
3

4      Kevin L. Burgess (SBN 24006927)
       kburgess@McKoolSmith.com
5      **MCKOOL SMITH, P.C.**
6      104 East Houston Street, Suite 300
       Marshall, Texas 75670
7      Telephone:   (903) 923-9000
       Facsimile:    (903) 923-9099
8

9      Hannah E. Mirzoeff (SBN 6013981)
10     hmirzoeff@McKoolSmith.com
       **MCKOOL SMITH, P.C.**
11     1301 Avenue of the Americas, 32nd Floor
12     New York, New York 10019
       Telephone:   (212) 402-9400
13     Facsimile:    (212) 402-9444

14     Nancy Olson (SBN 260303)
15     nolson@olsonstein.com
       David Stein (SBN 198256)
16     dstein@olsonstein.com
17     **OLSON STEIN LLP**
18     240 Nice Lane, #301
       Newport Beach, CA 92663
19     Telephone: (310) 916-7433

20
21     *Attorneys for Plaintiffs, Interdigital, Inc.,*
       *Interdigital VC Holdings, Inc.,*
22     *Interdigital Madison Patent Holdings,*
       *SAS, and Interdigital CE Patent*
23     *Holdings, SAS.*

24
25
26
27
28

*McKool Smith, P.C.*
*Los Angeles, CA*

P's Opp. To Mtn. for PI             Case No. 2:25-cv-00895-WLH-BFM

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,918 words, which complies with the word limit of L.R. 11-6.1.


*/s/ Richard Kamprath*
Richard Kamprath

McKool Smith, P.C.
Los Angeles, CA