1  RYAN K. YAGURA (S.B. #197619)
   ryagura@omm.com
2  NICHOLAS J. WHILT (S.B. #247738)
   nwhilt@omm.com
3  XIN-YI ZHOU (S.B. #251969)
   vzhou@omm.com
4  O'MELVENY & MYERS LLP
5  400 South Hope Street, Suite 1900
   Los Angeles, CA 90071
6  Telephone: 213-430-6000
   Facsimile: 213-430-6407
7
8  Attorneys for Defendants The Walt Disney
   Company, Disney Media and Entertainment
9  Distribution LLC, Disney DTC LLC, Disney
   Streaming Services LLC, Disney Entertainment &
10 Sports LLC, Disney Platform Distribution, Inc.,
   BAMTech LLC, Hulu, LLC, and ESPN, Inc.

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION AT LOS ANGELES

| | |
|---|---|
| INTERDIGITAL INC., INTERDIGITAL VC HOLDINGS, INC., INTERDIGITAL MADISON PATENT HOLDINGS, SAS, AND INTERDIGITAL CE PATENT HOLDINGS, SAS,<br><br>Plaintiffs and Counterclaim-Defendants,<br><br>v.<br><br>THE WALT DISNEY COMPANY, DISNEY MEDIA AND ENTERTAINMENT DISTRIBUTION LLC, DISNEY DTC LLC, DISNEY STREAMING SERVICES LLC, DISNEY ENTERTAINMENT & SPORTS LLC, DISNEY PLATFORM DISTRIBUTION, INC., BAMTECH, LLC, HULU, LLC, AND ESPN, INC.,<br><br>Defendants and Counterclaim-Plaintiffs. | Case No. 2:25-cv-895-WLH-BFM<br><br>**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION RELATED TO INTERDIGITAL'S REQUEST FOR INJUNCTION IN BRAZIL**<br><br>Judge: Hon. Wesley L. Hsu<br>Magistrate: Hon. Brianna F. Mircheff<br>Hearing: May 30, 2025 at 1:30 pm<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

# TABLE OF CONTENTS

Page

ARGUMENT ........................................................................................................... 2

    I.    InterDigital's Encoding Patents Are RAND-Encumbered ................... 2

        A.    Thomson Declared That the Brazilian Patents Are RAND-Encumbered ................................................................. 3

        B.    InterDigital's Infringement Allegations Rely Exclusively on Mandatory Aspects of the Compression Standards .............. 4

    II.    A Preliminary Injunction Against Enforcement of an Injunction in Brazil Is Justified ................................................................................ 7

        A.    Defendants Satisfy the Threshold Requirements for a Preliminary Injunction ............................................................... 7

        B.    Multiple *Unterweser* Factors Are Met ....................................... 8

            1.    InterDigital's Enforcement of a Brazilian Injunction Will Frustrate Domestic and Public Policies ............................................................................... 8

            2.    InterDigital's Brazilian Action Is Vexatious and Oppressive ................................................................... 10

            3.    The Balance of Equities Decisively Favors Defendants ................................................................... 10

        C.    The Proposed Injunction Will Not Offend Principles of Comity ......................................................................................... 12

    III.    Defendants Meet the *Winter* Factors .................................................. 13

CONCLUSION ..................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ericsson Inc. v. Samsung Elecs. Co.*,
  2021 WL 89980 (E.D. Tex. Jan. 11, 2021) ............................................................. 13

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) ................................................................................ 11

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
  2018 WL 1784065 (N.D. Cal. Apr. 13, 2018) ......................................................... 9

*Microsoft Corp. v. Motorola, Inc.*,
  696 F.3d 872 (9th Cir. 2012) ............................................................................ 7, 10

*Microsoft Corp. v. Motorola, Inc.*,
  871 F. Supp. 2d 1089 (W.D. Wash. 2012) .............................................................. 7

*TCL Commc'ns Tech. v. Telefonaktenbologet LM Ericsson*,
  2014 WL 12588293 (C.D. Cal. Sept. 30, 2014) ...................................................... 5

*Telefonaktiebolaget LM Ericsson v. Lenovo, Inc.*,
  120 F.4th 864 (Fed. Cir. 2024) ......................................................................... 8, 13

*Voda v. Cordis Corp.*,
  476 F.3d 887 (Fed. Cir. 2007) ................................................................................ 8

*Winter v. NRDC, Inc.*,
  555 U.S. 7 (2008) .................................................................................................. 13

InterDigital's Brazilian action was brought in breach of InterDigital's RAND licensing obligations and threatens imminent irreparable injury to Defendants' Disney+ business. InterDigital filed its Brazilian action seeking immediate injunctive relief so that it could capitalize on unreasonable licensing demands before this Court even hears Defendants' counterclaims. Contrary to InterDigital's arguments, under these circumstances, the Ninth Circuit and other courts have granted the temporary preliminary relief Defendants have requested.

InterDigital's primary argument against a preliminary injunction is that its Brazilian Patents are not essential to the accused Compression Standards and are therefore not RAND-encumbered. Specifically, InterDigital argues the asserted Brazilian Patents only relate to video "encoding," and that "encoding" is not a subject of the Compression Standards. This argument conveniently ignores the fact that the Brazilian Patents' prior owner, Thomson, took the opposite position when it explicitly declared to the SSO that these "encoding" patents—including the very same patents asserted in Brazil—are essential to the standards. InterDigital expressly renewed that promise to the SSO on August 24, 2020 and, even now, InterDigital exclusively relies on the Compression Standards to allege infringement in Brazil. The Compression Standards also state that the portions of the standards InterDigital accuses of infringement are "mandatory requirement[s]" of an "encoder." InterDigital's attempt to rewrite the scope of the Compression Standards ignores not only Thomson's statements, but InterDigital's own August 24, 2020 promise and infringement theories.

InterDigital's other arguments opposing a preliminary injunction are similarly contrary to the law and facts in this case. This Court is well within its discretion to issue a preliminary injunction temporarily preventing the enforcement of an injunction against Disney+ in Brazil until it adjudicates Defendants' counterclaims.

# ARGUMENT

## I. InterDigital's Encoding Patents Are RAND-Encumbered

To avoid its RAND obligations, InterDigital creates a false dichotomy between video encoding and decoding and then argues that the Compression Standards do not require *encoding*. Opp. at 12-15. To support this position, InterDigital misinterprets the standards. But the actual evidence presented to the Court demonstrates that at least the relevant InterDigital encoding patents—the Brazilian Patents—are RAND-encumbered.

The pertinent facts presented in Defendants' Motion are undisputed: (1) InterDigital concedes it is obligated to license any patents required to implement the Compression Standards on RAND terms (Dkt. 57 at 12); (2) InterDigital concedes Thomson, the asserted patents' original owner, believed the '301 Patent asserted in this case and the related Brazilian Patents are required by the Compression Standards and declared them as essential patents—and InterDigital does not dispute that InterDigital expressly renewed that promise in 2020 (Dkt. 57-4, ¶31; Dkt. 50-7 at 629; Dkt. 50-8 at 647; Dkt. 50-12); and (3) InterDigital does not dispute that its infringement allegations for those patents are based solely on Defendants' compliance with the very same Compression Standards (Dkt. 50-18, ¶¶15-23).

Notwithstanding that Thomson declared that the '301 Patent and Brazilian Patents are essential to the Compression Standards, InterDigital now argues that no video *encoding* patent claim can be essential to the Compression Standards or subject to RAND obligations. Opp. at 12-15. There is no support for InterDigital's new litigation-inspired position, and InterDigital's Opposition does not even mention, much less attempt to address, Thomson's statements or InterDigital's 2020 promise to license the asserted patents on RAND terms.

### A. Thomson Declared That the Brazilian Patents Are RAND-Encumbered

InterDigital concedes it is bound by Thomson's RAND commitments (Dkt. 54-1 at 6 n.8), and Thomson's actions demonstrate that the Brazilian Patents are RAND-encumbered. Thomson proposed certain encoding features for inclusion in the Compression Standards, filed patent applications purporting to cover these encoding features, and then declared the issued '301 Patent and related Brazilian Patents as essential to the standards. These actions confirm that aspects of encoding are required by the Compression Standards and the Court's analysis should stop there.

InterDigital's own allegations concerning the asserted patents' history confirm they are essential to the Compression Standards. InterDigital's Brazilian Complaint alleges that the Compression Standards adopted the use of a "reference picture index"—an encoding feature accused of infringement in this case and the Brazilian action—based on a proposal from Thomson. Dkt. 50-24 at 1389-90. InterDigital alleges Thomson proposed to the Joint Video Team ("JVT")—the committee that developed the Compression Standards—the use of a "reference picture index" for encoding images. *Id.* at 1389. During a meeting on July 22-26, 2002, the JVT adopted Thomson's proposal and added Thomson's proposed feature to the H.264 Standard. *Id.* at 1389-90 ("JVT-D122 method adopted …").

On July 15, 2002—a week before the meeting—Thomson filed two patent applications purporting to cover using a "reference picture index" for video encoding, as proposed to the JVT. Dkt. 50-28 at 1629 ("Related U.S. Application Data" lists two applications filed on "Jul. 15, 2002"). These applications ultimately led to the issuance of the '301 Patent asserted in this case and the two related Brazilian Patents. Dkts. 50-28, 50-29, 50-30. All three patents are directed to video *encoding* and only include video *encoding* claims. Dkt. 50-28 at 1629, 1640-41; Dkt. 50-29 at 1667-71; Dkt. 50-30 at 1693. After these patents issued, Thomson

declared them as essential to the Compression Standards and committed to license them on RAND terms. Dkt. 50-8 at 647; Dkt. 50-7 at 629. These declarations also included dozens of other patents that relate to only encoding. Dkt. 50-8 at 647-50 (listing "Video Encoding" patents).

 InterDigital's expert concedes that Thomson declared these encoding patents because "it believed [they] may have claims essential to the H.264 and/or H.265 standards." Dkt. 57-4, ¶31. There is no other explanation for Thomson's actions and InterDigital's Opposition conspicuously fails to even mention Thomson's statements. Thomson caused an encoding feature to be added to the standards, filed patent applications purportedly covering that feature, and then declared the resulting patents essential to the standards. Thus, if these Thomson patents indeed cover the very feature Thomson added to the standards—as InterDigital now alleges—they must be required by the standards and subject to RAND obligations.

### B. InterDigital's Infringement Allegations Rely Exclusively on Mandatory Aspects of the Compression Standards

 The Compression Standards specify that certain aspects of encoding are required. For example, the H.264 Standard dictates what "Encoders conforming to this Recommendation | International Standard" must do. Dkt. 50-4 at 249. In defining conditions for "conforming bitstreams," it specifies that "[e]ncoders *must* take [the buffering period] into account to ensure that all specified constraints *must* be obeyed …." *Id*. at 242;[1] *see also* Dkt. 50-5 at 521 (same for H.265). These statements demonstrate that the Compression Standards specify requirements for encoding. Indeed, the standards must define certain requirements for encoding or it would not possible to design compatible devices that can later decode and play the video. Suppl. Mayer-Patel Decl. ¶4; Dkt. 50-18, ¶14.

---

[1] All emphasis is added unless otherwise specified.

InterDigital's Opposition contradicts the allegations in InterDigital's complaints. While InterDigital argues in its Opposition that the '301 Patent asserted in this case and the related Brazilian Patents are not essential to the Compression Standards, its Complaints in the U.S. and Brazil allege infringement of these patents only based on features required by the standards.[2]

For the '301 Patent in this case and the Brazilian Patents, InterDigital relies only on required sections of the Compression Standards to allege infringement. Suppl. Mayer-Patel Decl. ¶¶6-17; Dkt. 50-25 at 1421-33. For example, asserted Claim 8 of Brazilian Patent PI0305519-1 claims a method of using a "weighting factor" associated with a "reference image index" to encode motion-compensation data for videos. Suppl. Mayer-Patel Decl. ¶¶7-16; Dkt. 50-25 at 1414-15. InterDigital alleges an encoder compliant with the standards "*necessarily implements* the invention protected by claim 8 of patent PI0305519-1." Dkt. 50-25 at 1433.

Specifically, InterDigital maps the claimed "weighting factor" and "reference image index" to the standards' "luma_weight_l0" and "ref_idx_l0" parameters, respectively. *Id.* at 1422-24; Suppl. Mayer-Patel Decl. ¶¶7-16. The standards use the word "shall" to indicate that these parameters must comply with certain constraints to comply with the standards. Dkt. 50-4 at 87, 97; Suppl. Mayer-Patel Decl. ¶¶7-16. The "Definitions" section of the Compression Standards defines the word "shall" as an indicator of the "*mandatory requirements* for conformance" to the standards. Dkt. 50-4 at 28; Dkt. 50-5 at 308. The word "shall" further specifies "a mandatory constraint" and that "it is the responsibility of the *encoder* to ensure

---

[2] Defendants do not concede infringement and are not required to concede that InterDigital's patents actually cover the relevant standards to assert a RAND defense. *TCL Commc'ns Tech. v. Telefonaktenbologet LM Ericsson*, 2014 WL 12588293, at *4 (C.D. Cal. Sept. 30, 2014) (a party can "put forth the argument that [patents] are not standard essential while reserving the right to pay the FRAND rate should the Court ultimately determine otherwise").

that the constraint is fulfilled." *Id.* (emphasis original). Accordingly, by using the word "shall" to specify the value constraints for "luma_weight_l0" and "ref_idx_l0," the Compression Standards specify *encoder* requirements associated with the parameters InterDigital accuses of infringement. *Id.* Similarly, InterDigital cites other sections of the standards describing the use of these parameters for all other claim limitations; those cited sections describe operations of the accused parameters and therefore apply to encoders as well. Dkt. 50-25 at 1421-33; Suppl. Mayer-Patel Decl. ¶¶7-16. Thus, according to InterDigital's infringement allegations, the Brazilian Patents cover required elements of the standards and therefore are RAND-encumbered.

InterDigital excerpts passages from the Compression Standards out of context to incorrectly argue that the standards do not specify any requirements for encoding. Opp. at 12. However, these excerpts explain that the encoding *process*— the computation steps for encoding data—is not specified in the standards. Dkt. 50-4 at 20 (explaining that "encoding *algorithms*" are "not specified"); *id.* at 266 (explaining that "the quality of the approximation used in the *computation of the values* … is chosen by the encoding process and is not specified"). The "freedom" InterDigital alludes to (Opp. at 5) refers to the freedom to carry out the computations in any manner. It does not mean encoders can freely choose their own formats, syntaxes, and constraints. If an encoder does so, then no decoder can decode the resulting video. Dkt. 50-18, ¶14.

InterDigital also misrepresents Defendants' answer in the Brazilian action as including an "admission" that the Compression Standards do not cover encoding. Opp. at 8. The paragraph InterDigital cites actually characterizes InterDigital's position. *See* Dkt. 57-17 at 222. Proper context shows Defendants were arguing that because *InterDigital* took the position that the Compression Standards cover only decoding, it cannot then prove infringement of Defendants' encoding processes by using only the standards. *Id*. Elsewhere in their Brazilian answer, Defendants

6

clearly state that the Brazilian Patents are RAND-encumbered because they are asserted against the Compression Standards. *See, e.g., id.* at 186-87, 201-02.

Accordingly, Thomson's actions, the Compression Standards, and InterDigital's infringement allegations confirm that the '301 Patent and its related Brazilian Patents are RAND-encumbered.

## II. A Preliminary Injunction Against Enforcement of an Injunction in Brazil Is Justified

The Ninth Circuit and other courts have declared that U.S. courts can enjoin a party from enforcing injunctive relief in a foreign action while the U.S. court determines if the party breached RAND obligations. *See, e.g., Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881-82 (9th Cir. 2012); *Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1100 (W.D. Wash. 2012). Here, Defendants have established that (1) the threshold requirements for such a preliminary injunction are met, (2) the *Unterweser* factors that act as a safeguard and protect comity are met, and (3) a preliminary injunction is appropriate and necessary.

### A. Defendants Satisfy the Threshold Requirements for a Preliminary Injunction

In determining whether to enjoin a party from enforcing an injunction in a foreign country, courts first determine whether "the parties and the issues are the same in both the domestic and foreign actions," and whether "the first action is dispositive of the action to be enjoined." *Microsoft*, 696 F.3d at 881. Defendants meet these requirements.

First, Defendants established, and InterDigital does not dispute, that the parties and issues in this action and the Brazilian action are the same. Mot. at 15. Thus, Defendants meet the first threshold requirement.

Second, because the determination of whether InterDigital has complied with its RAND obligations determines the availability of injunctive relief, this action is dispositive of the Brazilian action. InterDigital's sole argument rebutting this point

7

relies on its incorrect insistence that encoding claims are never within the scope of the Compression Standards. But, as previously discussed, InterDigital's Brazilian Patents are RAND-encumbered. Thus, if this Court finds in favor of Defendants on their breach of RAND counterclaims, injunctive relief will be unavailable to InterDigital here or in Brazil. Thus, this action is dispositive of the Brazilian action.

InterDigital's argument that Defendants' counterclaims would require an infringement analysis of the Brazilian Patents is a transparent attempt to warp the scope of Defendants' counterclaims and preliminary injunction request so that it can argue for the applicability of inapposite case law like *Voda*—a case that did not concern RAND obligations. *See generally Voda v. Cordis Corp.*, 476 F.3d 887 (Fed. Cir. 2007). Defendants are not asking this Court to conduct an infringement analysis of the Brazilian Patents, and the preliminary injunction Defendants request "in no way interfere[s] with the patent infringement and validity actions in the foreign courts, nor ... with any damages awards." *Telefonaktiebolaget LM Ericsson v. Lenovo, Inc.*, 120 F.4th 864, 875 (Fed. Cir. 2024). Defendants' counterclaims only concern InterDigital's breach of its RAND obligations.

### B. Multiple *Unterweser* Factors Are Met

After the threshold requirements are met, InterDigital agrees courts consider the *Unterweser* factors in determining whether to issue a preliminary injunction against the enforcement of injunctive relief in a foreign action. Opp. at 9. Although Defendants are only required to show that "at least one" of the factors is met, Defendants have established—and InterDigital failed to meaningfully rebut—that at least three are met.

#### 1. InterDigital's Enforcement of a Brazilian Injunction Will Frustrate Domestic and Public Policies

Defendants demonstrated that allowing InterDigital to enforce an injunction against Defendants in Brazil in breach of its RAND obligations would frustrate domestic policies, including a policy against granting injunctions in cases involving

8

SEPs when the patent holder refuses to offer a license on RAND terms.³ Mot. at 17-18 (citing *Huawei Techs., Co. v. Samsung Elecs. Co.*, 2018 WL 1784065, at *9 (N.D. Cal. Apr. 13, 2018). And, as discussed above, Defendants have established that InterDigital's Brazilian Patents are RAND-encumbered. Thus, Defendants have satisfied the first *Unterweser* factor.

InterDigital argues "Disney presents no evidence about whether ███ ████████████████████████████████████ was RAND or not."⁴ Opp. at 16. But, tellingly, InterDigital has declined to argue that this "comprehensive economic offer" was RAND. InterDigital also has offered no evidence that it was reasonable or non-discriminatory, such as valuations of its patents or comparable licenses. Indeed, as presented in Defendants' Motion, InterDigital insists it has no obligation to offer Defendants a license on RAND terms and has refused to do so. Mot. at 18; Dkt. 50-14 – 50-16 (Lee Decl. and exhibits).

InterDigital also fails to cite any authority supporting its argument that Defendants must "show[] that [they have] been deprived of a fair opportunity to present its defenses in Brazil, that Brazilian courts are incapable of answering these questions, or that Brazilian courts would substitute their own judgment on these questions for that of another court." Opp. at 16. This argument is a smokescreen for

---

³ InterDigital incorrectly argues Defendants "implicitly concede[] that allowing the German and UPC cases … to proceed in parallel and possibly result in injunctive relief does not frustrate a policy of the U.S. or threaten this Court's jurisdiction." Opp. at 15 n.6. The fact that Defendants have not moved for similar relief there does not amount to such a concession.

⁴ InterDigital improperly relies on and publicly discloses information from the redacted portion of Dkt. 50-16 in violation of the parties' NDA. To the extent InterDigital implies Defendants have not provided the exact details of InterDigital's "offer," this argument is made in bad faith. Those negotiations are protected by the parties' NDA and the parties are not permitted to rely on that specific offer. *See, e.g.*, Dkt. 57-2 at 26. But InterDigital's conduct after it terminated the NDA confirms it is refusing to provide an offer on RAND terms.

9

its actual position: that this Court should give extreme deference to InterDigital's Brazilian action, which InterDigital knows will proceed rapidly relative to this action, and deprive Defendants of the opportunity to litigate their breach of RAND counterclaims that are properly before this Court. This is an untenable assertion in a dispute that is ultimately between two U.S. companies and relates to ███████ ███████. *See* Mot. at 19; Dkt. 50-17, ¶7.

### 2. InterDigital's Brazilian Action Is Vexatious and Oppressive

Defendants have satisfied the second *Unterweser* factor by establishing that the Brazilian action is vexatious and oppressive because it is "a procedural maneuver designed to harass [Defendants] with the threat of an injunction removing its products from a significant [] market." *Microsoft*, 696 F.3d at 886; Mot. at 18-19. InterDigital chose to file its Brazilian action a day after filing this case because it knows it is possible to rapidly obtain an injunction there, which it can then use as enhanced leverage in licensing negotiations with Defendants. Mot. at 19. This is textbook harassing and vexatious behavior designed to create "inequitable hardship" for Defendants by opportunistically holding up patents—conduct that SSOs and public policy seek to prevent. *Microsoft*, 696 F.3d at 886; Mot. at 18-19. InterDigital also fails to identify any legitimate reason for excluding Disney+ from Brazil to rebut the second *Unterweser* factor, because, as a non-competing entity, it cannot.

### 3. The Balance of Equities Decisively Favors Defendants

The third *Unterweser* factor also weighs in Defendants' favor because the balance of equities tips decisively away from InterDigital. InterDigital argues "[e]quity does not demand that a court enjoin a non-identical parallel proceeding simply because it is burdensome to defend oneself." Opp. at 18. But InterDigital entirely ignores the detailed evidence of significant harm that Defendants have shown they will suffer if the Brazilian court grants an injunction.

Defendants have established—and InterDigital fails to acknowledge—that absent a preliminary injunction, Defendants will suffer irreparable harm if they are enjoined from offering Disney+ in Brazil. Dkt. 50-13, ¶3. If the Disney+ service is shut down, Defendants will likely lose their Disney+ subscribers in Brazil, amounting to ▬▬▬▬▬▬▬▬ in losses in just the next three years. *Id.* ¶¶6-11. An injunction would also significantly damage Disney+'s brand and image. Beck Decl. ¶¶24-29.

Since Defendants filed their Motion, additional facts further emphasize the imminent risk of harm Defendants face. On May 6, 2025, Defendants filed a motion in Brazil challenging the decision that allowed the technical appraisal of InterDigital's infringement allegations to proceed without first granting the parties the opportunity to fully present their claims and defenses. Suppl. Brazilai Decl. ¶4. But, only three days later, the Brazilian court denied that motion. *Id.* ¶5. Accordingly, the technical appraisal began on May 12, and the expert will deliver his report within thirty days (June 11). *Id.* ¶6. The judge will then consider InterDigital's preliminary injunction request, and could grant it as soon as July 2025. *Id.* ¶¶7-10. Defendants would likely be required to come into compliance within fifteen days of that decision. *Id.* ¶9.

Second, InterDigital fails to acknowledge that the harm from a Brazilian injunction would not only impact Defendants—it would ripple outward to its Brazilian employees, facilities, and numerous local partners—further tipping the balance of equities toward granting Defendants' requested preliminary injunction. Mot. at 20; *see hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1189-91 (9th Cir. 2022) (considering the equitable interests of third-party LinkedIn users in weighing the balance of equities).

Third, there is no countervailing factor that tips the equities back toward InterDigital. InterDigital would not be harmed by a preliminary injunction because it does not compete with Defendants in the streaming market. Mot. at 7. InterDigital

thus derives no commercial benefit from excluding Disney+ from Brazil. Defendants are also not requesting that InterDigital be enjoined from pursuing its Brazilian action, as InterDigital argues. Opp. at 17-18. Defendants have only requested that InterDigital be temporarily enjoined from enforcing an injunction in Brazil until this Court determines whether InterDigital breached its RAND obligations. Thus, InterDigital will suffer virtually no prejudice if this Court issues a preliminary injunction, as it remains free to continue pursuing the Brazilian action on the merits and seek monetary damages as may be appropriate.

Because Defendants' requested preliminary injunction will not harm InterDigital, but Defendants (and others) stand to suffer irreparable harm without it, Defendants satisfy the third *Unterweser* factor.

### C. The Proposed Injunction Will Not Offend Principles of Comity

A preliminary injunction will not adversely impact comity because: (1) the foreign and domestic actions are prongs of a global dispute between two U.S. companies concerning ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; and (2) Defendants seek only a narrow and temporary preliminary injunction to prevent InterDigital from enforcing a Brazilian injunction only until this Court adjudicates Defendants' breach of RAND counterclaims. Mot. at 21-22. InterDigital's arguments to the contrary are incorrect.

First, InterDigital again improperly tries to frame the Brazilian action as limited to activities in Brazil. Opp. at 18. It is not. This global dispute is between two parties headquartered in the U.S., not Brazil. Mot. at 19. The Brazilian Patents are foreign counterparts of the '301 Patent asserted in this action. *See id.* And, InterDigital's Brazilian action is targeted at Defendants' encoding process—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.*; Dkt. 50-17, ¶7. Thus, Defendants' request for a preliminary injunction preventing enforcement of any Brazilian injunction until this Court addresses Defendants' breach of RAND counterclaims does not adversely affect comity. *See Lenovo*, 120 F.4th at 877.

12

Second, contrary to InterDigital's argument, Defendants are not seeking to prevent InterDigital from proceeding on alleged infringement of the Brazilian Patents or even from obtaining an injunction relating to those patents. Mot. at 22; Opp. at 19-20. Defendants are merely requesting a preliminary injunction against enforcement of a Brazilian injunction until this Court adjudicates Defendants' breach of RAND counterclaims. *Id*. This is the opposite scenario to the one in *Ericsson*, wherein the court granted an *anti-anti*suit injunction in part because the antisuit injunction would have prevented the U.S. case from proceeding. *Ericsson Inc. v. Samsung Elecs. Co.*, 2021 WL 89980, at *5 (E.D. Tex. Jan. 11, 2021). Thus, InterDigital's reliance on *Ericsson* is inapposite.[5]

For the reasons above, preliminarily enjoining InterDigital from enforcing a Brazilian injunction while this Court adjudicates Defendants' breach of RAND counterclaims will not offend relations between foreign and domestic courts, and any impact on comity will be "tolerable." *Lenovo*, 120 F.4th at 877.

### III. Defendants Meet the *Winter* Factors

As explained in its Motion, for many of the same reasons Defendants satisfy the above *Unterweser* factors, they also satisfy each of the largely overlapping *Winter* factors governing the propriety of a preliminary injunction. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); Mot. at 22-24. Defendants established (i) they are likely to succeed on the merits in establishing that InterDigital is obligated to grant them a patent license on RAND terms and breached that obligation, (ii) they are (more than) likely to suffer significant irreparable harm in the absence of preliminary relief, (iii) the balance of equities tips heavily in their favor, and (iv) such injunction is in the public interest. *See supra* Sections I, II.B.1, and II.B.3; *see also* Mot. at 22-24. Therefore, a preliminary injunction is appropriate.

---

[5] InterDigital cites French, German, and U.K. opinions, but Defendants' Motion does not implicate those countries' laws.

# CONCLUSION

For the reasons described above and in Defendants' Motion, the requested preliminary injunction should be granted.

DATED: May 16, 2025            Respectfully submitted,

By:    */s/ Ryan K. Yagura*
            Ryan K. Yagura

RYAN K. YAGURA
NICHOLAS J. WHILT
XIN-YI ZHOU
O'MELVENY & MYERS LLP

*Attorneys for Defendants The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., BAMTech LLC, Hulu, LLC, and ESPN, Inc.*

14

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this brief contains 3,975 words, which complies with the word limit of L.R. 11-6.1 and Judge Hsu's Standing Order for Newly Assigned Cases.

Date: May 16, 2025                    /s/ Ryan K. Yagura
                                      Ryan K. Yagura

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2025, a true and correct copy of the foregoing document was served on all counsel of record via electronic mail.

DATED: May 16, 2025          By: /s/ Ryan K. Yagura