UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-00895-WLH-BFM | Date | May 28, 2025 |
|---|---|---|---|
| Title | *InterDigital, Inc. et al v. The Walt Disney Company et al* | | |

| Present: The Honorable | WESLEY L. HSU, United States District Judge |
|---|---|
| Holidae Crawford | None |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:** **(IN CHAMBERS) ORDER RE MOTION TO DISMISS COUNTERCLAIMS [54] AND MOTION FOR PRELIMINARY INJUNCTION [50]**

The Court is in receipt of Plaintiff's Motion to Dismiss Counterclaims (Mot. to Dismiss, Docket No. 54) and Defendant's Motion for Preliminary Injunction (Prelim. Inj. Mot., Docket No. 50). No party filed a written request for oral argument stating that an attorney with five years or less of experience would be arguing the matter. (*See* Standing Order, Docket No. 61 at 16). Further, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for May 30, 2025, is **VACATED**, and the matters taken off calendar. For the following reasons, the Court **DENIES** both motions.

I.  **BACKGROUND**

The parties in this case are InterDigital, Inc., InterDigital VC Holdings, Inc., InterDigital Madison Patent Holdings, SAS, and InterDigital CE Patent Holdings, SAS (collectively, "InterDigital") on the one hand and The Walt Disney Company; Disney Media and Entertainment Distribution LLC; Disney DTC LLC; Disney Streaming Services LLC; Disney Entertainment & Sports LLC; Disney Platform Distribution, Inc.;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

BAMTech, LLC; Hulu, LLC; and ESPN, Inc. (collectively, "Disney") on the other. (Complaint ("Compl.", Docket No. 1). As relevant to this Motion, Interdigital alleges that Disney infringed on three patents relating to video coding: U.S. Patent No. 8,406,301 for Adaptive Weighting of Reference Pictures in Video Encoding ("the '301 patent"), U.S. Patent No. 10,805,610 for "Methods and Systems for Intra Coding a Block having Pixels Assigned to Groups ("the '610 patent") and U.S. Patent No. 11,381,818 for Methods and Apparatus for Determining Quantization Parameter Predictors from a Plurality of Neighboring Quantization Parameters ("the '818 patent"). Disney counterclaims that InterDigital breached its contractual obligation to offer Disney licenses to the '301, '610 and '818 patents and related international patents on reasonable and non-discriminatory ("RAND") terms and conditions. (*See generally* Answer and Counterclaims, Docket No. 42).

### A. Factual Background

New video coding technologies are typically only widely adopted after service providers and device manufactures agree on technology standards for related products and services. (Answer and Counterclaims ¶ 22). Industry standard-setting organizations ("SSOs") like the International Telecommunications Union ("ITU"), the International Organization for Standardization ("ISO") and the International Electrotechnical Commission ("IEC") work with members and affiliates to develop standards. (*Id.*; *id.* ¶ 2). These standards facilitate adoption and advancement of technology and help ensure interoperability among different products. (*Id.* ¶ 2).

"The catch with standards 'is that it may be necessary to use patented technology in order to practice them.'" *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 875 (9th Cir. 2012) (quoting *Apple, Inc. v. Motorola Mobility, Inc.*, 2011 WL 7324582, at *1 (W.D. Wis. June 7, 2011). As such, "standards threaten to endow holders of standard-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

essential patents with disproportionate market power. In theory, once a standard has gained such widespread acceptance that compliance is effectively required to compete in a particular market, anyone holding a standard-essential patent could extract unreasonably high royalties from suppliers of standard-compliant products and services." *Id.* SSOs try to mitigate the threat of such a "patent holdup" by requiring that members who hold patents rights to standard-essential patents to offer licenses to those patents on RAND terms. *Id.*

The ITU, ISO and IEC have adopted a Common Patent Policy ("Patent Policy") and associated guidelines to facilitate implementation of the Patent Policy. (Answer and Counterclaim ¶ 32; Ex. H to Yagura Decl. ("Patent Policy"), Docket No. 50-11; Ex. 4 to Opp'n to Prelim. Inj. Mot ("Patent Policy Guidelines"), Docket No. 57-10).[1] The policy requires members and affiliates to disclose to the ITU, ISO and IEC patents which are embodied fully or partly in a proposed standard. (*See generally* Patent Policy). Patent holders file a Patent Statement and Licensing Declaration Form ("Declaration Form") with the ITU, ISO and IEC to disclose relevant patents. (*Id.*) The declaration form requires the patent holder to reflect whether the patent holder is (a) willing to negotiate licenses to make, use and sell implementations of the standards free of charge; (b) willing to negotiate licenses to make, use and sell implementations of the standards on RAND terms; or (c) unwilling to negotiate licenses free of charge or on RAND terms. (Patent

---

[1] The factual section references the Patent Policy, Patent Policy Guidelines and Declaration Forms. While these documents were submitted by the parties in relation to the Motion for Preliminary Injunction, the Court considers the documents in evaluating the Motion to Dismiss because Disney's pleadings refer to the documents, the documents are central to Disney's claims and no party questions the authenticity of the documents. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (explaining when a court can consider documents on which a pleading necessarily relies in evaluating a 12(b)(6) motion).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Policy ¶ 2). If the patent holder is unwilling to negotiate licenses free of charge or on a RAND basis, the final standard will not include provisions depending on the patent. (Patent Policy ¶ 2.2). The licensing declaration remains in force unless it is superseded by another Declaration form, "containing more favorable licensing terms from a licensee's perspective." (Patent Policy Guidelines at 4).

Three portions of the Declaration Form are especially important to this case. First, the "licensing declaration" states: "The Patent Holder believes that it holds granted and/or pending applications for Patents, the use of which would be required to implement the [standard]." (*See*, e.g., Ex. E to Yagura Decl. ("12/18/12 Declaration re: H.265"), Docket No. 50-8 at 2).[2] Second, the Policy and the Declaration Form define "Patent" as "those claims contained in and identified by patents, utility models and other similar statutory rights based on inventions (including applications for any of these) *solely to the extent that any such claims are essential* to the implementation of a [standard].[3] Essential patents are patents that would be required to implement a specific [standard]." (*Id.*) (emphasis added). Third, the form includes a space for declarants to list patents, including the title, status, country and granted patent number and/or application number of the patent. (*Id.* at 3). This information is "desired but not required" when a declarant commits to negotiate licenses free of charge or on RAND terms. (*Id.*)

Disney's counterclaims are based on Declaration Forms submitted regarding two video encoding standards adopted by the ITU, ISO and IEC: the H.264 Advanced Video

---

[2] This language reflects the language included on the four Declaration Forms relevant to the instant motion. (12/18/12 Declaration re: H.265; Ex. D to Yagura Decl. ("6/19/14 Declaration re: H.264"), Docket No. 50-7; Ex. F to Yagura Decl. ("6/16/16 Declaration re: H.264"), Docket No. 50-9; Ex. I to Yagura Decl. ("8/24/20 Declaration re: H.264"), Docket No. 50-12).

[3] The policy and form refer to "Recommendation | Deliverable"; the Court uses the term "standard" for consistency.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Coding standard ("H.264 standard") and the H.265 High Efficiency Video Coding standard ("H.265 standard"), both adopted by the ITU, ISO and IEC.  (Answer and Counterclaims, ¶¶ 2, 25-31).  The two standards are the most popular methods of coding video content.  (*Id.* ¶ 31).  Disney alleges it has invested millions of dollars in products and services that support the H.264 and H.265 standards.  (*Id.* ¶ 31).

On December 18, 2012, Thompson Licensing ("Thompson")— InterDigital's predecessor-in-interest—submitted a Declaration Form reflecting Thompson was prepared to offer, on RAND terms, licenses to make, use and sell implementations of the H.265 standard.  (Answer and Counterclaims ¶ 45; 12/18/12 Declaration re: H.265).  Thompson listed 287 granted or pending patents, including pending-applications PCT/2011/000856 and PCT/2011/039579.  (12/18/12 Declaration re: H.265).  Disney alleges that the '601 and '818 patents are continuations of applications PCT/2011/000856 and PCT/2011/039579.  (Answer and Counterclaims ¶ 45).

On June 19, 2014, Thompson submitted a Declaration Form reflecting that Thompson was prepared to offer, on RAND terms, licenses to make, use and sell implementations of the H.264 standard.  (Answer and Counterclaims ¶ 44; 6/19/14 Declaration re: H.264, Docket No. 50-7)).  Thompson listed nine granted or pending patents, including the '301 patent for "Adaptative Weighting of Reference Pictures in Video Decoding."  (6/19/14 Declaration re: H.264).

On June 7, 2016, Thompson submitted a Declaration Form reflecting that Thompson was prepared to offer, on RAND terms, licenses to make, use and sell implementations of the H.264 standard.  (Answer and Counterclaims ¶ 46; 6/16/16 Declaration re: H.264), Docket No. 50-9)).  Thompson specifically listed twelve granted or pending patents, including the '774 patent.  (6/16/16 Declaration re: H.264).  Disney

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

alleges that the '818 patent is a continuation of the '774 patent. (Answer and Counterclaims ¶ 46).

On February 5, 2017, Thompson submitted a Declaration Form reflecting that Thompson was prepared to offer, on RAND terms, licenses to make, use and sell implementations of the H.265 standard. (Answer and Counterclaims ¶ 54). Thompson specifically listed European Patent Application EP10743254.4 and EP10760462.1. (*Id.*) European Patents EP2465265 and EP2449782 issued from those applications. (*Id.*)

Finally, on August 24, 2020, InterDigital submitted a declaration that InterDigital was prepared to offer, on RAND terms, licenses to make, use and sell implementations of the H.265 standard. (Answer and Counterclaims ¶ 46; 8/24/20 Declaration re: H.264). InterDigital did not list any specific patents. (8/24/20 Declaration re: H.264)

**B.    Procedural Background**

On February 2, 2025, InterDigital filed the patent infringement action against Disney in this Court. (Compl.). The next day, InterDigital filed a patent infringement action against Disney in Brazil asserting Brazilian patents PI0305519.1 and PI0318825.6 (collectively, the "Brazilian patents"), both of which are in the same patent family as the '301 patent asserted in this Action. (Answer and Counterclaims ¶ 50). Also on February 3, 2025, Interdigital filed additional patent infringement actions against Disney in two divisions of the Unified Patent Court asserting infringement of European Patent Applications EP10743254.4 and EP10760462.1 ("European patent applications"). (*Id.* ¶ 53).

On February 31, 2025, InterDigital filed its Answer and Counterclaims in the instant case. (Answer and Counterclaims). Based on facts described above, and as relevant to the instant Motion to Dismiss, Disney alleges:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

(1) In submitting relevant Declaration Forms, Thomson Licensing specifically agreed to license on RAND terms the '301, '610 and '818 patents, the Brazilian patents, and the European patent applications. (*Id.* ¶¶ 44-46, 51, 54);

(2) In submitting relevant Declaration Forms, Thomson Licensing agreed to license on RAND terms "any patents that are essential" to implementing the H.265 and H.265 standard. (*Id.* ¶¶ 47, 51, 54);[4]

(3) As to the '301, '610 and '818 patents in particular, Disney alleges that through its August 2020 declaration, InterDigital agreed license on RAND terms any patent or patent application essential to implementing the H.265 standard. (*Id.* ¶¶ 48);

(4) InterDigital's various infringement actions "rest entirely on implementing" the H.264 and/or H.265 standards such that "according to InterDigital's infringement allegations, implementing the standard requires use" of the '301, '610 and '818, Brazilian and European patents. (*Id.* ¶¶ 49, 52, 55). Disney makes this allegation "without conceding" that the '301, '610 and '818, Brazilian or European patents "are essential" to the H.264 and H.265 standards and "without conceding that any of Disney's products or service practice any claims of such patent . . ." (*Id.* ¶¶ 49, 52, 55);

(5) InterDigital, as Thomson's successor-in-interest, is bound by Thomson's commitments. (*Id.* ¶¶ 47, 51, 54);

---

[4] The allegation at paragraph 47 specifically states "InterDigital is also bound, including by the commitments Thomson Licensing made, to offer licenses on RAND terms for any patents controlled by it or its predecessors that are essential and/or declared to be essential to implementing the H.264 and H.265 standards, including the '301, '610, and '818 Patents."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

(6)    Disney is a third-party beneficiary to InterDigital's commitments because it is a potentially willing licensee and because it produces or delivers services that support the H.264 and H.265 standards.  (*Id.* ¶¶ 40; 57; 63);

(7)    InterDigital breached the above contractual obligations by refusing to offer Disney a license to '301, '610 and '818 patents, the Brazilian patents, and the European patent applications on RAND terms.  Specifically, InterDigital has "fail[ed] to negotiate and act in good faith, fil[ed] this Action and foreign proceedings which seek to enjoin Disney's alleged implementation of H.264 and H.265 technologies, and [sought] to coerce Disney into capitulating and paying excessive, non-RAND royalties."  (*Id.* ¶ 64); and

(8)    Disney has been injured by InterDigital's refusal to offer a license to Disney on RAND terms.[5]

On April 24, 2025, Disney filed the instant Motion for Preliminary Injunction asking the Court to enjoin InterDigital from enforcing "any injunction awarded to it in the Brazilian action until this Court resolves Defendants' RAND licensing counterclaims and the parties exhaust all appeals of that resolution." (Proposed Order Re: Prelim. Inj., Docket No. 50-31; *see also* Prelim. Inj. Mot.).  InterDigital timely opposed the motion (Opp'n to Prelim. Inj. Mot., Docket No. 56) and Disney timely replied (Prelim. Inj. Reply, Docket No. 67).  No court has issued an injunction in the Brazilian action. Disney's Brazilian counsel declares that a judge "could" issue a preliminary injunction

---

[5] Disney further alleges that InterDigital breached its Duty of Good Faith and is estopped from "reneging" its promises and that Disney is entitled to Declaratory Judgment that (a) InterDigital has not compiled with its obligations; (b) Disney has not infringed and is not infringing on any valid and enforceable claims of the '301, '610 and '818 patents; (c) InterDigital's patent rights regarding the '301, '610 and '818 patents have been exhausted; and, (d) Disney has an express or implied license with respect to the '301, '610 and '818 patents.  (*Id.* ¶¶ 76-224).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

enjoining Disney from using the Brazilian patents as early as June 2025 and that Brazilian courts typically requires compliance within fifteen days of grant of an injunction. (Barzilai Decl., Docket No. 50-2 ¶¶ 7, 10; Barzilai Supp. Decl., Docket No. 67-1 ¶¶ 12).

On April 28, 2025, InterDigital filed the instant Motion to Dismiss Counterclaims. (Mot. to Dismiss). Disney timely opposed (Opp'n to Mot. to Dismiss, Docket No. 56), and InterDigital timely replied. (Mot. to Dismiss Reply, Docket No. 67).

**II.    MOTION TO DISMISS**

   **A.    Legal Standard**

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint, or counterclaims, may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a motion to dismiss, pleadings must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). The court must construe the pleadings in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the [pleadings], and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). A court may consider a document on which pleadings 'necessarily relies' if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

### B.  Analysis

Disney has stated a claim for breach of contract and related counterclaims. As demonstrated in the background section, *supra* Section I(B), Disney provides factual allegations sufficient to plausibly suggest that (a) InterDigital made, or is otherwise bound, by commitments to offer certain patents on RAND terms; (b) Disney is a third-party beneficiary to those commitments; (c) InterDigital has breached said commitments; and (d) Disney has been injured by the breach. The specific factual allegations detailed above provide adequate notice to InterDigital of the specific grounds for Disney's breach of contract and related claims.

InterDigital argues that Disney's pleadings fail because Disney fails to sufficiently allege that (1) the patents at issue in Disney's counterclaims are essential to the H.264 or H.265 standards; and (2) that Disney makes or sells a product that implements the relevant portions of the H.264 or H.265 standards. (Mot. to Dismiss at 2-4). Even if the Disney is required to specifically plead that the patents at issue in Disney's counterclaims are essential to the H.264 and H.265 standards and/or that Disney makes or sells a product which implements the standards,[6] Disney has sufficiently done so.

---

[6] To support the proposition that Disney must plead these two specific elements, InterDigital cites to two cases where a party claimed that the opposing party failed to offer patents on RAND terms (a) a District of Delaware case noting that at the pleading stage a party need only point to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Disney alleges that InterDigital's various infringement actions filed against Disney "rest entirely on implementing" the H.264 and/or H.265 standards such that "according to InterDigital's infringement allegations, implementing the standard requires use" of the '301, '610 and '818, Brazilian and European patents. (*Id.* ¶¶ 49, 52, 55). This factual allegation gives rise to the reasonable inferences that (1) the patents at issue in Disney's counterclaim are essential to the implementation of the H.264 and H.265 standards; and (2) Disney makes or sells products that use the relevant portions of the standards.[7] *See Nokia*, 2024 WL 1885683 at *2 ("[A]t the pleading stage [a defendant asserting RAND contract counterclaims] need only point to facts that render it plausible that the patent is essential. A defendant may rely on a plaintiff's statements in so doing.") (cleaned up). Further, Disney has specifically alleged that it produces or delivers services that support the H.264 and H.265 standards. (Answer and Counterclaims ¶ 63; *see also id.* (alleging that it has invested million of dollars in produces and services that support the standards)). It is of no matter that Disney explicitly declines to concede that '301, '610 and '818, Brazilian or European patents "are essential" to the H.264 and H.265 standards or that Disney's products or services practice claims of the patents. (*Id.* ¶¶ 49, 52, 55).

---

facts to render it plausible that a patent is essential; and, (b) a one-page Southern District of California order dismissing claims and granting plaintiffs leave to file allegations regarding "(1) the conforming products they create and (2) the standard essential patents they utilize that are covered by the IPR policy." *u-blox AG, et al. v. InterDigital Inc.*, et al, 3:23-cv-0002, Dkt. 49 (S.D. Cal. Aug. 8, 2023); *Nokia Techs. OY v. HP, Inc.*, No. CV 23-1237-GBW, 2024 WL 1885683, at *2 (D. Del. Apr. 29, 2024). The Court is not willing to affirmatively conclude that Disney *must* plead essentiality or conforming products on the basis of these two citations. The Court, therefore, does not decide whether Disney is required to plead essentiality or conformity.

[7] This factual allegation is not baseless. *See*, e.g., Ex. A2 to Compl. ("Claims Table re: '301 patent), Docket No. 1-2 at 2 ("The following citations provide evidence of features supported by the H.264 Standard, which is supported by the Disney Accused Instrumentalities.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Disney may "state as many separate claims or defenses as it has, regardless of consistency." *Nokia*, 2024 WL 1885683 at *2 (citing Fed. R. Civ. P 8(d)(3)).

Finally, the Court cannot determine, as a matter of law, that the patents at issue in Disney's counter-claims are not essential to the H.264 and H.265 standards. (*See* Mot. to Dismiss at 3-4 ((arguing that Disney cannot plead essentiality because the patents at issue pertain to video encoding and the standards at issue do not)). While the Court can imagine scenarios where it might be appropriate for a court to determine that a patent is wholly irrelevant to a given standard, this is not such a case. As explained above, Disney has sufficiently alleged that the patents at issue in Disney's counterclaims are essential to the H.264 and H.265 standards and it is not obvious from the face of the standards or the patents that the patents cannot be essential to the standards. (*See also* 6/19/14 Declaration re: H.264; 12/18/12 Declaration re: H.265; 6/16/16 Declaration re: H.264 (listing patents at issue in Disney's counterclaims)).[8] The Court therefore **DENIES** InterDigital's Motion to Dismiss.

### III.  MOTION FOR PRELIMINARY INJUNCTION

Disney's Motion for Preliminary Injunction asks the Court to enjoin InterDigital from enforcing "any injunction awarded to it in the Brazilian action until this Court resolves Defendants' RAND licensing counterclaims and the parties exhaust all appeals of that resolution." (Proposed Order Re: Prelim. Inj.) "'A federal district court with jurisdiction over the parties has the power to enjoin them from proceeding with an action in the courts of a foreign country, although the power should be used sparingly.'" *E. & J.*

---

[8] Because the issue is not yet before the Court and because Disney may plead inconsistent defenses and counterclaims, the Court declines to take judicial notice of Disney's answer in the Brazilian Action, even if, as InterDigital contends, the answer reflects that Disney has conceded that the H.264 and H.265 standards do not embrace video *en*coding. (Mot. to Dismiss Reply at 15 (urging the Court to take judicial notice of the answer).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006) (quoting *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981)). In evaluating a "foreign anti-suit injunction," courts in the Ninth Circuit follow the three-part inquiry outlined in *Gallo*.[9]  *Microsoft*, 696 F.3d at 881.

The parties agree that in order for an anti-suit injunction to issue, Disney must satisfy the four *Winter* factors. (Prelim Inj. Mot. at 14 (outlining *Winter* factors when detailing legal standard); *id.* at 22-23 (arguing that *Winter* factors are met); Opp'n to Prelim. Inj. Mot. at 10 (reflecting that Disney must meet *Winter* factors); *id.* at 20-21 (arguing that Disney fails to satisfy *Winter* factors)). Under *Winter*, a party seeking a preliminary injunction must establish that the party is "likely to suffer irreparable harm in the absence of preliminary relief." *Am. Trucking Associations, Inc.* v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). A mere "possibility" of irreparable harm is insufficient. *Id.*

Even if the Court agreed that a preliminary injunction from the Brazilian Court would cause Disney irreparable harm—an issue which the Court does not resolve today—the Court finds that Disney does not currently face *the likelihood* of irreparable harm. No Brazilian court has issued a preliminary injunction, the terms of a hypothetical preliminary injunction are unknown and Disney has not shown that it is *likely* that a

---

[9] Under this framework, courts first ask the threshold questions of (1) whether the parties and issues are the same in both actions and (2) whether the domestic action will be dispositive of the foreign action to be enjoined. *Microsoft*, 696 F.3d at 881. If both elements of the first step are met, a court must then determine if one of the *Unterweser* factors applies. *Id.* at 881-82. The Court moves on to step three only if it that foreign litigation would either (a) undermine the policy of the court issuing the injunction; (b) be vexatious or oppressive; (c) threaten the issuing court's jurisdiction; or, (d) prejudice other equitable considerations. *Id.* At step three, the court assess whether the injunction's "impact on comity is tolerable." *Id.* at 888 (*citing* Gallo, 446 F.3d at 991).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

preliminary injunction will issue. The Court, therefore, **DENIES** Disney's Motion for Preliminary Injunction without prejudice to Disney seeking preliminary injunctive relief if the Brazilian court issues a preliminary injunction which will cause Disney irreparable harm.[10]

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** InterDigital's Motion to Dismiss Counterclaims and **DENIES** Disney's Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

---

[10] Disney argues that *Microsoft* supports the Court issuing a preliminary injunction. The Court warns that should a renewed antisuit motion come before the Court, the Court's analysis will not start and stop at *Microsoft* for two reasons. First, even if the facts were identical to those *Microsoft*, the Ninth Circuit's ruling would not *require* the Court to issue an anti-suit injunction: the Ninth Circuit ruled that a district court had not abused its discretion in granting a preliminary injunction, *not* that a district court would abuse its discretion if it denied an antisuit injunction. *Microsoft*, 696 F.3d at 888-89 ("[W]e cannot conclude that the district court abused its discretion in determining that a foreign anti-suit injunction could issue."). Second, there are material factual differences between *Microsoft* and the instant case. In *Microsoft*, the district court had ruled—and parties did not dispute—that the patents at issue were RAND-encumbered. *Id.* at 878. Here, the parties dispute whether the Brazilian patents are RAND encumbered and the Court has not resolved this issue. In *Microsoft*, the plaintiff sought a preliminary injunction from a district court when a defendant filed a foreign suit several months into litigation of the district court case. *Id.* at 879. Here, the plaintiff filed the Brazilian suit one day after filing the instant action and the *defendant* seeks an antisuit injunction. These factual differences may influence the Court's ultimate findings on whether the suit would dispose of the Brazil action, whether an *Unterweser* factor applies and whether the impact on comity is tolerable.