RYAN K. YAGURA (S.B. #197619)
ryagura@omm.com
NICHOLAS J. WHILT (S.B. #247738)
nwhilt@omm.com
XIN-YI ZHOU (S.B. #251969)
vzhou@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

*Attorneys for Defendants The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., BAMTech LLC, Hulu, LLC, and ESPN, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION AT LOS ANGELES

| | |
|---|---|
| INTERDIGITAL INC., INTERDIGITAL VC HOLDINGS, INC., INTERDIGITAL MADISON PATENT HOLDINGS, SAS, AND INTERDIGITAL CE PATENT HOLDINGS, SAS,<br><br>Plaintiffs and Counterclaim-Defendants,<br><br>v.<br><br>THE WALT DISNEY COMPANY, DISNEY MEDIA AND ENTERTAINMENT DISTRIBUTION LLC, DISNEY DTC LLC, DISNEY STREAMING SERVICES LLC, DISNEY ENTERTAINMENT & SPORTS LLC, DISNEY PLATFORM DISTRIBUTION, INC., BAMTECH, LLC, HULU, LLC, AND ESPN, INC.,<br><br>Defendants and Counterclaim-Plaintiffs. | Case No. 2:25-cv-895-WLH-BFM<br><br>**DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Judge: Hon. Wesley L. Hsu<br>Magistrate: Hon. Brianna F. Mircheff |

- i -

# TABLE OF CONTENTS

**Page**

I.  LEGAL STANDARD.................................................................................................1

II.  OVERVIEW OF PATENTS-IN-SUIT.................................................................2

   A.  '301 PATENT............................................................................................2

   B.  '610 PATENT............................................................................................2

   C.  '268 PATENT............................................................................................3

   D.  '297 PATENT............................................................................................3

III.  ARGUMENT..........................................................................................................4

   A.  '301 PATENT............................................................................................4

     1.  "weighting factor" (claims 8, 10) .................................................4

     2.  "assigning a second weighting factor for the image block corresponding to a second reference picture index corresponding to a second reference picture" (claim 10).................................................................................................6

     3.  "the substantially uncompressed image block" (claim 10) .........8

   B.  '610 PATENT..........................................................................................10

     1.  "intra prediction for at least one of the pixels within the second group is obtained by using pixels from neighboring pixels within the first group of pixels in blocks already coded and neighboring pixels outside the block that have already been coded" (claim 6)..................................................10

   C.  '268 PATENT..........................................................................................14

     1.  "[a] reference type display[] having [a] reference color gamut" (claims 1, 6, 7, 8, 11) ...................................................................................14

     2.  "[a] non-reference type display[] having [a] non-reference color gamut" (claims 1, 6, 8, 11) ................................................................16

     3.  "at least one of a non-reference type display … and a reference type display…" (claims 1, 6) ................................................................18

   D.  '297 PATENT..........................................................................................19

     1.  "side information components for modifying a functionality of said user interface" (claim 1) ......................................................................19

     2.  "modifying a way in which said user can provide input into said user interface by using said stored side information components" (claim 1) ..........22

IV.  CONCLUSION.....................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  2018 WL 1699429, at *__ (E.D. Va. Apr. 6, 2018) ..................................20

*Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*,
  521 F.3d 1328 (Fed. Cir. 2008) ..................................................................21

*Brazabra Corp. v. Ce Soir Lingerie Co., Inc.*,
  2019 WL 13136348 (W.D. Tex. Aug. 15, 2019) ..................................9

*Cayenne Med., Inc. v. Medshape, Inc.*,
  2016 WL 2606983 (D. Ariz. May 6, 2016)..................................................9

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
  358 F.3d 1371 (Fed. Cir. 2004) ..............................................2, 8, 10, 12

*Cirba Inc. v. VMware, Inc.*,
  2022 WL 608185 (D. Del. Feb. 24, 2022) ..................................................18

*Comput. Docking Station Corp. v. Dell, Inc.*,
  519 F.3d 1366 (Fed. Cir. 2008) ..................................................................12

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  2016 WL 3124614 (N.D. Cal. June 3, 2016) ..........................................9

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*,
  382 F. Supp. 3d 586 (E.D. Tex. 2019) ..................................................15

*Diamond Coating Techs., LLC v. Hyundai Motor Am.*,
  2014 WL 5698445 (C.D. Cal. Aug. 25, 2014) ..........................................6

*Egenera, Inc. v. Cisco Sys., Inc.*,
  972 F.3d 1367 (Fed. Cir. 2020) ..................................................................20

*Ergo Licensing, LLC v. CareFusion 303, Inc.*,
  673 F.3d 1361 (Fed. Cir. 2012) ..................................................................21

*Horizon Pharma, Inc. v. Dr. Reddy's Labs. Inc.*,
  839 F. App'x 500 (Fed. Cir. 2021)..................................................8, 10

*H-W Tech., L.C. v. Overstock.com, Inc.*,
  758 F.3d 1329 (Fed. Cir. 2014) ..................................................................10

*In re Shafovaloff*,
  2025 WL 1779173 (Fed. Cir. June 27, 2025)..................................2, 10, 11

*In re Taasera Licensing LLC, Pat. Litig.*,
  2023 WL 8628323 (E.D. Tex. Dec. 13, 2023) ..........................................8, 9

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Intel Corp. v. Qualcomm Inc.,*
  21 F.4th 801 (Fed. Cir. 2021) ................................................................. 9

*Intell. Ventures I LLC v. T-Mobile USA, Inc.,*
  902 F.3d 1372 (Fed. Cir. 2018) ............................................................. 15

*Mas-Hamilton Grp. v. LaGard, Inc.,*
  156 F.3d 1206 (Fed. Cir. 1998) ............................................................. 21

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.,*
  395 F.3d 1364 (Fed. Cir. 2005) ............................................................. 10

*Nautilus Inc. v. Biosig Instruments, Inc.,*
  572 U.S. 898 (2014) ............................................................................ 2, 8

*Omega Eng'g, Inc, v. Raytek Corp.,*
  334 F.3d 1314 (Fed. Cir. 2003) ........................................................ 22, 23

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005) ............................................................... 1

*Process Control Corp. v. HydReclaim Corp.,*
  190 F.3d 1350 (Fed. Cir. 1999) ............................................................. 11

*Seattle Box Co. v. Indus. Crating & Packing, Inc.,*
  731 F.2d 818 (Fed. Cir. 1984) ................................................................. 8

*SK Microworks Am., Inc. v. Far E. New Century Corp.,*
  2025 WL 1196360 (C.D. Cal. Jan. 23, 2025) ........................................... 6

*Sound View Innovations, LLC v. Hulu, LLC,*
  2020 WL 10758103 (C.D. Cal. 2020) ................................................... 23

*Southwall Techs., Inc. v. Cardinal IG Co.,*
  54 F.3d 1570 (Fed. Cir. 1995) ............................................................... 13

*StrikeForce Techs. Inc. v. PhoneFactor Inc.,*
  2015 WL 5708577 (D. Del. Sept. 29, 2015) ........................................... 20

*SuperGuide Corp. v. DirecTV Enters., Inc.,*
  358 F.3d 870 (Fed. Cir. 2004) .......................................................... 18, 19

*Synchronoss Techns., Inc. v. Dropbox, Inc.,*
  987 F.3d 1358 (Fed. Cir 2021) ............................................................. 13

*Touchtunes Music Corp. v. Rowe Int'l Corp.,*
  727 F. Supp. 2d 226 (S.D.N.Y. 2010) ................................................... 18

- iii -

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Triton Tech of Tex., LLC v. Nintendo of Am., Inc.*,
753 F.3d 1375 (Fed. Cir. 2014) ...........................................................21

*Umbanet Inc. v. Epsilon Data Mgmt., LLC*,
2017 WL 3508771 (E.D. Tex. Aug. 16, 2017)......................................20

*Virtual Solutions, LLC v. Microsoft Corp.*,
925 F.Supp.2d 550 (S.D.N.Y. 2013) .....................................................12

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997) ...........................................................................2, 14

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015) .............................................19, 20, 21

*Xidrone Sys. v. Fortem Techs., Inc.*,
2025 WL 388666 (D. Utah Feb. 4, 2025) .............................................18

The parties dispute the construction of nine claim terms across four of the asserted patents. For five terms, Defendants propose constructions firmly grounded in the intrinsic record, relying on the specifications and the patentee's own prosecution statements. The remaining four terms are indefinite: three because they employ subjective or inconsistent language that provides no objective boundaries for determining claim scope, and one because it impermissibly claims pure function without reciting corresponding structure.

Plaintiffs, by contrast, misuse the claim construction process as a vehicle to rewrite their claims. For some terms, they attempt to alter substantively the relationships between claim elements; for others, they seek to delete express limitations altogether. These litigation-driven constructions are improper because they would impermissibly expand claim scope beyond what the patents actually teach and recapture subject matter surrendered during prosecution to distinguish prior art. For the reasons explained below, the Court should reject Plaintiffs' improper attempts to rewrite their claims and adopt Defendants' constructions, which faithfully reflect the intrinsic evidence and the governing law.

## I.    <u>LEGAL STANDARD</u>

"[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp*., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (citation omitted). Claim terms are construed in view of the "intrinsic evidence," including the patent claims, specification, and prosecution history. *Id.* at 1314-17. A patent's prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* at 1317. Extrinsic evidence, such as dictionaries, "can [also] be useful in claim construction." *Id.* at 1318.

"Each element contained in a patent claim is deemed material to defining the scope of the patented invention ...." *Warner-Jenkinson Co. v. Hilton Davis Chem.*

*Co.*, 520 U.S. 17, 29 (1997). Courts "must construe the claims based on the patentee's version of the claim as he himself drafted it." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) (citation omitted). "[C]ourts may not redraft claims, whether to make them operable or to sustain their validity." *Id.*

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "Contradictory limitations within a single claim or between different claims can render a claim indefinite." *In re Shafovaloff*, 2025 WL 1779173, at *1 (Fed. Cir. June 27, 2025).

## II.    OVERVIEW OF PATENTS-IN-SUIT

### A.    '301 Patent

The '301 Patent relates to motion compensation, a video compression technique in which a frame in a video sequence is predicted based on one or more previously-encoded frames, referred to as "reference pictures." '301 Patent at 1:27-36. When multiple reference pictures are used for prediction, a different "weighting factor" can be assigned to each reference picture to indicate its relative contribution to predicting the frame. *Id.* at 1:37-51.

The patent acknowledges that motion compensation was known. *Id.* at 1:37-51. It purports to improve upon existing methods by introducing a "reference picture index" that identifies the reference picture used in the prediction along with its associated weighting factor. *Id.* at 1:64-2:14. According to the patent, associating the weighting factor with the reference picture index, as opposed to a separate index, reduces the amount of data needed to represent the compressed video. *Id.* at 7:64-8:2, 8:57-67.

### B.    '610 Patent

The '610 Patent relates to "intra prediction"—using a portion of an image to predict and encode other portions of the same image. '610 Patent at Abstract, 1:21-

52. The patent acknowledges that this technique was already implemented in existing video standards such as MPEG-4, which performs intra prediction on a "block basis" (*e.g.*, on 4x4 or 8x8 blocks of pixels). *Id.* The patent purports to improve intra prediction by "dividing pixels within the block into at least a first group and a second group" and using these sub-block groups for prediction. *Id.* at 8:17-9:28.

### C.    '268 Patent

The '268 Patent concerns techniques for correcting the color of a video so the content appears consistent when displayed on devices that do not support industry-standard color gamuts. '268 Patent at Abstract, 8:25-35. A color gamut is the range of colors supported by a display device. *Id*. at 2:29-31, 3:21-31. According to the patent, traditionally, color correction was performed on a reference type display that supports an industry-standard color gamut. *Id*. at 4:1-40. It explains, however, that when content corrected on such a reference type display was viewed on consumer displays lacking support for the industry-standard color gamut, color discrepancies could occur. *Id*.

To address this problem, the patent purports to perform color correction for a non-reference type display (*i.e.,* a display that does not support an industry-standard color gamut). *Id*. at Abstract, 4:41-55. This process also generates metadata that allows the color-corrected content to be transformed from the non-reference display's color gamut to the industry-standard color gamut for playback on reference type displays. *Id*. at Abstract, 4:41-5:35. According to the patent, this approach allows for video content to be displayed with correct colors on both reference and non-reference type displays. *Id*.

### D.    '297 Patent

The '297 Patent describes a method for modifying a user interface of an electronic device to update available functionalities. '297 Patent at 1:39-44. It describes a television that receives regular programing and additional "side information." *Id.* at 2:8-17. This side information is used to temporarily change the

- 3 -

way the user would interact with the television. *Id.* at 1:32-35, 2:57-67. For example, instead of receiving input through only a remote controller, the side information might instruct the television to temporarily enable voice commands. *Id.* at 3:11-25.

## III.    ARGUMENT

### A.    '301 Patent

#### 1.    "weighting factor" (claims 8, 10)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| a coefficient for a multiplication operation that scales a value | a scaling value |

The dispute is whether a "weighting factor" must be used in a multiplication operation to perform scaling, as Defendants contend. The intrinsic and extrinsic evidence confirm that it does. A "weighting factor," by definition, functions as a coefficient in a multiplication operation that scales a value. Plaintiffs concede that the term involves scaling but improperly attempt to broaden the claim to encompass any mathematical operation—an interpretation unsupported by the record.

First, the patent specification supports Defendants' construction. The '301 Patent explains that a "weighting factor" is used to "scale[]" a reference picture and is the input to a "multiplier"—depicted in Figure 5 by the multiplication symbol "X." '301 Patent at 2:43-46, 6:24-32, Fig. 5[1]. The patent's other embodiments all show



**FIG. 5**

---

[1] All color annotations and emphasis are added unless otherwise noted.

that "weighting factors" are used as coefficients in multiplication operations. *See id*. at Figs. 2 (element 270), 3 (element 370), 6 (step 622), 7 (step 720).

The '301 Patent also repeatedly uses equations in which weighting factors "W0" and "W1" are coefficients in multiplication operations. *Id*. at 8:11-56. For example, it defines the equation "Pred=*W0*\*Pred0+D0," in which "W0" is a coefficient for a multiplication operation (denoted by "\*"). *Id*. at 8:24-28. The specification defines similar equations that use "W1" in multiplications, confirming that weighting factors are always used as coefficients for multiplication. *Id*. at 8:29-56. Plaintiffs' expert even conceded that all embodiments in the patent use weighting factors as coefficients in multiplications. Ex. 4 (Moulin Tr.) at 66:12-16.

Extrinsic evidence further supports Defendants' construction. Technical dictionaries uniformly define "factor" as an operand or multiplier in a multiplication operation. Ex. 6 (IEEE Dictionary) at DIS448-0010217 (defining "factor" as "Any of the operands in a multiplication operation"), Ex. 7 (Computer Dictionary) at DIS448-0010220 (defining "factor" as "an item that is multiplied in a multiplication problem"); Ex. 8 (Dictionary of Science and Technology) at DIS448-0010223 (defining "factor" as "the amount by which something is multiplied"). Proposals submitted to the relevant video coding standard-setting organization, including one submitted by the '301 Patent's inventor, also reinforce this usage. Ex. 9 (JVT-C066) (specifying weighting factors w1 and w2 as coefficients for multiplication operations that scale a value), Ex. 10 (JVT-B075) (same); Ex. 11 (JVT-D122) (proposal submitted by inventor describing the weighting factors specified in JVT-C066 as coefficients).

Plaintiffs dispute that a "weighting factor" must be a coefficient for multiplication but cannot identify any other operation for scaling a value. To the extent Plaintiffs argue that operations other than multiplication could be applied to the reference pictures—such as "clipping" to ensure the result falls within an allowable range—such operations are performed after the "weighting factor" has

already been multiplied to scale a value. '301 Patent at 8:11-56. Indeed, Plaintiffs' expert agreed that a weighting factor must always be used in multiplication operations, even if there are additional operations that happen after the multiplication such as clipping, rounding, or offsetting. Ex. 4 (Moulin Tr.) at 147:5-11.

Plaintiffs' expert testified also that "when we talk about weighting factor, we focus on the multiplication [operation]." *Id.* A person of ordinary skill in the art ("POSITA") would not have given the term "weighting factor" any other interpretation in the context of the '301 Patent. The Court should therefore adopt Defendants' construction.

### 2. "assigning a second weighting factor for the image block corresponding to a second reference picture index corresponding to a second reference picture" (claim 10)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| Indefinite | assigning a second weighting factor for the image block wherein the second weighting factor and a second reference picture correspond to a second reference picture index |

This term is indefinite because a POSITA would not have been able to choose among multiple plausible interpretations. The term recites four elements: "assigning [1] a second weighting factor for [2] the image block corresponding to [3] a second reference picture index corresponding to [4] a second reference picture." There are several plausible interpretations for how these four elements correspond to each other, rendering the term indefinite. *See, e.g., SK Microworks Am., Inc. v. Far E. New Century Corp.*, 2025 WL 1196360, at *7 (C.D. Cal. Jan. 23, 2025) (finding a claim term indefinite because the "ambiguous wording in the claim results in two potential explanations"); *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 2014 WL 5698445, at *4 (C.D. Cal. Aug. 25, 2014) (stating that a claim term would be indefinite if it has multiple plausible interpretations).

Under one plausible interpretation, it is "[2] the image block" that is "corresponding to [3] a second reference picture index corresponding to [4] a second

reference picture." Ex. 1 (Mayer-Patel Decl.), ¶¶37-38. This interpretation is consistent with the claim language because "corresponding to" immediately follows "the image block." *Id.*, ¶38. It is also consistent with the understanding of a POSITA. Ex. 3 (Mayer-Patel Tr.) at 84:17-85:7. For example, the '301 Patent discloses weighting factors being assigned to image blocks of reference pictures, where a particular image block corresponds to a reference picture, which in turn corresponds to a reference picture index. *Id.*; Ex. 1 (Mayer-Patel Decl.), ¶38; '301 Patent at 7:59-63. Furthermore, the difference in the language of claims 8 (which associates the "weighting factor" with a "reference picture index) and 10 (which links "image block" to "reference picture index") further supports this interpretation. Ex. 1 (Mayer-Patel Decl.), ¶¶37-38.

Under a second plausible interpretation, it is the "[1] second weighting factor" that is "corresponding to [3] a second reference picture index corresponding to [4] a second reference picture." *Id.*, ¶39. This interpretation is plausible because the specification states that "the weighting factor(s) … correspond to [the] reference picture indices" and that "if three reference pictures can be used to encode the current slice, up to three weighting factors are transmitted, and they are associated with the reference picture with the same index." *Id.*; '301 Patent at 7:29-49. Thus, under this interpretation, it is the second weighting factor that "correspond[s] to a second reference picture index corresponding to a second reference picture." Ex. 1 (Mayer-Patel Decl.), ¶39.

Plaintiffs propose yet another interpretation by rewriting the claim term from "assigning [1] second weighting factor for [2] the image block corresponding to [3] a second reference picture index corresponding to [4] a second reference picture" to "assigning [1] for [2] wherein [1] and [4] correspond to [3]." This redrafting improperly reverses the relationship between elements [3] and [4]. It also creates new ambiguity as to whether elements [1] and [4] correspond to each other, or whether element [2] corresponds to elements [3] and [4]. Plaintiffs' own expert acknowledged

that rewriting was needed to make sense of the term. Ex. 4 (Moulin Tr.) at 86:2-87:15. But rewriting is not permitted. *See Horizon Pharma, Inc. v. Dr. Reddy's Labs. Inc.*, 839 F. App'x 500, 505 (Fed. Cir. 2021) ("That the proper construction of the claims is nonsensical does not warrant judicial redrafting of the claims."); *Chef Am.*, 358 F.3d at 1374 ("courts may not redraft claims … to sustain their validity").

The Court should thus reject Plaintiffs' construction and find the term indefinite.

### 3. "the substantially uncompressed image block" (claim 10)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| Indefinite | the image block |

This term is indefinite because it is an undefined term of degree. Plaintiffs implicitly concede the problem by attempting to delete "substantially uncompressed" from the claim language. That approach is impermissible.

### a. *"Substantially" is an undefined term of degree*

A claim term is indefinite if it "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901. "Definiteness problems often arise when words of degree are used in a claim." *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984). When "words of degree" are used, "the district court must determine whether the patent's specification provides some standard for measuring that degree." *Id.*

Courts have found that "substantially" is a term of degree that often renders a claim indefinite. For example, in *In re Taasera Licensing LLC, Pat. Litig.*, the Court found "substantially real time" to be indefinite. 2023 WL 8628323, at *20 (E.D. Tex. Dec. 13, 2023). The Court noted that the patent-at-issue's use of both "real time" and "substantially real time" indicated that there must be "some difference in scope between" these terms. *Id.* at *20. The Court then noted that the patent does not provide any objective standard for distinguishing between "real time" and "substantially real time," and the patentee fails to "explain[] where one ends and the

other begins." *Id*. Other courts have found similar "substantially" terms indefinite. *See, e.g.*, *Brazabra Corp. v. Ce Soir Lingerie Co., Inc.*, 2019 WL 13136348, at *5 (W.D. Tex. Aug. 15, 2019) (finding "substantial area" indefinite); *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2016 WL 3124614, at *12 (N.D. Cal. June 3, 2016) (finding "substantially impair the quality of the user information" indefinite), *Cayenne Med., Inc. v. Medshape, Inc.*, 2016 WL 2606983, at *6 (D. Ariz. May 6, 2016) (finding "substantially different construction" indefinite).

Likewise, the '301 Patent uses both "uncompressed image block" and "substantially uncompressed image block," suggesting that there must be a difference in scope between them. *Compare* '301 Patent at Claim 8 *with* Claim 10. But the patent specification fails to provide any objective guidance to differentiate between the two. Ex. 1 (Mayer-Patel Decl.), ¶¶44-45. And Plaintiffs' expert was unable to distinguish between an "uncompressed image block" and a "substantially uncompressed image block." Ex. 4 (Moulin Tr.) at 70:4-9.

During the '301 Patent's prosecution, the Examiner arrived at the same conclusion, finding that "'substantially' is a term of degree … and renders the claim indefinite." Ex. 12 ('301 File History, 9/21/06 Office Action) at 2-3. The patentee subsequently deleted the term "substantially" from some of the claims, conceding that "substantially" was indefinite. Ex. 22 ('301 File History, 12/7/26 Response) at 6. However, the patentee kept "substantially uncompressed" in claim 10 and now asserts this claim in litigation.

### b.    *Plaintiffs cannot delete a claim term*

Plaintiffs propose to delete "substantially uncompressed" from the claim language. This is impermissible under established Federal Circuit precedents.

First, Plaintiffs' construction violates a fundamental tenet of claim construction—claim language cannot be construed to "render[] them void, meaningless, or superfluous." *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021); *see also Merck & Co. Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364,

1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."). Here, Plaintiffs' construction would require the Court to find that "substantially uncompressed" is meaningless and superfluous.

Second, the Federal Circuit has "repeatedly and consistently [] recognized that courts may not redraft claims … to sustain their validity." *Chef Am.*, 358 F.3d at 1374. If the claim is invalid as written—as is the case here—the Court cannot rewrite the claim to avoid invalidity. *See Horizon Pharma*, 839 F. App'x at 505 ("That the proper construction of the claims is nonsensical does not warrant judicial redrafting of the claims."). To the extent Plaintiffs argue that claim 10 includes an error, the proper procedure would be to petition the Patent Office for correction because "the district court d[oes] not have authority to correct [an] error in" the asserted claim. *H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1334 (Fed. Cir. 2014). Thus, the Court should reject Plaintiffs' construction and find the term indefinite.

### B. '610 Patent

**1.** **"intra prediction for at least one of the pixels within the second group is obtained by using pixels from neighboring pixels within the first group of pixels in blocks already coded and neighboring pixels outside the block that have already been coded" (claim 6)**

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| Indefinite | determining at least one pixel in the second group using already coded pixels within the first group and outside the block |

This term's requirement that the first group of pixels must be "***in blocks already coded***" contradicts other requirements of claim 6, rendering the claim indefinite. *See In re Shafovaloff*, 2025 WL 1779173, at *2 (Fed. Cir. 2025) ("contradictory requirements deprive the public of notice of the scope of the invention and the claims are, therefore, invalid as indefinite"). Recognizing this, Plaintiffs aim to delete this limitation by rewriting the term entirely. But Plaintiffs' rewriting is impermissible, especially because "in blocks already coded" was added

during prosecution to differentiate prior art. Given the language of the claim as written, the term is indefinite. *See Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350 (Fed. Cir. 1999) ("[W]here, as here, claims are susceptible to only one reasonable interpretation [that] results in a nonsensical construction of the claim as a whole, the claim must be invalidated.").

### a.    Claim 6 is internally contradictory and indefinite

Claim 6 is indefinite because it includes two mutually exclusive requirements—the "first group of pixels" must be in the current block being coded and in blocks already coded.

The first element of claim 6 defines the "first group" of pixels to be in the current block being encoded by intra prediction. It specifies "encoding a block"—*i.e.*, the block currently being encoded—"by dividing pixels within the block into at least a first group and a second group." *See* Ex. 1 (Mayer-Patel Decl.), ¶¶53-54. Thus, this element requires the "first group" to be within the block of pixels undergoing encoding.

The second element of claim 6 requires "the first group of pixels" to be "in blocks *already* coded"—*i.e.*, in blocks that have already completed encoding. The only antecedent basis for "*the* first group of pixels" recited in the second element comes from the first element, which already defined "a first group" to be pixels in the block undergoing encoding. *See* Ex. 1 (Mayer-Patel Decl.), ¶56.

Accordingly, claim 6 includes an internal contradiction as to "the first group" of pixels: they must both reside within the block currently being coded, as well as "in blocks already coded." *Id*. The same "first group" cannot be in two places at once. Indeed, Plaintiffs' expert admitted that requiring the current block's "first group" to be in blocks already coded "makes no sense." Ex. 4 (Moulin Tr.) at 133:6-15. But that is precisely what the claim language requires. This contradiction renders the claim term indefinite. *See, e.g., In re Shafovaloff*, 2025 WL 1779173, at *2; *Virtual*

*Sols., LLC v. Microsoft Corp.*, 925 F.Supp.2d 550, 569-70 (S.D.N.Y. 2013) (claim reciting "two apparently contradictory statements" is indefinite).

### b.    Plaintiffs cannot delete claim limitations

Unable to resolve claim 6's internal contradiction, Plaintiffs propose to delete "in block already coded" and other language from the claim. But Federal Circuit precedents prohibit litigants from "redraft[ing] claims … to sustain their validity." *Chef Am.*, 358 F.3d at 1374.

First, by deleting "in blocks already coded," Plaintiffs' construction seeks to recapture claim scope relinquished during prosecution. *See Comput. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008) (Plaintiff "cannot recapture claim scope disavowed during prosecution to prove infringement"). This limitation was added during prosecution to distinguish prior art. As originally drafted, claim 6 required the first and second group of pixels to be within the same block. *See* Ex. 13 ('610 File History, 11/1/18 Response) at 2-3. The Examiner rejected the claims based on the Chen prior art, explaining that Chen teaches "the first group and the second group ***are part of a same block***." Ex. 14 ('610 File History, 11/7/19 Rejection) at 5-8. Chen discloses dividing a block of pixels into first and second groups of "sub-blocks," and intra-predicting a "second group" using the "first group" from the same block. Ex. 15 (Chen) at claims 1, 5-6. Faced with this rejection, the patentee amended claim 6 by requiring "the first group" to be "in blocks already coded," thereby differentiating Chen's teaching of the first and second groups in the same block:

> 6.    (Currently Amended)  In a video encoder, a method, comprising:
>
> encoding a block in a picture using intra prediction by dividing pixels within the block into at least a first group and a second group and predicting pixels in the first group from neighboring pixels outside the block, prior to encoding the pixels in the second group,
>
> wherein an intra prediction for at least one of the pixels within the second group is obtained by using based on at least one of pixels from neighboring pixels within the first group of pixels in blocks already coded and neighboring pixels outside the block that have already been coded, and
>
> wherein the first group and the second group are implicitly derived from neighboring pixels of the block part of a same block that is contained within a macroblock.

Ex. 16 ('610 File History, 2/5/20 Response) at 3. The patentee argued "Chen does not teach or suggest" this amended claim. *Id.* at 7-8.

Having relied on these amendments to overcome Chen, Plaintiffs cannot ask the Court to ignore them during claim construction. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."). Indeed, Plaintiffs' construction would broaden claim scope to encompass Chen's teaching. Plaintiffs must be held to the language added during prosecution, even if that language contradicts the specification. *See Synchronoss Techns., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1366-67 (Fed. Cir 2021) (affirming indefiniteness for a term and declining to rewrite the claim based on how "a [POSITA] would read the specification").

*Second*, Plaintiffs' construction improperly broadens claim scope by further omitting the requirement of using "neighboring pixels" for prediction. Plaintiffs' expert conceded that using "neighboring pixels" is critical to the '610 Patent because "the quality of predictions decreases with the distance between pixels." *See* Ex. 4 (Moulin Tr.) at 111:21-115:25, 124:17-125:4. But Plaintiffs' construction eliminates this requirement and can be met even where the second-group pixels are far away.

Confronted with this during his deposition, Plaintiffs' expert admitted that claim 6 requires using "neighboring pixels." *Id*. at 128:9-23 ("[F]or pixels outside the block, ***it's important to specify that they're neighboring pixels*.")**, 120:21-121:2 ("So, if you look at the pixels outside the block so ***those need to be neighboring according to the claim*.")**.

Plaintiffs' attempt to remove two critical limitations is improper because "[e]ach element contained in a patent claim is deemed material." *Warner–Jenkinson*, 520 U.S. at 29. Claim construction seeks to define what the claim language means; it cannot be used to remove limitations altogether. Accordingly, Plaintiffs' construction should be rejected, and the court should find this term indefinite.

### C. '268 Patent

#### 1. "[a] reference type display[] having [a] reference color gamut" (claims 1, 6, 7, 8, 11)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| a display that supports a standardized color gamut | display capable of accurately displaying colors in accordance with a standardized color gamut |

Both parties agree that a "reference color gamut" means a "standardized color gamut." Ex. 1 (Mayer-Patel Decl.), ¶¶79-82; Ex. 2 (Sprenger Decl.), ¶¶37-39. The dispute is whether a display must "support" a standardized color gamut (Defendants' construction) or be "capable of accurately displaying colors in accordance with" a standardized color gamut (Plaintiffs' construction) for it to be a "reference type display." Defendants' construction is clear, based on the intrinsic evidence, and provides objective boundaries. By contrast, Plaintiffs' construction unnecessarily injects ambiguity and subjectivity through the phrase "capable of accurately displaying colors in accordance with."

The intrinsic evidence confirms Defendants' construction is correct. Every recitation of "reference type display" in the patent is directly tied to it having a "reference color gamut." '268 Patent at Abstract, 4:41-5:35, 7:9-18. A POSITA would therefore have understood that a "reference type display" is one that supports

a standardized color gamut defined by a standard setting organization. Ex. 1 (Mayer-Patel Decl.), ¶79. The word "support" is plain, objective, and readily understandable to a jury: a display either supports, or does not support, a standardized color gamut. The Court should therefore adopt Defendants' construction.

Plaintiffs' construction, in contrast, is unworkable and injects unnecessary ambiguity. Plaintiffs' expert, Dr. Sprenger, admitted that determining whether a display is "capable of accurately displaying colors in accordance with" a standardized color gamut, as required by Plaintiffs' construction, is "a judgment call" and "entirely user dependent." Ex. 5 (Sprenger Tr.) at 91:12-92:21. He further acknowledged that "a number of people in the creative process chain," including, for example, directors, colorists, and "people in procurement" could make that subjective determination. *Id.* at 94:2-95:14. According to Dr. Sprenger, if one person is "satisfied" with a display that fills 99% of a standardized color gamut, then that display would be a "reference type display" to that person. *Id.* at 91:12-92:21. However, if a second person is not satisfied, then that same display would not be a "reference type display" to the second person. Plaintiffs' construction thus improperly injects a subjective test for determining whether a display is a "reference type display." Courts have rejected such constructions. *See Intell. Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1381 (Fed. Cir. 2018) (finding a term that is "subjective and user-defined" indefinite); *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F. Supp. 3d 586, 610 (E.D. Tex. 2019) (same).

The flaws in Plaintiffs' construction are further underscored by Dr. Sprenger's inability to apply it consistently. Consider a display that is "capable of accurately displaying colors in accordance with a standardized color gamut," as required Plaintiffs' construction, but is also capable of displaying colors beyond that standardized color gamut. On its face, such a display should satisfy Plaintiffs' construction. Yet, when asked if such a display would qualify as a "reference type display," Dr. Sprenger testified that it would not under Plaintiffs' construction. Ex. 5

(Sprenger Tr.) at 57:15-57:24. That result is illogical and highlights the ambiguity in Plaintiffs' construction, as it excludes displays that should fall squarely within the wording of Plaintiffs' own construction. To justify this outcome, Dr. Sprenger asserted that the answer depends on the display's operation modes. *Id.* at 52:22-53:16, 57:15-58:8. But neither the '268 Patent nor Plaintiffs' construction mentions operating modes, let alone suggests that a display can be a reference type display in one mode but not in another mode. The Court should therefore reject Plaintiffs' construction and adopt Defendants' construction.

### 2. "[a] non-reference type display[] having [a] non-reference color gamut" (claims 1, 6, 8, 11)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| a display that does not support a standardized color gamut | display capable of displaying colors in accordance with a color gamut other than the reference color gamut |

The issue here is straightforward: "a ***non***-reference type display having a ***non***-reference color gamut" is simply the opposite of "a reference type display having a reference color gamut." The '268 Patent provides no basis for treating it otherwise. Thus, the proper construction of this term must be the opposite of the construction adopted for the "reference type display" term discussed above.

Defendants' construction reflects this common-sense interpretation. If "a reference type display having a reference color gamut" is properly construed as "a display that supports a standardized color gamut," then "a ***non***-reference type display having a ***non***-reference color gamut" must mean "a display that does ***not*** support a standardized color gamut." Ex. 1 (Mayer-Patel Decl.), ¶¶85-86. This construction is consistent with the plain language of the claims, the intrinsic evidence, and the way a POSITA would understand the claim terms.

Plaintiffs' construction, by contrast, improperly collapses two mutually exclusive categories of displays into overlapping ones. Under their approach, a single display can simultaneously qualify as both a reference type display and a non-

reference type display. For example, consider a display that is "capable of accurately displaying colors in accordance with a standardized color gamut" but is also capable of displaying colors beyond that standardized color gamut. Such a display would satisfy Plaintiffs' construction of "a reference type display having a reference color gamut" because it is "capable of accurately displaying colors in accordance with a standardized color gamut." At the same time, that very same display would also satisfy Plaintiffs' construction of "a non-reference type display having a non-reference color gamut" because it is also "capable of displaying colors in accordance with a color gamut other than the reference color gamut" (*i.e.*, a color gamut that extends beyond the standardized color gamut). Indeed, Plaintiffs' expert acknowledged this lack of mutual exclusivity, namely, that Plaintiffs' construction would permit a single display to qualify as both a reference type display and a non-reference type display. Ex. 5 (Sprenger Tr.) at 52:22-53:16, 57:15-58:8. Such a result is illogical.

Plaintiffs may attempt to salvage this contradiction by arguing that whether a display is "reference" or "non-reference" depends on the display's operating mode. But as explained above, neither the '268 Patent nor Plaintiffs' construction mentions operating modes or suggests that a display can switch between being a reference display in one mode and a non-reference display in another. Nothing in the intrinsic record supports such a reading.

Accordingly, Plaintiffs' construction should be rejected, and the Court should adopt Defendants' construction.

### 3. "at least one of a non-reference type display … and a reference type display…" (claims 1, 6)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| at least one of each category of displays selected from category (1) a non-reference type display having a nonreference color gamut and category (2) a reference type display having a reference color gamut | Plain and ordinary meaning: one or both of a display capable of accurately displaying colors in accordance with a standardized color gamut and a display capable of displaying colors in accordance with a color gamut other than the reference color gamut. |

The parties dispute whether "at least one of [A] *and* [B]" is conjunctive (Defendants' position) or disjunctive (Plaintiffs' position). This issue is not new: the Federal Circuit has already resolved it by finding the phrase to be conjunctive, requiring at least one of each listed category.

In *SuperGuide Corp. v. DirecTV Enters., Inc.*, the Federal Circuit construed the similar term "*at least one of* a desired program start time, a desired program end time, a desired program service, *and* a desired program type." 358 F.3d 870, 884 (Fed. Cir. 2004). The Court held that because "'at least one of' precedes a series of categories of criteria, and the patentee used the term 'and' to separate the categories of criteria," the term is a "conjunctive list" requiring "at least one value for each category." *Id.* at 886. Thus, the Court held that "the phrase 'at least one of' modifies each member of the list, *i.e.*, each category in the list." *Id.*; *see also Touchtunes Music Corp. v. Rowe Int'l Corp.*, 727 F. Supp. 2d 226, 238 (S.D.N.Y. 2010) ("'at least one of ... and' is conjunctive and requires at least one of each category…."); *Cirba Inc. v. VMware, Inc.*, 2022 WL 608185, *9 (D. Del. Feb. 24, 2022) (finding "at least one of [A] and [B]" to be conjunctive); *Xidrone Sys. v. Fortem Techs., Inc.*, 2025 WL 388666, *7 (D. Utah Feb. 4, 2025) (same).

The same analysis governs here. The term at issue uses "at least one of" to describe two categories of displays: (1) a "non-reference *type* display …" and (2) a "reference *type* display …." The word "type" indicates that each requirement refers

to a category of displays. Dependent claims 5 and 10 reinforce this by specifying different displays within those categories. And, just as in *SuperGuide*, the claim term uses the conjunctive "and" to separate these categories. Applying the "grammatical principle" explained in *SuperGuide*, the plain language of the claim term requires a conjunctive list of at least a non-reference type display ***and*** at least a reference type display. 358 F.3d at 886. Thus, the Court should adopt Defendants' construction.

### D.    '297 Patent

#### 1.    "side information components for modifying a functionality of said user interface" (claim 1)

| Defendants' Construction | Plaintiffs' Construction |
| --- | --- |
| Governed by 35 U.S.C. § 112, ¶ 6 and indefinite[2] | Plain and ordinary meaning |

This term invokes 35 U.S.C. §112, ¶ 6 because it recites only a function without describing any structure. Moreover, because the patent specification does not disclose sufficient structure to perform the claimed function, the term is indefinite. Plaintiffs dispute that the term is means-plus-function but are unable to explain what its "plain and ordinary meaning" is, beyond some kind of information. *See* Ex. 5 (Sprenger Tr.) at 100:14-102:2. Plaintiffs' inability to identify any plausible structure confirms that the term is indefinite.

#### a.    *The term invokes §112, ¶ 6*

A patent cannot claim only function—when a "claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function," its scope must be limited to "the corresponding structure, material, or acts described in the specification" as specified by §112, ¶ 6. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (quotations omitted). In determining whether §112, ¶ 6 applies, "[t]he standard is

---

[2] Because the '297 Patent was filed before the effective date of the Leahy–Smith American Invents Act ("AIA"), pre-AIA 35 U.S.C. §112, ¶ 6 governs. The same provision is now renumbered § 112(f).

whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.*

Here, "side information components" is not the name of a known structure. *See* Ex. 1 (Mayer-Patel Decl.), ¶¶99-100; Ex. 5 (Sprenger Tr.) at 123:6-15, 125:6-16. Rather, it is used to describe a "general category of whatever may perform" the function of modifying the user interface. *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1374 (Fed. Cir. 2020). Plaintiffs' expert conceded as much, testifying that "side information components" are "components of the side information," which is "data that's being transmitted to enable … a  receiving system to carry out certain modifications or functions." Ex. 5 (Sprenger Tr.) at 105:6-14, 123:6-15. This functional description confirms that the phrase merely acts as a placeholder for whatever data or algorithm that performs the claimed function.

Indeed, "component for" is a phrase commonly used in means-plus-function claims. The Manual of Patent Examining Procedures identifies "component for" on "a list of non-structural generic placeholders that may invoke 35 U.S.C. [§112, ¶ 6]." Ex. 17 (MPEP §2181). And courts have found similar terms to be means-plus-function. *See, e.g.*, *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 2018 WL 1699429, at *19-22 (E.D. Va. Apr. 6, 2018) ("enhancement component" is means-plus-function); *Umbanet Inc. v. Epsilon Data Mgmt., LLC*, 2017 WL 3508771, at *7 (E.D. Tex. Aug. 16, 2017) ("document-encoding component" is means-plus-function); *StrikeForce Techs. Inc. v. PhoneFactor Inc.*, 2015 WL 5708577, at *3 (D. Del. Sept. 29, 2015) ("component for receiving the transmitted data…" is means-plus-function). Here, "side information components…" invokes §112, ¶ 6 for the same reason.

> #### b.    The term is indefinite because the specification does not describe sufficient structure

A patent that "claim[s] a means for performing a particular function and then … disclose[s] only a general purpose computer as the structure" is indefinite for "pure functional claiming." *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*,

521 F.3d 1328, 1333 (Fed. Cir. 2008). For each means-plus-function limitation, the "specification must disclose with sufficient particularity the corresponding structure for performing the claimed function …." *Triton Tech of Tex., LLC v. Nintendo of Am., Inc*., 753 F.3d 1375, 1378 (Fed. Cir. 2014). Where "the function is performed by a general purpose computer or microprocessor, then the specification must also disclose the algorithm that the computer performs to accomplish that function." *Id.*

The '297 Patent's specification does not describe any algorithm for modifying a user interface. It refers to "side information components" in four instances, none of which describe any corresponding structure. *See* Ex. 1 (Mayer-Patel Decl.), ¶¶101-102. In one, the specification simply repeats the claim language. '297 Patent at 1:45-49. In the other three, the specification generally states that the "side information components" can be fed into generic computer components (e.g. a buffer and a modification unit) to modify the user interface. *Id.* at Abstract, 2:41-48.

The patent's use of generic computer hardware to enact a user interface modification is insufficient. The specification must disclose "'adequate' corresponding structure to achieve the claimed function." *Williamson*, 792 F.3d at 1352. That is not the case here. A "general-purpose computer without any special programming" cannot generate the claimed user interface modifications. *Ergo Licensing, LLC v. CareFusion 303, Inc*., 673 F.3d 1361, 1365 (Fed. Cir. 2012). Here, even if one were to assume that a computer's buffer and modification unit read, store, or use "side information components," that does not explain what structures "side information components" encompass for modifying user interface. This is exactly the kind of "black box" functional claiming prohibited by the Federal Circuit. *Id.*

A claim "cannot be construed so broadly to cover every conceivable way or means to perform the [claimed] function …." *Mas-Hamilton Grp. v. LaGard, Inc*., 156 F.3d 1206, 1214 (Fed. Cir. 1998). Plaintiffs' "plain and ordinary meaning" construction attempts to do exactly this—it would encompass any software or data "components" capable of performing the claimed function. Thus, the court should

construe this term under §112, ¶ 6 and find it indefinite for claiming a function without limiting that function to a particular structure.

### 2. "modifying a way in which said user can provide input into said user interface by using said stored side information components" (claim 1)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| modifying the way in which the user can input commands or operations into said user interface (e.g. changing from "pushing a displayed button" to "uttering the respective keyword") by using the stored side information components | Plain and ordinary meaning |

During prosecution, the patentee relied on this term to distinguish prior art that disclosed modifying the appearance and functionality of a user interface. Thus, "the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003). Accordingly, the term should be construed to require a modification to the method by which a user inputs commands.

During prosecution of the '297 Patent, the Examiner rejected its claims over several prior art references—such as Matsushita, Welsh, and Kohorn—that each disclosed modifying the display or functionality of the user interface. Ex. 18 ('297 File History, 3/6/2007 Office Action). The patentee responded that none of these references disclosed "modifying a way in which said user can provide input" because they only "allow[ed] different user interface displays" by using the same input methods, such as a keyboard or remote. Ex. 19 ('297 File History, 8/28/2007 Response) at 7-8. In contrast, the patentee characterized the '297 Patent as teaching "a modification of the user interface input" by switching from a remote control to "a voice controlled user interface." *Id.* at 7-8.

The patentee distinguished the prior art for failing to disclose a change to the input method, emphasizing that the prior art "means for response reception are unalterable" and that the "response unit is a keyboard which is unalterable." *Id.* at 9-

10. Because the prior art references used the same user input methods—even when changing the user interface displays or functions—the patentee argued that they do not teach changing "***the way in which the user can input commands or operations into the user interface*** of the apparatus." *Id.* at 7-8. The patentee repeatedly differentiated the "instant invention" from the prior art on this basis: "a drawback of these prior interfaces is that they are defined and fixed … the instant invention provides a broadcaster or other media supplier with the capability to modify a way in which input to a user interface can be provided by a user." *See* Ex. 20 ('297 File History, 8/5/2008 Appeal) at 8-9; Ex. 21 ('297 File History, 12/18/2008 Reply) at 2-3.

These statements "clearly and unequivocally disclaimed" patent scope distinguished during prosecution. *Sound View Innovations, LLC v. Hulu, LLC*, 2020 WL 10758103, at *4 (C.D. Cal. 2020). "By insisting that its invention [differed from the prior art], the patentee has rejected the examiner's broad assessment of the claim scope and stated in a public record what his invention could not be." *Omega Eng'g*, 334 F.3d at 1327. Thus, having relied on a change in the input method to differentiate prior art, Plaintiffs cannot now rely on a "plain and ordinary meaning" to recapture the disclaimed claim scope, such as modifying the user interface using the same input methods. Thus, the Court should adopt Defendants' construction, which is based on the patentee's own statements during prosecution.

## IV.  **CONCLUSION**

For the above reasons, Defendants respectfully request that the Court adopt their proposed constructions.

DATED: August 22, 2025

Respectfully submitted,

By:    */s/ Ryan K. Yagura*
     Ryan K. Yagura

RYAN K. YAGURA
NICHOLAS J. WHILT
XIN-YI ZHOU
O'MELVENY & MYERS LLP

*Attorneys for Defendants The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., BAMTech LLC, Hulu, LLC, and ESPN, Inc.*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this opposition brief contains 6,993 words, which complies with the word limit of L.R. 11-6.1.  Counsel relies on the word count word-processing application used to prepare the brief.

DATED: August 22, 2025                   Respectfully submitted,

                                         By:    */s/ Ryan K. Yagura*
                                                Ryan K. Yagura

                                         RYAN K. YAGURA
                                         NICHOLAS J. WHILT
                                         XIN-YI ZHOU
                                         O'MELVENY & MYERS LLP

                                         *Attorneys for Defendants The Walt*
                                         *Disney Company, Disney Media and*
                                         *Entertainment Distribution LLC,*
                                         *Disney DTC LLC, Disney Streaming*
                                         *Services LLC, Disney Entertainment &*
                                         *Sports LLC, Disney Platform*
                                         *Distribution, Inc., BAMTech LLC,*
                                         *Hulu, LLC, and ESPN, Inc.*