Richard A. Kamprath (admitted *pro hac vice*)
rkamprath@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Nancy Olson (SBN 260303)
nsolson@olsonstein.com
David Stein (SBN 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane, #301
Newport Beach, CA 92663
Telephone: (310) 916-7433

*Additional Counsel on signature block
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| INTERDIGITAL, INC., *et al.*, | Case No. 2:25-cv-00895-WLH-BFM |
| Plaintiffs, | |
| v. | **PLAINTIFFS' RESPONSIVE CLAIM CONSTRUCTION BRIEF** |
| THE WALT DISNEY COMPANY, *et al.*, | |
| Defendants. | Judge: Hon. Wesley L. Hsu<br>Courtroom: 9B<br>Hearing Date: TBD |

# TABLE OF CONTENTS

I.   Introduction ................................................................................................ 1

II.  U.S. Patent No. 8,406,301 ......................................................................... 2

    A.   "weighting factor" (claims 8, 10) ..................................................... 2

    B.   "assigning a second weighting factor …" (claim 10) ........................ 3

    C.   "substantially uncompressed image block" (claim 10) ..................... 3

III. U.S. Patent No. 10,805,610 ....................................................................... 5

    A.   "intra prediction for at least one of the pixels within the second group …" (claim 6) ............................................................................ 5

IV.  U.S. Patent No. 9,185,268 ......................................................................... 5

    A.   "reference type display having a reference color gamut" (Claims 1, 6, 7, 8, 11) ......................................................................... 6

    B.   "non-reference type display having a non-reference color gamut" (Claims 1, 6, 8, 11) ........................................................................... 7

    C.   "at least one of …" (Claims 1, 6) ...................................................... 8

V.   U.S. Patent No. 8,085,297 ......................................................................... 9

    A.   "side information components …" (Claim 1) ................................... 9

    B.   "modifying a way in which said user can provide input …" (Claim 1) ...................................................................................................... 10

i

P's Resp. Claim Const. Brief                                                                             Case No. 2:25-cv-00895-WLH-BFM

# TABLE OF AUTHORITIES

**CASES**

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  2018 WL 1699429, at *20 (E.D. Va. Apr. 6, 2018) ................................................. 9
*Cirba Inc. v. VMware, Inc.*, 2022 WL 608185, *9 (D. Del. Feb. 24, 2022) ................. 9
*Firtiva Corp. v. Funimation Glob. Grp., LLC*,
  No. 2:21-cv-00111-JRG-RSP, 2022 WL 23165, at *7 (E.D. Tex. January 3, 2022) 9
*Intel Corp. v. Qualcomm Inc.*,
  21 F.4th 801 (Fed. Cir. 2021) .................................................................................. 2
*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  783 F.3d 1374 (Fed. Cir. 2015) ............................................................................... 1
*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) ............................................................................... 4
*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ............................................................................... 2
*Rex Med., L.P. v. Intuitive Surgical, Inc.*,
  No. 19-005 (MN), 2020 WL 2128795, at *6 (D. Del. May 5, 2020) ....................... 8
*Rodime PLC v. Seagate Tech., Inc.*,
  174 F.3d 1294 (Fed. Cir. 1999) ............................................................................... 9
*Sonix Tech. Co. v. Publications Int'l, Ltd.*,
  844 F.3d 1370 (Fed. Cir. 2017) ............................................................................... 1
*StrikeForce Techs. Inc. v. PhoneFactor Inc.*, 2015 WL 5708577, at *3 (D. Del. Sept. 29, 2015) ................................................................................................................. 9
*SuperGuide Corp. v. DirecTV Enters., Inc.*,
  358 F.3d 870 (Fed. Cir. 2004) ................................................................................. 8
*Touchtunes Music Corp. v. Rowe Int'l Corp.*,
  727 F. Supp. 2d 226 (S.D.N.Y. 2010) ..................................................................... 8
*Umbanet Inc. v. Epsilon Data Mgmt., LLC*,
  2017 WL 3508771, at *7-8 (E.D. Tex. Aug. 16, 2017) ......................................... 10
*Xidrone Sys. v. Fortem Techs.*, Inc.,
  2025 WL 388666, *7 (D. Utah Feb. 4, 2025) ......................................................... 9

# I. INTRODUCTION

The Court should decline Disney's invitation to rewrite the claims by narrowing their plain language in an attempt to avoid infringement or invalidate them as indefinite without coming close to meeting the heavy burden for doing so. The Court should reject Disney's constructions because they improperly import limitations from preferred embodiments, mischaracterize intrinsic evidence, and disregard Federal Circuit precedent requiring claims to be given their ordinary and customary meaning unless the patentee clearly acted as its own lexicographer or disavowed scope. Instead, the Court should adopt InterDigital's constructions, which alone honor the claim language, specification, and prosecution history. They are also supported by InterDigital's experts (Dr. Sprenger and Dr. Moulin)—and by Disney's own expert Dr. Mayer-Patel.

Absent from Disney's brief is any acknowledgement of its burden of proof to show indefiniteness, let alone any showing that it has met that high burden.[1] "'[A] patent shall be presumed valid' and '[t]he burden of establishing in-validity of a patent or any claim thereof shall rest on the party asserting such invalidity' [and must] be proved by clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011) (quoting 35 U.S.C. § 282); *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) ("Indefiniteness must be proven by clear and convincing evidence."). A claim is indefinite if, "when read in light of the specification and the prosecution history, [it] fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Biosig Instruments, Inc v. Nautilus, Inc.*, 783 F.3d 1374, 1377 (Fed. Cir. 2015) ("Nautilus II") (internal quotations omitted) (analyzing the term "spaced relationship" and finding the claims were not indefinite because the specification and figures provided sufficient guidance). Disney cannot meet

---

[1] Disney's indefiniteness arguments—spanning three different and unrelated patents—are for these four terms: (a) '301 patent "assigning a second weighting factor…"; (b) '301 patent "substantially uncompressed image block"; (c) '610 patent "intra prediction for at least one…"; and (d) '297 patent "side information components."

1  this heightened burden for any of the disputed terms because the intrinsic evidence
2  shows that they provide objective boundaries that a person of ordinary skill in the art
3  ("POSITA") would readily understand. *See* Opening Brief ("OB") at 5-13, 19-21. The
4  extrinsic evidence supports InterDigital's constructions as well.

## II.   U.S. PATENT NO. 8,406,301

### A.   "weighting factor" (claims 8, 10)

Disney improperly imports a <u>multiplication-only</u> limitation from exemplary embodiments in the specification into the claims. Nothing in the '301 Patent defines "weighting factor" as always requiring multiplication. *See* OB at 3-5. The '301 Patent uses "weighting factor" in the ordinary sense—a value that scales a contribution from a reference picture. *See* '301 Patent at 2:42-46 ("a reference picture scaled by a weighting factor"). Claim 8 does not limit the scaling operation to multiplication; nor does the prosecution history. *See* OB at 3-4. And dependent claim 10 recites using the second weighting factor in a multiplication operation, which is necessarily different from—and broader than—independent claim 8's "modifying" language. *Id*. Basic claim differentiation principles reject Disney's contention, because doing otherwise would render the explicit "multiplying" language in claim 10 superfluous, which is improper. *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) ("It is highly disfavored to construe terms… [to] render[] them void, meaningless, or superfluous.")

Although Disney points to embodiments in which the weighting factor is used in a multiplication operation, "particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than such embodiments." *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1237 (Fed. Cir. 2001) (citing *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 966 (Fed. Cir. 2000)); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005). Disney's reliance on embodiments of the inventions ignores that these are illustrative, not definitional. Disney also relies on Dr. Moulin's deposition, but this reliance is misplaced: he

2

P's Resp. Claim Const. Brief                                         Case No. 2:25-cv-00895-WLH-BFM

1 discussed just one embodiment involving "equation 1" and weighting and clipping of "Pred" with variables "w0" and "P0". *Compare* Ex. D (Moulin Depo.) 147:5-11 (cited in Disney's OB at 6) *with id.* at 142:9-13 (on specific specification examples).

Disney also cites extrinsic dictionary definitions for the standalone term "factor," but notably not for the claim term "weighting factor," and cites no extrinsic evidence in the context of video coding. Disney's OB at 5. This should be given no weight.

B.   **"assigning a second weighting factor …" (claim 10)**

Disney fails to show this term is indefinite by clear and convincing evidence. A POSITA would readily grasp that a weighting factor is tied to a reference picture index, which, in turn, identifies a reference picture. *See* '301 Patent at 7:29-49; OB at 5-8; Disney OB at 7 (Disney admits this is a "plausible interpretation" of the claim); Ex. C[2] (Mayer Patel Decl.) ¶39 (Disney's expert agreeing). Disney then invents hypothetical alternative "interpretations," but this does nothing to render the term indefinite.

Disney relies on a single passage from the specification to support its "interpretation" that an image block, <u>not</u> the weighting factor, relates to the reference picture index. *See* Disney OB at 7 (citing '301 Patent at 7:59-63). Tellingly, Disney's "example" cites prior art, not the claimed inventions. *See* '301 Patent at 7:57-63 ("<u>Previously</u>, any set of weighting factors transmitted with each slice or picture were not associated with any particular reference pictures. <u>Instead</u>, an adaptive bi-prediction weighting index was transmitted for each motion block…") (emphasis added). Disney also creates "yet another interpretation" that is merely attorney argument. Disney OB at 7-8. Disney's indefiniteness arguments are unsupported and should be rejected. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 848 (Fed. Cir. 2010).

C.   **"substantially uncompressed image block" (claim 10)**

Disney fails to show this term is indefinite by clear and convincing evidence. There is only one "image block" acted upon in the claims and the embodiments. *See*

---

[2] All exhibit citations are to InterDigital's OB exhibits unless otherwise specified.

3

P's Resp. Claim Const. Brief                             Case No. 2:25-cv-00895-WLH-BFM

1  '301 Patent at figs. 5, 7. A POSITA would understand the <u>substantially uncompressed</u>
2  <u>image block</u> in claim 10 refers to and is the same <u>image block</u> in claim 10, and refers
3  to and is the same <u>uncompressed image block</u> in claim 8. OB at 9-11. Dr. Moulin and
4  Disney's expert Dr. Mayer-Patel agreed: the "substantially uncompressed image block"
5  and the "image block" refer <u>to the same thing</u>. Ex. A (Moulin Decl.) at ¶56; Ex. B
6  (Mayer-Patel Depo.) at 41:9-19. Disney's expert Dr. Mayer-Patel agreed there are no
7  other image blocks in the claim. Ex. B (Mayer-Patel Depo.) at 38:5-41:19 (Disney's
8  expert admitting that, in Figure 5, an image block is input into the subtraction operation
9  of block 510, that image block is uncompressed, and there is no teaching of using a
10 partially compressed image block). This understanding is at least reasonably certain
11 because there is no other image block referenced in the claims.

12      Disney argues prosecution disclaimer applies to somehow bar the use of the term
13 substantially in any claims. This is incorrect. "[F]or prosecution disclaimer to attach,…
14 the alleged disavowing actions or statements made during prosecution must be both
15 <u>clear and unmistakable</u>." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325–26
16 (Fed. Cir. 2003) (emphasis added). "Where the alleged disavowal is ambiguous, or even
17 'amenable to multiple reasonable interpretations,' we have declined to find prosecution
18 disclaimer." *MIT. v. Shire Pharm., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016). Here,
19 the applicant amended independent claim 8 to remove "substantially" without
20 addressing whether the term rendered the claim indefinite and without addressing the
21 term in any dependent claim. Ex. G ('301 Patent file history, 12/7/06 Amendment) at
22 6. The examiner agreed this resolved the issue: "the 112 rejection is withdrawn due to
23 the amendments made to claim 8." *Id.* (03/02/07, final rejection) at 2. By leaving the
24 image block and substantially uncompressed image block terms in claim 10, a
25 reasonable interpretation is that the applicant and examiner understood the antecedent
26 basis for these terms was the image block in claim 8, and all three terms refer to the
27 same thing. OB at 8-11.

28

4

P's Resp. Claim Const. Brief                                    Case No. 2:25-cv-00895-WLH-BFM

## III. U.S. PATENT NO. 10,805,610

### A. "intra prediction for at least one of the pixels within the second group …" (claim 6)

Disney fails to show this term is indefinite by clear and convincing evidence, especially where its position is contradicted by both the intrinsic and extrinsic evidence. OB at 11-14. Disney's manufactured confusion stems from reading the limitation in isolation. The term is clear when read in the context of the full claim, as required by the law—the first group of pixels are encoded in claim limitation 6(a) "prior to encoding the pixels in the second group," which occurs in limitation 6(b). *Id.* InterDigital's construction tracks the claim language and is fully supported by the specification, which a POSITA would understand teaches grouping pixels and predicting using neighboring pixels already coded. *See* '610 Patent at 8:17-9:28.

Disney now argues that InterDigital's construction is improper because it removes "in blocks already coded." Not so. InterDigital's construction contains the limitation "already coded pixels." This limitation is one distinguishing feature of the '610 Patent over the Chen reference Disney cites. Disney OB at 12; Disney Ex. 14 ('610 File History, 11/7/19 Rejection) at 5-8. Disney also argues that InterDigital's construction removes the phrase "neighboring pixels." InterDigital's construction attempts to clarify the term for the fact-finder, but the term itself is clear without a construction, and the Court could also adopt a plain and ordinary construction.[3] OB at 11-13 (describing claim 6 with reference to figure 7).

## IV. U.S. PATENT NO. 9,185,268

---

[3] If the Court is inclined to construe the term, InterDigital has no objection to add the neighboring language, which is consistent with InterDigital's original construction and the patent: "determining at least one pixel in the second group using already coded pixels <u>neighboring the second group</u> within the first group and pixels <u>neighboring the second group</u> outside the block."

5

P's Resp. Claim Const. Brief                                                                 Case No. 2:25-cv-00895-WLH-BFM

A.     **"reference type display having a reference color gamut" (Claims 1, 6, 7, 8, 11)**

Disney labels any display that can support a standardized gamut as a reference type display—regardless of what gamut the display is using.[4] But this is inconsistent with the specification, which teaches that the specification contradicts such a result. The patent's goal is to ensure "predictable results on displays with different color gamuts." '268 Patent at 1:11-14. When a color correction display and a playback display use different color gamuts, the "resultant colors may look dissatisfying" on the playback display. *Id.* at 1:26-30, 4:7-11, 4:21-27. In contrast, Disney's construction is agnostic as to whether reference type displays: (1) use the same color gamut during color correction and content playback and (2) whether the display can switch gamuts in the middle of color correction or playback. This contravenes the goal of the invention: satisfying and predictable color reproduction. InterDigital's construction ensures the same color gamut is used by a reference type display during color correction and by a consumer's display during content playback, leading to predictable color reproduction.

InterDigital's construction is objective. A display either uses (*i.e.*, is capable of displaying colors in accordance with) or does not use a reference color gamut. Dr. Sprenger acknowledged that gamut matches are within "certain tolerances" and that "a person of ordinary skill… would definitely be aware of that fact." Disney Ex. 5 (Sprenger Depo.) at 115:3-116:12; *see also* Ex. B (Mayer-Patel Depo.) at 56:10-57:9. Disney points to testimony from Dr. Sprenger to argue InterDigital's construction is ambiguous and subjective. But, Dr. Sprenger discussed whether individuals producing video content would view a display as a "reference display," which is typically a high-end monitor used in color correction. Disney Ex. 5 (Sprenger Depo.) at 91:12-92:21, 94:2-95:14, 119:16-120:6. How a video production engineer would <u>select</u> a "reference display" is a separate issue from what <u>constitutes</u> a reference type display. InterDigital's

---

[4] InterDigital proposed a compromise construction to Disney of "a display that is using a standardized color gamut" but Disney rejected this construction on September 2nd.

6

P's Resp. Claim Const. Brief                                     Case No. 2:25-cv-00895-WLH-BFM

construction should be adopted because it is supported by the intrinsic record.[5]

### B. "non-reference type display having a non-reference color gamut" (Claims 1, 6, 8, 11)

Disney's inclusion of "supports" is wrong here for the same reasons it is wrong for the prior term. More importantly, Disney's argument that this term and the previous are "opposites" is incorrect—the critical consideration is that the "non-reference type display" uses a color gamut that is *different from* the color gamut of the "reference type display," as the patent is directed to "color correcting to provide predictable results on displays with different color gamuts." '268 Patent at 1:11-14. This stated goal does not require the non-reference type display's color gamut to be the "opposite" of the reference type display's gamut, nor does it require it to be "standardized."

Disney misconstrues InterDigital's construction to allow a single display to *simultaneously* be both a "reference type" and a "non-reference type" display. Disney OB at 16-17. But, as InterDigital's construction makes clear, a display is capable of displaying colors *in accordance* with a color gamut it is *using*—mere "support" of a gamut is not sufficient. Because a color gamut is the range of colors a specific device can produce, a display can use only one-color gamut at a time; a display cannot simultaneously display a reference color gamut and a color gamut other than the reference color gamut (*i.e.*, a non-reference color gamut). Disney Ex. 5 (Sprenger Depo.) at 21:22-25, 86:24-87:17.

The crux of Disney's argument is a hypothetical where "a display [] is 'capable of accurately displaying colors in accordance with a standardized color gamut' but is also capable of displaying colors beyond that standardized color gamut." Disney OB at 17. The result of this hypothetical depends on what color gamut the display is *using*. *Id*.

---

[5] Disney argues that "a display that is 'capable of accurately displaying colors in accordance with a standardized color gamut,'… is also capable of displaying colors beyond that standardized color gamut." Disney OB at 15-16. This hypothetical is discussed in section IV(B) in regard to the term "non-reference type display."

7

at 86:24-87:17. The display is a "reference type display" if it is using the standardized color gamut. Even if that display can also support other gamuts (with colors beyond the standardized gamut), because it is using the standardized color gamut, it is a "reference type display." *Id*. The display is a "non-reference type display" if it is using the gamut with colors beyond the standardized gamut (even if it supports the standardized color gamut). *Id*. The Court should adopt InterDigital's construction, which is supported by the specification and adheres to the plain and ordinary meaning of the term.

### C. "at least one of …" (Claims 1, 6)

The '268 Patent uses the term "at least one of" disjunctively to choose between two options. '268 Patent at Cls. 1, 2, 6. To escape the intrinsic record, Disney incorrectly asserts *SuperGuide* "has already resolved" that "at least one of [A] **and** [B]" is conjunctive not disjunctive. Disney OB at 18. But "*SuperGuide* has not been interpreted as a uniform rule that 'at least one of ... and' be construed in the conjunctive." *Radware Ltd. v. A10 Networks, Inc.*, 2014 WL 1572644, at *6 (N.D. Cal. Apr. 18, 2014). In *SuperGuide*, "at least one of" a four-item list was conjunctive because "'at least one of' precede[d] a series" and a grammatical rule applicable to series supported a conjunctive reading. *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 884 (Fed. Cir. 2004). But, "[a] 'series' of items is understood to be <u>three or more</u> items." *Rex Med., L.P. v. Intuitive Surgical, Inc.*, 2020 WL 2128795, at *6 (D. Del. May 5, 2020) (emphasis added). Critically, "[w]here there are <u>only two items</u>, courts have understood the use of 'and' to operate as a shorthand for '[A] or [B] or [A and B].'" *Id*. (emphasis added); *Radware*, 2014 WL 1572644 at *7. Here, "at least one of a nonreference type display… and a reference type display" includes only two items, indicating the disjunctive construction.

Disney's cases are distinguishable. *Touchtunes* involved a seven item series, not a two item list. *Touchtunes Music Corp. v. Rowe Int'l Corp.*, 727 F. Supp. 2d 226, 238 (S.D.N.Y. 2010). In *Cirba*, a "conjunctive construction would not render 'at least one of' superfluous." *Cirba Inc. v. VMware, Inc.*, 2022 WL 608185, *9 (D. Del. Feb. 24,

8

P's Resp. Claim Const. Brief          Case No. 2:25-cv-00895-WLH-BFM

2022). This case is the opposite—a conjunctive construction would render "at least one of" superfluous, which shows a disjunctive use. *Radware*, 2014 WL 1572644 at *7; *Rex*, 2020 WL 2128795 at *6. In *Xidrone*, the specification's disclosure did not demonstrate the language was disjunctive. *Xidrone Sys. v. Fortem Techs., Inc.*, 2025 WL 388666, *7 (D. Utah Feb. 4, 2025). In contrast, the '268 Patent discloses multiple embodiments that use a single display, which further strongly supports a disjunctive construction. *Firtiva Corp. v. Funimation Glob. Grp., LLC*, 2022 WL 23165, at *7 (E.D. Tex. January 3, 2022); '268 Patent at 10:18-22, 10:64-65. The Court should thus adopt a disjunctive construction: InterDigital's.

## V. U.S. PATENT NO. 8,085,297

### A. "side information components …" (Claim 1)

To manufacture a means-plus-function term, Disney tries to inject a function into a term that performs no function and does not recite the word "means." Here, "components" indicates a portion of the data that is side information. '297 Patent at claim 1. Data is not a physical component. Ex. 5 (Sprenger Depo.) at 125:6-10. Nor is data alone capable of performing any function. Ex. F (Sprenger Supp. Decl.) at ¶7-8; Ex. B (Mayer-Patel Depo.) at 81:2-17. A term like side information components that recites no function cannot invoke § 112, ¶ 6. *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1302 (Fed. Cir. 1999).

Disney's cases do not apply because they use "component" to describe a structure that performs a function rather than to describe a portion of a whole that performs no function. In *Amdocs*, "an enhancement component that augments data…" was a structure that performed the function of augmenting data. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 2018 WL 1699429, at *20 (E.D. Va. Apr. 6, 2018). Tellingly, the enhancement component used data as "inputs" rather than as structure that performs a function. *Id.*; *see StrikeForce Techs. Inc. v. PhoneFactor Inc.*, 2015 WL 5708577, at *3 (D. Del. Sept. 29, 2015) ("component for receiving the transmitted data…" was a structure that performed a function on data); *see Umbanet Inc. v. Epsilon Data Mgmt.*,

9

*LLC*, No. 2017 WL 3508771, at *7-8 (E.D. Tex. Aug. 16, 2017) ("document-encoding component which encodes…" was a structure that performed a function of encoding data). In contrast, side information components are data that perform no function. Side information components are acted upon when received, stored, and used in modification. Ex. F (Sprenger Supp. Decl.) ¶¶9-12; '297 Patent at 2:9-10, 2:33-48.

"Side information components" perform no function themselves, so Disney cannot meet its burden to show that §112, ¶6 applies, let alone that the claim is indefinite. The term should be construed according to its plain and ordinary meaning.

### B.  "modifying a way in which said user can provide input …" (Claim 1)

Disney misconstrues the prosecution history to disavow modifications that do not change input type, e.g., a new voice command for a user interface that utilizes only voice input. Disavowal requires that "statements made during prosecution be both clear and unmistakable[,]" rather than "vague or ambiguous[.]" *Omega*, 334 F.3d at 1325-26. There is no clear and unmistakable disclaimer here: the Applicant made no statement requiring changing input type as Disney suggests. The Applicant stated that "the way in which the user can <u>input commands or operations</u> into the user interface of the apparatus is an <u>unalterable</u> conventional one using prior art remote control devices." Disney Ex. 19 ('297 File History, 8/28/2007 Response) at 7-8 (emphasis added). That is, the mechanism by which commands or operations are input (*i.e.*, by remote control) was "unalter[ed]," or <u>unchanged</u>. Applicant also noted that "the instant invention allows for a voice-controlled user interface," again without requiring changing to another mechanism of input, like a physical remote control. *Id*. at 8. This falls far short of a possible disclaimer.

10

P's Resp. Claim Const. Brief                                      Case No. 2:25-cv-00895-WLH-BFM

| | | |
|---|---|---|
| 1 | Dated: September 5, 2025 | Respectfully submitted, |
| 2 | | /s/ Richard A. Kamprath |
| 3 | | Alan P. Block (CA Bar No. 143783) |
| | | ablock@mckoolsmith.com |
| 4 | | **MCKOOL SMITH, P.C.** |
| 5 | | 300 South Grand Avenue, Suite 2900 |
| | | Los Angeles, California 90071 |
| 6 | | Telephone: (213) 694-1200 |
| 7 | | Facsimile: (213) 694-1234 |
| 8 | | Richard A. Kamprath *(admitted pro hac vice)* |
| 9 | | rkamprath@mckoolsmith.com |
| | | Alexandra Easley *(admitted pro hac vice)* |
| 10 | | aeasley@mckoolsmith.com |
| 11 | | R. Arden Seavers *(admitted pro hac vice)* |
| | | aseavers@mckoolsmith.com |
| 12 | | Samuel L. Moore *(admitted pro hac vice)* |
| 13 | | smoore@mckoolsmith.com |
| | | Joseph W. Micheli *(admitted pro hac vice)* |
| 14 | | jmicheli@mckoolsmith.com |
| 15 | | Daniel Iliasevitch *(admitted pro hac vice)* |
| | | diliasevitch@mckoolsmith.com |
| 16 | | **MCKOOL SMITH, P.C.** |
| 17 | | 300 Crescent Court, Suite 1200 |
| | | Dallas, Texas 75201 |
| 18 | | Telephone: (214) 978-4000 |
| 19 | | Facsimile: (214) 978-4044 |
| 20 | | Joshua W. Budwin *(admitted pro hac vice)* |
| 21 | | jbudwin@mckoolsmith.com |
| | | **MCKOOL SMITH, P.C.** |
| 22 | | 303 Colorado Street, Suite 2100 |
| 23 | | Austin, Texas 78701 |
| | | Telephone: (512) 692-8700 |
| 24 | | Facsimile: (512) 692-8744 |
| 25 | | |
| 26 | | Kevin Burgess *(admitted pro hac vice)* |
| | | kburgess@mckoolsmith.com |
| 27 | | **MCKOOL SMITH, P.C.** |
| 28 | | 104 East Houston Street, Suite 300 |
| | | Marshall, Texas 75670 |

11

P's Resp. Claim Const. Brief                                                      Case No. 2:25-cv-00895-WLH-BFM

Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Hannah Mirzoeff *(admitted pro hac vice)*
hmirzoeff@mckoolsmith.com
**MCKOOL SMITH, P.C.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

*Attorneys for Plaintiffs InterDigital, Inc., InterDigital VC Holdings, Inc., InterDigital Madison Patent Holdings, SAS, and InterDigital CE Patent Holdings, SAS*

12

P's Resp. Claim Const. Brief                                Case No. 2:25-cv-00895-WLH-BFM