Richard Kamprath (*admitted pro hac vice*)
rkamprath@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Nancy Olson (SBN 260303)
nolson@olsonstein.com
David Stein (SBN 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane, #301
Newport Beach, CA 92663
Telephone: (310) 916-7433

*Additional Counsel for Plaintiffs listed in signature block
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| INTERDIGITAL, INC., *et al.*, <br><br>         Plaintiffs, <br><br>    v. <br><br> THE WALT DISNEY COMPANY, *et al.*, <br><br>         Defendants. | **Case No. 2:25-cv-00895-WLH-BFM** <br><br> **[DISCOVERY MATTER]** <br><br> **PLAINTIFFS' MOTION TO COMPEL** <br><br> **Hearing Date:** February 26, 2026 <br><br> Judge: Hon. Wesley L. Hsu <br><br> Magistrate Judge: Hon. Brianna F. Mircheff |

# TABLE OF CONTENTS

I.   FACTUAL AND PROCEDURAL BACKGROUND ................................1

II.  ARGUMENT ...........................................................................................3

    A.   ***Disney Should Produce The Joint Defense Agreement(s)*** ................3

        i.   *The Joint Defense Agreement is Relevant to Disney's Breach of Contract Counterclaim* ...............................................3

        ii.  *The Joint Defense Agreement Itself is Not Subject to An Automatic Privilege* ...................................................................6

    B.   ***A Narrative Response to Interrogatory No. 15 is Also a Pre-Requisite to Assessing Claims of Privilege*** ..........................................6

        i.   *The Interrogatory Does Not Request Privileged Information* ..................................................................................7

        ii.  *The Parties' Discovery Agreements Do Not Preclude A Narrative Response to This Interrogatory* .................................8

III. CONCLUSION .......................................................................................10

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Apple Inc. v. Samsung Elecs. Co.*,
  306 F.R.D. 234 (N.D. Cal. 2015) ..................................................................... 9

*In re California Bail Bond Antitrust Litig.*,
  778 F. Supp. 3d 1051 (N.D. Cal. 2025) ........................................................... 8

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  2016 WL 1258989 (N.D. Cal. Mar. 31, 2016) ................................................. 4

*G+ Commc'ns, LLC v. Samsung Elecs. Co.*,
  2024 WL 233222 (E.D. Tex. Jan. 22, 2024) ................................................ 4, 5

*Gaby's Bags, LLC v. Mercari, Inc.*,
  2020 U.S. Dist. LEXIS 215041 (N.D. Cal. Nov. 17, 2020) ............................. 9

*In re Grand Jury Investigation*,
  974 F.2d 1068 (9th Cir. 1992) ......................................................................... 7

*Hipschman v. Cnty. of San Diego*,
  738 F. Supp. 3d 1332 (S.D. Cal. 2024) ............................................................ 4

*Holmes v. Collection Bureau of Am., Ltd.*,
  2010 WL 143484 (N.D. Cal. Jan. 8, 2010) ...................................................... 6

*Mewawalla v. Middleman*,
  2023 U.S. Dist. LEXIS 46739 (N.D. Cal. Mar. 20, 2023) ............................... 6

*Mi Familia Vota v. Fontes*,
  344 F.R.D. 496 (D. Ariz. 2023) ....................................................................... 7

*Pac. Coast Steel v. Leany*,
  2011 WL 4572008 (D. Nev. Sep. 30, 2011) .................................................... 6

*Rodriguez v. Seabreeze Jetlev LLC*,
  620 F. Supp. 3d 1009 (N.D. Cal. 2022) ........................................................... 7

*United States v. Syufy Enters.*,
  903 F.2d 659 (9th Cir. 1990) ........................................................................... 5

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)..................................................................................................4

Fed. R. Civ. P. 26(b)(5)(A) .....................................................................................7, 10

Fed. R. Civ. P. 37 ........................................................................................................1

Fed. R. Civ. P. 37(a)(3)(B) ........................................................................................1

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B) and Local Civil Rule 37, Plaintiffs InterDigital, Inc.; InterDigital VC Holdings, Inc.; InterDigital Madison Patent Holdings, SAS; and InterDigital CE Patent Holdings, SAS (collectively, "Plaintiffs" or "InterDigital") hereby move to compel The Walt Disney Company; Disney Media and Entertainment Distribution LLC; Disney DTC LLC; Disney Streaming Services LLC; Disney Entertainment & Sports LLC; Disney Platform Distribution, Inc.; BAMTech, LLC; Hulu, LLC; and ESPN, Inc. (collectively, "Defendants" or "Disney") to (1) produce a copy of any written joint defense or common interest agreement (or agreements) between Defendants and third parties concerning Plaintiffs or this Action; and (2) provide a narrative response to Interrogatory No. 15 describing communications between Defendants and third parties concerning Plaintiffs or this Action. Under Ninth Circuit precedent, joint defense or common interest agreements are generally not privileged. Furthermore, it is difficult to determine whether a privilege issue exists without seeing the agreements and understanding the general nature of what communications exist. The Court should grant Plaintiffs' Motion so that these issues can be crystalized.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

There are five Asserted Patents[1] in this case, three of which are video encoding patents.[2] *See* Complaint, ECF No. 1, ¶¶ 468-522. Disney answered and counterclaimed for, among other things, breach of contract regarding the three Encoding Patents. Answer, ECF No. 42, ¶¶ 61-67. In this counterclaim, Disney alleges that InterDigital "fail[ed] to negotiate and act in good faith" by "refusing to offer Disney a license on RAND terms" and by "filing this Action." *Id.* ¶ 64.

---

[1] The Asserted Patents refer to, collectively, U.S. Patent No. 8,406,301; U.S. Patent No. 10,805,610; U.S. Patent No. 11,381,818; U.S. Patent No. 9,185,268; and U.S. Patent No. 8,085,297.

[2] U.S. Patent Nos. 8,406,301, 10,805,610, and 11,381,818 (collectively, the "Encoding Patents").

InterDigital disputes that reasonable and non-discriminatory ("RAND") licensing obligations apply to the Encoding Patents and filed a Motion to Dismiss these claims. *See* ECF No. 54. Judge Hsu denied InterDigital's Motion to Dismiss, leaving Disney's breach of contract counterclaims against InterDigital at issue in this case. *See* ECF No. 76. On August 8, 2025, a Disney entity filed an antitrust suit against certain InterDigital entities in the District of Delaware, alleging similar RAND claims. *See* Declaration of Josh Budwin ("Budwin Decl.") ¶ 6. InterDigital's motion to dismiss the Delaware antitrust suit is pending. *Id.*

On August 29, 2025, Amazon.com, Inc. ("Amazon")—without any prior notice—sued certain InterDigital entities in the High Court of Justice in the United Kingdom, seeking a worldwide rate to license InterDigital's patents, including the Asserted Patents in this case. *See* Budwin Decl. ¶ 7. A few days later, on September 5, 2025, Amazon filed another suit against certain InterDigital entities in the Business and Arbitration Conflicts Court in São Paulo, Brazil.[3] Budwin Decl. ¶ 8.

Given the unusual timing and overlapping causes of action, InterDigital believes that Disney and Amazon may be working together in their dual refusals to take licenses to InterDigital's patents. This supports InterDigital's defense to Disney's counterclaims: if RAND licensing obligations apply, then Disney— including by working with Amazon—is unfairly leveraging its dominant market position as part of a monopsony to "hold out" from taking a RAND license to InterDigital's patents. If so, then Disney is the one acting in "bad faith," and cannot claim the benefit of any RAND obligations if they even exist.

On September 9, 2025, InterDigital served Interrogatory No. 15 on Disney, requesting that Disney identify and describe the contents of each communication with any third party, including Amazon, concerning Plaintiffs or this Action. *See* Ex.

---

[3] After Amazon initiated these litigations, InterDigital has since sued Amazon in the District of Delaware, the Eastern District of Virginia, and the International Trade Commission. These lawsuits are unrelated to this case. Budwin Decl. ¶ 9.

A at 9. Disney responded that "Defendants have no non-privileged information that is responsive to this Interrogatory." *See* Ex. B at 5. While the parties continued to meet and confer about this insufficient response, on November 5, 2025, InterDigital served its Second Set of Requests for Production (Nos. 102-114) on Disney, which sought similar communications between Disney and third parties, as well as any joint defense agreements (RFP No. 113) or common interest agreements (RFP No. 114). *See* Ex. C at 21-22. In response to these RFPs, Disney responded that "no responsive, non-privileged documents are in Defendants' possession, custody or control." *See* Ex. C at 21-22, 23.

To ensure that it had the relevant information, on November 5, 2025, InterDigital also served a third-party subpoena on Amazon, seeking the same types of documents and communications, including any joint defense or common interest agreements with Disney. *See* Ex. D at 27. During a subsequent meet and confer with Amazon, its counsel confirmed that Amazon and Disney have entered into a written joint defense agreement, but that Amazon also refused to produce the agreement, as it understood Disney was withholding it on privilege grounds and motion practice was imminent. Budwin Decl. ¶ 5.

On January 22, 2026, the parties had an informal discovery conference with the Court. This Motion followed.

## II.  ARGUMENT

### A.  *Disney Should Produce The Joint Defense Agreement(s)*

Disney contends that it need not produce the joint defense agreement with Amazon because it is: (i) not relevant; and (ii) privileged. Both arguments fail and this Court should compel Disney to produce the agreement(s).

      i.    *The Joint Defense Agreement is Relevant to Disney's Breach of Contract Counterclaim*

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Typically, the relevance standard is broad in scope and 'encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in a case.'" *Hipschman v. Cnty. of San Diego*, 738 F. Supp. 3d 1332, 1336 (S.D. Cal. 2024) (quoting *Doherty v. Comenity Cap. Bank & Comenity Bank*, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017)). The joint defense agreement between Disney and Amazon is relevant to InterDigital's defense to Disney's breach of contract counterclaim—issues that Disney itself injected into these proceedings. Disney alleges that InterDigital breached its obligation to "negotiate and act in good faith." Answer, ECF No. 42, ¶ 64. Disney's own actions during the negotiations are now necessarily at issue as well.

The Encoding Patents are not essential to any standard and, despite Disney's insistence otherwise, no so-called RAND obligations adhere in this case. In the context of standard essential patent ("SEP") licensing, potential patent licensees act in bad faith to "hold out," *i.e.*, delay or refuse to negotiate or pay a fair royalty for the use of an SEP. Courts across the country have recognized this practice, referring to them as "unwilling licensees." *See, e.g.*, *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2016 WL 1258989, at *2 n.16 (N.D. Cal. Mar. 31, 2016) ("Courts have referred to entities engaging in 'hold out' behavior by refusing to take or offer to take a patent license on reasonable terms as 'unwilling licensees.'"); *G+ Commc'ns, LLC v. Samsung Elecs. Co.*, 2024 WL 233222, at *6 (E.D. Tex. Jan. 22, 2024) ("Hold out occurs when a standard implementer ignores the demands of the SEP owner 'because the odds of getting caught are small.' If such holdout occurs, the SEP owner is then free to pursue lawful remedies.") (internal citations omitted).

It is InterDigital's position that the Encoding Patents are not essential and as such, RAND obligations do not apply to them. *See* Motion to Dismiss, ECF. No. 54, at 11-14. This issue has not yet been decided by this Court, but, even if the Encoding Patents are deemed essential, Disney has continued to act in bad faith. In this instance, where InterDigital as a patent holder cannot exhibit monopoly power,[4] the concern becomes whether Disney and Amazon (or others) are colluding to hold out and thus create a monopsony,[5] wherein they as buyers have substantial power over the terms and price of a license to the Encoding Patents.

If Amazon and Disney, who are both in the market to license InterDigital's technology, are colluding to hold out, Disney is, and has been, acting in bad faith. Even if RAND applied, InterDigital would no longer be obligated to negotiate a license for the Encoding Patents, which is a necessary predicate to Disney's breach of contract counterclaim. "It is both practical and logical that the obligations of a party acting in good faith be suspended when a counterparty to a negotiation for a FRAND license is acting in bad faith. If the counterparty is acting in bad faith, it is impossible for negotiations for a 'fair' and 'reasonable' and 'non-discriminatory' contract to proceed." *G+ Commc'ns, LLC*, 2024 WL 233222, at *6.

InterDigital has consistently acted in good faith since beginning negotiations with Disney in July 2022. While InterDigital has made licensing offers to Disney, to date, and despite the negotiations lasting years and multiple direct requests, Disney has still not provided a counteroffer. Because Disney is an unwilling licensee engaged with others in "hold out," any joint defense or common interest agreement

---

[4] InterDigital's market share is minute compared to that of Disney or Amazon. *See* Budwin Decl. ¶ 10.

[5] "Monopsony is defined as a 'market situation in which there is a single buyer or a group of buyers making joint decisions. Monopsony and monopsony power are the equivalent on the buying side of monopoly and monopoly power on the selling side.'" *United States v. Syufy Enters.*, 903 F.2d 659, 663 n.4 (9th Cir. 1990) (internal citations omitted).

between it and Amazon is relevant to assessing and responding to Disney's counterclaim that InterDigital has acted in "bad faith."

     ii. *The Joint Defense Agreement Itself is Not Subject to An Automatic Privilege*

  Disney incorrectly contends that the joint defense agreement itself is privileged. In the Ninth Circuit, courts have routinely held that joint defense agreements themselves are not privileged. *See, e.g.*, *Mewawalla v. Middleman*, 2023 U.S. Dist. LEXIS 46739, at *2 (N.D. Cal. Mar. 20, 2023) ("[J]oint defense agreements are generally not privileged. They serve only to formalize the invocation of the joint defense or common interest."); *Pac. Coast Steel v. Leany*, 2011 WL 4572008, at *3 (D. Nev. Sep. 30, 2011) (same). In fact, joint defense or common interest agreements are typically only found to be privileged where the agreement "contain[s] substantive legal advice or additional information that can be construed as privileged." *Mewawalla*, 2023 U.S. Dist. LEXIS 46739, at *3. If the agreement concerns only the "general purpose" of recognizing that the parties to the agreement have a common legal interest, the agreement is not privileged. *Id.*

  Disney has not carried its burden to show the agreement(s) are privileged. *See Holmes v. Collection Bureau of Am., Ltd.*, 2010 WL 143484, at *2 (N.D. Cal. Jan. 8, 2010) ("The burden of establishing that the attorney-client privilege—and by extension the joint-defense exception—applies is on the party asserting the privilege."). Because the production of the joint defense agreement is the necessary first step in assessing Disney's claim of common interest privilege, Disney should be ordered to produce the agreement(s).

  **B.** ***A Narrative Response to Interrogatory No. 15 is Also a Pre-Requisite to Assessing Claims of Privilege***

  Disney argues that it does not need to provide a narrative description of communications with third parties in response to Interrogatory No. 15 because: (i)

the underlying communications are privileged; and (ii) the parties' discovery agreements preclude providing a narrative response. Both arguments fail.

### i. *The Interrogatory Does Not Request Privileged Information*

Interrogatory No. 15 requests that Disney "[i]dentify and describe the contents" of each communication with third parties, including Amazon, concerning the Asserted Patents, this Action, or the two suits filed by Amazon in foreign jurisdictions. *See* Ex. A at 9. The Interrogatory further requests that Disney identify "the date(s) of each such Communication, the participant(s) in each such Communication, and a description of the contents of each such Communication." *Id.* In response, Disney merely stated that "Defendants have no non-privileged information that is responsive to this Interrogatory." *See* Ex. B at 5. This response provides no information or ability for InterDigital to evaluate the privilege claim.[6] InterDigital thus seeks a description of these communications, including the participant(s), the date(s), and a description of the communication(s), with any privileged information omitted.

A general description of privileged communications is not, itself, privileged. *See Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1018 (N.D. Cal. 2022) ("'Not all communications between attorney and client are privileged' . . . material concerning the dates and duration of meetings with attorneys 'is not attorney-client privileged and it is not attorney work product' . . . '[t]he privilege protects only

---

[6] Federal Rule of Civil Procedure 26(b)(5)(A) describes the requirements for withholding discoverable information by claiming privilege. While the "customary way of asserting a privilege claim is through the preparation of a privilege log . . . a privilege log is not always the only way to raise a privilege claim." *Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 511 (D. Ariz. 2023); *see also In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) ("In essence, the party asserting the privilege must make a *prima facie* showing that the privilege protects the information the party intends to withhold. We have previously recognized a number of means of sufficiently establishing the privilege, one of which is the privilege log approach.").

1  communications, not facts.'") (internal citations omitted); *In re California Bail Bond Antitrust Litig.*, 778 F. Supp. 3d 1051, 1057 (N.D. Cal. 2025) ("The privilege protects only communications, and not underlying facts."). InterDigital is not seeking the disclosure of privileged information, but rather further factual information concerning the communications to evaluate both Disney's claim of privilege and the need for additional discovery on these communications, neither of which can be done with Disney's current boilerplate responses.

    ii. *The Parties' Discovery Agreements Do Not Preclude A Narrative Response to This Interrogatory*

  Disney argues that providing a narrative description of these communications would violate various agreements into which the parties entered to facilitate discovery in this case. Disney relies upon the Joint 26(f) Report (ECF No. 53) and the ESI Order (ECF No. 105), arguing that "Defendants are not required to describe the contents of any email communications." Ex. B at 5. The Joint 26(f) Report provides that "[t]he parties agree that discovery will not include e-mail collections, absent a showing of good cause." ECF No. 53 at 12. Disney's reliance on the Joint 26(f) Report is misplaced, as InterDigital is only requesting a general description of what communications exist and is not requesting that Disney undertake any "email collections" to respond to Interrogatory No. 15. Further, in the ESI Order the parties agreed that "[e]-mails and other forms of electronic correspondence are protected from discovery pursuant to the parties' agreement." ECF No. 105 at 4. The ESI Order provides guidelines for the collection and production of electronically stored information ("ESI"). The parties did not agree to a blanket ban on narrative descriptions of communications like those needed to test an assertion of privilege.

  Regardless, Interrogatory No. 15 does not solely seek a description of email communications. Interrogatory No. 15 defines "Communications" as:

> [A]ny written, verbal, or other transmission of fact, information, ideas, or opinion, including, but not limited to, any utterance, notation,

8

>question, command, interjection, expression, gesture, suggestive conduct or statement of any nature whatsoever, any conversation (whether by telephone or otherwise), and any meeting and also including, but not limited to, correspondence, financial records, corporate records, reports, and documents.

Exhibit A at 5-6.

Disney further argues that a narrative description of either oral or written communications would violate a separate clause of the ESI Order, which provides that "[c]ommunications or documents involving counsel, or experts retained for the purpose of this litigation, that post-date November 11, 2022 need not be placed on a privilege log."[7] ECF No. 105 at 5. This clause relieves the parties of the burden of logging every communication with their counsel about this Action. It was not meant to shield communications with a third party, especially communications that go to the heart of a claim at issue in this case, like whether there is improper collusion to deny InterDigital a fair rate for its intellectual property. Again, InterDigital is not seeking a full-blown privilege log, just the information required to identify whether the substance is legitimately protected from disclosure, as is required in the Ninth Circuit. *See Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015) ("'Because it impedes full and free discovery of the truth, the attorney-client

---

[7] It is standard practice for parties to agree that communications that post-date the filing of the complaint need not be logged, as it reduces the burden on both parties when there will necessarily be a high volume of communications with counsel. *See Gaby's Bags, LLC v. Mercari, Inc.*, 2020 U.S. Dist. LEXIS 215041, at *9 (N.D. Cal. Nov. 17, 2020) ("[C]ounsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log."). In this instance, the parties agreed to the date of the first Non-Disclosure Agreement, which holds the same benefits. Regardless, as Disney is aware, this clause was intended to reduce burden on the parties by not requiring them to log communications, among and between the parties and their respective counsel related to this Action. It was not intended to shield Disney from providing any required information to assess claims of privilege as Disney colludes with third parties about this Action.

9

privilege is strictly construed.' Claims of privilege must be particularized. The party asserting the privilege bears the burden of establishing all necessary elements. In particular, a party asserting privilege must 'describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'") (internal citations omitted).

Disney's flawed interpretation of the common interest privilege and the parties' discovery agreements would allow Disney to claim common interest privilege over any written or oral communications with third parties and shield any ability to test those claims of privilege. Disney's claim of privilege over communications going to the heart of an issue that it placed into controversy in this case, while simultaneously depriving InterDigital of the ability to test whether such a privilege even exists, is a per se improper use of the privilege as both a sword and a shield. This is not and cannot be consistent with Rule 26(b)(5)(A) or the case law.[8]

## III. CONCLUSION

Disney's breach of contract counterclaim places the parties' behavior during negotiations for InterDigital's intellectual property at issue, especially if Disney is working with others to deny InterDigital fair licensing rates. Amazon has admitted there is at least one written joint defense or common interest agreement and there may be similar agreements with other third parties, which Disney has thus far refused to disclose. Those agreements are not privileged and should be produced so that InterDigital may investigate them as part of its defense to Disney's counterclaims. Moreover, Disney should provide a narrative response to Interrogatory No. 15 in order to provide InterDigital with the additional information needed to test the assertion of privilege, identify other non-privileged avenues of discovery, and raise any dispute with the Court.

---

[8] The ESI Order governs as "as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, this Court's Standing Orders, and any other applicable orders and rules." ECF No. 105 at 1.

| | |
|---|---|
| Dated: January 30, 2026 | Respectfully submitted, |
| | */s/ Richard A. Kamprath* |
| | Alan P. Block (CA Bar No. 143783) |
| | ablock@mckoolsmith.com |
| | **MCKOOL SMITH, P.C.** |
| | 300 South Grand Avenue, Suite 2900 |
| | Los Angeles, California 90071 |
| | Telephone: (213) 694-1200 |
| | Facsimile: (213) 694-1234 |
| | |
| | Richard A. Kamprath *(admitted pro hac vice)* |
| | rkamprath@mckoolsmith.com |
| | R. Arden Seavers *(admitted pro hac vice)* |
| | aseavers@mckoolsmith.com |
| | Joseph Micheli *(admitted pro hac vice)* |
| | jmicheli@mckoolsmith.com |
| | Samuel Moore *(admitted pro hac vice)* |
| | smoore@mckoolsmith.com |
| | Daniel Iliasevitch *(admitted pro hac vice)* |
| | diliasevitch@mckoolsmith.com |
| | **MCKOOL SMITH, P.C.** |
| | 300 Crescent Court, Suite 1200 |
| | Dallas, Texas 75201 |
| | Telephone: (214) 978-4000 |
| | Facsimile: (214) 978-4044 |
| | |
| | Hannah Mirzoeff *(admitted pro hac vice)* |
| | hmirzoeff@mckoolsmith.com |
| | **MCKOOL SMITH, P.C.** |
| | 1301 Avenue of the Americas, 32nd Floor |
| | New York, New York 10019 |
| | Telephone: (212) 402-9400 |
| | Facsimile: (212) 402-9444 |
| | |
| | Joshua W. Budwin *(admitted pro hac vice)* |
| | jbudwin@mckoolsmith.com |
| | George Fishback, Jr. *(admitted pro hac vice)* |
| | gfishback@mckoolsmith.com |
| | **MCKOOL SMITH, P.C.** |
| | 303 Colorado Street, Suite 2100 |

|   |   |
|---|---|
| 1 | Austin, Texas 78701 |
| 2 | Telephone: (512) 692-8700 |
|   | Facsimile: (512) 692-8744 |
| 3 |   |
| 4 | Kevin Burgess *(admitted pro hac vice)* |
|   | kburgess@mckoolsmith.com |
| 5 | **MCKOOL SMITH, P.C.** |
| 6 | 104 East Houston Street, Suite 300 |
|   | Marshall, Texas 75670 |
| 7 | Telephone: (903) 923-9000 |
| 8 | Facsimile: (903) 923-9099 |
| 9 | Nancy Olson (SBN 260303) |
|   | nolson@olsonstein.com |
| 10 | David Stein (SBN 198256) |
| 11 | dstein@olsonstein.com |
| 12 | **OLSON STEIN LLP** |
|   | 240 Nice Lane, #301 |
| 13 | Newport Beach, CA 92663 |
| 14 | Telephone: (310) 916-7433 |
| 15 | *Attorneys for Plaintiffs InterDigital, Inc.,* |
| 16 | *InterDigital VC Holdings, Inc., InterDigital Madison Patent Holdings, SAS, and* |
| 17 | *InterDigital CE Patent Holdings, SAS* |

12

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 3,745 words, which complies with the word limit set by the Court Order date February 6, 2025.

DATED: January 30, 2026        */s/ Richard A. Kamprath*
                               Richard A. Kamprath