Richard Kamprath (*admitted pro hac vice*)
rkamprath@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Nancy Olson (SBN 260303)
nolson@olsonstein.com
David Stein (SBN 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane, #301
Newport Beach, CA 92663
Telephone: (310) 916-7433

*Additional Counsel for Plaintiffs listed in signature block
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| INTERDIGITAL, INC., *et al.*,<br><br>    Plaintiffs,<br><br> v.<br><br>THE WALT DISNEY COMPANY, *et al.*,<br><br>    Defendants. | **Case No. 2:25-cv-00895-WLH-BFM**<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO CONTINUE THE CASE SCHEDULE**<br><br>**Hearing Date:** February 27, 2026<br><br>Judge: Hon. Wesley L. Hsu<br><br>Magistrate Judge: Hon. Brianna F. Mircheff |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..........................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ....................................1

III. A DELAY OF THE TRIAL DATE IS NOT WARRANTED ........................2

    A. *Disney Was Not Diligent in Seeking Foreign Discovery* ......................3

    B. *Even if a Continuance is Granted, Disney Will Likely Not Receive the Requested Foreign Discovery by The (New) Close of Fact Discovery* ...................................................................................4

    C. *Disney Has Not Established That The Foreign Discovery Is Relevant* ................................................................................................6

    D. *InterDigital Will Be Unduly Prejudiced By A Continuance* .................7

IV. CONCLUSION...............................................................................................9

i

# TABLE OF AUTHORITIES

**Cases**

*Connex R.R. LLC v. AXA Corp. Sols. Assurance*,
  No. CV 16–02368–ODW, 2017 WL 3433542 (C.D. Cal. Feb. 22, 2017) ............4

*Dickens v. NXP Semiconductors*,
  703 F. Supp. 3d 1013 (N.D. Cal. 2023) ..................................................................5

*G+ Commc'ns, LLC v. Samsung Elecs. Co.*,
  No. 2:22-CV-00078-JRG, 2024 WL 233222 (E.D. Tex. Jan. 22, 2024) ...............8

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ..................................................................................3

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
  176 F. Supp. 3d 949 (E.D. Cal. 2016) ....................................................................7

*MACOM Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*,
  No. CV 16–2859–CAS (PLAx), 2017 WL 2999036 (C.D. Cal. May 25, 2017) ................................................................................................................5

*New Cingular Wireless PCS LLC v. City of W. Covina, California*,
  No. 2:22-cv-01642-MEMF-JCx, 2022 WL 20611226 (C.D. Cal. Nov. 21, 2022) ...............................................................................................................3, 7

*Romero v. Drummond Co.*,
  552 F.3d 1303 (11th Cir. 2008) ..............................................................................6

## I. INTRODUCTION

Defendants (collectively, "Disney") seek a four-month continuance of all pretrial and trial dates. InterDigital opposes Disney's Motion (ECF No. 135) because: (1) the delay in obtaining discovery from foreign individuals and entities is due to Disney's lack of diligence; (2) there is no guarantee that a four-month continuance will result in Disney obtaining the foreign discovery; (3) Disney has not shown that the foreign discovery is relevant or material to this case; and (4) a four-month continuance of the trial dates will cause undue prejudice to InterDigital. InterDigital instead proposes a 30-45 day continuance of the pretrial dates as a compromise that does not require changing the trial setting.

## II. FACTUAL AND PROCEDURAL BACKGROUND

InterDigital filed this case on February 2, 2025. *See* Complaint, ECF No. 1. On February 6, 2025, the Court entered its Standing Order for Newly Assigned Civil Cases, which provides that "the parties should begin to propound discovery before the Scheduling Conference." ECF No. 19 at 9. On March 31, 2025, Disney answered and counterclaimed for, among other things, breach of contract regarding the three encoding patents at issue in this case, alleging that InterDigital breached its contractual obligations with the International Telecommunication Union ("ITU") and other standard-setting organizations. *See* Answer, ECF No. 42, ¶¶ 61-67.

On April 25, 2025, the parties submitted their Joint Rule 26(f) Report, in which Disney (consistent with its counterclaims) identified sources of discovery including, "[d]ocuments related to InterDigital's commitments to the ITU, ISO, IEC, and their members and affiliates, including commitments made by InterDigital's predecessor-in-interest, Thomson Licensing," as well as "[a]ny other documents related to Defendants' affirmative defenses or counterclaims." *See* ECF No. 53 at 8-9. During the May 9, 2025 Scheduling Conference, Disney indicated it was planning to seek foreign discovery. *See* Ex. A (Hearing Transcript) at 4:24-5:8 ("[T]here's a

1  lot of . . . international discovery that's going to take place . . . it's not really the
2  volume of discovery so much as the logistics of getting that discovery done through
3  the Hague Convention . . . That's why we're asking for more time.").

4  Despite the Court's February 6, 2025 instruction to begin discovery before the
5  Scheduling Conference, and even though it acknowledged at the May 9, 2025
6  conference that it would seek international discovery, Disney waited nearly *three*
7  *months* to file an *Ex Parte* Application for Issuance of Letters of Request pursuant
8  to the Hague Convention. *See* ECF No. 87. Magistrate Judge Mircheff granted
9  Defendants' request on August 8, 2025 (ECF No. 91) and issued the Letters
10 Rogatory on August 11, 2025 (ECF Nos. 92-99). Disney waited yet *another month*
11 before serving the Foreign Discovery[1] on the French, Swiss, and German authorities
12 on September 11 and 12, 2025. Motion at 4. Disney has never explained why it failed
13 to serve the Foreign Discovery earlier, particularly when its counsel was well aware
14 that the "logistics of getting . . . discovery done through the Hague Convention" can
15 be time consuming. Ex. A (Hearing Transcript) at 5:6-7.

16 After providing an update to the Court on December 19, 2025 (ECF No. 124),
17 Disney waited another month to schedule a meet and confer with InterDigital to
18 discuss its request for a four-month continuance of all deadlines in the Scheduling
19 Order. *See* Declaration of Joshua W. Budwin ("Budwin Decl.") ¶ 3. As InterDigital
20 explained during this meet and confer, InterDigital is willing to adjust interim dates
21 as a compromise, but it opposes an extension of the trial date. *Id.*

22 **III.  A DELAY OF THE TRIAL DATE IS NOT WARRANTED**

23 "The Court has a strong interest in keeping scheduled dates certain . . . Any
24 request for continuance . . . must contain a detailed factual showing of good cause
25 and due diligence demonstrating the necessity." ECF No. 60 at 20. Disney fails to

---

[1] "Foreign Discovery" refers to, collectively, the eight Letters Rogatory served in Switzerland, France, and Germany, as identified in Disney's Motion. Motion at 3-4.

meet this standard because: (1) Disney did not exercise diligence in seeking the Foreign Discovery; (2) Disney has not established it will receive the Foreign Discovery within the requested four-month continuance; and (3) Disney has not established that the Foreign Discovery is relevant or necessary to this case. Further, a four-month continuance of the trial date will cause undue prejudice to InterDigital.

### A.   *Disney Was Not Diligent in Seeking Foreign Discovery*

Disney's assertion that it was "diligent in preparing and serving foreign discovery" (Motion at 8) is far from accurate. Disney disclosed its intent to seek foreign discovery as early as March 31, 2025 (and likely knew even earlier as it drafted its counterclaims). *See* Joint Rule 26(f) Report, ECF No. 53, at 8-9; *see also* Ex. A (Hearing Transcript) at 4:24-5:8.[2] Yet Disney did not serve the Foreign Discovery until early September 2025—*six months* later. Motion at 4. Disney's six-month delay in serving the Foreign Discovery does not demonstrate the required diligence to justify delaying this case. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (holding that "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment . . . If that party was not diligent, the inquiry should end."); *New Cingular Wireless PCS LLC v. City of W. Covina, California*, No. 2:22-cv-01642-MEMF-JCx, 2022 WL 20611226, at *2 (C.D. Cal. Nov. 21, 2022) (finding that defendant "failed to demonstrate good cause to extend the fact-discovery cut-off" where defendant was not "diligent in obtaining discovery by the deadline established by the Court").

As Disney's counsel acknowledged, the process for seeking discovery from foreign governments and individuals for use in U.S. litigation is lengthy and unlikely

---

[2] At the May 9, 2025 Conference, Disney argued that "an accelerated case schedule may not permit sufficient time to complete international discovery conducted through the Hague Convention." Motion at 10-11. After receiving the Court's schedule however, Disney still waited two months before even *filing* the *ex parte* request.

to result in obtaining useful evidence. *See Connex R.R. LLC v. AXA Corp. Sols. Assurance*, No. CV 16–02368–ODW, 2017 WL 3433542, at *14 (C.D. Cal. Feb. 22, 2017) (collecting cases "express[ing] skepticism about the effectiveness of resort to the Hague Convention" and noting that "the Hague Convention's procedures may be unduly time consuming or expensive" and that "the outcome of a request pursuant to the [Hague] Convention is by no means certain").

Even now, Disney is *not* being diligent. For example, on December 23, 2025, the Hannover County Court, in assessing one of Disney's German requests, informed Disney's German counsel that it would not release any information on the status of the request to Mr. Harald Schiller until Disney executed a new power of attorney naming German counsel as its representatives. Motion at 6-7. That request occurred over a month before Disney filed this Motion, but Disney is still "in the process of preparing the newly requested documents." Motion at 7. As another example, the Freiburg County Court sent the request to Mr. Ingo Doser back to this Court for unspecified "formal deficiencies" (*id.*), which will require Disney to reinitiate the Letter Rogatory process. In keeping with a theme, these actions too show a lack of diligence on Disney's part.

### B. *Even if a Continuance is Granted, Disney Will Likely Not Receive the Requested Foreign Discovery by The (New) Close of Fact Discovery*

If the Court grants Disney's request for a four-month continuance, there is no guarantee that Disney will receive the requested Foreign Discovery by August 13, 2026 (the proposed extended close of fact discovery). As Disney acknowledges, there are logistical difficulties associated with Hauge Convention discovery (Ex. A (Hearing Transcript) at 5:5-7), which remains true for the Foreign Discovery that Disney belatedly seeks.

For example, there are heightened privacy protections in France and Germany, pursuant to the General Data Protection Regulation, which places strict

restrictions on the extraction of personal data,[3] and in Germany, there are restrictions on the ability to conduct depositions.[4] These additional impediments have not been removed, and Disney has not explained what—if anything—it has done to work around these various restrictions to obtain documents and take depositions in France and Germany.

In addition, the request to the ITU is barred by "diplomatic privileges and immunities." Motion at 5. It is well known that the ITU, designated as a specialized agency by the United Nations, has certain privileges that do not require it to respond to discovery requests.[5] InterDigital has found no instance in which the ITU has

---

[3] *See The General Data Protection Regulation*, Council of the Eur. Union (last updated June 13, 2024), https://www.consilium.europa.eu/en/policies/data-protection-regulation/ ("The EU general data protection regulation (GDPR) is the strongest privacy and security law in the world. . . . The GDPR also covers the transfer of personal data to non-EU countries and international organisations."); *see also Dickens v. NXP Semiconductors*, 703 F. Supp. 3d 1013, 1021 (N.D. Cal. 2023) ("Even obtaining electronic evidence . . . can present technical challenges because of requirements in the German Federal Data Protection Act and the European Union's General Data Protection Regulation.").

[4] *MACOM Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, No. CV 16–2859–CAS (PLAx), 2017 WL 2999036, at *2 (C.D. Cal. May 25, 2017) (noting that there are "serious restrictions on depositions in Germany, including that the process must go through the U.S. consulate in Germany with at least six weeks' advance notice . . . [d]epositions taken without the prior approval of the German Ministry of Justice and/or without the involvement of the United States Mission to Germany are unauthorized and may lead to criminal penalties against the participants").

[5] The ITU was designated as a "public international organization[] entitled to enjoy the privileges, exemptions, and immunities conferred" by the International Organizations Immunities Act. Exec. Order No. 9863, 12 Fed. Reg. 3559 (May 31, 1947). The United Nations has also designated the ITU as a "specialized agency," which provides "immunity from every form of legal process except in so far as in any particular case they have expressly waived their immunity." *See Convention on the Privileges and Immunities of the Specialized Agencies*, U.N.T.S 33 at 2 (available at https://treaties.un.org/doc/Treaties/1949/08/19490816%2010-43%20AM/Ch_III_2p-full%20text.pdf.

waived its immunities to respond to a discovery request from a U.S. court, nor does Disney cite any.[6] Here, there is no reason to suspect that the ITU might waive its sovereign immunity precluding a response to Disney's discovery requests. It has been three months[7] since the request was sent to the ITU, and the ITU has not responded to the request in any way. *See Romero v. Drummond Co.*, 552 F.3d 1303, 1320–21 (11th Cir. 2008) ("When a moving party cannot establish that a continuance will enable them to procure testimony, we have held that a district court has the discretion to deny the continuance. . . . It is well-settled that a district court may deny a continuance when there is no guarantee that granting one will enable a party to secure the crucial testimony."). Given the complexities associated with these requests for Foreign Discovery, it is extremely unlikely that they will be timely ordered and that the documents and deposition testimony will be obtained, even with the requested continuance.

### C. *Disney Has Not Established That The Foreign Discovery Is Relevant*

Disney has not established the relevance of the specific discovery sought from these entities and individuals. *See New Cingular Wireless*, 2022 WL 20611226, at *1 (noting that one of the factors considered when evaluating a motion to amend a Rule 16 scheduling order is "the likelihood that the discovery will lead to relevant evidence"). Disney asserts the Foreign Discovery is relevant to its breach of contract counterclaim (Motion at 1), but this counterclaim is a breach of contract dispute, which is governed by the language of the contract itself. Even if the ITU waived its

---

[6] Disney asserts that its Swiss counsel spoke to an unnamed contact at the Swiss Mission to the United Nations who allegedly advised that "based on its own experience, the ITU typically produces documents when requested to do so by a Swiss court." Motion at 5. The hearsay assertion of one unnamed person, who provides no evidence or declaration here, does not establish that the ITU will waive its immunity.

[7] On November 5, 2025, the Geneva Civil Court of the First Instance sent the request directly to the ITU. Motion at 5.

immunity and produced documents, any of this information is likely inadmissible parol evidence to the underlying contract with the ITU.[8]

Disney also has not shown that it is unable to obtain the relevant materials from InterDigital or others in the United States. Disney incorrectly states that InterDigital did not produce the specific documents sought, such as "agreements, bylaws, communications, or draft forms relating to Technicolor, Thomson, the ITU, or other SSOs" (Motion at 12), relying only on InterDigital's first document production from June 16, 2025. *See* Burson Decl., ECF No. 136, ¶ 4. Following this production, InterDigital has produced more of these documents, including non-public submissions to the ITU from InterDigital, Thomson, and Technicolor; presentations made to the ITU's Joint Collaborative Team on Video Coding; and other documents submitted to the ISO. Budwin Decl. ¶ 4.

### D. *InterDigital Will Be Unduly Prejudiced By A Continuance*

Disney argues that InterDigital "would not suffer any undue prejudice" from the requested continuance. Motion at 12. Not so. As a remedy for Disney's continued infringement, in addition to monetary damages, InterDigital is also seeking a "permanent injunction prohibiting Defendants from further acts of infringement." Complaint, ECF No. 1, at 136.

InterDigital has been in negotiations with Disney since July of 2022. Since then, Disney has remained unlicensed and has continued to infringe the asserted patents. If the trial date is continued, InterDigital will suffer irreparable harm to its

---

[8] Assuming the ITU waives its immunity and produces documents to Disney in response to the request, these documents would constitute inadmissible parol evidence. Swiss law aside, in California "a contract's written terms alone control its interpretation: 'when parties enter an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to the terms of the writing.' This rule, commonly called the parol evidence rule, is a rule of substantive law, not of procedure." *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 962 (E.D. Cal. 2016) (internal citations omitted).

licensing program—not only with Disney, but also with other third parties engaged in license negotiations with InterDigital. For example, InterDigital is aware that Disney has entered into a joint defense agreement with third party Amazon.com, Inc. ("Amazon"), which relates to InterDigital and this Action. As such, Disney and Amazon, and potentially other third parties, are likely colluding to "hold out" on license negotiations, a frequent practice among patent infringers: those who would rather force innovators to litigate than pay fair value for using such proprietary technology.[9] In this scenario, potential patent licensees act in bad faith to "hold out," *i.e.*, delay or refuse to negotiate or pay a fair royalty for the use of a standard essential patent ("SEP"). *See G+ Commc'ns, LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00078-JRG, 2024 WL 233222, at *6 (E.D. Tex. Jan. 22, 2024) ("Hold out occurs when a standard implementer ignores the demands of the SEP owner 'because the odds of getting caught are small.' If such holdout occurs, the SEP owner is then free to pursue lawful remedies.") (internal citations omitted).

If Disney and other potential licensees, including Amazon, are engaging in a pattern of holdout relating to Disney's incorrect claims that the three encoding patents are RAND-encumbered, this devalues InterDigital's worldwide intellectual property rights. InterDigital has already received injunctions in concurrent litigations against Disney in Brazil[10] and Germany[11] on patents related to those at-issue here and is seeking a post-trial injunction in this Action for the same reasons. Any further

---

[9] InterDigital has filed a motion to compel Disney to produce information related to its joint defense agreement with Amazon. *See* ECF No. 135.

[10] On September 10, 2025, the 7th Corporate Court of the Capital Judicial District of Rio De Janeiro granted a preliminary injunction against Disney related to two of InterDigital's video encoding patents. Budwin Decl. ¶ 5.

[11] On May 27, 2025, the Mannheim Division of the Unified Patent Court granted an Anti-anti-suit Injunction against Disney. *See* Notice of Supp. Authority, ECF No. 75. On November 21, 2025, the Munich Regional Court granted an injunction against Disney for its infringement of an InterDigital patent. Budwin Decl. ¶ 6.

delay in adjudicating InterDigital's patent infringement claims in the United States constitutes irreparable harm that cannot be remedied by monetary damages.

The U.S. Patent & Trademark Office and the U.S. Department of Justice recently filed a Statement of Interest in another patent matter, in which they agreed that ongoing patent infringement constitutes irreparable harm that cannot be cured with monetary remedies whether the patent holder practices such patents or not:

> Consistent with Supreme Court and Federal Circuit precedent, this Court should evaluate the possibility of irreparable harm under traditional equitable principles. Under those principles, an ongoing patent infringement would, in many cases, result in irreparable harm based on the inadequacy of a monetary remedy, which can be difficult to calculate accurately. This position treats patents in this specific context like other unique assets that are difficult to value, making damages hard and costly to calculate. And it permits the same remedy—an injunction—to prevent an ongoing violation of rights in a unique asset regardless of who owns the asset.

Ex. B at 12.

Any delay of the trial would enable Disney's continued hold out. It would also incentivize other potential licensees to hold out and it would amplify the ongoing irreparable harm to InterDigital and its licensing program.

## IV. CONCLUSION

As noted, InterDigital is amenable to extending the interim deadlines by 30-45 days as a compromise to allow extra time to complete fact discovery. But Disney was far from diligent in pursuing the Foreign Discovery and InterDigital should not be penalized for such lack of diligence. Additionally, Disney has failed to show that the Foreign Discovery is uniquely relevant or unavailable through other means. Nor has Disney shown that it is likely to obtain any of this Foreign Discovery, even with a four-month continuance. As a delay of the trial date, even a short one, causes undue prejudice to InterDigital, InterDigital respectfully requests that the Court deny Disney's Motion.

| | |
|---|---|
| Dated: February 6, 2026 | Respectfully submitted, |
| | */s/ Richard A. Kamprath* |
| | Alan P. Block (CA Bar No. 143783) |
| | ablock@mckoolsmith.com |
| | **MCKOOL SMITH, P.C.** |
| | 300 South Grand Avenue, Suite 2900 |
| | Los Angeles, California 90071 |
| | Telephone: (213) 694-1200 |
| | Facsimile: (213) 694-1234 |
| | |
| | Richard A. Kamprath *(admitted pro hac vice)* |
| | rkamprath@mckoolsmith.com |
| | R. Arden Seavers *(admitted pro hac vice)* |
| | aseavers@mckoolsmith.com |
| | Joseph Micheli *(admitted pro hac vice)* |
| | jmicheli@mckoolsmith.com |
| | Samuel Moore *(admitted pro hac vice)* |
| | smoore@mckoolsmith.com |
| | Daniel Iliasevitch *(admitted pro hac vice)* |
| | diliasevitch@mckoolsmith.com |
| | **MCKOOL SMITH, P.C.** |
| | 300 Crescent Court, Suite 1200 |
| | Dallas, Texas 75201 |
| | Telephone: (214) 978-4000 |
| | Facsimile: (214) 978-4044 |
| | |
| | Hannah Mirzoeff *(admitted pro hac vice)* |
| | hmirzoeff@mckoolsmith.com |
| | **MCKOOL SMITH, P.C.** |
| | 1301 Avenue of the Americas, 32nd Floor |
| | New York, New York 10019 |
| | Telephone: (212) 402-9400 |
| | Facsimile: (212) 402-9444 |
| | |
| | Joshua W. Budwin *(admitted pro hac vice)* |
| | jbudwin@mckoolsmith.com |
| | George Fishback, Jr. *(admitted pro hac vice)* |
| | gfishback@mckoolsmith.com |
| | **MCKOOL SMITH, P.C.** |
| | 303 Colorado Street, Suite 2100 |

Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Kevin Burgess *(admitted pro hac vice)*
kburgess@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Nancy Olson (SBN 260303)
nolson@olsonstein.com
David Stein (SBN 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane, #301
Newport Beach, CA 92663
Telephone: (310) 916-7433

*Attorneys for Plaintiffs InterDigital, Inc., InterDigital VC Holdings, Inc., InterDigital Madison Patent Holdings, SAS, and InterDigital CE Patent Holdings, SAS*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 3,707 words, which complies with the word limit set by the court order dated February 6, 2025.

Dated: February 6, 2026          */s/ Richard A. Kamprath*
                                  Richard A. Kamprath