RYAN K. YAGURA (S.B. #197619)
ryagura@omm.com
NICHOLAS J. WHILT (S.B. #247738)
nwhilt@omm.com
XIN-YI ZHOU (S.B. #251969)
vzhou@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

*Attorneys for Defendants The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., BAMTech LLC, Hulu, LLC, and ESPN, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION AT LOS ANGELES

| | |
|---|---|
| INTERDIGITAL INC., INTERDIGITAL VC HOLDINGS, INC., INTERDIGITAL MADISON PATENT HOLDINGS, SAS, AND INTERDIGITAL CE PATENT HOLDINGS, SAS, <br><br> Plaintiffs and Counterclaim-Defendants, <br><br> v. <br><br> THE WALT DISNEY COMPANY, DISNEY MEDIA AND ENTERTAINMENT DISTRIBUTION LLC, DISNEY DTC LLC, DISNEY STREAMING SERVICES LLC, DISNEY ENTERTAINMENT & SPORTS LLC, DISNEY PLATFORM DISTRIBUTION, INC., BAMTECH, LLC, HULU, LLC, AND ESPN, INC., <br><br> Defendants and Counterclaim-Plaintiffs. | Case No. 2:25-cv-895-WLH-BFM <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO CONTINUE CASE SCHEDULE** <br><br> Judge: Hon. Wesley L. Hsu <br> Magistrate: Hon. Brianna F. Mircheff <br><br> Date:  February 27, 2026 <br> Time:  1:30 p.m. <br> Crtrm.: 9B |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1
II.  ARGUMENT ........................................................................................................ 1
    A.   Plaintiffs Mischaracterize and Misrepresent Defendants' Foreign Discovery Efforts ........................................................................................ 1
    B.   Plaintiffs Concede Their "Compromise" Is Insufficient ......................... 3
    C.   Foreign Discovery is Relevant to Defendants' Counterclaims ............... 4
    D.   Plaintiffs Are Not Unduly Prejudiced ..................................................... 6
III. CONCLUSION .................................................................................................... 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Wi-LAN, Inc.*,
  2019 WL 13162961 (S.D. Cal. Nov. 8, 2019) ...................................................... 2

*Cress v. Nexo Capital Inc.*,
  2026 WL 296728 (N.D. Cal. Feb. 4, 2026) ......................................................... 5

*G+ Commc'ns, LLC v. Samsung Elecs. Co.*,
  2024 WL 233222 (E.D. Tex. Jan. 22, 2024) ........................................................ 7

*Lindsay v. Fontana Police Dep't*,
  2024 WL 4868189 (C.D. Cal. Oct. 15, 2024) ...................................................... 5

*Meta Platforms, Inc. v. Judang Team LLC*,
  2026 WL 146703 (N.D. Cal. Jan. 20, 2026) ........................................................ 5

*Nguyen v. Lotus by Johnny Dung Inc.*,
  2019 WL 3064479 (C.D. Cal. June 5, 2019) ....................................................... 5

*Williams v. IHS Markit Ltd.*,
  2020 WL 10758865 (C.D. Cal. Nov. 17, 2020) ................................................... 5

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................................ 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Opposition ("Opp.") essentially asks the Court for an extraordinary remedy: to foreclose discovery that would materially impact Defendants' ability—as Counterclaim Plaintiffs—to develop and support their breach of contract counterclaims. Rather than working with Defendants to craft a reasonable adjustment to the schedule that would permit completion of the pending foreign discovery, Plaintiffs (1) mischaracterize Defendants' diligence in pursuing foreign discovery, (2) propose an extension that, even by their own admission, is inadequate to complete the foreign discovery, and (3) present red herring arguments about alleged "collusion" and licensing "hold out" that are irrelevant to the present motion.

Defendants, in contrast, seek a modest continuance to allow for the completion of foreign discovery of critical evidence supporting their counterclaims. Defendants have been diligent in pursuing that discovery, and raised this issue repeatedly in May, September, and December 2025. Accordingly, Defendants ask that the case schedule be adjusted to allow a four-month continuance of all pretrial and trial dates as Defendants requested in their Motion ("Mot.").

## II. ARGUMENT

### A. Plaintiffs Mischaracterize and Misrepresent Defendants' Foreign Discovery Efforts

Plaintiffs make much of the alleged "delay" between when the parties submitted the Joint Rule 26(f) Report and when Defendants served their foreign discovery requests. *See* Opp., 3. But that characterization misstates the record and ignores the realities of international discovery. Serving foreign discovery under the Hague Convention is not a trivial task. As Plaintiffs themselves acknowledge, "the process for seeking discovery from foreign governments and individuals for use in U.S. litigation is lengthy." *Id*. At a minimum, Defendants were required to: (i) identify and retain a foreign discovery firm to assist with preparation and service of

the requests; (ii) identify and engage foreign counsel in three countries (Switzerland, Germany, and France); (iii) research and locate the proper targets for service of the international discovery in those countries for eight different entities and individuals; (iv) prepare tailored document requests, deposition topics, and the accompanying Hague documentation for each target, under the laws and rules of three different foreign jurisdictions; and (v) retain a translation services company to translate each set of requests to French or German. *See* Mot., 2–7, 8–9.

Each of these steps required coordination across jurisdictions, counsel, and languages, and necessarily took time to accomplish. Mot., 2–7, 8–9. But the fact that preparation, translation, and service of eight sets of tailored foreign discovery requests across three countries did not occur overnight does not demonstrate a lack of diligence. *See Apple Inc. v. Wi-LAN, Inc.*, 2019 WL 13162961, at *1 (S.D. Cal. Nov. 8, 2019) ("All told, this process took five months, which is not an insignificant amount of time. ***That the process took time, however, does not mean Wi-LAN was not diligent*** in seeking the Agreements.") (emphasis added). In short, the timeline Plaintiffs label as "delay" reflects the logistical and legal complexity of cross-border discovery—it demonstrates reasonable diligence and not inaction or neglect.

Even assuming that Plaintiffs could identify some incremental delay (which Plaintiffs have failed to do), that would not justify the drastic remedy Plaintiffs seek—effectively foreclosing Defendants from obtaining critical foreign evidence and materially impairing Defendants' breach-of-contract counterclaims. Rule 16's good-cause standard is not intended to impose such a forfeiture, particularly where the discovery at issue concerns evidence uniquely held abroad and outside the parties' control. For these reasons, Defendants respectfully request a four-month continuance of the discovery deadline to allow for the completion of foreign discovery, including the collection of documents from the foreign entities and individuals, and subsequent depositions of the foreign witnesses regarding those documents.

### B. Plaintiffs Concede Their "Compromise" Is Insufficient

Plaintiffs' proposed "30–45 day continuance of the pretrial dates" (Opp., 1) is not a meaningful solution—it merely postpones the dispute without resolving it. By emphasizing the inherent delays and legal barriers of Hague Convention discovery, Plaintiffs themselves demonstrate why a shorter extension cannot possibly suffice.

Plaintiffs effectively concede that a 30–45 day extension would be insufficient to allow completion of foreign discovery. Indeed, Plaintiffs' Opposition details the "logistical difficulties associated with Hague Convention discovery," including heightened privacy protections and restrictions on the ability to conduct depositions. *See* Opp., 4–5.[1] Plaintiffs invoke those challenges to argue that even a four-month continuance may not be enough. *See id*. That concession undercuts Plaintiffs' proposed "compromise." In light of the very complexities Plaintiffs describe, Defendants proposed a revised schedule that reasonably accounts for the current status of the pending foreign discovery and the practical realities of cross-border proceedings. Mot., 13–14.

There is no mechanism by which Defendants—or anyone—can guarantee when a foreign court will act or when a foreign entity will respond. Indeed, for the very reasons Plaintiffs highlight, Defendants (1) have been working with their foreign counsel during this discovery process in the various jurisdictions under the Hague Convention, and (2) have been corresponding, through foreign counsel, with the respective foreign authorities and courts regarding the status of the pending

---

[1] Although Plaintiffs argue there are heightened privacy protections in Germany and France (Opp., 4–5), parties routinely obtain international discovery in those jurisdictions via the Hague Convention. *See* Second Burson Decl., Ex. F ¶¶ 3–8 (addressing French and EU data protection regulations). In any event, the types of documents that Defendants are seeking—*e.g.*, business records and communications relating to publicly available technical standards—are not the kinds of documents that typically implicate privacy concerns. *See id*. As addressed in the declarations from Defendants' foreign counsel, these foreign jurisdictions are already acting and issuing orders on Defendants' discovery requests, with additional orders expected to follow soon. *See* Dkt. 136, Exs. A–C; Second Burson Decl. ¶ 3, Ex. F ¶¶ 9–10.

- 3 -

discovery requests. *See* Burson Decl. ISO Mot., Exs. A–C; Second Burson Decl. ¶ 3, Ex. F ¶¶ 9–10. The fact that international discovery is unpredictable and requires parties to comply with different rules and regulations in each jurisdiction counsels in ***favor*** of granting a meaningful extension, not against it.

Plaintiffs cannot simultaneously maintain that a 30–45 day extension is reasonable while insisting that even a four-month continuance may not suffice for Defendants to complete foreign discovery. Those positions are irreconcilable. Given the significant logistical and legal barriers Plaintiffs acknowledge, a shorter extension will plainly not solve the problem. A modest four-month continuance is not excessive—it is the only proposal that realistically accounts for the undisputed complexities of international discovery.[2]

### C. Foreign Discovery is Relevant to Defendants' Counterclaims

The evidence Defendants seek through foreign discovery is directly relevant to their FRAND-related breach of contract counterclaims. *See* Mot., 1–3, 11–12. For example, Plaintiffs' predecessors-in-interest submitted declarations to the relevant standard-setting organizations ("SSOs") in which they committed to licensing the asserted patents on FRAND terms to implementers of the relevant video encoding standards—which includes Defendants. *See id*. The surrounding SSO records, communications, and internal documentation bear directly on the existence, scope, and interpretation of those commitments. These documents are not readily available from other sources, including Plaintiffs.

Plaintiffs argue that Defendants have not established the relevance of their foreign discovery requests on the basis that the information sought is "likely inadmissible." Opp., 6–7. This argument misstates the governing discovery standard. As this Court has recognized, "evidence does not have to be admissible to be relevant." *Lindsay v. Fontana Police Dep't*, 2024 WL 4868189, at *7 (C.D. Cal. Oct.

---

[2] Moreover, Defendants do not want to burden the Court with serial, piecemeal requests for the same relief if the current schedule is only extended by 30–45 days, especially where both parties are already aware that amount of time is inadequate.

15, 2024); *see also* Fed. R. Civ. P. 26(b)(1). Rather, relevancy in discovery is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Nguyen v. Lotus by Johnny Dung Inc.*, 2019 WL 3064479, at *1 (C.D. Cal. June 5, 2019).

Moreover, Plaintiffs' speculative admissibility objections provide no basis to curtail the scope of discovery. "Whether a party breached a contract is a question of fact." *Cress v. Nexo Capital Inc.*, 2026 WL 296728, at *22 (N.D. Cal. Feb. 4, 2026); *Meta Platforms, Inc. v. Judang Team LLC*, 2026 WL 146703, at *6 (N.D. Cal. Jan. 20, 2026). Here, the parties agree that a contract exists but dispute its scope—specifically, whether that contract's FRAND terms apply to the patents asserted in this case. Defendants are entitled to develop the full factual record regarding the commitments made to the SSOs concerning the asserted patents and technology in order to support Defendants' interpretation of that agreement. Even if any information received in response to the foreign discovery requests is later considered parol or extrinsic evidence, as Plaintiffs theorize, such evidence may still be admissible to aid in interpreting an agreement when "two equally plausible interpretations of the language of a contract may be made." *See, e.g.*, *Williams v. IHS Markit Ltd.*, 2020 WL 10758865, at *4 (C.D. Cal. Nov. 17, 2020). At a minimum, any such materials fall squarely within Rule 26's broad scope of discoverability, regardless of how the Court ultimately rules on admissibility.

Plaintiffs additionally argue that Defendants have not shown they are unable to obtain the relevant materials from Plaintiffs. Opp., 7. However, during a January 30, 2026, meet and confer, Plaintiffs informed Defendants that Plaintiffs do not possess all of Thomson Licensing's and Technicolor's documents relating to communications with the relevant standard setting organizations. Second Burson Decl. ¶ 2. Thus, Plaintiffs are well aware that Defendants are unable to obtain the relevant discovery from Plaintiffs. Accordingly, absent completion of the foreign

discovery, Defendants will be deprived of evidence material to their counterclaims.

### D. Plaintiffs Are Not Unduly Prejudiced

Plaintiffs argue that Defendants' alleged "hold out" would "force innovators to litigate" and damage Plaintiffs' "licensing program." Op., 7–8. Those assertions are unsupported.

First, Plaintiffs are patent-assertion entities that regularly litigate. They have already filed eleven cases against Disney in the U.S. and abroad, as well as dozens of actions against other companies. Plaintiffs cannot explain how a modest extension in this case would materially affect any other proceeding.

Second, Plaintiffs are non-practicing entities that merely acquired the patents they now assert; they do not innovate, compete in any product market, or even practice the asserted technology. Mot., 12–13. Accordingly, they face no risk of market-share erosion, lost goodwill, or competitive harm from a modest schedule extension.

Third, Plaintiffs' claim of harm to their "licensing program" is contradicted by their own public statements. Plaintiffs' recent investor presentation shows that they are receiving "$0" in licensing revenues for "Streaming & Cloud Services," the category at issue here. Second Burson Decl., Ex. E at 39. There is no evidence that a continuance in this case would disrupt Plaintiffs' non-existent licensing program or revenue stream.

As explained in Defendants' Motion, courts routinely recognize that non-practicing entities are not prejudiced by modest scheduling extensions because any harm is compensable through monetary relief. *See* Mot., 12–13 (collecting cases). Plaintiffs cannot manufacture prejudice by resorting to unfounded accusations of "collusion" or "bad faith." None of the patents asserted in this case is being asserted against another defendant, so an extension in this case cannot interfere with any parallel enforcement effort. Moreover, Plaintiffs waited years after acquiring the patents-in-suit before filing this action; any urgency is self-created and disingenuous.

*Id.*

Plaintiffs' reliance on *G+ Commc'ns, LLC v. Samsung Elecs. Co.* further undermines their position. 2024 WL 233222, at *6 (E.D. Tex. Jan. 22, 2024); Opp., 8. That case concerns the rights of a standard-essential patent ("SEP") owner in relation to a standard implementer. *See id*. Plaintiffs have repeatedly argued in this case that the asserted patents are not SEPs—yet they invoke SEP "holdout" principles to claim prejudice. Defendants' foreign discovery is directed precisely at establishing that the asserted encoding patents are SEPs subject to FRAND commitments. As *G+ Commc'ns* makes clear, "SEP holders maintain an obligation to license its SEPs on FRAND terms and to negotiate toward such licenses in good faith . . . [t]hese obligations are irrevocable . . . ." *Id*. at *6. Plaintiffs cannot, on one hand, invoke SEP-specific policy arguments while, on the other hand, deny that their patents are SEPs and block foreign discovery aimed at establishing Plaintiffs' FRAND obligtations.

For all of these reasons, and because Plaintiffs can be adequately compensated monetarily, Plaintiffs are not unduly prejudiced by any continuance of the case schedule.

### III. CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant a continuance of the close of fact discovery by four months to allow for the completion of international discovery of the eight individuals and entities in the three foreign countries, each of which are believed to be in possession of documents and testimony highly relevant to Defendants' breach of contract counterclaim.

DATED: February 13, 2026

Respectfully submitted,

By: */s/ Ryan K. Yagura*
     Ryan K. Yagura

RYAN K. YAGURA
NICHOLAS J. WHILT
XIN-YI ZHOU
O'MELVENY & MYERS LLP

*Attorneys for Defendants The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., BAMTech LLC, Hulu, LLC, and ESPN, Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 2,165 words, which complies with the word limit of L.R. 11-6.1. Counsel relies on the word count word-processing application used to prepare the brief.

DATED: February 13, 2026                    Respectfully submitted,

                                            By:   /s/ Ryan K. Yagura
                                                  Ryan K. Yagura

                                            RYAN K. YAGURA
                                            NICHOLAS J. WHILT
                                            XIN-YI ZHOU
                                            O'MELVENY & MYERS LLP

                                            *Attorneys for Defendants The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., BAMTech LLC, Hulu, LLC, and ESPN, Inc.*