Richard Kamprath (*admitted pro hac vice*)
rkamprath@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone:   (214) 978-4000
Facsimile:    (214) 978-4044

Nancy Olson (SBN 260303)
nolson@olsonstein.com
David Stein (SBN 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane, #301
Newport Beach, CA 92663
Telephone: (310) 916-7433

*Additional Counsel for Plaintiffs listed in signature block
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| INTERDIGITAL, INC., *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>THE WALT DISNEY COMPANY, *et al.*,<br><br>                    Defendants. | **Case No. 2:25-cv-00895-WLH-BFM**<br><br>**[DISCOVERY MATTER]**<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL**<br><br>**Hearing Date:** February 26, 2026<br><br>Judge: Hon. Wesley L. Hsu<br><br>Magistrate Judge: Hon. Brianna F. Mircheff |

## <u>TABLE OF CONTENTS</u>

I.   ARGUMENT...............................................................................................1

    A.   *The Agreement is Undoubtedly Relevant.* ...............................................1

    B.   *A Narrative Description of Communications Is Not Privileged and Does Not Violate The Parties' Agreements.* ...................................4

II.  CONCLUSION...........................................................................................5

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
    2016 WL 1258989 (N.D. Cal. Mar. 31, 2016) ...................................................2

*Ford Motor Co. v. Edgewood Props., Inc.*,
    257 F.R.D. 418 (D.N.J. 2009)...................................................................................3

*G+ Commc'ns, LLC v. Samsung Elecs. Co.*,
    2024 WL 233222 (E.D. Tex. Jan. 22, 2024) .....................................................1, 2

*In re Grand Jury Investigation*,
    974 F.2d 1068 (9th Cir. 1992) ...................................................................................5

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
    2019 WL 4734950 (E.D. Tex. May 22, 2019), *aff'd*, 12 F.4th 476
    (5th Cir. 2021)...........................................................................................................3

*Microsoft Corp. v. Motorola, Inc.*,
    864 F. Supp. 2d 1023 (W.D. Wash. 2012) ...............................................................3

*Pizzuto v. Tewalt*,
    136 F.4th 855 (9th Cir. 2025) ...................................................................................1

*Roberts v. Legacy Meridian Park Hosp., Inc.*,
    97 F. Supp. 3d 1245 (D. Or. 2015) ...........................................................................4

*Stamps.Com, Inc. v. Endicia, Inc., PSI Sys. Inc.*,
    2009 WL 2576371 (C.D. Cal. May 21, 2009).........................................................5

*In re Takata Airbag Prods. Liab. Litig.*,
    2020 WL 13310564 (S.D. Fla. Mar. 7, 2020) ..........................................................2

*Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.*,
    120 F.4th 864 (Fed. Cir. 2024) .................................................................................2

## I.    ARGUMENT

### A.    *The Agreement is Undoubtedly Relevant.*

Disney counterclaims that InterDigital breached its obligation to license the encoding patents under RAND terms, thereby squarely placing in issue the parties' respective conduct. The encoding patents are not RAND encumbered, but taking Disney's counterclaim on its face, InterDigital may defend the claim by showing it has acted in good faith to license the patents, and Disney has acted in bad faith by, among other things, "holding out" and refusing to engage in licensing negotiations in good faith—including in cooperation with Amazon. The joint defense or common interest agreement between Disney and Amazon is relevant to support this defense.

Negotiations are a two-way street. To engage in "reasonable and non-discriminatory" negotiations, both parties must be "reasonable," *i.e.*, act in good faith. *See G+ Commc'ns, LLC v. Samsung Elecs. Co.*, 2024 WL 233222, at *6 (E.D. Tex. Jan. 22, 2024). Disney's conduct with respect to InterDigital is thus a necessary predicate to its RAND counterclaim. In other words, Disney cannot get the benefit of RAND terms if it has acted or is acting "unreasonable," *i.e.*, in bad faith. The agreement between Disney and Amazon, and any other agreements with other third parties,[1] goes directly to Disney's conduct, and thus to InterDigital's defense to the counterclaim. As a result, the agreement(s) that Disney continues to withhold from discovery undoubtedly meet the broad standard for relevance. *See Pizzuto v. Tewalt*, 136 F.4th 855, 868 (9th Cir. 2025) (noting that the Rule 26(b)(1) relevance standard for discovery is a "low bar"). This is especially true where Disney's allegations relate to its own purported conduct. *See* ECF No. 42 (Counterclaims) ¶ 2 (noting "Disney's longstanding willingness to license"), ¶ 64 ("InterDigital . . . fail[ed] to negotiate and act in good faith."). Whether Disney is, in fact, willing to license (a requirement

---

[1] InterDigital's motion focuses on the Amazon agreement (Opp. at 6) because of its known existence. Disney's Opposition never says if other agreements exist, but if they do, those should also be produced.

under its counterclaim), or is instead unreasonably "holding out" in cooperation with other implementers, involves an inquiry into the conduct of *both* parties.

Disney tries to distinguish the cases on which InterDigital relies on the basis that those cases did not "involve RAND obligations under the ITU's patent policy." Opp. at 8. Those cases, however, involved FRAND obligations under the European Telecommunications Standards Institute ("ETSI").[2] But, Disney has already asserted that ETSI FRAND obligations are substantially the same as the ITU's RAND obligations. In its Motion for Preliminary Injunction (ECF No. 50-1), Disney relied on case law involving FRAND obligations under the ETSI patent rights policy. *See* ECF No. 50-1 at 16 (stating "*Lenovo* control[s] here" referring to *Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.*, 120 F.4th 864 (Fed. Cir. 2024) (concerning patent holder's alleged FRAND commitment under ETSI IPR policy)). Given Disney's prior assertions in this case related to the same counterclaim, Disney cannot dispute the applicability of cases involving ETSI FRAND obligations to the dispute here: "reasonableness" is a two-way street.

In contrast, Disney's cited cases are easily distinguishable. Ignoring Ninth Circuit precedent holding that common interest or joint defense agreements are generally not privileged and are discoverable (MTC at 6), Disney instead relies upon an unpublished Florida case: *In re Takata Airbag Prods. Liab. Litig.*, 2020 WL 13310564 (S.D. Fla. Mar. 7, 2020). But that case rested on the court's specific finding that "to the extent that . . . the names of the parties to the agreement, or the date of the agreement is relevant, that information was already disclosed," and that the non-boilerplate language in the agreement contained information that was already publicly known. *Id.* at *5. Here, Disney refuses to provide any such information—or even the agreement itself. Nor did this case involve RAND based

---

[2] *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2016 WL 1258989 (N.D. Cal. Mar. 31, 2016); *G+ Commc'ns, LLC*, 2024 WL 233222.

counterclaims where the agreement was relevant to the challenging party's defense. Disney's reliance on *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418 (D.N.J. 2009), another non-precedential case, fares no better, where the court, in denying a motion to compel a joint defense agreement, found that the pertinent information contained in the agreement had already been disclosed. *Id.* at 428. Here too, there was no suggestion that the agreement was relevant to a defense. Disney refuses to produce the agreement or provide any privilege log-type information, contrary to its own cited authority.

Disney also relies on *Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023 (W.D. Wash. 2012), but ignores that the court had already found that the licensor had acted in bad faith, and thus the licensee was not required to respond in good faith—in other words, RAND compliance requires reasonableness by both parties. *Id.* at 1034-35. Here, InterDigital asserts it acted in good faith, making Disney's bad faith actions to the contrary relevant to InterDigital's ability to show that Disney is negotiating in bad faith—and a showing of Disney's bad faith would altogether preclude its asserted breach of contract counterclaim. *See also HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 2019 WL 4734950, at *10 (E.D. Tex. May 22, 2019), *aff'd*, 12 F.4th 476 (5th Cir. 2021) (finding that licensor could not rely on licensee's failure to act in good faith because licensor itself acted in bad faith).

That negotiations between InterDigital and Disney began in July 2022 does not undermine relevance where the negotiations are on-going and will continue until Disney agrees to take a license. The agreement "speak[s] to" relevant conduct. Opp. at 9. InterDigital is unaware when, how, or why Disney began coordinating with Amazon. The two entities are not co-defendants in any litigation with InterDigital, and Disney refuses to provide any information about the agreement, or subsequent communications, including who participated in the communications and when they occurred. Disney's refusal to negotiate in good faith is on-going. MTC at 5.

1   Although there may be legitimate reasons for Disney and Amazon to enter

2   into the agreement, it is certainly plausible that the agreement is part of their

3   coordinated "hold out" as InterDigital alleges—and, if so, would be evidence of

4   Disney's unreasonableness. Opp. at 8 (asserting that InterDigital is "insinuat[ing] an

5   improper inference based on the existence and assertion of the common interest

6   privilege"). Rather, InterDigital seeks further information on what appears to be

7   coordinated action by Disney and Amazon that goes far beyond existence of the

8   agreement. InterDigital sued Disney and did not sue Amazon. Yet, out of the blue

9   and unprovoked, Amazon filed litigation against InterDigital in the United Kingdom

10  (and elsewhere), the result of which may benefit Disney (*i.e.*, a world-wide rate to

11  license InterDigital's patents (MTC at 2)). Apart from Disney's distinguishable

12  cases, all relevant authorities are consistent: RAND is a two-way street where the

13  reasonableness of *both* parties must be considered. Here, the facts suggest

14  coordination among Disney and Amazon designed to lower InterDigital's licensing

15  rates worldwide, to both of their benefit. The production of the common interest

16  agreement is the first step in assessing this coordination.[3]

17      **B.**    ***A Narrative Description of Communications Is Not Privileged and***

18          ***Does Not Violate The Parties' Agreements.***

19      In response to Interrogatory No. 15, InterDigital does not seek the substance

20  of privileged communications. Rather, it seeks the identification of the participant(s)

21  involved, the dates(s), and a high-level non-privileged description of these

22  communications. It is well settled that the identities of people involved in an

23  allegedly privileged communication are not protected. *Roberts v. Legacy Meridian*

24  *Park Hosp., Inc.*, 97 F. Supp. 3d 1245, 1253 (D. Or. 2015) ("[T]he fact of the

25

26  [3] Disney suggests the Court must first order *in camera* review of the agreement.

27  InterDigital welcomes this to determine whether it includes any privileged information (even considering the agreement is "boilerplate" (Opp. at 6)), followed

28  by an order that it be produced.

communication, the identity of the attorney, the subject discussed, and details of the meetings . . . are not protected by the privilege"). The date(s) of the communications are relevant because the first date of coordination between Amazon and Disney regarding InterDigital informs its defense to Disney's counterclaims.[4]

The Joint Rule 26(f) Report and ESI Order do not shield Disney from describing the participant(s) and dates(s) of these communications. InterDigital is not seeking a privilege log, but instead information about these communications so that it can assess Disney's claim of privilege. There is no reason Disney cannot narratively describe the communications, while omitting the alleged privileged underlying substance of these communications. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). The provisions of the Joint Rule 26(f) Report and ESI Order likewise do not prevent Disney from providing this narrative. The provisions concerning e-mail serve to protect both parties from undergoing e-mail collection and production, which InterDigital is not requesting here. Disney asserts that the only way to describe these communications is to collect and review e-mails, but Disney can achieve the same goal by speaking to individuals involved in these communications. Disney fails to explain why this is not a feasible option, especially if it utilized the same outside counsel for these communications.

## II.    CONCLUSION

The agreement between Disney and Amazon (and agreements with others) are relevant to InterDigital's defense to Disney's breach of RAND counterclaims. The information InterDigital seeks is not shielded from identification but is the means for testing whether the privilege assertion is proper.

---

[4] Disney's new argument that InterDigital has exceeded the number of permitted interrogatories is neither before the Court nor correct. *See Stamps.Com, Inc. v. Endicia, Inc., PSI Sys. Inc.*, 2009 WL 2576371, at *3 (C.D. Cal. May 21, 2009) ("[C]ourts generally agree that 'interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question.'") (internal citations omitted).

Dated: February 16, 2026

Respectfully submitted,

*/s/ Richard A. Kamprath*
Alan P. Block (CA Bar No. 143783)
ablock@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Richard A. Kamprath *(admitted pro hac vice)*
rkamprath@mckoolsmith.com
R. Arden Seavers (*admitted pro hac vice*)
aseavers@mckoolsmith.com
Joseph Micheli (*admitted pro hac vice*)
jmicheli@mckoolsmith.com
Samuel Moore (*admitted pro hac vice*)
smoore@mckoolsmith.com
Daniel Iliasevitch (*admitted pro hac vice*)
diliasevitch@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Hannah Mirzoeff *(admitted pro hac vice)*
hmirzoeff@mckoolsmith.com
**MCKOOL SMITH, P.C.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

Joshua W. Budwin *(admitted pro hac vice)*
jbudwin@mckoolsmith.com
George Fishback, Jr. *(admitted pro hac vice)*
gfishback@mckoolsmith.com
**MCKOOL SMITH, P.C.**
303 Colorado Street, Suite 2100

Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Kevin Burgess *(admitted pro hac vice)*
kburgess@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Nancy Olson (SBN 260303)
nolson@olsonstein.com
David Stein (SBN 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane, #301
Newport Beach, CA 92663
Telephone: (310) 916-7433

*Attorneys for Plaintiffs InterDigital, Inc.,*
*InterDigital VC Holdings, Inc., InterDigital*
*Madison Patent Holdings, SAS, and*
*InterDigital CE Patent Holdings, SAS*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 1,817 words, which complies with the word limit set by the court order dated February 6, 2025.


Dated: February 16, 2026          *<u>/s/ Richard A. Kamprath</u>*
                                                Richard A. Kamprath