Richard A. Kamprath (admitted *pro hac vice*)
rkamprath@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Nancy Olson (SBN 260303)
nsolson@olsonstein.com
David Stein (SBN 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane, #301
Newport Beach, CA 92663
Telephone: (310) 916-7433

*Additional Counsel on signature block
Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| INTERDIGITAL, INC., *et al.,* | **Case No. 2:25-cv-00895-WLH-BFM** |
| Plaintiffs, | |
| v. | **PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER RE CLAIM CONSTRUCTION** |
| THE WALT DISNEY COMPANY, *et al.,* | |
| Defendants. | Judge: Hon. Wesley L. Hsu |
| | Courtroom: 9B |
| | Hearing Date: May 22, 2026 |
| | Hearing Time: 1:30 p.m. |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on May 22, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Central District of California, before the Honorable Wesley L. Hsu, located at 350 W. First Street, Los Angeles, California 90012, in Courtroom 9B, Plaintiffs will and hereby do move for reconsideration of one term in the Court's Order re Claim Construction (ECF 170) pursuant to the Court's inherent authority and L.R. 7-18.

This Motion is made on the grounds that the Court's Claim Construction Order construes the claimed "side information components" in two different, inconsistent ways. The evidence shows they are data inputs, not structures performing a claimed function, so they do not invoke 35 U.S.C. § 112, ¶ 6. Reconsideration is warranted to address this inconsistency, as well as the derivative indefiniteness ruling.

On April 15, 2026, the parties met and conferred regarding the Motion by videoconference, at which time they thoroughly discussed the substance and potential resolution of the Motion, as is detailed in the accompanying L.R. 7-3 Declaration.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the files in this action, and any arguments presented at the hearing.

Dated: April 22, 2026

Respectfully submitted,

By: */s/ Richard A. Kamprath*
Richard A. Kamprath (admitted *pro hac vice*)
rkamprath@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

**Attorneys for Plaintiffs**

**TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................1

II.    LEGAL STANDARD ..........................................................................................2

III.   ARGUMENT........................................................................................................3

      A.    The Court's Plain-Meaning Construction of "Using Said Stored Side Information Components" Is Irreconcilable with Treating "Side Information Components" as a § 112, ¶ 6 Limitation. ................3

      B.    The "Side Information Components" Are Just Data; They Do Not Perform a Function. ...................................................................................4

      C.    Dr. Sprenger's Testimony Confirms That "Side Information Components" Are Enabling Data Inputs *Used* by Disclosed Structures. ..................................................................................................6

      D.    Disney's Expert Agrees That "Side Information Components" Do Not Perform the Claimed "Modifying" Function. ...............................7

      E.    Because § 112, ¶ 6 Does Not Apply, the Derivative Indefiniteness Ruling Cannot Stand. ..........................................................................8

IV.   CONCLUSION ...................................................................................................9

ii

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Herron,*
    634 F.3d 1101 (9th Cir. 2011) ...................................................................2

*City of Los Angeles v. Santa Monica Baykeeper,*
    254 F.3d 882 (9th Cir. 2001) .....................................................................2

*Egenera, Inc. v. Cisco Sys., Inc.,*
    972 F.3d 1367 (Fed. Cir. 2020) ..............................................................2, 6

*Nautilus, Inc. v. Biosis Instruments, Inc.,*
    572 U.S. 898 (2014)...................................................................................8

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) .................................................................7

*Williamson v. Citrix Online, LLC,*
    792 F.3d 1339 (Fed. Cir. 2015) ...........................................................2, 6, 8

**Statutes**

35 U.S.C. § 112 ................................................................................... *passim*

**Other Authorities**

Local Rule 7-18...................................................................................2, 3

iii

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

In its Claim Construction Order (ECF 170), the Court construed the same words in a patent claim—"side information components"—in two different ways. Thus, InterDigital respectfully asks the Court to reconsider its construction of one term in U.S. Patent No. 8,085,297 (the '297 Patent)—"side information components for modifying a functionality of said user interface"—to address this inconsistency.

The Court held that this term: (1) is a means-plus-function term that invokes pre-AIA 35 U.S.C. § 112, ¶ 6 (now § 112(f)), and (2) is indefinite for failing to disclose sufficient corresponding structure. ECF 170 (Claim Construction Order) at 19-21. In the next claim limitation, however, the Court construed "side information components" according to its plain and ordinary meaning. Although the bar for reconsideration is high, InterDigital respectfully suggests it is satisfied here.

The Court's ruling rests on the incorrect premise that "side information components" perform the claimed function of "modifying a functionality of [the] user interface," making this a means-plus-function term. From that legal conclusion, the Court found that the specification does not disclose sufficient structure for performing the identified function. But the Court's adoption of the plain meaning for the very next claim term—"using said stored side information components"—recognizes that the side information components are stored data used to effect user interface modification. ECF 170 (Order) at 22–23.

These two constructions cannot be reconciled, making them internally inconsistent. The claim language and specification establish that it is the claimed consumer electronics apparatus—not the "side information components" it uses—that performs the function of "modifying" the user interface ("UI"). By contrast, the "side information components" are merely data that are received, stored, and later used by that consumer electronics apparatus. The addition of "said" before the second "side information components" confirms they are the same across both uses.

1

In addition to the intrinsic evidence, both sides' experts agree that side information components are data, not a means for performing a function. The Court's Order refers to part of the extrinsic evidence on this issue, but omits discussion of other portions that are also material to the proper construction of this claim language.

InterDigital submits that the intrinsic and undisputed extrinsic evidence, under controlling case law, confirm that "side information components" are data, not a means for performing the modifying function. As a result, this is not a means-plus-function term, and it does not require corresponding structure. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348–49 (Fed. Cir. 2015); *see also Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1372–73 (Fed. Cir. 2020). The Court's derivative indefiniteness ruling for lack of a sufficient disclosed structure, therefore, should not stand.

InterDigital respectfully asks the Court to revisit this single claim term and construe it according to its plain and ordinary meaning—consistent with the Court's correct interpretation of the same language in the context of a different claim term—because the patent demonstrates that the side information components are not a means for performing a claimed function. In turn, this will avoid error by making the Court's Order internally consistent between both claim limitations containing the "side information components."

## II.    LEGAL STANDARD

When a district court has jurisdiction over a case, it has the inherent power to reconsider, rescind, or modify an interlocutory order for sufficient cause. *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). A motion for reconsideration in this Circuit is appropriate: "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). Moreover, under Local Rule 7-18, reconsideration may be

2

granted only on grounds of:

> (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.

L.R. 7-18. Reconsideration is appropriate when the Order under question is "demonstrably wrong." *Kruse Tech. P'ship v. DMAX, Ltd.*, SACV 09-00458-JVS (Jex), 2010 WL 11519252, at *1 (C.D. Cal. Sept. 21, 2010) (granting motion to reconsider claim construction).

## III.   ARGUMENT

### A.   The Court's Plain-Meaning Construction of "Using Said Stored Side Information Components" Is Irreconcilable with Treating "Side Information Components" as a § 112, ¶ 6 Limitation.

The Claim Construction Order adopted a plain-meaning construction for the adjacent limitation "modifying a way in which said user can provide input into said user interface by using said stored side information components," recognizing that the components are stored data later used to effect UI modification. ECF 170 at 22–23. That construction recognizes the claim's stepwise grammar and the disclosed architecture in which stored data are used by identified units to modify the UI, which is consistent with the correct construction of the "side information components" term. '297 Patent at cl. 1, 2:26–48.

Treating the earlier phrase "side information components for modifying a functionality of said user interface" as a § 112, ¶ 6 element lacking structure cannot be reconciled with that understanding, because the "by using said stored side information components" clause confirms that modification occurs in a later step using stored

3

data—not performed by the stored data components themselves. *See* ECF 170 at 22–23; '297 Patent at cl. 1.

The hearing transcript reflects the Court's engagement with this sequencing and disclosure, including InterDigital's citations to the specification in column 2 and Figure 1, showing extractor 1, second buffer 9, modification unit 10, and control unit 11 "implemented for the purpose of modifying the UI." Ex. A (Hr'g Tr.) at 57:8–58:20. The Court's Order, however, does not appear to reflect this evidence. This inherent tension in the diametric treatment of these two claim terms in dispute justifies another look at this issue.

**B.     The "Side Information Components" Are Just Data; They Do Not Perform a Function.**

The Court's Order concludes that the phrase "side information components for modifying a functionality of said user interface" invokes § 112, ¶ 6 because "side information components" is a nonce term that purportedly recites the function of "modify[ying] a functionality of the user interface." ECF 170 at 20–21. The Court further found the term serves no functional purpose, relying on testimony from InterDigital's expert, Dr. Sprenger. He concluded that the components are "data that's being transmitted to enable . . . a receiving system to carry out certain modifications or functions." *Id.* at 21. From this, the Court concluded that the claim term effectively recites "function without reciting sufficient structure for performing that function," and that InterDigital identified no intrinsic evidence to the contrary so the claim was indefinite as a result. *Id.*

In its Order, the Court correctly noted that the absence of the word "means" in the claim language creates a presumption that 35 U.S.C. § 112(f) does not apply. ECF 170 at 20. The Court's analysis that this presumption is overcome is inconsistent with portions of the patent that are not addressed in the Court's Order, as well as with the undisputed extrinsic evidence submitted by both sides.

The patent claim recites "<u>receiving</u> side information comprising side information

4

components . . . and validity information," "storing" those "side information components," and then "modifying a way in which said user can provide input into said user interface by using said stored side information components." *See* '297 Patent at cl. 1 (emphases added); ECF 103-6 ("Sprenger 1st Suppl. Decl.") ¶¶ 7–11. It is the consumer electronics apparatus—not the "side information components"—that actually performs the modification to the user interface: the apparatus "is the thing that is doing the receiving, storing and modifying at a high level," and the "side information components are data . . . used by the consumer electronics apparatus to modify a way in which the user can provide input." Ex. A (H'rg Tr. 53:1–6, 53:21–54:7). The Court acknowledged that explanation. *See id.* at 54:25. This sequence—receive, store, then modify "by *using*" the stored "side information components"—clarifies that these components serve as inputs to the later modification step. Treating the noun phrase in the receiving step of claim 1 as the "means" that performs the later modification disregards that express and unequivocal allocation of different roles between the consumer electronics apparatus and the "side information components" upon which the claimed apparatus acts. Ex. A (Hr'g Tr.) 53:21–54:7; '297 Patent at Col. 2:33–45.

The specification confirms the same architecture recited in the claim language. It teaches that a received signal "consisting of main data and embedded side information is supplied to an extractor 1," ECF 1-9 ('297 Patent) at Col. 2:8–10, and that "a second buffer 9, a modification unit 10 and a control unit 11 are implemented *for the purpose of modifying the UI* according to the invention," '297 Patent at Col. 2:33–36 (emphasis added). The specification further explains that "[t]he side information components and validity information are fed to the *modification unit 10, which processes these data and modifies the UI* when the start time of the respective side information component is signalized by the control unit 11," '297 Patent at Col. 2:41–44 (emphasis added); ECF 103 (Pls.' Op. Cl. Const. Br.) at 21 (quoting Sprenger 1st Supp. Decl. ¶ 11). It also provides examples showing the side information "can be used to modify the visual appearance of the UI," such as inserting buttons or creating subdirectories. '297 Patent

5

at Col. 2:57–63; *see also* Ex. A (Hr'g Tr.) at 58:10–20. These disclosures identify the structures (*i.e.*, modification unit 10) that perform the modification and confirm that the "side information components" are the data those structures use to perform the modification function.

On this intrinsic record, the limitation does not define an element "by what it does," as with the "logic to modify" at issue in *Egenera,* but instead identifies data used by disclosed structure in a subsequent claimed step. *Egenera*, 972 F.3d at 1373–74; *see* ECF 103-6 (Sprenger 1st Suppl. Decl.) at ¶¶ 7–11. Because "side information components" are understood as received-and-stored data inputs, Disney did not overcome the presumption against § 112, ¶ 6 under *Williamson. See id.*, 792 F.3d at 1349.

## C.     Dr. Sprenger's Testimony Confirms That "Side Information Components" Are Enabling Data Inputs *Used* by Disclosed Structures.

The Claim Construction Order relies on a single sentence from Dr. Sprenger's deposition transcript to treat "side information components" as "function[al] without reciting sufficient structure for performing that function." ECF 170 at 21. But Dr. Sprenger's testimony did not stop there: he went on to clarify that the intrinsic evidence in the patent makes clear that the claimed side information components are actually data that enable other disclosed structures to perform the claimed modifications. Specifically: "the information by itself does not execute anything . . . [t]here is another item at the receiving end that takes the information and then does something with it." ECF 102-6 ("Sprenger Dep. Tr.") at 108:1–6 (emphasis added). This is entirely consistent with the claim language itself as properly understood, and with the specification's disclosure of the modification unit 10, second buffer 9, and control unit 11. '297 Patent at cl. 1 and Col. 2:33–48. Dr. Sprenger's First Supplemental Declaration likewise explains that the "side information components" are data later "used to perform the step of 'modifying a way in which said user can provide input,'" and that

6

"user interface modification is performed by a modification unit 10, second buffer 9, and control unit 11" using those stored data. ECF 103-6 (Sprenger 1st Supp. Decl.) at ¶¶ 7–11.

More importantly, as the Federal Circuit makes clear, extrinsic testimony cannot and does not outweigh the intrinsic record identifying the structures that perform modification and situating "components" as stored data inputs used later. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317–19 (Fed. Cir. 2005) ("[E]xtrinsic evidence is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'"). The Court's Order appears to rely on just a portion of the extrinsic evidence, but the full context of that expert testimony, and the disclosures in the intrinsic evidence to which it refers, teach a different conclusion about how the patent claim operates.

The same issue appears in the Court's treatment of Dr. Sprenger's declaration. The Order discounted paragraphs 8–9 as "expert testimony," while at the same time elevating a deposition excerpt—itself expert testimony—above intrinsic evidence. The discounted declaration paragraphs identify and quote the claim language and passages from column 2 of the specification and Figure 1, explaining how "components" are received, stored, and used by the named units. Sprenger 1st Supp. Decl. ¶¶ 8–11; '297 Patent at 2:8–48. When this intrinsic record is combined with the deposition language that "components . . . enable . . . a receiving system to carry out . . . modifications," it shows the consistency with InterDigital's position that the components are enabling data inputs that are acted upon. They are *not* the structure that "performs" the modifying function. ECF 102-6 (Sprenger Dep. Tr.) at 123:3–15.

**D.      Disney's Expert Agrees That "Side Information Components" Do Not Perform the Claimed "Modifying" Function.**

If there were any doubt, Disney's own expert, Dr. Mayer-Patel, resolved it in InterDigital's favor. Dr. Mayer-Patel expressly agreed with InterDigital and Dr. Sprenger's testimony that "side information components" are "just data," and, "as

7

data," "are not capable of modifying the functionality of the user interface." ECF 103-2 (Mayer-Patel Dep. Tr.) at 80:23–81:17. Dr. Mayer-Patel further agreed that claim 1 requires "modifying a way in which said user can provide input . . . by using said stored side information components," and that the "second buffer 9, the UI modification [u]nit 10, and control [u]nit 11 are the entities that modify . . . by using the stored side information components." *Id.* at 77:24–78:17. He also agreed that the data (*i.e.*, the side information components) are "used to create an effect," *i.e.*, used to modify the user interface; but never suggested that the data itself is the structure that performs the modification. *Id.* at 81:18–25; '297 Patent at 2:26–48, cl. 1.

Thus, to the extent the Court relied on extrinsic evidence for this issue, both experts confirm that a person skilled in the field would understand that the claimed "components" are data that are *received*, *stored*, and later *used* by disclosed structure (*i.e.*, consumer electronics apparatus)—not the structure that "performs" the modifying function. Thus, the presumption against the application of § 112, ¶ 6 should remain intact. *See Williamson*, 792 F.3d at 1348–49.

**E.    Because § 112, ¶ 6 Does Not Apply, the Derivative Indefiniteness Ruling Cannot Stand.**

The Order's indefiniteness holding derives from its § 112, ¶ 6 determination. *See* ECF 170 at 21–22. Without it, the requirement to find sufficient structure does not arise. Instead, the issue is governed by the "reasonable certainty" standard. *Nautilus, Inc. v. Biosis Instruments, Inc.*, 572 U.S. 898, 901 (2014) ("[A] patent is invalid for indefiniteness [only] if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."). Here, that standard is satisfied, especially considering the Court's plain meaning construction of the adjacent term containing "side information components." Thus, if the Court agrees to reconsider and concludes that the "side information components" claim term is not means-plus-function, then the sole basis for finding the claim indefinite necessarily vanishes.

8

## IV.   CONCLUSION

InterDigital respectfully requests that the Court grant this Motion for Reconsideration, revise its prior Order, and hold that the term "side information components for modifying a functionality of said user interface" should be construed according to its plain and ordinary meaning, consistent with the Court's ruling for the adjacent claim term containing "side information components." Thus, this term is not governed by 35 U.S.C. § 112, ¶ 6, so sufficient structure for performing this function is not required, and the claim is not indefinite.

Dated: April 22, 2026

Respectfully submitted,

/s/ Richard A. Kamprath
Alan P. Block (CA Bar No. 143783)
ablock@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Richard A. Kamprath (admitted *pro hac vice*)
rkamprath@mckoolsmith.com
R. Arden Seavers (admitted *pro hac vice*)
aseavers@mckoolsmith.com
Samuel L. Moore (admitted *pro hac vice*)
smoore@mckoolsmith.com
Joseph W. Micheli (admitted *pro hac vice*)
jmicheli@mckoolsmith.com
Daniel Iliasevitch (admitted *pro hac vice*)
diliasevitch@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Joshua W. Budwin (admitted *pro hac vice*)

9

jbudwin@mckoolsmith.com
**MCKOOL SMITH, P.C.**
303 Colorado Street, Suite 2100
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Kevin Burgess *(admitted pro hac vice)*
kburgess@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Hannah Mirzoeff *(admitted pro hac vice)*
hmirzoeff@mckoolsmith.com
**MCKOOL SMITH, P.C.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

Nancy Olson (SBN 260303)
nsolson@olsonstein.com
David Stein (SBN 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane, #301
Newport Beach, CA 92663
Telephone: (310) 916-7433

**Attorneys for Plaintiffs**

10

## **L.R. 11–6.2 Certification**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 2,781 words, which complies with the word limit of L.R. 11-6.1, and likewise complies with the word limit set by Court Order dated February 6, 2025. *See* Dkt. 19 (WLH Standing Order for Newly Assigned Civil Cases) § G.4 (motion not to exceed 7,000 words).

Dated: April 22, 2026

*/s/ Richard A. Kamprath*
Richard A. Kamprath

P'S MOT. FOR RECONSIDERATION                         Case No. 2:25-cv-895-WLH(BFM)