Richard A. Kamprath (admitted *pro hac vice*)
rkamprath@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Nancy Olson (SBN 260303)
nolson@olsonstein.com
David Stein (SBN 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane, #301
Newport Beach, CA 92663
Telephone: (310) 916-7433

*Additional Counsel in signature block
Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| INTERDIGITAL, INC., *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE WALT DISNEY COMPANY, *et al.*,<br><br>        Defendants. | **Case No. 2:25-cv-00895-WLH-BFM**<br><br>**[DISCOVERY MATTER]**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL**<br><br>**Hearing Date:** June 9, 2026<br>Judge: Hon. Wesley L. Hsu<br>Magistrate Judge: Hon. Brianna F. Mircheff<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................1

II.  THE DISCOVERY AT ISSUE.............................................................................1

III.  ARGUMENT.......................................................................................................3

 A.  *Disney Withheld Relevant, Responsive Documents*...........................3

 B.  *Disney Has No Excuse for Failing to Produce These Documents* .................................................................................................3

 C.  *Mr. Lee Was Not Prepared and Refused to Answer Questions*..........5

 D.  *Mr. Lee Refused To Testify About Questions Within His Knowledge*.......................................................................................6

 E.  *Disney Told The Court InterDigital Could Ask These Questions At Upcoming Depositions—Then Mr. Lee Refused to Answer* .............................................................................................8

IV.  CONCLUSION ...............................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Gee v. Gallardo*,
  No. CV 18-2717 JGB (PVC), 2020 WL 2083018 (C.D. Cal. Mar. 5, 2020) ...................................................................................................4

*In Re: Kia Hyundai Vehicle Theft Litig.*,
  No. 8:22-ML-03052-JVS-KES, 2026 WL 791603 (C.D. Cal. Feb. 27, 2026) ...................................................................................................6

*Microsoft Corp. v. Motorola, Inc.*,
  795 F.3d 1024 (9th Cir. 2015) ...................................................................7

*Sonos, Inc. v. Google LLC*,
  2023 WL 3933071 (N.D. Cal. June 9, 2023).............................................3

*Starline Windows Inc. v. Quanex Bldg. Prods. Corp.*,
  2016 WL 4485564 (S.D. Cal. July 21, 2016) .......................................6, 10

*Treasure Island, LLC v. Affiliated FM Ins. Co.*,
  2023 WL 6295500 (D. Nev. Sept. 26, 2023).............................................4

**Other Authorities**

Fed. R. Civ. P. 30(b)(1).................................................................1, 2, 8, 10

Fed. R. Civ. P.30(b)(6).......................................................................1, 6, 8

Fed. R. Civ. P.34 ......................................................................................4

Fed. R. Civ. P. 37(a)(3)(B) .......................................................................1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

InterDigital asserts that Defendants (collectively, "Disney") are infringing several U.S. patents relating to video coding technology. *See generally* Dkt. 1 ¶¶ 1-4. On April 14, 2026, InterDigital deposed Timothy Lee, one of Disney's in-house licensing attorneys, in his individual capacity and as Disney's corporate representative. Disney designated Mr. Lee on certain Topics relating to the hypothetical negotiations between the parties for a license to InterDigital's patents and Disney's communications with third parties (including ▒▒▒▒▒▒▒▒).

During the deposition InterDigital learned, for the first time, that Disney is in ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ ▒▒▒▒▒▒▒▒▒▒. InterDigital also learned that Mr. Lee collected documents ▒▒▒▒▒▒▒▒▒▒, which have been provided to Disney's counsel, but that have not been produced in this case. Mr. Lee also refused to answer questions about Disney's ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒, or its (or his) view of the ▒▒▒▒▒▒▒▒▒▒▒▒, despite having knowledge of that information.

Pursuant to Rule 37(a)(3)(B) and L.R. 37, InterDigital moves to compel Disney to: (1) produce documents exchanged between Disney and ▒▒▒▒▒▒▒▒ ▒▒▒▒, and any other licensors of video coding patents, pursuant to Request No. 63; and (2) shortly after the production is complete: (a) reproduce Mr. Lee to testify about information within his knowledge pursuant to Rule 30(b)(1); and (b) produce Mr. Lee (or another witness) to testify in response to Topic Nos. 40 and 102-104.

## II.    THE DISCOVERY AT ISSUE

Nearly a year ago, in May 2025, InterDigital served Requests for Production related to Disney's negotiations with licensors of video coding patents. *See* Declaration of Richard Kamprath ("Kamprath Decl.") ¶ 1 & Ex. A at 2. Additionally, in response to a Rule 30(b)(6) deposition notice served by InterDigital, Disney

designated Mr. Lee on Topic Nos. 37-44, 46-53, 97-98, and 102-104. *See* Kamprath Decl. ¶ 7. InterDigital also noticed Mr. Lee in his individual capacity pursuant to Rule 30(b)(1). Kamprath Decl. ¶ 6. InterDigital is moving on Request No. 63 and Topics 40 and 102-104, reproduced below, as well as its Rule 30(b)(1) notice to Mr. Lee.

**Request No. 63 (Ex. A at 2)**: All Communications with any Third Parties or other streaming Entities regarding any video codec-related patents, their owners, their licensors, and their royalty rates, including such Communications regarding patent pools and bilateral licensors.

**The Topics (Ex. B at 10-11, 31-34):**

40. The considerations that Disney would have relied upon in any Hypothetical negotiation between Disney and InterDigital, including all facts Disney would have considered in deciding whether to take a license to any Asserted Patent and for what terms.

102. Any Communication(s) between You and any Amazon Entity, Netflix Entity, Paramount Entity, Warner Bros. Discovery, Inc. Entity, or any other Third Party Entity, concerning or relating to InterDigital, any other licensors of video coding patents (e.g., Nokia), the Asserted Patents, or this Action.

103. Any Communication(s) between You and any Amazon Entity, Netflix Entity, Paramount Entity, Warner Bros. Discovery, Inc. Entity, or any other Third Party Entity, related to the suit filed by, among other entities, Amazon.com, Inc. against certain InterDigital entities on August 29, 2025 in the High Court of Justice in the United Kingdom or the declaratory judgment action filed by, among other entities, Amazon.com, Inc. against certain InterDigital entities on September 5, 2025 before the Business and Arbitration Conflicts Court in São Paulo, Brazil.

104. Any indemnification agreement(s) or any other indemnity obligation(s) between You and any Third Party concerning this Action.

## III.    ARGUMENT

### A.    *Disney Withheld Relevant, Responsive Documents*

During Mr. Lee's deposition, InterDigital learned for the first time that Disney has relevant, non-email documents, exchanged between itself and ██████████ ████████████████████████████████████████████████████████████ Disney is currently █ █████████████████████████████████████████████ ████████████████.[1] Ex. C at 57:11-58:25. These ████████████████ are directly responsive to Request No. 63, but Disney has not produced them. Nor did Disney state they were being withheld. Ex. A at 2-3.

Mr. Lee testified that, during the ████████████████ Disney, ████████ ████████████, the parties have exchanged █████████████████████████, ████ ████████████████████████████████████████████████████████████████ ████████████████████████████████. Ex. C at 122:10-125:25. When asked whether these documents have been produced in this case, Mr. Lee said ████ ████████████ even though he testified that ████████████████████████ ████████████████████████████████████████. *Id*. 123:13-22.

### B.    *Disney Has No Excuse for Failing to Produce These Documents*

Disney asserts that it does not have to produce documents related to these ████████████████ because: (1) they are not relevant; (2) their production is barred by the ESI Order; and (3) Disney did not agree to produce ████████████████ ████████████████████. None of these arguments passes muster.

First, the documents are relevant. In patent cases, an important part of assessing damages and determining a reasonable royalty is examining the value of comparable or related technology in the marketplace as part of the hypothetical negotiation. *See Sonos, Inc. v. Google LLC*, 2023 WL 3933071, at *3 (N.D. Cal.

---

[1] A patent pool is an agreement between patent owners to license their patents as a package. *See, e.g.*, ████████████████████████████████████████████████.

June 9, 2023) (noting that the hypothetical negotiation "is a well-established methodology for estimating a royalty" and that "[o]ne way to calculate a reasonable royalty is to 'value the infringed features based upon comparable features in the marketplace'"). The ███████████████████████ to Disney for ██████ ████████████████████████, are squarely within the scope of Request No. 63 ("Communications with any Third Parties . . . regarding any video codec-related patents . . . and their royalty rates, including such Communications regarding patent pools . . . ."). It is evidence in the "marketplace" of the value placed on potentially "comparable features" and is information known in the hypothetical negotiation.[2]

Further showing their relevance, Disney's counterclaims allege that InterDigital's requested rates are unreasonable (*see, e.g.*, Dkt. 42 ¶¶ 64), so information about ████████████████████████████████████, at a minimum, is relevant to InterDigital's defense to Disney's counterclaims. *See Treasure Island, LLC v. Affiliated FM Ins. Co.*, 2023 WL 6295500, at *4 (D. Nev. Sept. 26, 2023) ("Federal courts do not typically 'tolerate a party unilaterally and unreasonably deciding that requested discovery is not relevant or discoverable under proportionality based solely on its own litigation position.'").

Second, Disney's failure to identify the existence of such information, and its corresponding attempt to avoid producing it, by invoking the ESI Order is meritless. If Disney was withholding responsive information pursuant to the ESI Order, it was required to specify the basis for withholding that information. *Gee v. Gallardo*, No. CV 18-2717 JGB (PVC), 2020 WL 2083018, at *6 (C.D. Cal. Mar. 5, 2020) ("Rule 34 expressly requires that objections to requests for production be stated with specificity, and that the responding party affirmatively state whether any documents are being withheld pursuant to an objection."). Disney never revealed—at any point

---

[2] Because InterDigital does not know the specifics of the ██████████████—since Disney has produced no documents and Mr. Lee refused to answer questions—it cannot know if the ████████████████████████████████.

4

since Request No. 63 was served nearly a year ago—that responsive documents existed and were being withheld. Ex. A at 2-3. Even though the ESI Order generally shields the parties from having to conduct e-mail searches and review (subject to good cause), Mr. Lee testified that ████████████████████████████████. Ex. C at 126:17-23. Therefore, there is minimal (if any) burden associated with producing the already collected documents here. And, because these documents exist in a non-email source (the production in the other litigation), they also fall outside the scope of the ESI Order. The ESI Order's limitation on e-mail collection was designed as a cost-savings provision that is not applicable where the documents have already been collected. *See* Dkt. 156 at 6 (describing the ESI Order as "a carefully negotiated agreement that the parties entered to save themselves considerable effort and cost"). For its part, in response to Disney's discovery requests, InterDigital collected and produced negotiation documents exchanged between InterDigital and other streaming services, including those attached to e-mails. Kamprath Decl. ¶ 8.

Finally, Disney claims that, during the parties' meet and confers in June 2025, when Request No. 63 was discussed, Disney did not agree to ████████████ ███████████████ in response to this Request. InterDigital disagrees with Disney's recollection, and Disney has not provided any documentation to support its claim. In response to the Request, Disney asked to meet and confer, which the parties did. Kamprath Decl. ¶ 9. InterDigital never agreed to limit the scope of the Request, nor did Disney indicate it was withholding responsive information. *See id.*

### C. *Mr. Lee Was Not Prepared and Refused to Answer Questions*

Mr. Lee was unable to provide basic information and improperly refused to answer questions that were within the scope of his personal knowledge and designated Topics. Mr. Lee's only preparation consisted of a single meeting with counsel the day before his deposition. Ex. C at 10:7-19; *see also id.* at 87:19-24; 100:17-101:1 (testifying that he would need to check with specific others). Although

depositions are not a memory test, under Rule 30(b)(6), Disney was required to properly educate its corporate representative to provide complete, knowledgeable, and binding answers on behalf of the corporation. *See In Re: Kia Hyundai Vehicle Theft Litig.*, No. 8:22-ML-03052-JVS-KES, 2026 WL 791603, at *1 (C.D. Cal. Feb. 27, 2026) ("The corporation must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledge, and binding answers on behalf of the corporation.").

When asked about the ██████████████████████████████, which falls within Topic No. 104, Mr. Lee was ████████████████████ ████████████████████████████████████████████████ ██████████████████. *See* Ex. C at 115:8-116:16. He also did not review it to prepare or take a break to refresh his memory. Ex. C at 119:2-13. Mr. Lee's inability to testify on basic details within the scope of his Topics confirms he was not properly prepared. *Starline Windows Inc. v. Quanex Bldg. Prods. Corp.*, 2016 WL 4485564, at *5 (S.D. Cal. July 21, 2016) ("[A] corporation has a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions, and to prepare them fully so that they provide non-evasive answers . . . .").[3]

### D.    *Mr. Lee Refused To Testify About Questions Within His Knowledge*

When InterDigital learned of the existence of ████████████████████ ████████████████████ during Mr. Lee's deposition (Ex. C at 58:5-25)—and Mr. Lee's knowledge about ████████████████—it asked Mr. Lee questions about them. Although InterDigital does not believe its claims in this case implicate RAND (*see generally* Dkt. 57), testimony related to ████████████████████ ████████████████████████████ is relevant because: Disney has alleged that

---

[3] Whether ████████████████████████████████ is relevant to who is obligated to satisfy any judgment in this case. It is also relevant to Disney's pending Motion to Stay this case based on the declaratory judgment action filed by Dolby. *See* Dkt. 177-1 at 4, 9 (referring to ████████████████████████).

6

InterDigital has breached its RAND obligations; Disney asserts that the license InterDigital has offered is not reasonable; and because it is information that would be known in the hypothetical negotiation. *See* Dkt. 42 ¶¶ 61-67. The ███████ ████████████████████████████████████████████████, and Mr. Lee's and Disney's ███████████████████████████████, is relevant to whether the rate offered by InterDigital is reasonable and may be used in the hypothetical negotiation. *See, e.g., Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1042 (9th Cir. 2015) (affirming district court's conclusion that "the rates charged by two patent pools are relevant indicators of the RAND rate" for the patents at issue).

When asked whether ████████████████████████████████████ ██████████████████████████████████████████, Mr. Lee improperly refused to answer, insisting each time that, because ████████████████████, he had no obligation to provide testimony about █████████████████ ████████████████████████████████. *See* Ex. C at 70:15-74:15 (responding no less than ten times to different questions that "██████████████ ████████████████████"). [4] Tellingly, when first asked, Mr. Lee began to answer—but he subsequently retreated into the same scripted non-answer:

> Q. Are you familiar with the Avanci Video streaming rate?
> A. Yes, it's been made publicly available.
> ████████████████████████████████████████████████
> ████████████████████████████
> ████████████████████████████████████████████████
> ████████████████████████████████████████████████
> ████████████████████████████████████████

Ex. C at 70:12-22.

Disney's attorney did not object to these questions—Mr. Lee himself refused

---

[4] InterDigital and Disney have not "████████████████," yet Disney extensively cites its negotiation history with InterDigital in its Counterclaims (Dkt. 42 ¶¶ 59-60) and its Motion for a Preliminary Injunction (Dkt. 50-1 at 11; Dkt. 67 at 9).

to answer. Mr. Lee's testimony shows that he has knowledge of this information— yet he refused to answer any such questions in his personal capacity. In its Objections to the Rule 30(b)(6) Notice, Disney limited the scope of the testimony for some of Mr. Lee's Topics to the "facts and circumstances surrounding any patent license agreements Defendants have entered into." *See, e.g.*, Ex. B at 10. This is a suspect unilateral limitation on designee testimony, but it is no limit on the scope of Mr. Lee's Rule 30(b)(1) testimony. Disney also did not impose this limitation in response to Topic No. 40. Further showing the relevance to the hypothetical negotiation at-issue in Topic No. 40, Mr. Lee testified that █████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ████████████. Ex. C at 67:9-20; 69:9-70:1.

**E.      *Disney Told The Court InterDigital Could Ask These Questions At Upcoming Depositions—Then Mr. Lee Refused to Answer***

During a prior discovery hearing involving the common interest agreement between Disney and ████████ (and other third-parties), Disney's counsel argued that InterDigital could ask questions about such relationships in depositions. Ex. D at 31:5-7 (Ms. Burson: "So, they can ask these questions in the deposition, and in order to do anything beyond that is going to require us to do email collection."). Consistent with that guidance, InterDigital deposed Mr. Lee on Topic Nos. 102-104.

The relevance of Disney's coordination with third parties (including ████████ and others) to drive down licensing rates for video coding technologies is not speculative. It reflects a legitimate concern raised by InterDigital at the prior hearing that was amplified by a report just released by the U.S. Trade Representative:

> A final concerning development is the emergence and/or sanctioning of "Licensing Negotiation Groups" (LNGs) that could harm competition by enabling technology purchasers, under certain circumstances, to act jointly to lock in potentially subcompetitive or sub-FRAND prices, or agree to engage in "holdout."

Ex. E at 140. To the extent Disney is coordinating with others to "hold out," then it must provide a witness to testify about such coordinated action (or to testify under oath that no such coordination is taking place or has taken place). Mr. Lee is the only witness designated for Topic Nos. 102-104. Kamprath Decl. ¶ 7. Following the Court's Order (Dkt. 156), InterDigital sought testimony on the non-privileged aspects of Disney's communications with third parties, most notably ██████ ████. Instead of providing complete, knowledgeable answers about the non-privileged aspects of these communications, Mr. Lee (and not counsel) improperly invoked privilege in response to nearly every question. Mr. Lee invoked privilege no less than fourteen times, even when being asked for business-related information, that does not and cannot implicate the common interest privilege. *See* Ex. C at 102:4-111:22 ("████████████████████████████████████████ ████████████████████████████████████████.").[5]

Even when he did not invoke privilege, Mr. Lee was unable to provide details about the factual circumstances of these communications. When asked who attended the meetings where ████████████████████████, Mr. Lee was unable to identify the attendees, outside of ████████████████████. Ex. C at 103:12-14 ("████████████████████████████ ████████"); *see also id.* at 114:20-21 ("████████████████████ ████████████████"). Mr. Lee was also unable to recall the date of these meetings or the substance of what was discussed. Ex. C at 105:2:7 ("██ ████████████████████████████████████████ ████████████████████████████"); *see also id.* at

---

[5] These invocations of privilege run counter to the guidance received from the Court at the previous hearing. *See* Ex. D at 23:13-17 (The Court: "But very different what I think InterDigital's looking for, which is information that sheds light on bad faith negotiation in terms of holding out. I don't think if there were such communications they would be covered [by the common interest privilege].").

114:4-6 ("███████████████████████████████████████ ██████████████████████████████████████").

Mr. Lee also confirmed the existence of ████████████████ between Disney and ████████████ but refused to provide any information on the agreements, invoking privilege in response to nearly every question. *See* Ex. C at 107:23-111:22 (invoking privilege seven times in response to questions concerning ████████████████████████████). Even for factual questions concerning the agreements, such as the date they were executed, the name of the agreements, or who executed them, Mr. Lee was unable to provide complete answers. *See* Ex. C at 103:5-110:21 (responding ████████████ when asked for factual details concerning ███████████████). When asked if he had access to the agreements and whether he reviewed them to prepare, he confirmed he had access to them and gave them to counsel, and he could have reviewed them to prepare (or during a break), but he chose not to. *See, e.g.*, Ex. C at 119:2-13.

Disney has a duty to designate a knowledgeable deponent. *Starline Windows Inc.*, 2016 WL 4485564, at *4 (holding if "it becomes apparent during the deposition that the designee produced is unable to respond to relevant areas of inquiry, the responding party has a duty to designate an additional knowledgeable deponent").

## IV.   CONCLUSION

Because the information sought is relevant to damages, as well as to InterDigital's claims and Disney's defenses and counterclaims, InterDigital requests that the Court order Disney to: (1) promptly produce the non-email documents exchanged between Disney and third parties pursuant to Request No. 63 that Mr. Lee has already collected and provided to counsel; (2) promptly after the production is complete: (a) reproduce Mr. Lee to testify (without baseless limitations) about information within his knowledge pursuant to Rule 30(b)(1); and (b) produce Mr. Lee (or another witness) to testify fully in response to Topic Nos. 40 and 102-104.

Dated: May 11, 2026

Respectfully submitted,

/s/ Richard A. Kamprath
Alan P. Block (CA Bar No. 143783)
ablock@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Richard A. Kamprath (admitted *pro hac vice*)
rkamprath@mckoolsmith.com
R. Arden Seavers (admitted *pro hac vice*)
aseavers@mckoolsmith.com
Joseph Micheli (admitted *pro hac vice*)
jmicheli@mckoolsmith.com
Samuel Moore (admitted *pro hac vice*)
smoore@mckoolsmith.com
Daniel Iliasevitch (admitted *pro hac vice*)
diliasevitch@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Hannah Mirzoeff (admitted *pro hac vice*)
hmirzoeff@mckoolsmith.com
**MCKOOL SMITH, P.C.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

Joshua W. Budwin (admitted *pro hac vice*)
jbudwin@mckoolsmith.com
George Fishback, Jr. (admitted *pro hac vice*)
gfishback@mckoolsmith.com
**MCKOOL SMITH, P.C.**
303 Colorado Street, Suite 2100

11

Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Kevin Burgess *(admitted pro hac vice)*
kburgess@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Nancy Olson (SBN 260303)
nolson@olsonstein.com
David Stein (SBN 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane, #301
Newport Beach, CA 92663
Telephone: (310) 916-7433

*Attorneys for Plaintiffs InterDigital, Inc., InterDigital VC Holdings, Inc., InterDigital Madison Patent Holdings, SAS, and InterDigital CE Patent Holdings, SAS*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief is fewer than 10 pages, which complies with the Court's applicable limit.

Dated: May 11, 2026                    /s/ Richard A. Kamprath
                                        Richard A. Kamprath

13