Richard A. Kamprath (admitted *pro hac vice*)
rkamprath@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Nancy M. Olson (SBN 260303)
nolson@olsonstein.com
David M. Stein (SBN 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane #301
Newport Beach, CA 92663
Phone: 310.916.7433

*Additional counsel in signature block
Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION LOS ANGELES

| | |
|---|---|
| INTERDIGITAL, INC., *et al.*, | Case No. 2:25-cv-00895-WLH-BFM |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY** |
| v. | |
| THE WALT DISNEY COMPANY, *et al.* | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |
| Defendants. | Hearing Date: June 5, 2026 |
| | Hearing Time: 1:30 p.m. |
| | Courtroom: 9B |
| | Judge: Hon. Wesley L. Hsu |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

I.    INTRODUCTION ......................................................................................1

II.   BACKGROUND ........................................................................................3

    A.    InterDigital Brings Suit Against Disney. ........................................3

    B.    InterDigital Serves Its Preliminary Infringement Contentions. ...........4

    C.    The Parties Take Third-Party Discovery. ........................................4

    D.    Dolby Begins A Campaign Against InterDigital. ...............................5

    E.    Disney Files Collateral Proceedings Against InterDigital. ..................6

III.  LEGAL STANDARDS ...............................................................................7

IV.   ARGUMENT .............................................................................................9

    A.    The Customer Suit Exception Does Not Apply. ..................................9

        1.    Dolby's purported indirect infringement is not the same as Disney's direct infringement, and resolving it will not resolve this case. ....................................................................9

        2.    Applying the exception would thwart the exception's goals of efficiency and judicial economy. ..........................................12

    B.    The EPRs Do Not Support A Stay for The '301 and '818 Patents. .............................................................................................15

        1.    The litigation has advanced well beyond a point where a stay could possibly promote efficiency. ....................................15

        2.    Predictions concerning the EPR process are speculative. ........17

        3.    The requested stay would unduly prejudice InterDigital and give Disney a tactical advantage. .......................................20

V.    CONCLUSION ........................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Commonwealth Sci. & Indus. Rsch. Organisation v. Buffalo Tech. Inc.*,
492 F. Supp. 2d 600 (E.D. Tex. 2007) ...................................................... 13, 14, 20

*Covves, LLC v. Dillard's, Inc.*,
No. 2:18-CV-08518-RGK-AFM,
2019 WL 2022227 (C.D. Cal. Jan. 18, 2019) ......................................................... 7, 8

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
498 F.3d 1059 (9th Cir. 2007) ..................................................................................... 8

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*,
No. 2:15-CV-1202-WCB,
2016 WL 1659924 (E.D. Tex. Apr. 26, 2016) ..................................................... 11, 12

*Futurewei Techs., Inc. v. Acacia Research Corp.*,
737 F.3d 704 (Fed. Cir. 2013) ............................................................................. 14, 15

*In re Nintendo of Am., Inc.*, 756 F.3d 1363 (Fed. Cir. 2014) ................................... 7

*InfoGation Corp. v. ZTE Corp.*,
No. 16-cv-01901-H-JLB,
2016 WL 9525235 (S.D. Cal. Dec. 1, 2016) ....................................................... 12, 15

*Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989) ............................... 8

*Kaneka Corp. v. Zhejiang Med. Co.*,
No. CV-11-02389-SJO-SHSx,
2016 WL 6208309 (C.D. Cal. July 6, 2016) ....................................................... 11, 12

*Kuen Hwa Traffic Indus. Co. v. DNA Motor, Inc.*,
2019 WL 4266813 (C.D. Cal. 2019) .................................................................... 17, 18

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ............................................................... 8

*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F .2d 857 (9th Cir. 1979) ................... 8

*LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*,
No. CV 12-1063-LPS-CJB, 2015 WL 8674901 (D. Del. Dec. 11, 2015) ........... 16

*Lian Li Indus. Co., Ltd. v. Phanteks Europe,*
 Case No. 2:23-cv-07471-HDV-MAR, 2024 WL 4800683
 (C.D. Cal. Oct. 4, 2024) ..................................................................................18

*Liberty Access Techs. Licensing LLC v. Wyndham Hotels & Resorts, Inc.,*
 No. 2:24-CV-00125-JRG,
 2024 WL 4729750 (E.D. Tex. Nov. 8, 2024) ...............................................10, 11

*Lockyer v. Mirant Corp.,* 398 F.3d 1098 (9th Cir. 2005)...............................8, 13, 14

*Longhorn HD LLC v. Netscout Sys., Inc.,*
 2022 WL 71652 (E.D. Tex. Jan. 6, 2022).....................................................19, 20

*MR Techs. GMBH v. Toshiba Am. Elec. Components. Inc.,*
 No. 8:25-CV-00786-JVS-DFM,
 2026 WL 638641 (C.D. Cal. Mar. 2, 2026).....................................................10, 14

*Parallax Grp. Int'l, LLC v. Incstores.com LLC,*
 No. SA CV 16-00929-AG-DFMx,
 2017 WL 3000017 (C.D. Cal. Jan. 25, 2017) ......................................................18

*Signal IP, Inc. v. Volkswagen Grp. of Am., Inc.,*
 No. CV 14-3113 JAK (JEMX),
 2015 WL 5764831 (C.D. Cal. May 26, 2015) ...............................................17, 18

*Spread Spectrum Screening LLC v. Eastman Kodak Co.,*
 657 F.3d 1349 (Fed. Cir. 2011).............................................................................7

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.,*
 458 F.3d 1335 (Fed. Cir. 2006)........................................................................7, 8

*Tissue Anchor Innovations, LLC v. Fountain Valley Reg'l Hosp.,*
 No. SA CV 19-00791-JVS-ADSx,
 2019 WL 8219779 (C.D. Cal. Nov. 25, 2019)........................................................7

*Tric Tools, Inc. v. TT Techs., Inc.,*
 2012 WL 5289409 (N.D. Cal. Oct. 25, 2012).......................................................17

*Universal Elecs., Inc. v. Universal Remote Control, Inc.,*

943 F. Supp. 2d 1028 (C.D. Cal. 2013) ...............................................8, 15, 16, 20

*Wilus Inst. of Standards & Tech. Inc. v. HP Inc.*,

No. 2:24-CV-00746-JRG,

2026 WL 1104330 (E.D. Tex. Apr. 23, 2026) ................................................13, 20

**Federal Statutes**

35 U.S.C. § 302 ........................................................................................6, 19

35 U.S.C. § 303 ........................................................................................6, 19

35 U.S.C. § 304 .............................................................................................6

35 U.S.C. § 315 .............................................................................................5

**Federal Rules**

Fed. R. Civ. P. 1 .....................................................................................18, 20

**Other Authorities**

Dennis Crouch, *Decimation: Ex Parte Reexamination Eclipses the IPR,*

Patently-O (May 2, 2026), https://patentlyo.com/patent/2026/05/decimation-ex-parte-reexamination-eclipses-the-ipr.html ...........................................................18

Jonathan Bowser, *Patent Challengers Are Increasingly Using Reexamination*

*Instead of IPRs*, Reuters (Mar. 26, 2026),

https://www.reuters.com/legal/legalindustry/patent-challengers-are-increasingly-using-reexamination-instead-iprs--pracin-2026-03-26/ .......................................19

## I.    INTRODUCTION

This case was filed in February 2025. Discovery was originally scheduled to close in April 2026. Significant discovery, including 10 depositions and the production of nearly eight hundred thousand pages of documents has occurred. The parties briefed and argued claim construction, and a *Markman* ruling issued. Yet Disney waited until May 2026—15 months after the start of this litigation—to file its motion to stay. Disney's motion cannot succeed. No stay is warranted, whether by the customer suit exception or in the Court's discretion, especially at this late date in the proceedings.

**The '268 patent**. Disney licenses the right to use Dolby Vision software from Dolby and then Disney personnel make use of it and other products. But this is insufficient to show that the customer suit exception makes sense here. The exception is grounded in promoting efficiency and judicial economy. Disney's belated motion shows that granting the requested stay would undermine both. Here, Dolby is not the "true defendant." InterDigital alleges that **Disney** infringes the asserted method claims of the '268 patent by, among other things, **using various** HDR technology, including HDR10, HDR10+, and Dolby Vision software. These allegations are *not* directed at Dolby. Disney exercises discretion and choice when it—not Dolby—performs the asserted color correction method steps. Given this, resolving infringement concerning Disney's use of Dolby Vision will not resolve all of InterDigital's '268 patent infringement claims against Disney.

Further, courts routinely decline to apply the customer suit exception where a customer and manufacturer are accused of different types of infringement as is the case here: InterDigital accuses Disney of direct infringement, whereas Dolby (incorrectly) believes it is implicated for indirect infringement. This is especially appropriate here where InterDigital does not accuse, and has never accused, Dolby of infringement. As InterDigital explains in its co-pending motion to dismiss the

-1-

related Dolby DJ action (*Dolby* Dkt. 27), the software Dolby licenses to Disney (as opposed to using that software) cannot, standing alone, infringe a method claim.

Finally, staying the '268 patent claims after more than a year of litigation in favor of letting Dolby start its DJ case from scratch would not facilitate a just, efficient, and less expensive determination by the Court. Quite the opposite. Notwithstanding the inexplicable delay by Disney in bringing this motion (and in Dolby initiating its collateral litigation campaign), and even overlooking the tremendous waste of resources that would arise from granting a stay, entertaining the stay would, at a minimum, have multiple untenable and unduly prejudicial effects. For example, it would extend fact and expert discovery and the trial date (likely by at least a year, if not longer); require duplicative third-party discovery from Disney (the actual infringer here) and others; and require two separate trials, one concerning Dolby Vision in the DJ case and another concerning the other HDR-related technology alleged in this case. The Court should reject this illogical and wasteful proposal and deny the motion.

**The '301 and '818 patents**. The totality of circumstances surrounding Disney's stay request weighs heavily in favor of rejecting a stay. *First*, the stage of the case weighs against a stay given the significant resources expended by the Court and parties to date, including motion practice, claim construction proceedings, and substantial discovery. Disney's focus on future tasks, to the exclusion of the work completed over the last year, shows it is not interested in efficiency, especially where Disney waited over a year to file its Ex Parte Reexamination ("EPR") petitions. *Second*, Disney's predictions concerning what may happen several years from now over the long, drawn-out course of the EPR process are speculative. The bar for EPR institution is low, and, unlike IPRs, EPRs do not provide preclusive effects, which would allow Disney to relitigate issues here after concluding the EPRs. *Third*, the requested stay would unduly prejudice InterDigital by requiring it to divert significant resources to protracted litigation

-2-

rather than focus on continuing the cycle of innovation through investing in greater research and development efforts. Disney's unexplained delay in filing its EPR petitions, and delay in filing this motion, demonstrate a stay would provide a tactical advantage to Disney and not a just and speedy resolution here.

The Court should deny the motion in its entirety.

## II.   BACKGROUND

### A.   InterDigital Brings Suit Against Disney.

In February 2025, InterDigital brought this case against Disney, asserting infringement of five patents, including the '268, '301, and '818 patents. Dkt. 1.

The '268 patent relates to methods and systems for color correcting displays with different color gamuts (*i.e.*, ranges of colors that can be displayed). *See* Dkt. 1-7 at Abstract. InterDigital asserts that Disney infringes Claim 1, which discloses a method for color correcting involving performing color correction on source picture content, including generating metadata for color gamut mapping that transforms mastered color corrected picture content on reference type displays. *Id.* Cl. 1. It is Disney, not Dolby, that performs the claimed color correction.

One way to perform the claimed method of color correction is through using HDR video technology. HDR expands both the brightness range and range of colors a device can display to cover far more of the visible spectrum. HDR video employs metadata that tells the display how bright or colorful different parts of a picture should be; the metadata can be static (applied once to a whole video), or dynamic (changing scene-by-scene). Some of the most common HDR formats include HDR10, HDR10+, and Dolby Vision. HDR 10 is an open format used across modern TVs and streaming platforms that uses static metadata. Dolby Vision, developed by Dolby, adds dynamic metadata. Yet another commercially and widely available alternative technology is HDR10+, developed by Samsung, which also adds dynamic metadata. InterDigital's allegations against Disney relate to various HDR formats, not a single format.

-3-

PLAINTIFFS' OPP. TO MOTION TO STAY        Case No. 2:25-cv-00895-WLH-BFM

In filing its complaint, InterDigital attached exemplary infringement charts, including Exhibit D-2, which illustrated how InterDigital believed Disney could be infringing the asserted method claims in the ’268 patent, including through using HDR technology when Disney performs color correction. Dkt. 1-8. Exhibit D-2 referenced publicly available information concerning Dolby Vision in support of InterDigital’s direct infringement theory against Disney. When the complaint was filed well over a year ago, Dolby did not contact InterDigital to ask whether it was a target (it is not). It did not step in to indemnify Disney (contrary to its alleged indemnity obligation, *see* Dkt. 178-6, ¶ 25). And it did not promptly seek declaratory relief concerning its (incorrect) subjective belief that it could be implicated of indirect infringement based on the claim chart.

**B. InterDigital Serves Its Preliminary Infringement Contentions.**

In May 2025, InterDigital served its preliminary infringement contentions (“PICs”), explaining its theory that Disney infringes “with color correction workflows for HDR10 and HDR10+,” in addition to using Dolby Vision, as part of Disney’s acts of performing the claimed color correction methods. Dkt. 178-5 at 2 n.1.[1] The PICs cited publicly available information from Disney and Dolby. When the PICs were served on Disney under the Court’s Standing Patent Order, Dolby again did not contact InterDigital, step in to indemnify Disney, or otherwise take any action.

**C. The Parties Take Third-Party Discovery.**

In September 2025, in connection with the parties serving subpoenas on about a dozen color correction-related third parties believed to have relevant

---

[1] InterDigital cites to the original pagination in Disney’s exhibits because they are not consecutively paginated and some of the CM/ECF page stamps are not legible. *See* L.R. 11-5.2; L.R. 11-5.3; *see also* L.R. 5-4.3.1 (requiring text-searchable PDFs for exhibits).

information concerning Disney's infringement of the '268 patent, InterDigital served two substantially identical third-party subpoenas on Dolby entities.[2] Through the subpoenas, InterDigital sought additional information about Dolby Vision to support its theory that all the steps Disney performs in color correcting its videos infringe the asserted method claims of the '268 patent.

Upon receiving the subpoenas, Dolby requested and received extensions; met and conferred with InterDigital twice in November 2025 concerning scope; provided access to source code; and produced documents. Dolby's production represents a fraction of the documents produced by all the color correction-related entities, and its production was not the largest. Dkt. 178-9 at 4 (noting Dolby produced less than a quarter of all color correction-related documents across all subpoenas concerning the '268 patent). In connection with the subpoenas, Dolby again did not ask InterDigital whether it is a target, step in to indemnify Disney, or do anything else suggesting it should be the "true defendant" here.

### D.    Dolby Begins A Campaign Against InterDigital.

Over one year after InterDigital filed this case, and without any prior warning, Dolby went on the offense against InterDigital. First, after Disney's one-year statutory bar-deadline for filing an IPR against the '268 patent applied (*see* 35 U.S.C. § 315(b)), in February 2026, Dolby conspicuously filed an IPR against the '268 patent. *See* IPR2026-00252 (no decision regarding institution yet).[3]

Second, Dolby filed two declaratory relief actions in this Court, Nos. 2:26-cv-02269-WLH-BFM and 2:26-cv-2270-PA-SP, seeking a determination that the

---

[2]    Disney has not served any subpoenas on, or otherwise requested discovery from, Dolby in connection with defending this suit.

[3]    A discovery motion pending before the PTAB in connection with the requested IPR seeks documents concerning a Joint Defense Agreement between Dolby and Disney, which is relevant to whether Disney should have been disclosed as a real party in interest in the IPR; if so, the IPR is time barred.

'268 patent (2269 case) and five other InterDigital patents (2270 case) are not infringed by Dolby. In connection with the present motion, Dolby is coordinating with Disney to seek a stay of these proceedings relating to the '268 patent. *See* Dkt. 178-6 at ¶ 9 (complaint foreshadowing customer suit motion); *see also Dolby* Dkt. 41 (notice stating Dolby seeks sever and stay like Disney).

### E.    Disney Files Collateral Proceedings Against InterDigital.

In February 2026, despite litigating before this Court for over a year and obtaining rulings on many significant issues, Disney filed petitions with the Patent Office seeking ex parte reexamination ("EPR") of two InterDigital patents asserted in this case. On February 17, 2026, Disney sought EPR of the '818 patent. *See* Dkt. 178-01. Then on February 27, 2026, Disney sought EPR of the '301 patent. *See* Dkt. 178-02.

Under 35 U.S.C. § 302, any person may request that the Patent Office conduct an EPR of an issued patent. The Patent Office then determines if a "substantial new question of patentability" is present. 35 U.S.C. § 303(a). If such a question is identified, reexamination proceedings follow wherein a patent examiner evaluated the patent in a manner similar to examining a new patent application, but with differences such as limitations on the types of rejections that may issue. *See* 35 U.S.C. § 304. Any third-party requesting reexamination does not participate, hence the "ex parte" designation. At the end of the process, the Patent Office issues a reexamination certificate, which may include the same claims, amended claims, cancelled claims, or a mix of all three. Claims may not be enlarged through reexamination.[4]

---

[4]    *See* https://www.uspto.gov/sites/default/files/documents/term_reexam_proceed.pdf.

## III.    LEGAL STANDARDS

***Customer Suit Exception.*** The customer-suit doctrine is an exception to the first-to-file rule. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). Under this exception, "[w]hen a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take[s] precedence." *Id.* The exception "is based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011).

Where it applies, the exception is meant to "avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute," thereby facilitating a "just, convenient, efficient, and less expensive determination." *Nintendo*, 756 F.3d at 1365. Post-*Nintendo*, "an important limitation remains: the manufacturer and the customer must be accused of the *same* infringement claim(s) for the exception to apply." *Tissue Anchor Innovations, LLC v. Fountain Valley Reg'l Hosp.*, No. SA CV 19-00791-JVS-ADSx, 2019 WL 8219779, at *3 (C.D. Cal. Nov. 25, 2019) (emphasis added). The exception does *not* apply when the asserted claims are method claims and "where there are accusations that the customer directly infringed the patent and the manufacturer/seller is accused of actively inducing the customer to infringe." *Id.*

Because "the guiding principles in the customer suit exception cases are efficiency and judicial economy," *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006), relevant factors could include whether the case has "the potential to resolve the 'major issues' concerning the claims against the customer;" "whether the plaintiff would have to relitigate the question of infringement against the customer even if it prevailed against the manufacturer;" and "whether the customer[] agree[s] to be bound by

the result of the manufacturer's action." *Covves, LLC v. Dillard's, Inc.*, No. 2:18-CV-08518-RGK-AFM, 2019 WL 2022227, at \*3 (C.D. Cal. Jan. 18, 2019); *see also Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) (denying application of customer-suit doctrine where supposed manufacturer developed only part of accused product).

***Discretionary Stay.*** A district court has discretionary power to stay proceedings. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F .2d 857, 863 (9th Cir. 1979). But case management concerns alone are not necessarily sufficient to stay proceedings. *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

When deciding whether to stay an action, a court weighs several factors: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). "The inquiry is not limited to these three factors. Rather, the totality of the circumstances governs." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013) (quotations omitted).

Further, "'if there is even a fair possibility that the stay ... will work damage to someone else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" *Dependable Highway Express*, 498 F.3d at 1066 (quoting *Landis*, 299 U.S. at 255). Notably, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'" *Lockyer*, 398 F.3d at 1112.

## IV.    ARGUMENT

### A.    The Customer Suit Exception Does Not Apply.

The Court should deny Disney's motion to stay because the exception does not apply where resolving the alleged claims against Dolby will not resolve the actual claims against Disney. It also does not apply because InterDigital accuses Disney of directly infringing the asserted method claims, whereas Dolby alleges it believes it is accused of indirect infringement. Additionally, severing and staying the '268 patent in this case will multiply the proceedings, require relitigating infringement issues, and cause a massive waste of Court and party resources. This would all fundamentally undermine the very purpose of the exception.

### 1.    Dolby's purported indirect infringement is not the same as Disney's direct infringement, and resolving it will not resolve this case.

*First*, the exception cannot apply under the facts presented. InterDigital accuses Disney of directly infringing the asserted method claims of the '268 Patent by using a variety of HDR technologies, including, but not limited to, Dolby Vision. This was apparent from InterDigital's May 2025 PICs (*see* Dkt. 178-5 at 2 n.1), and it is irrefutable considering InterDigital's May 2026 final infringement contentions ("FICs") (*see* Ex. 6). Thus, resolving Dolby's declaratory relief claims will not resolve InterDigital's infringement claims against Disney.

InterDigital's FICs against Disney assert that, "[t]he '268 Patent is infringed by the HDR Accused Defendants' color correction and content consumption related to HDR10, HDR10+, and Dolby Vision titles for the Disney+, Hulu, and ESPN+ platforms." Ex. 6 at 90-91 (§ III.C). The FIC claim chart for the '268 patent asserts that "*Disney's* infringing workflows include HDR10, HDR10+, and Dolby Vision workflows," and "*Disney's* colorists perform infringing color correction and mastering methods ███████████████████," all while exercising considerable discretion and choice untethered to any specific product.

-9-

Ex. 1 at 3 n.2. Consistent with this, the claim chart alleges Disney's infringement through multiple HDR formats. *See, e.g.*, *id.* at 5-7 (examining Disney color correction). This refutes Disney's argument that Dolby is the "sole supplier" of the technology at issue. Mot. 10-11. Stays are improper where the infringement theory relies on multiple technologies. *See Liberty Access Techs. Licensing LLC v. Wyndham Hotels & Resorts, Inc.*, No. 2:24-CV-00125-JRG, 2024 WL 4729750, at *2 (E.D. Tex. Nov. 8, 2024) (denying stay where "Plaintiff's infringement theory relies on a combination of OpenKey [manufacturer] and Wyndham [customer] functionalities," so "the Court is persuaded that this case is not a traditional manufacturer-distributer case in which the distributer does nothing more than resell [or use] the Accused Product made by the manufacturer").

Notably, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████. Ex. 1 at 3 n.2. *Id.* ███████████████████████████████████████████████████████ *Id.* at 5. Disney dictates how it infringes when *Disney* performs color correction—the Dolby Vision workflows do not control Disney's infringement. Moreover, Disney, not Dolby, provides a list of approved monitors to complete the claim steps. *Id.* at 14. Dolby does not provide or approve specific hardware. Thus, this is not a scenario in which Disney (the customer) is merely an end-user of an off-the-shelf product used to complete all the asserted method steps. *Compare* Mot. 7-9 (claiming "end-user" status) *with MR Techs. GMBH v. Toshiba Am. Elec. Components. Inc.*, No. 8:25-CV-00786-JVS-DFM, 2026 WL 638641, at *3 (C.D. Cal. Mar. 2, 2026) (customization and presence of other non-manufacturer components show customer not a "mere reseller" and manufacturer cannot have "complete knowledge" of accusations). The FICs show that InterDigital's claim against Disney does not "rise[] and fall[] with Dolby Vision" (Mot. 8-9), as Disney suggests. *See Liberty Access*, 2024 WL 4729750 at *3 (denying stay where

-10-

"[software] Functionality is plainly not the only source of the allegedly infringing activity or product") (quotations omitted). The inefficiency presented by Disney's stay argument is highlighted by its acknowledgement that "not every defendant entity uses Dolby Vision." Mot. 7 n.3.

*Second*, the exception cannot apply because Disney is accused of direct infringement, whereas Dolby believes it is implicated of indirect infringement. "In particular, courts have declined to apply the customer-suit exception to cases in which the manufacturer is charged as the indirect infringer of a method patent and the retailer[-customer] is charged as the direct infringer." *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 WL 1659924, at *4 (E.D. Tex. Apr. 26, 2016) (collecting cases). Here, InterDigital accuses Disney of *directly* infringing certain method claims of the '268 Patent. *See* Dkt. 1 at ¶¶ 523-48; *see also* Dkt. 83 (order on stipulation that InterDigital's claims against Disney do not include allegations of induced, contributory, or willful infringement). In contrast, Dolby alleges it believes InterDigital is targeting it for *indirect* infringement. *See, e.g.*, Ex. 2 at 32 (Dolby Opp. to MTD arguing InterDigital's complaint against Disney "establish[es] an implicit allegation of inducement or contributory infringement" by Dolby). Even assuming for the sake of argument that a case or controversy concerning indirect infringement exists between InterDigital and Dolby (it does not), courts faced with this situation decline to apply the exception because indirect infringement and direct infringement are different. Thus, Disney's agreement "to be bound by the outcome" (Mot. 9) of the Dolby DJ action is hollow and ineffectual.

In a similar situation, the Court has found that the differing elements, need for overlapping discovery, and different damages issues—all of which apply here—weigh against applying the customer suit exception because "staying the litigation as to [a so-called "off-the-shelf" user] would neither result in judicial efficiency nor simplify issues, proof, and questions of law which could be expected

-11-

to result from a stay." *Kaneka Corp. v. Zhejiang Med. Co.*, No. CV-11-02389-SJO-SHSx, 2016 WL 6208309, at *3 (C.D. Cal. July 6, 2016) (quotations omitted) (declining to sever and stay downstream customer); *see also Uropep*, 2016 WL 1659924 at *3 (declining request to stay because, "unlike … other cases involving the customer-suit exception, the issue of infringement is not entirely common to Brookshire [the retailer] and Lilly [the manufacturer], as proof of [induced] infringement by Lilly would not necessarily establish [direct] infringement by Brookshire"); *InfoGation Corp. v. ZTE Corp.*, No. 16-cv-01901-H-JLB, 2016 WL 9525235, at *3 (S.D. Cal. Dec. 1, 2016) (claims involving different types of infringement, manufacturer who did not provide hardware for limitations, and different measure of damages all weigh against stay).

Although both the upstream and downstream parties were in the same suits in *Kaneka* and *Uropep*, this begs the question of, why, if Dolby has an indemnity obligation to Disney (*see* Dkt. 178-8, ¶ 25), and it believes it is implicated in this suit, it has never stepped in to participate here. This is especially concerning considering that, according to Dolby's own indirect infringement theory, participating here would be the most efficient means of resolving the supposedly overlapping questions of infringement, validity, and damages. *See Kaneka*, 2016 WL 6208309 at *3. Dolby meeting its purported indemnity obligation to Disney— *not* staying this case—would promote the efficiencies underlying the customer suit exception.

### 2.   Applying the exception would thwart the exception's goals of efficiency and judicial economy.

In the fifteen months this case has been pending, the parties and the Court have made tremendous progress toward final resolution. The Court has resolved considerable motion practice; the parties have neared the end of discovery, which was extended by four months to accommodate Disney's foreign discovery; and the Court has conducted claim construction proceedings and issued its Order. Staying

this significant progress in favor of allowing Dolby to start its brand new case would result in duplicative and wasteful effort affecting the entire litigation. It would multiply proceedings, including by requiring extensive third-party discovery from Disney and others in the Dolby action.

The *Lockyer* factors weigh against a stay concerning the '268 Patent. 398 F.3d at 1110. First, InterDigital will be damaged by further delays in resolving its infringement claims against Disney. InterDigital's research and development efforts have fueled groundbreaking digital innovations for over fifty years. InterDigital's current projects include continued development of AI-driven video compression and network optimization, 5G-Advanced and 6G wireless standards, and immersive experiences like haptics and AR-VR. InterDigital shares this technology with the world through its licensing efforts, whereby it grants access and authorization to implementers to use its beneficial technologies in exchange for fair compensation. This is precisely the benefit of the bargain promised by the structure and purpose of the Patent Act to incentivize innovation.

In turn, InterDigital pours revenue generated from licensing directly back into further research and development to continue the cycle of innovation. The greater the delay imposed on InterDigital's ability to enforce its patent rights, the more it is prevented from investing further in new technology that ultimately benefits consumers. This is unduly prejudicial and weighs against a stay. *See, e.g.*, *Wilus Inst. of Standards & Tech. Inc. v. HP Inc.*, No. 2:24-CV-00746-JRG, 2026 WL 1104330, at *1 (E.D. Tex. Apr. 23, 2026) (denying stay where research and development lab would be prejudiced even where only money damages sought).

Even where InterDigital does not compete with Disney, it competes with other research groups for the best talent and resources. Courts have recognized that, in this scenario, a lab "[h]aving its patents challenged . . . not only impugns [the R&D lab's] reputation as a leading scientific research entity but forces it to divert millions of dollars away from research and into litigation costs."

-13-

*Commonwealth Sci. & Indus. Rsch. Organisation v. Buffalo Tech. Inc.*, 492 F. Supp. 2d 600, 604 (E.D. Tex. 2007), *aff'd in part and vacated in part on other grounds*, 542 F.3d 1363 (Fed. Cir. 2008). These types of delays "result in lost research capabilities, lost opportunities to develop additional research capabilities, [and] lost opportunities to accelerate existing projects or begin new projects." *Id.* (finding irreparable harm and entering injunction).

Second, there is no hardship to Disney if this case proceeds. It is well-settled that having to respond to litigation is not a hardship. *Lockyer*, 398 F.3d at 1112. Disney portrays itself as a mere customer here, but Disney has tellingly never formally sought information from Dolby to aid in its defense of this case. Disney provides no reason the Dolby action should take precedence when it apparently did not think Dolby had anything important to share concerning infringement. Nor has Dolby ever stepped in to defend Disney. "Courts have found in similar cases that when a manufacturer has an indemnity agreement, its appropriate course of action is to defend its customer in the original action." *MR Techs.*, 2026 WL 638641, at *3 (collecting cases and agreeing that the "proper course of action is to become involved in this case"). Whatever may be going on between Disney and Dolby in terms of a coordinated effort to interfere with the progress of this litigation, their efforts to derail this case are too little, too late.

Third, a stay would not simplify the issues; instead, it would complicate and multiply the proceedings. Entering the stay would disrupt the schedule in this case and require two trials: one to resolve infringement allegations referencing Disney's use of Dolby Vision, and another concerning Disney's use of other HDR technology like HDR10 and HDR 10+. This shows that the Dolby DJ will not resolve "major issues," as Disney suggests (Mot. 10), and InterDigital will have to relitigate questions of infringement against Disney (both as to Disney performing all asserted method steps concerning Dolby Vision, as well as Disney's use of other HDR technology). Where keeping this case intact will serve the goals of the

-14-

exception, the Court should deny the motion. *See Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 709 (Fed. Cir. 2013) ("[K]eeping the issue in the [first-filed] case will serve key objectives of the first-to-file rule, including minimization or avoidance of duplication of effort, waste of judicial resources, and risk of inconsistent rulings that would accompany parallel litigation."); *InfoGation*, 2016 WL 9525235 at *4 (denying stay where "resolution of the infringement issues in the [supplier] action would not necessary resolve all of the infringement issues in the three present actions," and the actions "would still likely need to proceed regardless of the outcome of the [supplier] action," so "a stay would unnecessarily delay the outcome," thereby "complicat[ing] and delay[ing] the proceedings rather than simplify them").

Because both the applicable law and facts weigh against staying the case concerning the '268 patent, the Court should deny the motion.

**B.    The EPRs Do Not Support A Stay for The '301 and '818 Patents.**

On balance, the stay factors show the EPRs do not support a stay because of the substantial work completed in this case; Disney's assumptions concerning the EPR process and simplification are speculative; and InterDigital will suffer undue prejudice and tactical disadvantages from a stay.

**1.    The litigation has advanced well beyond a point where a stay could possibly promote efficiency.**

This factor examines "whether discovery is complete and whether a trial date has been set." *Universal Elecs.*, 943 F. Supp. 2d at 1031. Here, substantial discovery has been completed—with a four-month extension granted at Disney's request to complete foreign discovery—and a trial date has been set. Discovery completed to date includes the production of nearly 800,000 pages of documents; ten depositions; the propounding and answering, including many supplements, of hundreds of requests for written discovery including RFAs, RFPs, and ROGs; claim construction discovery; preliminary and final infringement contentions; and

preliminary and supplemental invalidity contentions. Even absent such progress, the Court has found that waiting "almost a year after being served with the complaint," during which time "the Court spent substantial effort construing the claims," weighs against a stay. *Id.* This is because "[t]he Court's expenditure of resources is an important factor in evaluating the stage of the proceedings." *Id.* The Court has expended significant resources already, including resolving substantial motion practice (including Disney's motion for a preliminary injunction, InterDigital's motion to dismiss, Disney's motion for extension, and InterDigital's motion to compel). Additionally, the Court completed extensive claim construction proceedings, recently issuing its claim construction Order, triggering the parties' final contention deadlines.[5] Disney's narrow focus on future events (Mot. 13-15) does not take a holistic view of the demands placed on the Court to date and the resulting progress achieved already.

Timing is an important factor here. Disney waited ***over a year*** to file its EPRs. *See* Dkt. 178-1 (filed Feb. 17, 2026); Dkt. 178-2 (filed Feb. 27, 2026). Where "Defendants could have filed [their] petitions and this motion before claim construction," this factor weighs against a stay. *Universal Elecs.*, 943 F. Supp. 2d at 1032; *see also LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*, No. CV 12-1063-LPS-CJB, 2015 WL 8674901, at *4 (D. Del. Dec. 11, 2015) ("when a request to stay a case comes after discovery is complete or nearly complete, or after the Court and the parties have expended significant effort on the litigation, the principle of maximizing the use of judicial and litigant resources may be best served by seeing the case through to its conclusion"). This is especially true where Disney cited all but one prior art reference underlying the EPRs in its

---

[5]    InterDigital has complied with the final contention deadline, serving its final infringement contentions spanning hundreds of pages on May 5, 2026. Disney's final invalidity contentions are due June 2, 2026.

preliminary invalidity contentions served in June 2025 or in supplemental invalidity contentions served in November 2025. *See* Ex. 3 (PIC) at 50-51, 53 (disclosing Demos '150, JVT-B075, and ISO IEC 14496-2 for the '301 patent and Yamori '254 for the '818 patent); Ex. 4 (SIC) at 63 (disclosing Srinivasan '222 for the '818 patent). Disney was thus well aware of the prior art at issue in the EPRs from the early days of this case—but still waited a year before filing the EPRs. Considering the resources expended by the parties and the Court, coupled with Disney's undue delay, this factor weighs against a stay.

### 2.    Predictions concerning the EPR process are speculative.

The nature of EPR proceedings before the PTO dictates that EPRs do not necessarily "limit or simplify the issues before the Court," because "the reexamination process considers only the validity of the subject patent with regard to prior art; the PTO does not analyze counterclaims or other grounds for patent invalidity." *Tric Tools, Inc. v. TT Techs., Inc.*, 2012 WL 5289409, at *2 (N.D. Cal. Oct. 25, 2012) (quotations omitted). Further, unlike IPRs, which Disney opted not to file, an EPR has no estoppel effect. Because there is no estoppel, if Disney's motion to stay is granted, the case will be extensively delayed, yet Disney could reraise the same prior art here post-stay without regard for duplication. *Id.* This would be incredibly inefficient.

Although claim cancellation could result in simplification concerning a particular claim, "ex parte reexamination frequently results not in cancellation, but instead in the amendment to, or the addition of, claims." *Signal IP, Inc. v. Volkswagen Grp. of Am., Inc.*, No. CV 14-3113 JAK (JEMX), 2015 WL 5764831, at *2 (C.D. Cal. May 26, 2015). Seeking a stay based on the remote possibility of cancellation, which this Court previously noted occurs only 12% of the time, hardly demonstrates likely simplification. *Kuen Hwa Traffic Indus. Co. v. DNA Motor, Inc.*, 2019 WL 4266813, *2 (C.D. Cal. 2019) (denying stay, citing low incidence of claim cancellation and unlikelihood "reexamination would simplify

the proceedings" where Defendants can "[re]litigate the same claims").[6] At this point in the EPR process, the PTO has not yet issued any office actions, so it is impossible to predict the likely trajectory of the EPRs.

Moreover, even where reexam could simplify the issues for trial, the delay will be extensive. "Such a lengthy delay presents the dangers of loss of evidence, faded memories, and changes in personnel, and is in tension with the Court's mandate to secure the 'just, speedy, and inexpensive determination of every action and proceeding.'" *Signal IP*, 2015 WL 5764831 at *2 (quoting Fed. R. Civ. P. 1). This is because "[m]ost of these reexaminations, including the inevitable appeal to the Patent Trial and Appeal Board [and Federal Circuit], take three to five years"— if not longer—to resolve. *Parallax Grp. Int'l, LLC v. Incstores.com LLC*, No. SA CV 16-00929-AG-DFMx, 2017 WL 3000017, at *2 (C.D. Cal. Jan. 25, 2017); *see also Lian Li Indus. Co., Ltd. v. Phanteks Europe*, Case No. 2:23-cv-07471-HDV-MAR, 2024 WL 4800683, at *1 (C.D. Cal. Oct. 4, 2024) (citing older statistics but nonetheless refusing stay pending EPR given that EPR, even without factoring in appeals, would likely take up to 25 months and have no estoppel effect). This is especially true in 2026 given the sharp increase in EPR filings in the wake of recent changes to IPR procedures, which have caused EPR filings to overtake IPR filings for the first time. *See, e.g.*, *Decimation: Ex Parte Reexamination Eclipses the IPR* (May 2, 2026), *available at* https://patentlyo.com/patent/2026/05/decimation-ex-parte-reexamination-eclipses-the-ipr.html. As a result, EPR timelines are getting significantly longer. *See id.*

---

[6] The updated statistics provided by Disney show that, in third-party initiated EPRs, all claims are cancelled only 11% of the time, whereas all claims are confirmed 16% of the time. *See* Dkt. 178-8 at 2 (§ 8(a)-(b)). Here, with two patents, each with a 11% (or less) chance of having the relevant claims cancelled, there is only an 1.21% chance that the relevant claims in both patents are cancelled (*i.e.*, .11 x .11 = .0121).

Further, because anyone can file an EPR (35 U.S.C. § 302), if Disney's EPRs are ultimately unsuccessful, a different party could simply file another one. Thus, there could be multiple or serial EPRs, each with no defined end date. Courts have denied stays pending EPRs given this potential for indefinite delays. *Longhorn HD LLC v. Netscout Sys., Inc.*, 2022 WL 71652 at *2 (E.D. Tex. Jan. 6, 2022) (denying motion to stay pending EPRs because "[t]he Court is persuaded that such a delay in filing the EPR [9 months after case filing] coupled with the risk of further un-ending EPRs weighs against a stay").

Disney speculates that the cited EPRs will simplify the issues here because of "apparent examiner error" regarding the '818 patent. Mot. 15-16. But this misstates the EPR institution decision. The decision stated that Disney's arguments regarding prior art reference Ye "presented [the reference] in a new light," Dkt. 178-3 at 11, therefore this met the low threshold for instituting an EPR, *i.e.*, a "substantial new question of patentability" ("SNQ"). *Id.* at 12; *see also* 35 U.S.C. § 303(a). By definition, every instituted EPR has an SNQ. Here, the examiner considered only Disney's one-sided argument and did not make any findings to meet this low bar. Notably, the SNQ standard is much lower than the standard required to institute an IPR, which requires reasonable likelihood of success in challenging at least one claim. It is not an indictment on claim validity; rather, it considers whether prior art has been presented in a new way. The examiner's conclusion is not unique to the patents or claims raised here. *See, e.g.*, *Patent Challengers Are Increasingly Using Reexamination Instead of IPRs*, *available at* https://www.reuters.com/legal/legalindustry/patent-challengers-are-increasingly-using-reexamination-instead-iprs--pracin-2026-03-26/ (noting SNQs may be based on prior art previously considered and discussed during prosecution); *see also* Dkt. 178-8 at 1 (*compare* § 5 (92.7% of requests to examine granted) *with* § 8 (only 11% have all claims canceled)). Thus, Disney's prediction concerning possible EPR outcomes is speculative at best and does not support a stay. *See Longhorn*

-19-

*HD*, 2022 WL 71652 at *3 (finding simplification factor does not support stay even where PTO issued initial rejection of all claims in EPR).

Finally, even considering a distant possibility of simplification several years away, which Disney contends is worth the wait (Mot. 16), Courts in this district have expressed "concern[] that allowing the progress of its docket to depend on the status of proceedings elsewhere can interfere with its obligation 'to secure the just, speedy, and inexpensive determination of every action.'" *Universal Elecs.*, 943 F. Supp. 2d at 1035 (quoting Fed. R. Civ. P. 1). Indeed, "[i]f litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner." *Id.* (quotations and citation omitted). Against this backdrop, this factor weighs against a stay.

### 3. The requested stay would unduly prejudice InterDigital and give Disney a tactical advantage.

Although infringement among competitors is one way to show harm arising from a stay, *see, e.g.*, *Universal Elecs.*, 943 F. Supp. 2d at 1043, it is not the only type of cognizable harm. Staying this litigation for 3-5 years, including PTO proceedings and appeals to the PTAB and Federal Circuit (or longer with serial EPRs), would severely hamper InterDigital's innovation pipeline by stymieing licensing opportunities, driving away talent, and reallocating resources from research and development to protracted and duplicative litigation. This is a recognized form of undue prejudice and weighs against a stay. *See Wilus Inst. of Standards & Tech.*, 2026 WL 1104330 at *1 (denying stay where research and development lab would be prejudiced even where only money damages sought); *Commonwealth Sci. & Indus*, 492 F. Supp. 2d at 604 (recognizing irreparable harm arising from delays that hamper research capabilities, development, and future opportunities).

In addition to the harm a stay would cause InterDigital, Disney's

PLAINTIFFS' OPP. TO MOTION TO STAY          Case No. 2:25-cv-00895-WLH-BFM

unexplained delays in filing the EPRs and seeking a stay show that a stay would provide a tactical advantage to Disney. Disney could have filed the EPRs soon after this case was filed, or any time along the way. Waiting to seek review and a stay until after the Court and parties have expended significant resources on the case promotes wasting, rather than preserving, resources. Notably, while this case was pending, the Patent Office considered EPRs on the '610 patent and a family member patent not asserted here (U.S. Patent No. 10,080,024); all claims of the '610 patent survived without amendment. *See* Ex 5 at 85-86 (re-exam certificate issued Apr. 8, 2026). Disney never asked for a stay based on that EPR, suggesting it is more interested in delaying resolution on the merits than streamlining proceedings and saving resources. This attempt to seek a tactical advantage should be rejected. This factor weighs against a stay.

Because the totality of circumstances weighs against a stay, the Court should deny Disney's motion as to the '301 and '818 patents.

## V.    CONCLUSION

The customer suit exception does not apply because InterDigital's infringement allegations encompass Disney's color correction with HDR10, HDR10+, and Dolby Vision. Thus, resolving Dolby's collateral claims would not resolve InterDigital's claims. The exception also does not apply in cases like this involving method claims where different types of infringement requiring different elements of proof are raised as to the manufacturer and customer (*i.e.*, InterDigital alleges direct infringement by Disney vs. Dolby alleges it is implicated for indirect infringement). It should also not apply here considering the waste of resources that would result from staying this case. The requested discretionary stay pending EPRs is also not well founded because of the considerable resources expended in this action already; simplification of the issues several years from now is speculative; and a stay would unduly prejudice InterDigital's continued research and development progress. Every factor weighs against a stay, and the Court should

deny the motion in full.

Dated: May 15, 2026                    Respectfully submitted,

                                       /s/ Nancy M. Olson
                                       Nancy M. Olson (CA SBN 260303)
                                       David M. Stein (CA SBN 198256)
                                       **OLSON STEIN LLP**
                                       240 Nice Lane #301
                                       Newport Beach, CA 92663
                                       Telephone: 310.916.7433

                                       Alan P. Block (CA Bar No. 143783)
                                       ablock@mckoolsmith.com
                                       **MCKOOL SMITH, P.C.**
                                       300 South Grand Avenue, Suite 2900
                                       Los Angeles, California 90071
                                       Telephone: (213) 694-1200
                                       Facsimile: (213) 694-1234

                                       Richard A. Kamprath *(admitted pro hac vice)*
                                       rkamprath@mckoolsmith.com
                                       R. Arden Seavers (admitted *pro hac vice*)
                                       aseavers@mckoolsmith.com
                                       Joseph Micheli (admitted *pro hac vice*)
                                       jmicheli@mckoolsmith.com
                                       Samuel Moore (admitted *pro hac vice*)
                                       smoore@mckoolsmith.com
                                       Daniel Iliasevitch (admitted *pro hac vice*)
                                       diliasevitch@mckoolsmith.com
                                       **MCKOOL SMITH, P.C.**
                                       300 Crescent Court, Suite 1200
                                       Dallas, Texas 75201
                                       Telephone: (214) 978-4000
                                       Facsimile: (214) 978-4044

                                       Hannah Mirzoeff *(admitted pro hac vice)*
                                       hmirzoeff@mckoolsmith.com
                                       **MCKOOL SMITH, P.C.**
                                       1301 Avenue of the Americas, 32nd Floor
                                       New York, New York 10019

-22-

PLAINTIFFS' OPP. TO MOTION TO STAY          Case No. 2:25-cv-00895-WLH-BFM

Telephone: (212) 402-9400
Facsimile: (212) 402-9444

Joshua W. Budwin *(admitted pro hac vice)*
jbudwin@mckoolsmith.com
George Fishback, Jr. *(admitted pro hac vice)*
gfishback@mckoolsmith.com
**MCKOOL SMITH, P.C.**
303 Colorado Street, Suite 2100
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Kevin Burgess *(admitted pro hac vice)*
kburgess@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

*Attorneys for Plaintiffs*

## L.R. 11-6.2 Certification

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,742 words, which complies with the word limit of L.R. 11-6.1, and with the word limit set by Court Order dated February 6, 2025. *See* Dkt. 19 (WLH Standing Order for Newly Assigned Civil Cases) § G.4 (opposition not to exceed 7,000 words).

Dated: May 15, 2026

*/s/ Nancy M. Olson*
Nancy M. Olson

PLAINTIFFS' OPP. TO MOTION TO STAY    Case No. 2:25-cv-00895-WLH-BFM