RYAN K. YAGURA (S.B. #197619)
ryagura@omm.com
NICHOLAS J. WHILT (S.B. #247738)
nwhilt@omm.com
XIN-YI ZHOU (S.B. #251969)
vzhou@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Telephone:   213-430-6000
Facsimile:   213-430-6407

*Attorneys for Defendants The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., BAMTech LLC, Hulu, LLC, and ESPN, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION AT LOS ANGELES

| | |
|---|---|
| INTERDIGITAL INC., INTERDIGITAL VC HOLDINGS, INC., INTERDIGITAL MADISON PATENT HOLDINGS, SAS, AND INTERDIGITAL CE PATENT HOLDINGS, SAS,<br><br>Plaintiffs and Counterclaim-Defendants,<br><br>v.<br><br>THE WALT DISNEY COMPANY, DISNEY MEDIA AND ENTERTAINMENT DISTRIBUTION LLC, DISNEY DTC LLC, DISNEY STREAMING SERVICES LLC, DISNEY ENTERTAINMENT & SPORTS LLC, DISNEY PLATFORM DISTRIBUTION, INC., BAMTECH, LLC, HULU, LLC, AND ESPN, INC.,<br><br>Defendants and Counterclaim-Plaintiffs. | Case No. 2:25-cv-895-WLH-BFM<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY PENDING RESOLUTION OF RELATED PROCEEDINGS**<br><br>Judge: Hon. Wesley L. Hsu<br>Magistrate: Hon. Brianna F. Mircheff<br><br>Hearing Date: June 5, 2026<br>Hearing Time: 1:30 p.m.<br>Courtroom: 9B |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................................1

II.   ARGUMENT .................................................................................................1

    A.   The Customer-Suit Exception Applies to the '268 Patent....................1

        1.    InterDigital's Belated Attempt to Add HDR10/HDR10+
            Cannot Defeat a Customer-Suit Stay..........................................2

        2.    InterDigital's Direct/Indirect Infringement Distinction
            Does Not Defeat the Customer-Suit Exception..........................4

        3.    Efficiency, Judicial Economy, and the Remaining *Lockyer*
            Factors All Strongly Favor a Stay .............................................6

    B.   The EPR Proceedings Warrant a Stay of the '301 and '818
       Patents .................................................................................................9

        1.    The Stage of Litigation Favors a Stay .......................................9

        2.    The EPRs Are Highly Likely to Simplify the Case.................10

        3.    As a Non-Practicing Entity, InterDigital Will Suffer No
            Undue Prejudice or Tactical Disadvantage ..............................12

III.  CONCLUSION ............................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*DS Advanced Enters., Ltd. v. Cooper Lighting, LLC*,
No. 5:23-CV-02603, 2024 WL 5260939 (C.D. Cal. Nov. 20, 2024).................7, 8

*Evolutionary Intel., LLC v. Millenial Media, Inc.*,
No. 5:13-CV-04206-EJD, 2014 WL 2738501 (N.D. Cal. June 11, 2014).................................................................................................................10

*Linksmart Wireless Tech. LLC v. Gogo Inc.*,
No. SACV 18-00654 AG, 2018 WL 8367609 (C.D. Cal. Sept. 18, 2018).................................................................................................................9

*Mantissa Corp. v. Old Second Bancorp, Inc.*,
No. 17C9175, 2018 WL 3059604 (N.D. Ill. June 20, 2018)..............................5

*Nike, Inc. v. Skechers U.S.A., Inc.*,
No. 219CV09230FLAJDEX, 2021 WL 4925447 (C.D. Cal. June 30, 2021)...............................................................................................................7

*Nike, Inc. v. Skechers U.S.A., Inc.*,
No. CV23-09346-AB (PVCX), 2025 WL 439935 (C.D. Cal. Feb. 4, 2025).................................................................................................................9

*Relink US LLC v. Tesla Inc.*,
No. 25-CV-03365-RFL, 2025 WL 2909964 (N.D. Cal. Oct. 14, 2025)...........................................................................................................10, 11

*RJ Tech. LLC v. Apple Inc.*,
No. 8:22-CV-01874, 2023 WL 8188475 (C.D. Cal. Oct. 4, 2023)....................9

*Select Retrieval, LLC v. L.L. Bean, Inc.*,
No. 2:12-CV-00003-NT, 2013 WL 1099754 (D. Me. Mar. 15, 2013).................................................................................................................5

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
657 F.3d 1349 (Fed. Cir. 2011).........................................................................2

*Ultra Prods., Inc. v. Best Buy Co.*,
No. CIV.A.09-1095MLC, 2009 WL 2843888 (D.N.J. Sep. 1, 2009).................5

*Upaid Sys., Ltd. v. CleanDan*,
No. SACV1800619ABSSX, 2018 WL 5279567 (C.D. Cal. July 25, 2018)...............................................................................................................2, 4

*Uropep GbR v. Eli Lilly & Co.*,
No. 2:15-CV-1202-WCB, 2016 WL 1659924 (E.D. Tex. Apr. 26, 2016).................................................................................................................5

**Regulations**

37 C.F.R. § 1.552......................................................................................................10

## I.    **INTRODUCTION**

InterDigital's Opposition (Dkt. 186) applies the wrong standards, obscures the undisputed facts, and ignores the inefficiency of parallel litigation.  Contrary to InterDigital's arguments, the customer-suit exception does not require complete overlap between the customer and manufacturer actions, and an EPR stay does not require a guarantee that every challenged claim will be cancelled.  The pending Dolby Action and PTO reexaminations are already positioned to resolve or materially narrow the remaining issues, while InterDigital—a non-practicing entity seeking monetary damages—fails to show any undue prejudice from a stay.

InterDigital tries to complicate the record by adding new allegations concerning HDR10 and HDR10+, misconstruing PTO statistics, and making unsubstantiated claims about its "research and development."  But those distractions do not change the core facts: the '268 dispute remains focused on Dolby Vision, and InterDigital has not even charted HDR10 or HDR10+ against key claim limitations.  The Dolby Action will decide the Dolby Vision dispute implicating the '268 patent, and the PTO is already reexamining every remaining asserted claim of the '301 and '818 patents.  There is simply no reason to proceed on three parallel tracks—this case, the Dolby Action, and the PTO proceedings—at the same time.  Doing so would waste judicial and party resources litigating issues that related proceedings are better positioned to resolve.  That is precisely the inefficiency the stay doctrines are designed to prevent.  The Court should grant Defendants' Motion and stay this case.

## II.    **ARGUMENT**

### A.    **The Customer-Suit Exception Applies to the '268 Patent**

InterDigital does not dispute that Dolby "develops and owns the Dolby Vision technology."  Dkt. 178-6 ¶¶ 12-13.  Nor does it dispute that Dolby possesses Dolby Vision source code and related technical documents.  Dkt. 178-9 at 4.  And InterDigital's own Final Infringement Contentions demonstrate Dolby's central role: they mention "Dolby" 231 times and cite dozens of source-code excerpts from files

produced by Dolby.  *See* Decl. ¶ 7; Ex. K (Final '268 Contentions) at 102-106.  In denying InterDigital's motion to dismiss the Dolby Action, the Court found that InterDigital cited Dolby Vision for every claim element of the asserted claims.  Ex. L (Dolby Action, Dkt. 44) at 9.  These facts, combined with Dolby's commitment to indemnify Defendants and Defendants' agreement to be bound by the outcome of the Dolby Action, confirm that Dolby is the "true defendant." *See* Dkt. 177-1 at 9.

InterDigital's arguments to the contrary rest on the wrong legal standard and a distorted factual record.  InterDigital demands complete overlap and identical infringement theories between this case and the Dolby Action.  *See* Dkt. 186 at 9-12.  But that is not the law.  "To justify a stay under the customer-suit exception, the manufacturer suit need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Upaid Sys., Ltd. v. CleanDan*, No. SACV1800619ABSSX, 2018 WL 5279567, at *3 (C.D. Cal. July 25, 2018) (internal citations omitted); *see also Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011).  That standard is easily satisfied.  The Dolby Action will resolve the major issues underlying InterDigital's assertion of the '268 patent, including whether use of Dolby Vision infringes its claims and whether those claims are valid.  InterDigital's attempt to inject non-Dolby allegations cannot defeat a stay of the Dolby Vision dispute.

### 1.    InterDigital's Belated Attempt to Add HDR10/HDR10+ Cannot Defeat a Customer-Suit Stay.

Days before InterDigital filed its Opposition—after Dolby filed the Dolby Action and after Defendants moved for a customer-suit stay—InterDigital served its Final Infringement Contentions for the '268 patent, adding new references to HDR10 and HDR10+.  *See* Decl. ¶ 7; *see generally* Ex. K.  This is a transparent attempt to manufacture a basis to oppose Defendants' stay motion.  But a closer look at these contentions confirms that the operative infringement theory still centers on Dolby Vision.  Indeed, key claim elements are charted against ***only*** Dolby Vision, not at all

to HDR10/HDR10+. Because InterDigital does not map those key elements to HDR10/HDR10+, it has not disclosed an infringement theory for those technologies and its infringement allegations remain focused on Dolby Vision.

First, InterDigital's original infringement allegations focused exclusively on Dolby Vision. InterDigital does not dispute that Dolby Vision was the sole technology accused in its complaint. *See* Dkt. 1-8 (Complaint, Ex. D-2). And InterDigital points only to a single footnote in its Preliminary Infringement Contentions that mentioned HDR10 and HDR10+. *See* Dkt. 186 at 4, 9 (both citing Dkt. 178-5 at 2 n.1). Beyond this footnote, InterDigital cannot identify any element-by-element claim chart accusing HDR10 or HDR10+ of infringement, nor can it cite any other document disclosing an infringement theory against those technologies.[1]

Second, InterDigital's Final Infringement Contentions still do not properly chart HDR10 or HDR10+ against the asserted claims. InterDigital's Opposition relies on a cherry-picked excerpt of its '268 claim chart that includes only the preamble and part of element 1[a], while omitting the remaining substantive claim elements. Dkt. 186-2 at 3-14. In that cited excerpt, InterDigital inserted references to HDR10/HDR10+ that have nothing to do with the claimed invention. But the rest of the chart tells a different story. For example, claim element 1[c]—which recites the color "mastering" step—focuses ***only*** on Dolby Vision. *See* Ex. K (Final '268 Contentions) at 73-106. For that element, InterDigital first cites documents relating to the Dolby Vision metadata or Defendants' use of Dolby Vision. *Id.* at 73-95. It then cites several excerpts of XML files containing Dolby Vision metadata generated for content mastered for Dolby Vision. *Id.* at 95-102. Finally, InterDigital cites 67 software functions, classes, methods, and data structures—all from source code files produced by Dolby—to "show[] that Disney's colorists generate [the accused]

---

[1] InterDigital contends that HDR10+ was "developed by Samsung." Dkt. 186 at 3. Yet InterDigital has not sought any discovery from Samsung, and its Final Infringement Contentions cite no Samsung evidence for HDR10+. That omission further confirms that InterDigital's HDR10+ references were added as a distraction.

metadata" and that the Dolby-produced "source code is used to process the metadata for display on reference type displays." *Id.* at 102-106.

The claim chart discloses no infringement theory against HDR10 or HDR10+ for claim element 1[c]. None of the citations in this section mentions HDR10+, and the only reference to HDR10 appears in a Dolby Vision document published by Dolby. *See id.* at 81 (citing INTERDIGITAL-00006572). *Id.* That is not enough. InterDigital's Final Infringement Contentions fail to identify "specifically where each limitation of each asserted claim is found within each Accused Instrumentality" for HDR10 or HDR10+, as the Court's Standing Order requires. *See* Patent Standing Order for Patent Matters § B.1.(c).

HDR10 and HDR10+ were not—and still are not—properly charted as "Accused Instrumentalities" in this case. *See id.* InterDigital's Final Infringement Contentions do not disclose an element-by-element infringement theory for either technology, and the only source code cited relates to Dolby Vision. Thus, InterDigital's infringement claims remain centered on Defendants' use of Dolby Vision. That "major issue" is already before the Court in the Dolby Action. *See Upaid Sys.*, 2018 WL 5279567, at *3. InterDigital's last-minute attempt to inject HDR10/HDR10+ is merely a distraction from the real focus of the infringement dispute; it provides no basis to force Defendants to litigate Dolby Vision issues in parallel while Dolby litigates those same issues before this Court.

At minimum, even if InterDigital had properly asserted some non-Dolby theory (which it has not), the Court should stay the Dolby Vision-based allegations pending the Dolby Action, because any ruling in the Dolby Action on invalidity or non-infringement will materially narrow any remaining '268 issues.

### 2. InterDigital's Direct/Indirect Infringement Distinction Does Not Defeat the Customer-Suit Exception.

InterDigital's arguments relating to indirect infringement elevate form over substance. *See* Dkt. 186 at 10-12. The customer-suit exception routinely applies

where the customer is accused of using the supplier's technology, including in method-claim cases. *See Upaid Sys.*, 2018 WL 5279567, at *3 (applying customer-suit exception where plaintiff accused customers of infringing method claims through its "use of the allegedly infringing technology"); *Select Retrieval, LLC v. L.L. Bean, Inc.*, No. 2:12-CV-00003-NT, 2013 WL 1099754, at *5 (D. Me. Mar. 15, 2013) (staying a customer suit alleging direct infringement of a method claim as a result of using software developed by another company). In such method-claim cases, the customer—not the supplier—is necessarily alleged to be the direct infringer. That does not bar application of the customer-suit exception.

InterDigital's reliance on the distinction between direct and indirect infringement misapplies the law. The relevant inquiry is not whether the customer and supplier are accused under the same theory of liability; it is whether the supplier action will resolve or materially narrow the major issues. For example, in *Ultra Prods., Inc. v. Best Buy Co.*, the court stayed the customer suits asserting method claims in favor of a suit filed by the manufacturer because, even though the manufacturer's suit would not resolve "every conceivable issue," it would likely "resolve the 'major issues' concerning the claims against the customer." No. CIV.A.09-1095MLC, 2009 WL 2843888, at *5 (D.N.J. Sep. 1, 2009).

*Mantissa Corp. v. Old Second Bancorp, Inc.*, No. 17C9175, 2018 WL 3059604 (N.D. Ill. June 20, 2018), is particularly instructive. There, as here, the customer was accused of directly infringing a method claim by using software from a third-party developer, while the developer "would only be liable for induced or contributory infringement." *Id.* at *8. The court nevertheless applied the customer-suit exception. *Id.* at *8-9. In doing so, the court distinguished *Uropep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 WL 1659924, at *3-4 (E.D. Tex. Apr. 26, 2016), and its cited cases—the same authority InterDigital invokes. *See* Dkt. 186 at 11. The *Mantissa* court explained that those distinguished cases turned on the "peculiarities of how" the defendants "implemented the software." *Mantissa Corp.*, 2018 WL

3059604, at *8. By contrast, where the customer uses the supplier's software "out of the box" without modification, the customer-suit exception applies. *Id.*

That is the case here. Defendants do not modify the Dolby Vision software developed and supplied by Dolby. *See* Dkt. 178-6 ¶¶ 12-13. And InterDigital's infringement claims turn on the operation and use of Dolby's proprietary technology, as demonstrated by InterDigital's reliance on Dolby Vision documentation and Dolby-produced source code in its Final Infringement Contentions. Ex. K (Final Contentions) at 75-77, 79-82, 85-95, 102-106; *see also* Ex. L at 7. That is precisely the supplier-focused dispute the customer-suit exception is designed to address.

InterDigital's emphasis that Defendants select the specific monitors does not change the analysis. Dolby prescribes the display specifications for the Dolby Vision mastering process. *See* Ex. O (Dolby Vision HDR Display Evaluation Guideline).[2] Moreover, the infringement dispute does not turn on the specific monitor model because the claims only require generic classes of displays. *See, e.g.,* Dkt. 1-7 ('268 patent) at Claim 1 (reciting "non-reference type display" and "reference type display"). Thus, the monitor-selection point does not transform this case into a Disney-specific technology dispute. Defendants have already agreed to be bound by the outcome of the Dolby Action with respect to infringement and validity of the '268 patent if this case is stayed pursuant to the customer-suit exception. *See* Dkt. 177-1 at 9. Because the Dolby Action will resolve the major issues concerning Dolby Vision, the distinction InterDigital draws between direct and indirect infringement does not preclude application of the customer-suit exception.

### 3. Efficiency, Judicial Economy, and the Remaining *Lockyer* Factors All Strongly Favor a Stay

The *Lockyer* factors all favor a stay. InterDigital's efficiency arguments get it

---

[2] In addition, InterDigital cites the source code produced by Dolby as the "source code [that] is used to process the metadata for display on reference type displays." Ex. K (Final Contentions) at 104-106.

backwards: they confuse the consequences of denying a stay with those of granting one. *See* Dkt. 186 at 12-15.

First, while InterDigital argues that a stay would create "duplicative and wasteful effort" (*id.* at 13), that is precisely what will happen if the stay is denied. Denying a stay creates two parallel cases before the same Court involving the same '268 patent, the same Dolby Vision technology, and the same Dolby technical documents. Every example of "duplicative waste" InterDigital identifies will occur if a stay is ***denied***—not granted. For example, InterDigital contends that granting a stay will "require two separate trials." *Id.* at 2. But the opposite is true: denying a stay risks two trials, while granting a stay creates a meaningful possibility that trial in this case will be avoided, especially since the Court has already denied InterDigital's motion to dismiss the Dolby Action, and Defendants have already agreed to be bound by the outcome of that case. *See* Ex. L; *DS Advanced Enters., Ltd. v. Cooper Lighting, LLC*, No. 5:23-CV-02603, 2024 WL 5260939, at *9 (C.D. Cal. Nov. 20, 2024) (granting stay where "Retailer Defendants expressly state[d] an agreement to be bound" by manufacturer litigation outcome). Similarly, InterDigital warns that a stay would "require third-party discovery from [Defendants] and others in the Dolby action." Dkt. 186 at 13. But the Dolby Action will require that discovery regardless of whether this case is stayed. A stay would instead avoid duplicative discovery in this case concerning Dolby's proprietary technology while that same discovery proceeds in the Dolby Action.

Second, this Court has already found that any harm InterDigital suffers from delay can be remedied through monetary damages because InterDigital is a non-practicing entity. *See* Dkt. 166 at 2. InterDigital attempts to escape that finding by invoking Eastern District of Texas precedent relating to research and development entities. Dkt. 186 at 13-14. Those out-of-district cases do not control here. Courts in this District "have consistently found" that "a patent licensor cannot be prejudiced by a stay because monetary damages provide adequate redress for infringement."

- 7 -

*Nike, Inc. v. Skechers U.S.A., Inc.*, No. 219CV09230FLAJDEX, 2021 WL 4925447, at *9 (C.D. Cal. June 30, 2021).

Moreover, those Texas cases are factually distinguishable because InterDigital provides no evidence to substantiate its alleged "research and development" efforts. The patents asserted in this case did not result from InterDigital's research and development; InterDigital purchased them from other companies. Indeed, there is no indication that InterDigital has ever conducted any research relating to the subject matter of the '268 patent. Rather, the '268 patent issued in 2015 to Thomson, years before InterDigital acquired it. *See* Dkt. 1-7. InterDigital bought the '268 patent and now seeks to monetize it through litigation more than ten years after the patent's issuance. That is not research and development, and it cannot create cognizable prejudice from a stay.

Ultimately, InterDigital argues that a stay would delay its "ability to enforce its patent rights." Dkt. 186 at 13. But delay in enforcement, standing alone, is not undue prejudice—particularly where InterDigital can continue litigating the '268 patent against Dolby in the same Court. *See DS Advanced Enters.*, 2024 WL 5260939, at *9 (holding that *Lockyer* factors warranted a stay, in addition to the customer-suit exception, because "[d]elay alone does not constitute harm to the non-moving party" ). And InterDigital's own delay in bringing this case undermines any claim of urgency or tactical disadvantage. *See* Dkt. 177-1 at 18.

Third, denying a stay would create inefficiency and impose hardship on Defendants. InterDigital does not deny that Dolby has the source code and technical information for Dolby Vision, nor does it deny that it subpoenaed Dolby and inspected Dolby's source code. Requiring Defendants to litigate the operation of Dolby's proprietary technology—including dozens of Dolby's source code functions InterDigital has identified in its Final Infringement Contentions (Ex. K at 102-106)—while Dolby litigates the same issues in a parallel case is exactly what the customer-suit exception is designed to avoid. *See Linksmart Wireless Tech. LLC v. Gogo Inc.*,

- 8 -

No. SACV 18-00654 AG, 2018 WL 8367609, at *1 (C.D. Cal. Sept. 18, 2018) ("The goal of the customer-suit exception is to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the true defendant in the dispute." ) (internal quotations omitted).[3]

The Court's denial of InterDigital's motion to dismiss the Dolby Action eliminates any doubt that the parallel proceeding will go forward. Ex. L at 10. Thus, staying this case and allowing the Dolby Action to proceed before the same Court would promote efficiency and judicial economy, while denying Defendants' motion would require the Court to adjudicate the same patent against the same technology in two parallel cases. Accordingly, the *Lockyer* factors favor a stay because a stay will simplify the issues, minimize duplication, conserve judicial and party resources, and avoid wasted effort—all without causing InterDigital any cognizable prejudice.

**B. The EPR Proceedings Warrant a Stay of the '301 and '818 Patents**

**1. The Stage of Litigation Favors a Stay**

InterDigital's stage-of-litigation arguments miss the point by focusing only on work already done. *See* Dkt. 186 at 15-17. Courts in this District ask "whether there is more work ahead of the parties and the Court than behind." *Nike, Inc. v. Skechers U.S.A., Inc.*, No. CV23-09346-AB (PVCX), 2025 WL 439935, at *2 (C.D. Cal. Feb. 4, 2025). The answer is clear: the most burdensome work remains ahead.

InterDigital does not dispute that expert discovery, dispositive motions, Daubert motions, pretrial filings, and trial all remain ahead. These tasks constitute the most burdensome phases of litigation and strongly favor a stay.

The Court's issuance of a claim construction order does not weigh against a stay. Courts routinely grant stays after claim construction where expert discovery, dispositive motions, and trial remain. *See, e.g., RJ Tech. LLC v. Apple Inc.*, No. 8:22-

---

[3] InterDigital's argument that Defendants have not subpoenaed Dolby is a red herring. InterDigital bears the burden to prove infringement and obtain evidence supporting its theories. Its own discovery efforts and Final Infringement Contentions confirm that Dolby is the relevant source of the technical evidence.

CV-01874, 2023 WL 8188475, at *2 (C.D. Cal. Oct. 4, 2023) ("Even though a trial date has been set and this Court issued its Claim Construction Order, the Court finds that this factor weighs in favor of a stay" because "fact discovery is not yet complete and expert discovery has not yet begun."). Nor is the Court's claim construction work wasted; it will provide useful guidance for the PTO's review of the patents.

Defendants' timing was reasonable. Before claim construction, multiple asserted claims implicated indefiniteness issues that could not be resolved through PTO reexamination. *See* 37 C.F.R. § 1.552 (limiting the scope of reexamination to prior-art-based patentability issues). Defendants waited for the Court's claim construction ruling before seeking PTO review because several asserted claims recited inconsistent or self-contradictory terms that could not be challenged through prior-art reexamination. *See* Dkt. 170 at 12-14, 15-16, 19-21. The Court's claim construction order resolved those issues and narrowed the case by holding the asserted claims of the '610 and '297 patents and certain dependent claims of the '301 patent indefinite. *Id*. The order also clarified the scope of the remaining claims for prior-art challenges. *Id*. After the PTO instituted reexamination of the remaining '301 and '818 patent claims, Defendants then moved promptly—within days—for a stay. Dkt. 178-3; Dkt. 178-4; Dkt. 177. Courts have granted stays under similar timelines. *See, e.g., Evolutionary Intel., LLC v. Millenial Media, Inc.*, No. 5:13-CV-04206-EJD, 2014 WL 2738501, at *5 (N.D. Cal. June 11, 2014) (finding no prejudice where party filed IPR petition a year after the complaint was filed).

### 2.     The EPRs Are Highly Likely to Simplify the Case

InterDigital again misapplies the legal standard by arguing that Disney must prove that every asserted claim will be cancelled. *See* Dkt. 186 at 17-19. The relevant question is whether the EPRs are likely to simplify the case. *Relink US LLC v. Tesla Inc.*, No. 25-CV-03365-RFL, 2025 WL 2909964, at *1 (N.D. Cal. Oct. 14, 2025). They are.

PTO statistics show a 77% likelihood that at least some of the claims will be

amended or cancelled during a third-party requested reexamination.  *See* Dkt. 178-8 at 2.  That fact weighs in favor of a stay—not against.  *See Relink US*, 2025 WL 2909964, at *1 (finding that the case simplification factor weighed in favor of a stay because the defendant presented statistics showing that "78.1% of EPR proceedings result in canceled or changed claims").

Further, this case presents more than generic statistics because the PTO identified specific examiner errors in both EPRs.  InterDigital accuses Disney of misstating the EPR institution decisions, but the PTO's words speak for themselves.  For the '818 Patent, the PTO expressly found that "the examiner appears to have ***misunderstood***" a relevant prior art reference, that "[t]his ***misunderstanding*** is shown in the reasons for allowance in the application and in each application in this family," and that the examiner's description of the prior art "appears to be ***inaccurate***." Dkt. 178-3 at 11 (emphasis added).  These are patent-specific findings that the original allowance rested on an inaccurate misunderstanding of the prior art.  Similarly, for the '301 patent, the PTO found that the examiner overlooked a prior art reference that "appears to disclose the feature found important to the patentability of the claims." Dkt. 178-4 at 4, 9.  InterDigital does not—and cannot—identify any inaccuracy in Defendants' direct quotations of the PTO's findings.

InterDigital ignores the substance of the PTO's decisions and instead distorts PTO statistics.[4]  But these statistics do not address a situation in which the PTO has already identified apparent examiner error in allowing the asserted claims.  Here, the PTO's own words demonstrate that the likelihood of case simplification is higher than in the typical case.  Thus, the simplification factor strongly favors a stay.

---

[4] InterDigital argues that it is unlikely for all challenged claims to be invalidated.  *See* Dkt. 186 at 18 n. 6.  But the stay factors do not require complete elimination of all issues, only case simplification.  Applying InterDigital's own logic and statistics, there is a 97.5% chance that the case would be meaningfully simplified (16% x 16% = 2.5% chance that all claims from both patents would survive intact, leaving 97.5% chance of at least some claim invalidation or amendment).

### 3.    As a Non-Practicing Entity, InterDigital Will Suffer No Undue Prejudice or Tactical Disadvantage

As explained in Section  II.A.3, InterDigital's "innovation pipeline" argument relies on irrelevant authority and is unsupported by any evidence connecting the asserted patents to InterDigital's alleged research-and-development efforts.  As a non-practicing entity seeking to monetize patents purchased from others, InterDigital will suffer no cognizable harm from delay because it can be compensated monetarily. *See* Dkt. 166 at 2; Dkt. 177-1 at 17-18.

InterDigital's tactical-delay argument fares no better.  Defendants filed their EPR requests approximately one year after the complaint and moved promptly after reexamination institution, when the stay request became ripe and strongest.  Courts routinely grant stays on similar timelines. *See* Dkt. 177-1 at 17 (citing cases with similar timelines).

InterDigital's references to the '610 and '024 reexaminations are irrelevant. Disney did not file those EPRs.  *See* Ex. M ('610 EPR filed by Unified Patents); Ex. N ('024 EPR filed by Unified Patents).  Moreover, the asserted claims of the '610 Patent have been held indefinite, and the '024 Patent is not even asserted in this case. *See* Dkt. 170 at 15-16; Dkt. 1 at 1.  Thus, the '610 and '024 reexaminations have no bearing on whether the instituted EPRs for the '301 and '818 patents warrant a stay.

All stay factors favor a stay.  The case remains far from trial, the PTO proceedings are likely to narrow or resolve the issues, and InterDigital identifies only delay, not undue prejudice.  The Court should therefore stay litigation of the '301 and '818 patents pending completion of the EPRs.

### III.    CONCLUSION

For the reasons stated above and in Defendants' opening brief, the Court should grant Defendants' motion and stay this case pending completion of the Dolby Action and PTO reexaminations.

DATED: May 22, 2026

Respectfully submitted,

By:     */s/ Ryan K. Yagura*
        Ryan K. Yagura

RYAN K. YAGURA
NICHOLAS J. WHILT
XIN-YI ZHOU
O'MELVENY & MYERS LLP

*Attorneys for Defendants The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., BAMTech LLC, Hulu, LLC, and ESPN, Inc.*

- 13 -

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 3,979 words, which complies with the word limit of the Standing Order for Newly Assigned Civil Cases (Dkt. 19), § 4.  Counsel relies on the word count word-processing application used to prepare the brief.

DATED: May 22, 2026                    Respectfully submitted,

By:    /s/ Ryan K. Yagura
       Ryan K. Yagura

RYAN K. YAGURA
NICHOLAS J. WHILT
XIN-YI ZHOU
O'MELVENY & MYERS LLP

*Attorneys for Defendants The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., BAMTech LLC, Hulu, LLC, and ESPN, Inc.*