UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-00895-WLH-BFM | Date | June 10, 2026 |
|---|---|---|---|
| Title | *InterDigital Inc., et al v. The Walt Disney Company et al* | | |

| Present: The Honorable | WESLEY L. HSU, United States District Judge |
|---|---|

| Claudia Garcia-Marquez | None |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

Proceedings:   **(IN CHAMBERS) ORDER RE DEFENDANTS' MOTION TO STAY PENDING RESOLUTION OF RELATED PROCEEDINGS [177]**

The Court is in receipt of Defendants' Motion to Stay Pending Resolution of Related Proceedings (the "Motion").  (Mot., Dkt. No. 177).  The Court heard oral argument from the parties on June 5, 2026.  For the reasons explained herein, the Court **GRANTS** Defendants' Motion and **STAYS** the proceedings in this action.

## I.    BACKGROUND

Plaintiff InterDigital, Inc. ("InterDigital") initiated this action in this Court on February 2, 2025, against Defendants The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., Bamtech, LLC, Hulu, LLC, and ESPN, Inc. (collectively, the "Defendants" or "Disney").  (*See generally* Complaint, Dkt. No. 1).  Plaintiff asserted five claims of patent infringement related to the following United States Patents:  U.S. Patent No. 8,406,301 (the "'301 Patent"); U.S. Patent No. 10,805,610 (the "'610 Patent"); U.S. Patent No. 11,381,818 (the "'818

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Patent"); U.S. Patent No. 9,185,268 (the "'268 Patent"); and U.S. Patent No. 8,085,297 (the "'297 Patent").  (*Id*. ¶ 1).  On April 7, 2026, this Court issued its claim construction order, holding that the disputed claim terms of the '610 Patent, '297 Patent and a subset of the claims in the '301 Patent are indefinite, and thus no longer at issue.  (*See* Claim Construction Order, Dkt. No. 170 at 14, 19).

On February 17, 2026, Defendants filed an *ex parte* reexamination ("EPR") request with the PTO challenging all asserted claims of the '818 patent.  (Mot., Ex. A ("'818 EPR Petition").  In granting the EPR request for the '818 Patent, the PTO "found that Defendants' request raises a 'substantial new question of patentability affecting the claims of the '818 patent.'"  (Mot., Ex. C ("'818 EPR Decision") at 14).  In particular, the PTO found that the Ye prior art reference "is especially relevant to the features of [the '818 patent's] claims that were central to their allowance."  (*Id*. at 11).  Moreover, the PTO found that "the examiner appears to have misunderstood" a related prior art reference containing the same disclosure as Ye during the original prosecution of the patent, and that "[t]his misunderstanding is shown in the reasons for allowance in the ['818 patent's] application and in each application in this family."  (*Id*.).

On February 27, 2026, Defendants filed a second EPR request challenging the sole remaining asserted claim of the '301 Patent.  (Mot., Ex. D ("'301 EPR Decision")).  In granting the EPR request for the '301 Patent, the PTO found that the "JVT-B075 prior art reference 'appears to disclose the feature found important to the patentability of the claims in the '301 Patent.'"  (*Id*. at 9).  The PTO likewise recognized a potential examiner error during the original prosecution.  (*Id*. at 4) ("Although JVT-B075 was considered by the Examiner in the original prosecution, JVT-B075 was not applied in the original prosecution . . . .").  In view of JVT-B075 and other prior art, the PTO concluded

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

that the EPR request "raises a substantial new question of patentability" with respect to the claims of the '301 patent.  (*Id.* at 6).

On March 3, 2026, Dolby Laboratories, Inc., Dolby Laboratories Licensing Corporation, and Dolby International AB (collectively, "Dolby") filed a declaratory judgment action seeking noninfringement and invalidity of the '268 Patent (the "*Dolby* Action").  *Dolby Laboratories, Inc. et al v. Interdigital, Inc.*, No. 2:26-cv-02269-WLH-BFM (C.D. Cal. Mar. 3, 2026), Dkt. No. 1.  In the complaint, Dolby states that it seeks "relief because InterDigital has targeted Dolby by suing Dolby's downstream customer The Walt Disney Company ('Disney') and related Disney entities in this District and accuses them of infringing the '268 Patent by virtue of their alleged use of Dolby's product, Dolby Vision, in creating content for various Disney video streaming products such as Disney+ and Hulu."  (*Id.* ¶ 3).

Disney now asks this Court to stay further proceedings in the action as the parties await the adjudication of the Dolby Action, and the result of the two EPRs.  (*See* Mot. at 18-19).  Since the two EPRs involve determining whether the '268 Patent is valid or needs to be amended, Disney believes a limited stay is necessary to await further clarity on the issue and "guard against duplicative and inefficient litigation."  (*Id.* at 6).  InterDigital filed a timely Opposition to the Motion on May 15, 2026.  (Opp'n, Dkt. No. 186).  Disney timely replied.  (Reply, Dkt. No. 195).  Dolby further identified "seven separate actions in multiple jurisdictions across the country" filed by InterDigital against various Dolby customers (*id.* ¶¶ 4-5), as well as foreign cases filed in Germany (*id.* ¶ 7).

## II.    DISCUSSION

### A.    Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). A separate proceeding is related to the federal action if its resolution may settle or simplify common questions of fact or law. *Landis*, 299 U.S. at 256. "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva*, 593 F.2d at 863-64.

In determining whether to grant a discretionary stay in this context, courts consider the three *Landis* factors, including the harm suffered as a result of granting the stay, the hardship or inequity if the stay is denied, and the "orderly course of justice[,] measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *Landis*, 299 U.S. at 256). The burden is on the party requesting a stay to establish that a stay is warranted. *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

In determining whether to apply the customer-suit exception which Defendants assert here as to the '268 Patent, courts consider three factors: (1) whether the customer-defendant in the earlier-filed case is merely a reseller or end-user of the manufacturer's product; (2) whether the defendant agrees to be bound by the outcome of the manufacturer suit; and (3) whether the manufacturer is the sole source of the accused product. *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006). The guiding principles in the customer-suit exception precedent are efficiency and judicial economy. *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

In determining whether to stay a case pending re-examination, the Court must consider the following factors: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *Fleet Connect Sols. LLC v. Belkin Int'l Inc.*, No. 2:24-CV-07486-AH-(SKX), 2025 WL 1090940, at *1 (C.D. Cal. Mar. 13, 2025).

### B.   Analysis

### 1.   *A Stay of Proceedings Related to the '268 Patent Is Appropriate Pursuant to the Customer-Suit Exception*

Disney contends that a stay should be granted pursuant to the customer-suit exception in patent litigation with respect to the '268 patent.  (Mot. at 7).  This is an exception to the first-to-file rule that maintains that "[w]hen a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take[s] precedence." *In re Nintendo of Am., Inc.*, 756 F.3d 1363 (Fed. Cir. 2014). Generally speaking, courts apply the customer-suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum. *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011); *see also Upaid Sys., Ltd. v. CleanDan*, No. SACV1800619ABSSX, 2018 WL 5279567, at *3 (C.D. Cal. July 25, 2018) ("To justify a stay under the customer-suit exception, the manufacturer suit need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue.").

One justification for the exception is that the manufacturer, not the customer, is the "true" defendant. *See Katz v. Lear Siegler, Inc., 909 F.2d 1459* (Fed. Cir. 1990) ("At the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit."). This exception applies in cases where the original defendant is a retailer, and an entity other than the retailer makes and designs the product at issue, and thus a determination as to whether the retailer infringes on the patent requires an underlying finding that the other entity infringed the patent. *DS Advanced Enters., Ltd. v. Cooper Lighting, LLC*, No. CV 5:23-02603-JAK (SHKX), 2024 WL 5260939 (C.D. Cal. Nov. 20, 2024). Here, Disney asserts that it "merely uses Dolby Vision; they are not developers or suppliers of the accused technology." (Mot. at 13). Disney is not privy to the inner workings of Dolby's proprietary software. (*Id*. at 9). Thus, Disney is a mere reseller, and not a "true" defendant—leading the first factor to weigh in favor of granting a stay.

The second factor also weighs in favor of a stay, considering that Disney agrees to be bound to the outcome of the Dolby Action. (*See* Mot. at 9 ("Defendants agree to be bound by the outcome of the Dolby Action with respect to infringement and validity of the '268 patent if this case is stayed pursuant to the customer-suit exception.").[1] The third factor also favors applying the exception because Dolby is the sole source of the technology at issue. Notably, InterDigital does not dispute this fact. Disney does not possess Dolby Vision source code, nor do they have access to technical documents concerning the inner workings of Dolby's proprietary software. (*Id*.).

Interdigital contends that the customer suit exception should not apply in this case due to the disparate legal theories of direct infringement and indirect infringement across both actions. Although it is true that courts have declined to apply the customer suit exception to cases in which the manufacturer is sued under a theory of indirect infringement and the customer is sued under a theory of direct infringement, *see*

---

[1] Disney also confirmed its intent to be bound by the *Dolby* Action at oral argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 194-197 (E.D. Tex. 2016), this case is readily distinguishable. Dolby is not being sued directly for infringement; they are seeking a declaratory judgment regarding the validity of the patent. (*See generally Dolby* Action, Dkt. No. 1). InterDigital asserts that Dolby believes that Interdigital is targeting them for indirect infringement, quoting Disney that "[the complaint] establish[es] an implicit allegation of inducement or contributory infringement" by Dolby. (Opp'n at 10-12). That belief alone is not sufficient to trigger this rule when no action against Dolby exists. The customer suit exception applies where a plaintiff first files a suit against a customer who is simply a reseller of the accused goods, while the second suit is a declaratory judgment action brought by the manufacturer of the accused goods. *See Spread Spectrum Screening*, 657 F.3d at 1357 (holding the same in a declaratory judgment action related to invalidity and non-infringement). Therefore, the disparate legal theories of direct and indirect infringement are irrelevant[2] to the Court's adjudication of this Motion.[3]

---

[2] For avoidance of doubt, the use of the term "irrelevant" here does not mean that the theory of direct liability used against a defendant is irrelevant, but rather the theory of indirect liability against Dolby is irrelevant since it is purely hypothetical as no such action exists. InterDigital sought to inject the elements of specific infringement theories at oral argument into the Court's analysis of this factor. That argument presupposes that those claims already exist in an action against Dolby. They do not. (*See Dolby* Action (a declaratory judgment action seeking a finding of non-infringement and/or invalidity)).

[3] On June 8, 2026, Plaintiffs filed a Notice of Supplemental Authority (Dkt. No. 210), citing the Supreme Court's decision in *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, which held that the third element of an indirect infringement claim—the defendant's encouragement of direct infringement or "active steps"—must be pled with specificity in order to survive a 12(b)(6) motion. The Court views this opinion as neither bearing on the disposition of this Motion nor altering the applicability of the customer-suit exception. The Dolby Action does not primarily concern an indirect infringement claim, and even then, its issue of invalidity alone still weighs towards a stay. Such an attempt by InterDigital to inject the nuances of a nonexistent claim into the stay analysis is unavailing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Further, InterDigital relies earnestly on their Final Infringement Contentions (in their briefing and at oral argument) (*see* Opp'n, Ex. 1) to argue that Disney infringes the '268 Patent by its own actions rather than as a passive user of Dolby technology. Under this theory, Disney's infringing workflows, namely HDR10 and HDR10+—and their manipulation by Disney colorists—constitute infringing color correction and mastering methods. (*See* Opp'n at 9). Such adaptation by Disney engineers, in InterDigital's view, constitutes direct infringement independent of Dolby and their technology and thus obviates the need for a stay of proceedings.

Even assuming *arguendo* that some issues will remain surrounding the usage of this HDR10 and HDR10+ technology, there is no question that the *Dolby* Action will result in a significant narrowing of the issues in this action. Any argument otherwise strains credulity given InterDigital's own contention that Disney's infringing workflows include HDR10, HDR10+, *and Dolby Vision workflows*. (*See* Final Infringement Contentions at 3 n.2). Should the *Dolby* Action result in a declaratory judgment of non-infringement and/or invalidity of Patent '268 as it relates to Dolby Vision technology and related workflows, InterDigital would certainly need to reevaluate its claims, underlying infringement contentions, and strategy in this case to focus on Disney's allegedly infringing conduct *separate* from that of Dolby, its technology and supporting workflow documentation—a reframing that would certainly simplify the primary issues in dispute here. More concretely, InterDigital's Complaint would necessarily require amendments to remove any allegations suggesting that the technology that is Dolby Vision is an instrumental part of Disney's video streaming interface.

As Judge Birotte identified in *Upaid Systems*, the customer-suit exception's "underlying rationale applies in this case just as it [would] in a 'typical' manufacturer/reseller case." *Upaid Systems*, 2018 WL 5279567, at *3 (citing *Telebrands*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*Corp. v. Nat'l Exp., Inc.*, No. CIV.A. 12-6671 (FSH), 2014 WL 4930897, at \*4 (D.N.J. Oct. 2, 2014)).  In a suit involving patent infringement, customers like Disney "do not have substantive knowledge about the patent infringement, which would begin at the design and manufacture stages.  The upstream defendant represents 'the real party in interest,' and ultimately, an infringement claim against the upstream defendant 'is more likely to restore contested property rights nationwide than securing an injunction' against a downstream defendant." *Id.*  InterDigital attempts to understate these potential implications of the *Dolby* Action.  The Court declines to do the same and opts instead for the path of judicial economy and efficiency.

For the foregoing reasons, the Court finds that the application of the customer-suit exception applies, and a stay of proceedings related to the '268 Patent aligns with the principles of efficiency and judicial economy.

2.    *The Lockyer Factors Also Favor a Stay of the '268 Patent Proceedings*

Furthermore, a traditional analysis of the *Lockyer* factors also supports granting a stay.  The damage that could result from granting a stay is minimal, affecting only InterDigital.  The contention that InterDigital will suffer undue prejudice, moreover, is unconvincing.  As this Court has previously deemed InterDigital a non-practicing entity, the losses normally incurred do not contribute to prejudice, as any damages it may ultimately prove will likely be compensable upon disposition of the suit.  (Order Re: Defendants' Motion to Continue Case Schedule, Dkt. No. 166 at 2).  InterDigital suggests that they will face undue prejudice from the delay created by the defendants filing the relevant EPRs fifteen months into litigation.  Despite this, "[a] delay in litigation alone does not constitute undue prejudice." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1033 (C.D. Cal. 2013).  In fact, awaiting the result of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Dolby Action could spare InterDigital from expending the resources required to prepare for potentially duplicitous litigation against Disney that are not certain to occur. Thus, InterDigital does not face any undue prejudice from an extension of the litigation timeline as a result of the stay because "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'" *Lockyer*, 298 F.3d at 1112.

Moreover, resolving the Dolby Action prior to the instant lawsuit will also shield Disney from unnecessary costs and labor that may be duplicative should the Dolby Action resolve in Dolby's favor. Such a finding would affect the outcome of InterDigital's proceeding against Disney—a customer of Dolby's products—yet that implication is not adequately captured by the PTO statistics cited by InterDigital. Furthermore, Disney has already engaged in costly discovery that need not continue while the Dolby Action is pending. Therefore, the second *Lockyer* factor weighs in favor of granting a stay.

The final *Lockyer* factor weighs heavily in favor of a stay because if a stay is granted, the litigation will be simplified, and questions of law will be answered in the most efficient manner. "A stay is favored where the outcome of the [related action] would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue." *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022 (N.D. Cal. 2014). Here, both actions rely on the '268 patent, the Dolby Vision technology and the similar Dolby technical documents. Declining to issue a stay could create the possibility of incongruent holdings as to the use of the same technology.

3.    *A Stay of the '818 Patent and '301 Patent Proceedings Is Warranted Considering the Pending EPRs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

In determining whether to stay a case pending re-examination, the Court must consider the following factors: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *Fleet Connect*, 2025 WL 1090940, at *1.

Here, the first factor weighs in support of a stay since discovery is not complete and expert discovery has not yet begun. Disney highlights that more than a dozen key witnesses have yet to be deposed. (Mot. at 13). When fact discovery has been substantially completed, but expert discovery has not started, courts generally find this factor weighs in favor of a stay. *See Panavision Imaging, LLC v. OmniVision Techs., Inc.*, No. CV09-1577 DMG (CTX), 2010 WL 11507881 (C.D. Cal. Apr. 19, 2010) (holding that the first factor supported a stay when expert discovery had not yet begun). The Court recognizes that both parties have spent significant effort preparing for the claim construction hearing and fulfilling its discovery obligations. The critical inquiry, however, is whether there is "more work ahead of the parties and the Court than behind." *Realtime Data LLC v. Teradata Operations, Inc.*, No. 2:16-cv-02743 AG (FFMx), 2017 WL 3453295, at *2 (C.D. Cal. Feb. 27, 2017). Despite the Court issuing its claim construction order (*see* Claim Construction Order), this case remains months out from trial (*see* Scheduling Order, Dkt. No. 166) with significant discovery ahead. *See RJ Tech. LLC v. Apple Inc.*, No. 8:22-CV-01874, 2023 WL 8188475, at *2 (C.D. Cal. Oct. 4, 2023) ("Even though a trial date has been set and this Court issued its Claim Construction Order, the Court finds that this factor weighs in favor of a stay" because "fact discovery is not yet complete and expert discovery has not yet begun.")

Most importantly, the issues in dispute as part of this litigation will likely be simplified by the EPRs, as reexamination will either limit the scope of the litigation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

and/or provide this Court with expertise from the PTO on the scope of the relevant patents.  "The primary purpose of the reexamination procedure is to eliminate trial of that issue (when the [patent] is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the [USPTO] (when a claim survives the reexamination proceeding)."  *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D. Cal. 1994).  Although InterDigital is correct that predictions of the EPR results are speculative, this Court has a significant interest in the outcome even if the patents remain valid since, "[reexamination may still] facilitate trial by providing the court with expert opinion of the PTO and clarifying the scope of the claims."  *Target Therapeutics, Inc. v. SciMed Life Systems, Inc.*, 1995 WL 20470 (N.D.Cal. 1995).  Here, the PTO has already recognized that the '301 Patent EPR "raises a substantial new question of patentability" with respect to its claims.  ('301 EPR Decision at 6).  The PTO shares similar concerns about the misunderstandings by the examiner in the patenting process of the '818 Patent.  (*See generally* '818 EPR Decision).  These potential errors call into question these key patents' scope and validity—a reality the Court cannot ignore.  Accordingly, the second factor also weighs in favor of granting the stay.

Lastly, the grant of a stay pending the reexamination of Patent '818 and Patent '301 will not unduly prejudice InterDigital or pose a tactical disadvantage.  "Courts have repeatedly found no undue prejudice unless the patentee makes a specific showing of prejudice beyond the delay necessarily inherent in any stay."  *PersonalWeb Technologies, LLC v. Apple Inc.*, 69 F.Supp.3d 1022, 1029 (N.D.Cal. 2014).  InterDigital cites *Wilus Institute of Standards and Technology Inc. v. HP Inc.* in support of the argument that the delay will prejudice them, however that case is distinguishable.  In that case, prejudice is found in the delay of receiving money damages.  No. 2:24-CV-00746-JRG, 2026 WL 1104330 (E.D. Tex. Apr. 23, 2026).  As discussed in the Court's analysis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

of the *Lockyer* factors, this Court has previously designated InterDigital as a non-practicing entity, and found that any damages proven will likely be compensable. Further, no tactical disadvantage will be placed upon InterDigital as a result of the stay. If anything, the outcome of the EPRs will direct both parties' strategies regarding expert discovery and prevent duplicative or potentially unnecessary discovery efforts. *See Target Therapeutics, Inc.*, 1995 WL 20470, at *2. In this regard, Disney is not gaining a tactical advantage, since both parties stand to waste valuable resources on prosecuting and defending this action should the Court not grant a stay.

As such, the Court finds the *Fleet Connect* factors heavily favor a stay in light of the pending EPRs, as their outcomes will likely simplify the issues in dispute in this action and provide valuable expertise to the Court on the scope of the patents at issue.[4] The Court does not find InterDigital has demonstrated a showing of undue prejudice to counterbalance these findings.

## III.    CONCLUSION

For these reasons, the Court concludes that a stay of the proceedings related to the '268 Patent is warranted pursuant to the customer-suit exception and the *Lockyer* factors. A stay of the proceedings related to the '818 Patent and '301 Patent is also appropriate, having weighed the *Fleet Connect* factors in light of the pending reexaminations of these patents by the PTO. The Court **GRANTS** Defendants' Motion accordingly and **STAYS** proceedings in this case pending the resolution of the *Dolby* action, except for InterDigital's Motion for Reconsideration (Dkt. No. 174). Because the Court ruled the asserted claims of the '610 and '297 patents are indefinite (*see* Claim Construction Order at 15-16, 19-21), this Order effectively stays the entire case. All other pending hearings,

---

[4] The Court understands one or more of the EPRs may be resolved in short order and is willing to reevaluate the necessity of this stay as necessary.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

deadlines, and dates are **VACATED** pending further order of the Court. The parties are further **ORDERED** to file a Joint Status Report within 60 days of this Order with status updates on the EPRs and other information relevant to the continued need for a stay.

**IT IS SO ORDERED.**