RYAN K. YAGURA (S.B. #197619)
ryagura@omm.com
NICHOLAS J. WHILT (S.B. #247738)
nwhilt@omm.com
XIN-YI ZHOU (S.B. #251969)
vzhou@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION AT LOS ANGELES**

INTERDIGITAL, INC. AND INTERDIGITAL MADISON PATENT HOLDINGS, SAS,

Plaintiffs,

v.

THE WALT DISNEY COMPANY, et al.,

Defendants.

Case No. 2:25-cv-00895-WLH-BFM

Related Case 2:26-cv-02269-WLH-BFM

**DEFENDANTS' OPPOSITION TO INTERDIGITAL'S MOTION TO SEVER AND CONSOLIDATE [DKT. 242]**

Judge: Hon. Wesley L. Hsu
Magistrate: Hon. Brianna F. Mircheff

Date: December 11, 2026
Time: 1:30 p.m.
Crtrm.: 9B

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
III. LEGAL STANDARD ..... 4
- A. Courts Look to the Substance of a Motion, Not Its Label ..... 4
- B. Reconsideration Requires a Material Change and Prohibits Reargument ..... 4
- C. Courts May Stay Proceedings to Promote Judicial Economy ..... 4
- D. The Customer-Suit Exception Requires Resolution of Major Issues, Not All Issues ..... 5

IV. ARGUMENT ..... 6
- A. InterDigital Seeks Reconsideration of the Stay but Fails to Satisfy Local Rule 7-18 ..... 6
  - 1. The Motion Repeats Arguments the Court Already Considered and Rejected ..... 6
  - 2. Dolby's Discovery Responses Are Not a Material Change Warranting Relief from the Stay ..... 9
    - a. The Dolby Action Will Resolve or Narrow the Major Issues ..... 10
    - b. Dolby's Discovery Responses Challenge InterDigital's Burden and Contest Disney's Alleged Infringement ..... 11
    - c. Disney's Display Selection Does Not Take Its Accused Conduct Outside the Dolby Action ..... 13
    - d. InterDigital's Remaining Arguments Identify No Material Change ..... 14
- B. The Stay Remains Warranted Under the Governing Standard ..... 16
  - 1. Invalidity Alone Supports Maintaining the Stay ..... 16
  - 2. The *Lockyer* Factors Continue to Favor a Stay ..... 16
- C. Severance and Consolidation Would Not Promote Efficiency ..... 17

V. CONCLUSION ..... 19

# TABLE OF AUTHORITIES

Page

**CASES**

*Bordallo v. Reyes*,
763 F.2d 1098 (9th Cir. 1985) .......... 4, 18

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*,
2016 WL 1659924 (E.D. Tex. Apr. 26, 2016) .......... 7

*Flated LLC v. I3 Enters., Inc.*,
2026 WL 220905 (C.D. Cal. Jan. 20, 2026) .......... 19

*In re Nintendo of Am., Inc.*,
756 F.3d 1363 (Fed. Cir. 2014) .......... 5, 7

*Kahn v. Gen. Motors Corp.*,
889 F.2d 1078 (Fed. Cir. 1989) .......... 9

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed. Cir. 1990) .......... 5, 9, 11, 16

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .......... 4, 5

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979) .......... 5

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) .......... 5

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*,
571 U.S. 191 (2014) .......... 11

*Miller v. Transamerican Press, Inc.*,
709 F.2d 524 (9th Cir. 1983) .......... 4, 6

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
139 F.4th 1340 (Fed. Cir. 2025) .......... 15

*Okta, Inc. v. Biogy, Inc.*,
824 F. Supp. 3d 946 (N.D. Cal. 2026) .......... 15

*Paxonet Commc'ns, Inc. v. TranSwitch Corp.*,
303 F. Supp. 2d 1027 (N.D. Cal. 2003) .......... 17, 18

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
657 F.3d 1349 (Fed. Cir. 2011) .......... 11

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*,
458 F.3d 1335 (Fed. Cir. 2006) .......... 5

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Upaid Sys., Ltd. v. CleanDan*,
2018 WL 5279567 (C.D. Cal. July 25, 2018) .......... 5

**<u>RULES</u>**

L.R. 7-18 .......... passim

# I. INTRODUCTION

InterDigital seeks to undo a stay the Court reaffirmed just days before this Motion was filed. On June 10, 2026, the Court stayed this action under the customer-suit exception pending resolution of the declaratory judgment action filed by Dolby, the supplier of the accused Dolby Vision technology (the "Dolby Action"). Dkt. 213. In October, after reviewing InterDigital's Final Infringement Contentions and hearing argument in the Dolby Action, the Court reaffirmed the stay in its Amended Stay Order. Dkt. 241 ("Am. Order"). Days later, InterDigital filed this Motion, asking the Court to lift the stay as to the '268 Patent, sever InterDigital's infringement claim against Disney, and consolidate that claim with the Dolby Action. Dkt. 242 ("Mot.").

The Motion is a request for reconsideration masquerading as a motion to consolidate. InterDigital invokes Federal Rules of Civil Procedure 21 and 42(a) and insists in a footnote that it is not circumventing the stay. But neither the Motion's title nor the footnote can disguise its true purpose: to undo the stay the Court just reaffirmed. InterDigital's core argument is that Dolby's positions "call into question whether the customer-suit exception should even apply." Mot. at 4. The Court has twice concluded that it does.

InterDigital's Motion does exactly what Local Rule 7-18 prohibits: it rehashes arguments the Court already considered and rejected. Nearly every argument is recycled from InterDigital's stay opposition (Dkt. 186) or the stay hearing. Even the requested sever-and-consolidate remedy is not new. InterDigital's counsel expressly proposed it at the stay hearing: "you could sever the [']268 from Disney, and … consolidate … with the Dolby 2269 action." Dkt. 211 ("Stay Hr'g") at 14:9-12. The Court declined that proposal and stayed the case. InterDigital cannot relitigate the same arguments and seek the same relief by filing under a different procedural label.

Nor does InterDigital identify any material change warranting reconsideration. Its principal purportedly new evidence consists of Dolby's discovery responses in the Dolby Action, which state that Dolby does not control or know about Disney's

specific choices of displays or color-correction workflow. But those responses do not undermine the stay; they challenge the sufficiency of InterDigital's infringement contentions and dispute infringement by both Dolby and Disney. The Court never assumed that every Disney-specific question would be resolved in the Dolby Action. It recognized that some Disney-specific issues might remain and nevertheless held that the Dolby Action would still significantly narrow the dispute. Am. Order at 8-9.

That conclusion remains dispositive. The supplier action "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Id.* at 5-6. The Dolby Action continues to satisfy that standard. Forcing Disney back into active litigation before the Dolby Action resolves or narrows the common issues would defeat the very judicial economy the Court sought to preserve. *Id.* at 10. The Court should reject InterDigital's attempt to relitigate the stay and deny the Motion.

## II. <u>BACKGROUND</u>

InterDigital filed this action in February 2025, asserting five patents. Am. Order at 1-2. Only the '268, '301, and '818 Patents remain after the Court held the asserted claims of two patents indefinite. *Id.* at 2. InterDigital's complaint and infringement contentions accuse Disney of infringing the '268 Patent's method claims through its use of Dolby Vision, a technology developed, owned, and licensed by Dolby. Dkt. 177-1 ("Stay Mot.") at 2-3, 7-9. On March 3, 2026, Dolby filed a declaratory judgment action seeking declarations that Dolby Vision does not infringe the '268 Patent and that the patent is invalid. Am. Order at 3.

In May 2026, Disney moved to stay the '268 Patent claims under the customer-suit exception, while agreeing "to be bound by the outcome of the Dolby Action with respect to infringement and validity of the '268 patent." Stay Mot. at 9. InterDigital opposed the stay on essentially the same grounds it advances now. Relying on its Final Infringement Contentions, InterDigital argued that Disney-specific choices, the distinction between Disney's direct infringement and Dolby's indirect infringement,

and Disney-specific damages defeated the customer-suit exception. Dkt. 186 ("Stay Opp.") at 1-2, 9-14, 16 n.5. InterDigital repeated those arguments at the stay hearing. Stay Hr'g at 4:14-5:13, 9:20-24, 13:4-8, 14:9-12.

The Court rejected those arguments and granted the stay on June 10, 2026. Dkt. 213. In its superseding October 8, 2026 Amended Order, the Court reaffirmed that all three customer-suit factors favored a stay: (i) Disney is merely a user of Dolby Vision, not the "true" defendant, because it "is not privy to the inner workings of Dolby's proprietary software"; (ii) Disney agreed to be bound by the Dolby Action; and (iii) Dolby is the sole source of the accused technology. Am. Order at 6-7. Importantly, the Court acknowledged that some issues might remain unresolved and rejected InterDigital's argument that the potential for residual issues precluded a stay:

> Even assuming arguendo that some issues will remain surrounding the usage of this HDR10 and HDR10+ technology, there is no question that the Dolby Action will result in a significant narrowing of the issues in this action. Any argument otherwise strains credulity.

*Id.* at 8.

The Court also held that the Dolby Action's "issue of invalidity alone still weighs toward a stay." *Id.* at 8 n.3. Rejecting InterDigital's attempt to minimize the potential impact of the Dolby Action, the Court chose "the path of judicial economy and efficiency." *Id.* at 9. The Court further found that the *Lockyer* factors independently favored a stay. *Id.* at 9-11.

At the October scheduling conference in the Dolby Action, the Court confirmed three points that further undermine InterDigital's Motion. First, Disney is "now a third party" to the Dolby Action, subject to third-party discovery. Dolby Action, Dkt. 105 ("Conf. Tr.") at 5:12-16. Second, the Disney action may resume "if and when … we have a finding" in the Dolby Action. *Id.* at 5:16-6:3. Third, the Court expressed its intention "to get an answer on direct" infringement in the Dolby Action,

including whether a customer's ordinary use of Dolby Vision infringes the '268 Patent. *Id.* at 11:1-7, 14:17-15:13.

Just six days after that conference, InterDigital filed the present Motion seeking to lift the stay, sever the '268 Patent claims from the Disney Action, and consolidate those claims with the Dolby Action.

## III. LEGAL STANDARD

### A. Courts Look to the Substance of a Motion, Not Its Label

A court determines the nature of a motion by the relief it seeks, not by its label. "'[N]omenclature is not controlling,'" and "a court must construe whether a motion, however styled, is appropriate for the relief requested." *Bordallo v. Reyes*, 763 F.2d 1098, 1101 (9th Cir. 1985) (quoting *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983)). Courts therefore "examine the real nature of motions," *id.* at 1102, rather than relying on how they are styled.

### B. Reconsideration Requires a Material Change and Prohibits Reargument

Under Central District of California Local Rule 7-18, reconsideration is permitted only where: (a) material facts or law existed but could not have been known through reasonable diligence when the order was entered; (b) new material facts or a change of law emerged after the order; or (c) there is a manifest showing of a failure to consider material facts presented to the Court. L.R. 7-18. The Rule prohibits reargument: "[n]o motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion." *Id.*

### C. Courts May Stay Proceedings to Promote Judicial Economy

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Am. Order at 4 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). A court may stay an action "pending resolution of independent proceedings which bear upon the case," even if those proceedings are

not "necessarily controlling of the action before the court." *Id.* (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)). The relevant consideration is whether the other proceedings may simplify or resolve common issues. *Id.* (citing *Landis*, 299 U.S. at 256).

Courts consider the three *Lockyer* factors when evaluating a stay request: "[i] the harm suffered as a result of granting the stay, [ii] the hardship or inequity if the stay is denied, and [iii] the 'orderly course of justice[,] measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" Am. Order at 4 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)); *see id.* at 9-11 (applying factors).

### D. The Customer-Suit Exception Requires Resolution of Major Issues, Not All Issues

The customer-suit exception to the first-to-file rule permits a later-filed supplier suit to take precedence over an earlier-filed customer suit because "in reality, the manufacturer is the true defendant in the customer suit." Am. Order at 5-6 (citing *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014), and quoting *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990)). Courts consider whether (i) the customer is a mere reseller or end user, (ii) the customer agrees to be bound, and (iii) the supplier is the sole source of the accused product. *Id.* at 4-5 (citing *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006)).

The exception applies to method claims asserted against a customer's use of the supplier's technology. *Upaid Sys., Ltd. v. CleanDan*, 2018 WL 5279567, at *1-3 (C.D. Cal. July 25, 2018). Importantly, complete resolution of the customer action is not required. The supplier action "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." Am. Order at 5-6 (quoting *Upaid*, 2018 WL 5279567, at *3).

## IV. ARGUMENT

### A. InterDigital Seeks Reconsideration of the Stay but Fails to Satisfy Local Rule 7-18

InterDigital asks the Court to "lift the stay in the Disney Action," sever the '268 claims, and litigate them now. Mot. at 13. Severing those stayed claims and consolidating them into an active case requires lifting the stay—a "substantive change of mind by the court," not merely a case-management adjustment. *Miller*, 709 F.2d at 527. Accordingly, the Motion should be evaluated as a motion for reconsideration under Local Rule 7-18. InterDigital's Motion fails that standard because it repeats arguments the Court already considered and rejected, without identifying any material change in fact or law.

#### 1. The Motion Repeats Arguments the Court Already Considered and Rejected

The Motion's central arguments repeat InterDigital's stay opposition and hearing arguments, often verbatim. Local Rule 7-18 bars a reconsideration motion that "in any manner repeat[s] any oral or written argument made in … opposition to[] the original motion." L.R. 7-18. InterDigital's Motion does exactly that.

***First***, InterDigital repeats its argument that infringement turns on "Disney-specific choices." Mot. at 1, 12. The Motion's primary theme is that InterDigital's Final Infringement Contentions accuse Disney of infringement based on "Disney-specific choices," including Disney's selection of displays, color gamuts, grading suites, and workflows. *Id*. at 1, 3-4. InterDigital made the same argument in its stay opposition, Stay Opp. at 1, 9-10 (Disney "exercises discretion and choice"; Disney "provides a list of approved monitors"), and at the hearing, where it pointed to "internal Disney documentation" in its contentions. Stay Hr'g at 12:2-8.

Indeed, InterDigital relies on the very same Final Infringement Contentions it cited in opposing the stay. *See* Stay Opp. at 16 n.5; Mot. at 1. The Court already considered those contentions, noting that InterDigital "relies earnestly on their Final

Infringement Contentions (in their briefing and at oral argument) … to argue that Disney infringes the ’268 Patent by its own actions rather than as a passive user of Dolby technology.” Am. Order at 8. InterDigital’s suggestion that the Court’s rationale rests on a view “drawn from the original Disney complaint” (Mot. at 1) ignores the Court’s express consideration of its Final Infringement Contentions. Nor do the Disney documents attached to InterDigital’s declaration add anything new; InterDigital acknowledges that they are “examples of Disney … documents cited in InterDigi[t]al’s Final Infringement contentions.” Mot. at 4 (citing Kamprath Decl. Exs. A-C). Those same contentions and documents cannot justify reconsideration. *See* L.R. 7-18(a).

***Second***, InterDigital rehashes the distinction between Disney’s alleged direct infringement and Dolby’s alleged indirect infringement. InterDigital argues that a verdict for Dolby on knowledge or intent could leave Disney’s direct infringement undecided. Mot. at 2-3, 8. InterDigital made the same argument in its stay opposition (Stay Opp. at 11-12) and at the hearing (Stay Hr’g at 4:14-6:12), where the Court observed that InterDigital’s logic “seems backwards.” Stay Hr’g at 6:9-12. The Court nevertheless granted the stay, distinguishing cases involving customer-specific implementation and explaining that Disney allegedly infringes by using Dolby Vision “off the shelf,” “as instructed by the manufacturer.” Am. Order at 7 (distinguishing *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 2016 WL 1659924, at *3–4 (E.D. Tex. Apr. 26, 2016), and citing *Nintendo*, 756 F.3d at 1365). The Court further held that the theory of indirect liability against Dolby “is irrelevant” to the stay analysis and rejected InterDigital’s attempt “to inject the nuances of a nonexistent claim into the stay analysis.” *Id.* at 7 & n.2, 8 n.3.

InterDigital also repeats its argument that only Disney, not Dolby’s software, can directly infringe a method claim. Mot. at 1-2; Stay Opp. at 1-2. But that distinction is inherent in method-claim cases and does not preclude application of the customer-suit exception. Dkt. 195 (“Stay Reply”) at 5 (collecting cases); Am. Order

at 7, 9. Nor does the possibility that Dolby might prevail on an issue unique to indirect infringement defeat the stay. The Court has expressed its intention "to get an answer on direct" infringement in the Dolby Action, Conf. Tr. at 11:1-7, and Disney agreed to be bound "with respect to infringement and validity." Stay Mot. at 9. Any remaining Disney-specific issues can be addressed after the Dolby Action, as the Court contemplated when it explained that the Disney action "will continue if and when" there is a finding in the Dolby Action. Conf. Tr. at 5:16-6:3.

***Third***, InterDigital resurrects its "empty chair" argument. InterDigital argues that without Disney, the Dolby Action presents "exactly the 'empty chair' problem InterDigital raised at the stay hearing." Mot. at 12 (citing Stay Hr'g at 9:5-7, 9:20-24). InterDigital's own citation confirms that this argument is not new. *See* L.R. 7-18. Nor does Disney's absence as a defendant prevent InterDigital from obtaining evidence from Disney or cross-examining Disney witnesses. The Court already explained that InterDigital can pursue discovery from Disney as a third party. Stay Hr'g at 7:18-21, 20:22-21:4; Conf. Tr. at 5:12-15. And Disney has already reproduced documents in response to subpoenas issued in the Dolby Action. Dolby Action, Dkt. 107-1 ¶ 6; Dkt. 115. Disney need not be a defendant for InterDigital to obtain evidence or test its credibility through cross-examination. And Disney's agreement to be bound substantially reduces the risk of duplicative litigation of infringement and validity. Stay Mot. at 9; Am. Order at 6 & n.1.

***Fourth***, the Court has already considered and rejected InterDigital's argument concerning Disney-specific damages. InterDigital previously argued that the Dolby Action would not resolve Disney's damages exposure. Stay Opp. at 11-12; Stay Hr'g at 13:4-8. The Court considered this argument, observing that if Dolby prevails, "Disney's off the hook," and declined to let damages proceed while the Dolby Action is pending. Stay Hr'g at 13:10-14:7. InterDigital cannot revive its previously rejected argument by pointing to the possibility of unresolved damages. *See* L.R. 7-18. The customer-suit exception does not require the supplier action to resolve every issue,

only the "major issues." Am. Order at 5-6; *Katz*, 909 F.2d at 1464.

InterDigital's reliance on *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081-82 (Fed. Cir. 1989), is misplaced. InterDigital previously cited *Kahn* for the proposition that the customer-suit exception does not apply "where supposed manufacturer developed only part of accused product." Stay Opp. at 8. That is not the case here: Dolby is the sole source of Dolby Vision. Am. Order at 6-7. And the Federal Circuit's later decisions in *Katz*, *Spread Spectrum*, and *Nintendo* all apply the "major issues" standard the Court applied in granting the stay. *Id.* at 5-6.

***Finally***, even InterDigital's proposed remedy is not new. InterDigital proposed the very same severance-and-consolidation remedy at the stay hearing: "You could sever the [']268 from Disney, and you could either formally or just for pretrial purposes consolidate the [']268 from Disney with the Dolby 2269 action." Stay Hr'g at 14:9-12; *see also id.* at 8:23-9:17. The Court declined to adopt InterDigital's proposal and instead stayed the Disney Action. Am. Order at 14; Conf. Tr. at 5:12-6:3. InterDigital now seeks precisely the same relief, based on the same arguments the Court already considered. Local Rule 7-18 prohibits this kind of reargument.

### 2. Dolby's Discovery Responses Are Not a Material Change Warranting Relief from the Stay

Dolby's discovery responses in the Dolby Action—which state that Dolby does not dictate or know about Disney's specific choices of displays, color gamuts, or other aspects of Disney's workflow—do not establish any material change warranting reconsideration. Mot. at 8-10 (citing Ex. D). InterDigital characterizes these responses as a reversal by Dolby, but they are not. Dolby is merely responding to InterDigital's infringement contentions and identifying deficiencies in its proof. The premises of the stay remain unchanged: (i) Disney is still an end user of Dolby Vision, (ii) Disney has already agreed to be bound by the outcome of the Dolby Action, (iii) Dolby remains the sole source of the accused technology, and (iv) the Dolby Action remains positioned to resolve or substantially narrow the major issues

concerning infringement and invalidity. Am. Order at 6-9, 8 n.3; Conf. Tr. at 11:1-7.

#### *a. The Dolby Action Will Resolve or Narrow the Major Issues*

The Court did not condition the stay on the Dolby Action resolving every question about Disney's workflow. Rather, it recognized that Disney-specific questions might remain but nevertheless held that "there is no question that the Dolby Action will result in a significant narrowing of the issues." Am. Order at 8. As the Court explained at the stay hearing: "I'm not suggesting that this solves the case entirely." Stay Hr'g at 16:18-17:1. Dolby's discovery responses at most confirm that InterDigital's infringement theory references some Disney-specific facts, a possibility the Court already considered. They do not identify any conduct by Disney that departs from Dolby's instructions or otherwise takes Disney's accused use of Dolby Vision outside the issues presented in the Dolby Action.

InterDigital's assertion that the stay requires Dolby to "step into Disney's shoes for all purposes" (Mot. at 6) mischaracterizes both Disney's position and the Court's ruling. Disney argued that a stay "will resolve the key issues—if not the entire dispute," Stay Mot. at 9-10, and the Court granted the stay on that basis. Am. Order at 6, 8-9. Nothing in the Amended Order requires Dolby to assume the entirety of Disney's liability or forgo defenses unavailable to Disney.

The Court has since confirmed that the Dolby Action will address whether a customer's use of Dolby Vision "without modification" infringes, while recognizing that customer-specific actions might present separate issues later. Conf. Tr. at 14:17-15:13. The Amended Order anticipated that possibility: a Dolby win would leave InterDigital to "reevaluate its claims, underlying infringement contentions, and strategy" and "focus on Disney's allegedly infringing conduct separate from that of Dolby," a "reframing that would certainly simplify the primary issues in dispute here." Am. Order at 8-9. So far, InterDigital has identified no such Disney-specific conduct warranting that inquiry. And even if residual issues ultimately remain after

completion of the Dolby Action, they do not defeat the stay of the Disney Action now. *See Katz*, 909 F.2d at 1464; *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011).

InterDigital also argues that a ruling based on a "hypothetical user" would be "an advisory opinion" that "could not resolve or even narrow the direct infringement question." Mot. at 2-3. But the Dolby Action presents an actual dispute concerning infringement through use of Dolby Vision by Dolby's customers, and Disney has agreed to be bound by the outcome on infringement and validity. Stay Mot. at 9; Am. Order at 6 & n.1. A determination that Disney's accused use of Dolby Vision does not infringe, or that the '268 Patent is invalid, would resolve InterDigital's corresponding claims against Disney. At a minimum, a ruling concerning use of unmodified Dolby Vision would substantially narrow the remaining issues. That is all the customer-suit exception requires, and nothing in Dolby's discovery responses changes that conclusion. Thus, the possibility of residual issues is not a material change that warrants reconsideration of the stay.

#### ***b. Dolby's Discovery Responses Challenge InterDigital's Burden and Contest Disney's Alleged Infringement***

InterDigital mischaracterizes Dolby's discovery responses identifying deficiencies in InterDigital's infringement proof as admissions that Disney engages in independent infringing conduct. Far from conceding independent conduct, Dolby expressly contends that "Dolby and Disney do not directly infringe … the '268 patent." Ex. D at 36, 47. Dolby is not "distanc[ing] itself from Disney," Mot. at 6; it is contesting Disney's alleged direct infringement in the Dolby Action. That is consistent with Dolby's position that it is "the real party in interest." *Id.* (quoting Dolby Action, Dkt. 33 at 16).

InterDigital ignores the context of Dolby's responses. InterDigital bears the burden of proving infringement. *See Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 193–94 (2014). Yet InterDigital relied on its existing Disney

infringement contentions in the Dolby Action, rather than developing separate contentions addressing Dolby's alleged liability. Dolby's responses identify deficiencies in those contentions. InterDigital cherry-picks a handful of statements from Dolby's approximately 50 pages of non-infringement contentions to suggest that Dolby has abandoned its defense of Disney's accused conduct. Nothing in those responses support that conclusion.

Some of the statements InterDigital highlights do not even concern Disney. For example, Dolby's statement that "[s]oftware development is further needed to integrate the source code into a working product," which "may also include modifying and adding to, the cited source code," Mot. at 9-10, concerns third-party developers of Dolby Vision-compatible grading systems, not Disney. Ex. D at 10-11. The same passage states that "[t]he source code was not provided to Disney" and that "InterDigital does not allege that Disney used Dolby's source code." *Id.* at 11. That is entirely consistent with the record supporting the stay: Disney uses Dolby Vision but does not modify Dolby's proprietary technology. Stay Hr'g at 10:18-11:2; Stay Reply at 6.[1]

Nor does the involvement of third-party grading suites undermine the Court's finding that Dolby is the sole source of the accused technology. Those suites are "Dolby Vision Compatible" color grading and packaging systems, Ex. D at 11, and InterDigital's infringement theory depends on their implementation of Dolby Vision. *See* Mot. at 3-4. Dolby remains the sole source of Dolby Vision, a fact InterDigital "does not dispute." Am. Order at 6-7.

InterDigital similarly mischaracterizes Dolby's statement that "Disney

[1] Dolby's parenthetical list of entities that may implement "Dolby Vision Compatible" systems includes "Disney." Mot., Ex. D at 10. That list describes the range of possible implementations that, in Dolby's view, InterDigital's contentions fail to account for. Nothing in Ex. D asserts that Disney developed or modified any Dolby Vision implementation and the Motion does not contend otherwise.

Mastering generally allows productions the flexibility to grade as desired." Mot. at 9. Dolby quoted that language from a Disney document cited in InterDigital's own contentions to challenge the allegation that Disney mandates a particular workflow. Mot., Ex. D at 15. That is a challenge to InterDigital's evidence, not a concession that Disney engages in independent infringing conduct.

Most importantly, Dolby's substantive non-infringement defenses do not depend on resolving Disney-specific factual disputes. For multiple claim limitations, Dolby contends that "[e]ven assuming Disney performs the alleged color correction process as described in the documents excerpted in the Infringement Contentions," Disney does not perform the claimed step. Mot., Ex. D at 16, 20, 28, 42. Those arguments turn on claim scope and the operation of Dolby Vision, issues squarely presented in the Dolby Action. *Id.* at 8, 17, 21-22, 24, 28, 29-31. Thus, Dolby disputes Disney's alleged infringement even accepting InterDigital's characterization of Disney's workflows. Far from undermining the stay, Dolby's discovery responses demonstrate that the Dolby Action can resolve or narrow the major infringement issues without adjudicating every Disney-specific factual dispute.

#### *c. Disney's Display Selection Does Not Take Its Accused Conduct Outside the Dolby Action*

InterDigital's argument ultimately reduces to the assertion that Disney, not Dolby, selects which monitors its colorists use. Mot. at 9. But InterDigital already raised this point in opposing the stay. Stay Opp. at 10. Disney explained that Dolby prescribes the display specifications for Dolby Vision mastering, and that the claims recite only generic classes of "reference type" and "non-reference type" displays. Stay Reply at 6. Disney's selection of a compliant monitor does not transform its use of Dolby Vision into an independent infringement theory or undermine the stay.

InterDigital's reliance on Disney's "title-specific XML metadata," which it says "records the displays used" (Mot. at 9), underscores the centrality of Dolby Vision to its infringement theory. That metadata is generated as part of Dolby Vision

mastering, and InterDigital's own contentions chart the claimed mastering step against Dolby Vision XML files and dozens of software functions, classes, methods, and data structures from Dolby-produced source code. Stay Reply at 3-4 (citing Final '268 Contentions at 95-106). The Court considered that record when it found that Disney was a mere user and Dolby the sole source of the accused technology. Am. Order at 6-8.

Most importantly, the Court has already explained why the Dolby Action can resolve the monitor-selection question. At the October scheduling conference, InterDigital raised "selection of monitors" and the identification of "reference and … non-reference displays." Conf. Tr. at 16:1-17. The Court explained that infringement might occur "whatever monitors are used," only with "certain types of monitor," or not at all, "no matter what the monitor is." *Id*. The Court concluded: "I feel like that is a question that could be answered in this case without worrying about the actual implementation of the method by Disney or anyone else." *Id.* That observation defeats InterDigital's assertion that Disney must be a defendant to resolve the display-selection issue. Even if "the color correction process varies from movie to movie" (Mot. at 2), the Dolby Action can determine which categories of displays, if any, satisfy the claim limitations, or that Dolby Vision cannot infringe regardless of the display choice. Such a determination would resolve or substantially narrow the infringement dispute concerning Disney's uses of Dolby Vision, without requiring Disney to participate as a defendant. That is all the customer-suit exception requires. Am. Order at 5-6.

#### ***d. InterDigital's Remaining Arguments Identify No Material Change***

InterDigital relies on the Court's observation in its order denying InterDigital's motion to dismiss the Dolby Action that its analysis "would likely change" if InterDigital relied on non-Dolby documentation. Mot. at 10-11. But that order addressed whether there was a case or controversy between Dolby and InterDigital,

not whether the Disney Action should be stayed. Moreover, the non-Dolby materials InterDigital identifies—including the Disney monitor list and mastering requirements—were already cited in its stay opposition. Stay Opp. at 9-10, 16 n.5; Stay Reply at 1-2. The Court considered all of these materials before issuing the Amended Order. Stay Hr'g at 22:1-3; Am. Order at 8-9.

InterDigital cites *Okta, Inc. v. Biogy, Inc.*, 824 F. Supp. 3d 946, 954 (N.D. Cal. 2026), and *Mitek Systems, Inc. v. United Services Automobile Ass'n*, 139 F.4th 1340, 1347 (Fed. Cir. 2025), to argue that direct infringement depends on customer-specific conduct. Mot. at 10. But those cases concerned whether a supplier had sufficient basis to maintain a declaratory judgment action in the absence of an enforcement action against a customer. *See Okta, Inc.*, 824 F. Supp. 3d at 954; *Mitek*, 139 F.4th at 1347. Neither addressed whether to lift an existing customer-suit stay. Here, the Court has already allowed the Dolby Action to proceed (Dolby Action, Dkt. 44), stayed the Disney Action, and accepted Disney's agreement to be bound by the Dolby Action's outcome. Stay Mot. at 9; Am. Order at 6. These facts are all missing in InterDigital's cited cases. Moreover, InterDigital concedes another key distinction with these cases: "the issue [here] is not customization of a product." Mot. at 10. Thus, neither case provides a basis to disturb the stay.

Finally, InterDigital contends that Dolby has "reversed course" by stating that it "will litigate its own damages (if any) and not the damages of its customers." Mot. at 7, 12. There is no reversal here because Dolby's position on its own liability is distinct from its contractual indemnity obligations to Disney. Stay Mot. at 4, 9. More fundamentally, InterDigital already argued that the Dolby Action might leave some Disney-specific damages issues unresolved, and the Court granted the stay notwithstanding that concern. Stay Opp. at 11-12; Stay Hr'g at 13:4-14:6. There can be no dispute that the Dolby Action will resolve or substantially narrow the damages issues. For example, if Dolby is found liable for inducing or contributing to infringement through Disney's use of Dolby Vision, InterDigital can recover

damages attributable to that infringement from Dolby; it cannot recover twice for the same infringing conduct from Disney. *See* Dolby Action, Dkt. 99 at 20-21. Conversely, a determination that the '268 Patent is invalid or that use of Dolby Vision does not infringe could eliminate the corresponding damages claims against Disney altogether. Speculation about residual damages therefore does not justify bringing Disney back into active litigation now.

### B. The Stay Remains Warranted Under the Governing Standard

Even setting aside the reconsideration standard, the stay remains justified under both the customer-suit exception and the Court's inherent power to manage its docket. Am. Order at 4-6, 9-11.

The rationale for the exception applies with full force. Customers like Disney do "'not have substantive knowledge about the patent infringement, which would begin at the design and manufacture stages,'" and the upstream defendant is the "'real party in interest.'" Am. Order at 9 (quoting *Upaid*, 2018 WL 5279567, at *3). A claim against Dolby "is more likely to restore contested property rights nationwide" than one against a downstream customer, *id.*, particularly because InterDigital has already sued at least seven other Dolby customers. *Id.* at 3-4.

#### 1. Invalidity Alone Supports Maintaining the Stay

If Dolby establishes that the '268 Patent is invalid, InterDigital's claims against Disney will fail entirely, irrespective of Disney-specific workflow choices. *See Katz*, 909 F.2d at 1464 (supplier suit resolving validity would resolve major issues as to customers). The Court has already held that the Dolby Action's "issue of invalidity alone still weighs toward a stay." Am. Order at 8 n.3. InterDigital's Motion does not address this independent basis for maintaining the stay.

#### 2. The *Lockyer* Factors Continue to Favor a Stay

InterDigital identifies no changed circumstances that alter the Court's *Lockyer* analysis, and each factor still favors the stay. Am. Order at 9-11.

***First***, InterDigital still cannot demonstrate undue prejudice. The Court found

that any harm to InterDigital is "minimal": it is a non-practicing entity whose damages "will likely be compensable," and a "delay in litigation alone does not constitute undue prejudice." *Id.* at 9-10. InterDigital identifies no new prejudice arising from the continued stay. Its assertion that Dolby "will litigate its own damages" (Mot. at 7) concerns the potential scope of Dolby's liability in the Dolby Action, not any harm from allowing the Dolby Action to proceed first.

***Second***, maintaining the stay avoids substantial hardship to Disney. Lifting the stay would force Disney to incur the "unnecessary costs and labor" the customer-suit stay was designed to prevent: litigating, in parallel with Dolby, technology that Disney did not develop and whose source code it does not have. Am. Order at 10; Ex. D at 11; Stay Reply at 6.

***Third***, the stay serves the orderly course of justice. Both actions "rely on the '268 patent, the Dolby Vision technology and the similar Dolby technical documents," Am. Order at 11, and the Dolby Action is better positioned to resolve or substantially narrow the questions of infringement and invalidity. Conf. Tr. at 11:1-7, 14:17-15:13; Am. Order at 8 n.3. InterDigital's proposed consolidation would undermine those efficiencies by restoring Disney as a defendant, injecting Disney-specific issues into a declaratory judgment action concerning Dolby Vision generally, and disrupting the Court's existing case-management structure. Conf. Tr. at 5:12-6:3, 9:7-12:2; Stay Hr'g at 13:9-14.

### C. Severance and Consolidation Would Not Promote Efficiency

InterDigital's Motion also fails on its own terms under Rules 42(a) and 21. The commonality between the Dolby and Disney Actions is precisely why the stay promotes efficiency, not a reason to lift it. Am. Order at 11. Consolidation requires weighing "the interest in judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation." *Paxonet Commc'ns, Inc. v. TranSwitch Corp.*, 303 F. Supp. 2d 1027, 1028 (N.D. Cal. 2003). That balance favors maintaining the existing stay over InterDigital's proposed consolidation.

***First***, InterDigital cannot obtain the consolidation it seeks without first lifting the stay. Consolidation is therefore not an independent case-management solution, as InterDigital presents it. It is a means of undoing the stay. The same is true of severance: severing a stayed claim for the sole purpose of litigating it elsewhere is functionally a request to lift the stay. *See Bordallo*, 763 F.2d at 1101 (court must construe a motion, "however styled," by "the relief requested"); L.R. 7-18. The Court has already decided how the two cases interact during the stay: Disney is a third party to the Dolby Action, and the Disney Action may resume, if necessary, after findings in that proceeding. Conf. Tr. at 5:12-8:15.

***Second***, consolidation would not solve the third-party discovery problem InterDigital identifies. The Dolby Action is not about Disney alone: the Court intends it to address whether a customer's unmodified use of Dolby Vision infringes, without limiting the inquiry to Disney or any particular Dolby customer. Conf. Tr. at 14:17-15:13; Dolby Action, Dkt. 99. Adding Disney as a party, despite its agreement to be bound, would not resolve the alleged evidentiary gaps concerning other Dolby customers. It would simply restart the stayed Disney infringement claims within the Dolby Action. Nor would consolidation eliminate the need for third-party discovery, such as discovery from the third-party colorists InterDigital subpoenaed (Mot. at 11), who remain third parties either way.

***Third***, consolidation would prejudice Disney and undermine the efficiencies the stay was designed to achieve. InterDigital asks that the Dolby Action "proceed to adjudicate direct infringement by Disney, Dolby's indirect infringement deriving from Disney's direct infringement, and the damages owed to InterDigital." Mot. at 13. That would restore the very infringement litigation against Disney that the Court stayed. Stay Hr'g at 13:9-14. It would also make Disney a party to litigation focused on Dolby's technology and source code, which Disney does not have. Am. Order at 6-7; *Paxonet*, 303 F. Supp. 2d at 1028. By contrast, the existing stay already does what InterDigital says consolidation would do—"give[] effect" to Disney's

agreement to be bound. Mot. at 12 (citing Dkt. 96, Sept. 25, 2026 Hr'g Tr. at 36:12-37:8). Infringement and invalidity will be decided in the Dolby Action, and any remaining Disney-specific issues will proceed "if and when" there is a finding there. Conf. Tr. at 5:16-6:3; Am. Order at 8-9.

*Flated* is not to the contrary. There, the court consolidated a patentee's suit against a distributor with a later suit against the supplier. Mot. at 11 (citing *Flated LLC v. I3 Enters., Inc.*, 2026 WL 220905, at *2 (C.D. Cal. Jan. 20, 2026)). InterDigital does not contend that *Flated* involved a customer-suit stay, a customer's agreement to be bound, or a prior determination that the customer should proceed as a third party—all of which are present here. InterDigital invokes *Flated*'s statement that infringement and validity "should be decided once, not twice." *Id.* (quoting *Flated*, 2026 WL 220905, at *2). That principle supports maintaining the stay here. Disney has agreed to be bound by the Dolby Action's determinations of infringement and validity, allowing the common issues to be decided once without requiring Disney to defend its stayed infringement claims simultaneously. Stay Mot. at 9; Am. Order at 6 & n.1.

## V. CONCLUSION

InterDigital has repackaged its previously rejected arguments and the same severance-and-consolidation proposal it advanced at the stay hearing into the present Motion. The Court has already considered and rejected those arguments, and the Dolby discovery responses InterDigital cites do not materially change the facts or reasoning supporting the stay. InterDigital has provided no basis to disturb the Court's ruling. The Motion should be denied.

DATED: November 9, 2026

Respectfully submitted,

By: /s/ *Ryan K. Yagura*
Ryan K. Yagura

RYAN K. YAGURA
NICHOLAS J. WHILT
XIN-YI ZHOU
O'MELVENY & MYERS LLP

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,174 words, which complies with the word limit of the Standing Order for Newly Assigned Civil Cases (Dkt. 19), § 4. Counsel relies on the word count word-processing application used to prepare the brief.

DATED: November 9, 2026

Respectfully submitted,

By: */s/ Ryan K. Yagura*
Ryan K. Yagura

RYAN K. YAGURA
NICHOLAS J. WHILT
XIN-YI ZHOU
O'MELVENY & MYERS LLP

*Attorneys for Defendants*